# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| THE MUNICIPALITY OF SAN JUAN, PUERTO RICO, | Civil Case No. 3:23-cv-01608-ADC |
| Plaintiff, | |
| v. | Re: |
| | Consumer Fraud; Deceptive Business Practices; Racketeer and Corrupt Organizations Act, 18 U.S.C. § 1962; Sherman Act, 15 U.S.C. § 1 et seq.; Public Nuisance; Strict Liability – Failure to Warn; Strict Liability – Design Defect; Negligent Design Defect; Private Nuisance; Unjust Enrichment |
| EXXON MOBIL CORP, SHELL PLC F.K.A. ROYAL DUTCH SHELL PLC, CHEVRON CORP, BP PLC, CONOCOPHILLIPS, MOTIVA ENTERPRISES LLC, OCCIDENTAL PETROLEUM F.K.A. ANADARKO PETROLEUM CORP, BHP, ARCH COAL COMPANY, RIO TINTO PLC, PEABODY ENERGY, XYZ CORPORATIONS 1-100, and JOHN AND JANE DOES 1-100, | |
| Defendants. | |

## DEFENDANTS' JOINT MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 6

LEGAL STANDARD............................................................................................ 9

ARGUMENT ...................................................................................................... 10

I. All of Plaintiff's Claims Are Time Barred ......................................... 10

   A. Plaintiff's RICO and Antitrust Claims Are Untimely. (Claims 4, 5, 6, 7, 8) ................................................................................... 10

   B. No Exception to the Statute of Limitations Applies. ................................. 11

   C. The Puerto Rico Law Claims Are Untimely. (Claims 1, 2, 3, 9, 10, 11, 12, 13, 14) ....................................................................... 14

II. Plaintiff Fails to State a RICO Claim (Claims 4, 5, 6, 7) ..................... 17

   A. Plaintiff's Claims Are Barred by the First Amendment and *Noerr-Pennington*. ................................................................................. 18

   B. Plaintiff Has Not Pleaded the Requisite Elements of a RICO Claim ....... 24

      1. Plaintiff Fails to Plausibly Allege That the Claimed Predicate Acts Proximately Caused Its Purported Injuries. ................................... 24

      2. Plaintiff Fails to Adequately Allege an *Enterprise*. ...................... 28

      3. Plaintiff Has Not Adequately Alleged *Racketeering Activity*. ....... 30

      4. Plaintiff Has Not Adequately Alleged a *Pattern* of Racketeering Activity. .................................................................................... 33

      5. Plaintiff Fails to Allege That Defendants *Conducted* the Alleged Enterprise. ................................................................................. 33

      6. Plaintiff Has Not Alleged Defendants *Invested In or Acquired or Maintained Control* of the Alleged Enterprise. ............................ 34

      7. Plaintiff Fails to Adequately Allege a Conspiracy. ...................... 34

   C. Plaintiff Cannot Recover Under RICO for Its Resident's Alleged Injuries or for Its Own Governmental Expenditures................................. 35

III.    Plaintiff Fails to Adequately Plead an Antitrust Violation (Claim 8) ................... 36

    A.    The Complaint Does Not Plausibly Allege an Anticompetitive Agreement. ................................................................................................ 37

    B.    Plaintiff Has Not Alleged an Antitrust Injury. ........................................... 40

    C.    Plaintiff Lacks a Cause of Action Under the Antitrust Laws to Assert Injuries Allegedly Sustained by Its Residents. .............................. 41

IV.    Plaintiff's Puerto Rico Law Claims Are Barred By Federal Law and Are Inadequately Pleaded (Claims 1, 2, 3, 9, 10, 11, 12, 13, 14) ................................ 42

    A.    Federal Law Governs Plaintiff's Purported Puerto Rico Law Claims. ..................................................................................................... 42

        1.    Plaintiff's Claims Intrude Upon, and Are Precluded and Preempted by Federal Constitutional Structure, Law, and Policy. ................. 43

        2.    Plaintiff's Claims Are Precluded and Preempted Because They Intrude On Foreign Affairs. ........................................................... 47

    B.    Plaintiff's Puerto Rico Law Claims Are Preempted by the Clean Air Act. ..................................................................................................... 49

    C.    Plaintiff Has Not Pleaded Cognizable Puerto Rico Law Claims. (Claims 1, 2, 3, 9, 10, 11, 12, 13, 14) ....................................................... 51

        1.    Plaintiff's Fraud-Based Claims Are Not Cognizable. (Claims 1, 2, 3) ................................................................................................... 51

        2.    Plaintiff Fails to Plead Any Design "Defect" That Caused Its Injuries. (Claims 11, 12) .............................................................. 54

        3.    Defendants Had No Duty to Warn of Climate Risks (Claim 10) . 56

        4.    Plaintiff's Nuisance Claims Fail. (Claims 9, 13) ........................ 58

        5.    Plaintiff Cannot Sue for Unjust Enrichment Because It Seeks Other Legal Remedies. (Claim 14) ....................................................... 58

    D.    Plaintiff Lacks a Cause of Action Under Puerto Rico Law to Assert Injuries Allegedly Sustained by Its Residents. ......................................... 59

CONCLUSION .................................................................................................................... 60

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*303 Creative LLC v. Elenis,*
    143 S. Ct. 2298 (2023) .................................................................4, 19, 21

*Aetna Cas. & Sur. Co. v. P & B Autobody,*
    1994 WL 717998 (1st Cir. Dec. 29, 1994) ...................................34

*Agency Holding Corp. v. Malley-Duff & Associates, Inc.,*
    483 U.S. 143 (1987) .......................................................................11

*Aguadilla Paint Center v. Esso,*
    183 P.R. Dec. 901 (2011)...............................................................53

*Aldahonda-Rivera v. Parke Davis & Co.,*
    882 F.2d 590 (1st Cir. 1989) .........................................................15

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) .......................................................................52

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
    458 U.S. 592 (1982) .......................................................................36

*Allied Tube & Conduit Corp. v. Indian Head, Inc.,*
    486 U.S. 492 (1988).......................................................................23

*Álvarez-Crespo v. Olavarría-Rivera,*
    994 F.2d 35 (1st Cir. 1993) ...........................................................52

*Álvarez-Maurás v. Banco Popular of P.R.,*
    919 F.3d 617 (1st Cir. 2019) ............................................10, 11, 12

*Am. Elec. Power Co. v. Connecticut,*
    564 U.S. 410 (2011)..............................2, 13, 20, 43, 47, 51

*Am. Ins. Ass'n v. Garamendi,*
    539 U.S. 396 (2003).......................................................................48

*American Pipe & Cons. Co. v. Utah,*
    414 U.S. 538 (1974).......................................................................10

*Amphastar Pharms. Inc. v. Momenta Pharms., Inc.,*
    850 F.3d 52 (1st Cir. 2017).............................................................23

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (2006)...............................................................5, 25, 27

*Aronstein v. Massachusetts Mut. Life Ins. Co.,*
    15 F.4th 527 (1st Cir. 2021)...........................................................57

*Arroyo Cruz v. Mun. de San Juan*,
  2016 WL 885382 (P.R. Cir., Jan. 28, 2016) ...................................................59, 60

*In re Asbestos School Litig.*,
  46 F.3d 1284 (3d Cir. 1994)................................................................................30

*Ashcroft v. Am. Civil Liberties Union*,
  535 U.S. 564 (2002)............................................................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................1, 9

*Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)............................................................................................40

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990)........................................................................................5, 40

*Aut. de Puertos v. Mun. de San Juan*,
  23 P.R. Offic. Trans. 437, 1989 WL 607311 (P.R. 1989) ...................................59

*Ayala Rosa v. ATPR*,
  116 P.R. Offic. Trans. 414 (P.R. 1985)...............................................................14

*Baretto Peat, Inc. v. Luis Ayala Colón Sucrs. Inc.*,
  896 F.2d 656 (1st Cir. 1990)...............................................................................15

*Baum-Holland v. Hilton El Con Mgmt., LLC*,
  964 F.3d 77 (1st Cir. 2020).................................................................................53

*Bd. of Cnty. Comm'rs of Arapahoe Cnty. v. Denver Bd. of Water Comm'rs*,
  718 P.2d 235 (Colo. 1986)..................................................................................60

*Bd. of Comm'rs v. Kokomo City Plan Comm'n*,
  330 N.E.2d 92 (Ind. 1975) ..................................................................................60

*Beck v. Prupis*,
  529 U.S. 494 (2000)............................................................................................35

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................5, 9, 25, 37, 38, 39

*Bell v. Cheswick Generating Station*,
  734 F.3d 188 (3d Cir. 2013)................................................................................50

*Bocanegra-Acevedo v. Toyota Motor Sales USA, Inc.*,
  2009 WL 1098084 (D.P.R. Apr. 23, 2009)...........................................................15

*Boyle v. United States*,
  556 U.S. 938 (2009)............................................................................................29

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988)............................................................................................43

*Brooke Grp. Ltd.* v. *Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)............................................................................39

*Brown v. Hartlage*,
456 U.S. 45 (1982)..............................................................................20

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)............................................................................40

*Buck v. Am. Airlines, Inc.*,
476 F.3d 29 (1st Cir. 2007)..................................................................52

*Café Rico, Inc. v. Mun. de Mayagüez*,
155 P.R. Dec. 548 (2001)....................................................................59

*Canyon Cnty. v. Syngenta Seeds, Inc.*,
519 F.3d 969 (9th Cir. 2008)...............................................................36

*Carballo-Rodríguez v. Clark Equip. Co.*,
147 F. Supp. 2d 66 (D.P.R. 2001).................................................54, 56

*Caro-Bonet v. Lotus Mgmt., LLC*,
195 F. Supp. 3d 428 (D.P.R. 2016).......................................................9

*Casey v. City of Newport*,
308 F.3d 106 (1st Cir. 2002)................................................................19

*Casiano Sales v. Lozada Torres*,
91 P.R.R. Dec. 473 (1964)...................................................................58

*Ciminelli v. United States*,
598 U.S. 306 (2023)............................................................................31

*Cintrón-Luna v. Román-Bultron*,
668 F. Supp. 2d 315 (D.P.R. 2009)......................................................14

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)...........................................................18, 19, 24

*City & Cnty. of Honolulu v. Sunoco LP*,
537 P.3d 1173 (Haw. 2023)................................................................45

*City of New York v. BP P.L.C.*,
325 F. Supp. 3d 466 (S.D.N.Y. 2018).................................................45

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021).................................2, 3, 43, 44, 45, 46, 47, 51

*City of Oakland v. BP p.l.c.*,
2019 WL 2250196 (9th Cir. May 17, 2019) ........................................49

*City of Oakland v. BP P.L.C.*,
325 F. Supp. 3d 1017 (N.D. Cal. 2018) ..............................................45

*City of Oakland v. BP P.L.C.*,
    960 F.3d 570 (9th Cit. 2020)................................................................45

*City of Oakland v. BP P.L.C.*,
    969 F.3d 895 (9th Cir. 2020)................................................................45

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002)................................................................57

*City of Safety Harbor v. Birchfield*,
    529 F.2d 1251 (5th Cir. 1976)..............................................................60

*Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*,
    851 F.2d 478 (1st Cir. 1988)................................................................37

*Clark Cnty. v. City of Las Vegas*,
    574 P.2d 1013 (Nev. 1978)................................................................60

*Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*,
    228 F.3d 24 (1st Cir. 2000)................................................................28

*Cnty. of Lexington v. City of Columbia*,
    400 S.E.2d 146 (S.C. 1991)................................................................60

*Collazo-Santiago v. Toyota Motor Corp.*,
    937 F. Supp. 134 (D.P.R. 1996), *aff'd*, 149 F.3d 23 (1st Cir. 1998) ......55

*Colón Prieto v. Géigel*,
    15 P.R. Offic. Trans. 313 (P.R. 1984)..................................................15

*Colorado River Indian Tribes v. Town of Parker*,
    776 F.2d 846 (9th Cir. 1985)................................................................60

*Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*,
    57 F.3d 56 (1st Cir. 1995)................................................................34

*Cont'l Airlines, Inc. v. United Airlines, Inc.*,
    277 F.3d 499 (4th Cir. 2002) ................................................................5

*Container Corp. of Am. v. Franchise Tax Bd.*,
    463 U.S. 159 (1983)................................................................48

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)................................................................23

*North Carolina, ex rel. Cooper v. Tenn. Valley Auth.*,
    615 F.3d 291 (4th Cir. 2010)................................................................50

*Cordero-Hernández v. Hernández Ballesteros*,
    449 F.3d 240 (1st Cir. 2006) ................................................................9

*Counterman v. Colorado*,
    143 S. Ct. 2106 (2023)................................................................4, 21

*Cruz-Vargas v. R.J. Reynolds Tobacco Co.*,
   348 F.3d 271 (1st Cir. 2003) ................................................................. 57

*Delaware v. BP Am., Inc.*,
   2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024) ......................... 2, 3, 6, 10, 14, 33, 46

*Democratic Nat'l Comm. v. Russian Fed'n*,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019) .................................................... 30

*Dillon v. Combs*,
   895 F.2d 1175 (7th Cir. 1990) ............................................................... 36

*E. Food Servs., Inc. v. Pontifical Cath. Univ. Servs. Ass'n*,
   357 F.3d 1 (1st Cir. 2004) ..................................................................... 40

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*,
   365 U.S. 127 (1961) .................................................................... 2, 22, 23

*Efrón v. Embassy Suites (P.R.), Inc.*,
   223 F.3d 12 (1st Cir. 2000) ................................................................... 33

*Estados Unidos Mexicanos v. DeCoster*,
   229 F.3d 332 (1st Cir. 2000) ................................................................. 36

*Figueroa v. Municipality of San Juan*,
   98 P.R. Dec. 534 (1970) ........................................................................ 16

*In re Fin. Oversight & Mgmt. Bd.*,
   578 F. Supp. 3d 267 (D.P.R. 2021), *aff'd*, 54 F.4th 42 (1st Cir. 2022) ........... 58, 59

*First Nat'l Bank of Boston v. Bellotti*,
   435 U.S. 765 (1978) ............................................................................. 24

*Foisie v. Worcester Polytechnic Inst.*,
   967 F.3d 27 (1st Cir. 2020) ............................................................. 10, 51

*Franchise Tax Bd. Of Cal. v. Hyatt*,
   139 S. Ct. 1485 (2019) .......................................................................... 44

*Fremaint v. Ford Motor Co.*,
   258 F. Supp. 2d 24 (D.P.R. 2003) ......................................................... 55

*Friendly Hotel Boutique Corp. v. ME & A Cap., LLC*,
   2012 WL 4062795 (D.P.R. Sept. 14, 2012) ............................................ 33

*In re German Auto. Mfrs. Antitrust Litig.*,
   392 F. Supp. 3d 1059 (N.D. Cal. 2019) ................................................. 38

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ............................................................................. 20

*Giuliano v. Fulton*,
   399 F.3d 381 (1st Cir. 2005) ................................................................. 30

*Glater v. Eli Lilly & Co.*,
712 F.2d 735 (1st Cir. 1983) ................................................................10

*Gonzalez-Caban v. JR Seafood Inc.*,
48 F.4th 10 (1st Cir. 2022) ...................................................................28

*González-Camacho v. Banco Popular de Puerto Rico*,
318 F. Supp. 3d 461 (D.P.R. 2018) .........................................................9

*González-Camacho v. Banco Popular de Puerto Rico*,
No. 17-1973, 2020 WL 5543934 (1st Cir. July 21, 2020) .......................9

*H.J. Inc. v. N.W. Bell Tel. Co.*,
492 U.S. 229 (1989) ..............................................................................33

*Hawaii v. Standard Oil Co. of California*,
405 U.S. 251 (1972) ..............................................................................35

*Hayduk v. Lanna*,
775 F.2d 441 (1st Cir. 1985) .................................................................32

*Hemi Grp., LLC v. City of New York*,
559 U.S. 1 (2010) ...............................................................4, 5, 24, 25, 26

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ................................................................................48

*Hipólito Rivera Ortiz v. Municipio de Guaynabo*,
141 P.R. Dec. 257 (1996) ......................................................................53

*Hodge v. Parke Davis & Co.*,
833 F.2d 6 (1st Cir. 1987) .....................................................................15

*Holmes v. Sec. Inv'r Prot. Corp.*,
503 U.S. 258 (1992) ...........................................................................5, 27

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*,
515 U.S. 557 (1995) ..............................................................................19

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) .........................................................................41, 42

*Illinois v. City of Milwaukee*,
406 U.S. 91 (1972) ................................................................................43

*Illinois v. Life of Mid-Am. Ins. Co.*,
805 F.2d 763 (7th Cir. 1986) ................................................................36

*Int'l Paper Co. v. Ouellette*,
479 U.S. 481 (1987) .................................................................49, 50, 51

*Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*,
449 F.3d 85 (1st Cir. 2006) ...................................................................54

*J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc.*,
  76 F.3d 1245 (1st Cir. 1996) ...................................................................12

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
  138 S. Ct. 2448 (2018) .............................................................................19

*Johnson v. American Standard, Inc.*,
  43 Cal.4th 56 (Cal. 2008).........................................................................57

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) ..................................................................47

*Kansas v. Colorado*,
  206 U.S. 46 (1907)....................................................................................44

*Kelly v. United States*,
  140 S. Ct. 1565 (2020)..............................................................................31

*Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*,
  329 F.3d 216 (1st Cir. 2003)......................................................................33

*Kerin v. Titeflex Corp.*,
  770 F.3d 978 (1st Cir. 2014) .....................................................................11

*Kotler v. Am. Tobacco Co.*,
  926 F.2d 1217 (1st Cir. 1990) ...................................................................55

*Lares Group, II v. Tobin*,
  47 F. Supp. 2d 223 (D.R.I. 1999)..............................................................12

*Libertad v. Welch*,
  53 F.3d 428 (1st Cir. 1995).................................................................21, 30

*Liu v. Amerco*,
  677 F.3d 489 (1st Cir. 2012) .....................................................................52

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
  332 F. Supp. 3d 885 (S.D.N.Y. 2018).......................................................41

*López-Flores v. Cruz-Santiago*,
  526 F. Supp. 2d 188 (D.P.R. 2007)...........................................................15

*M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc.*,
  31 F. Supp. 2d 226 (D.P.R. 1998)............................................................14

*Maple Flooring Mfrs.' Ass'n v. United States*,
  268 U.S. 563 (1925)..................................................................................38

*Martínez Romero v. Super Asphalt Pavement, Co.*,
  2018 WL 3037397 (P.R. Cir., Apr. 23, 2018) ..........................................58

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)..................................................................................13

*McIntyre v. United States*,
  367 F.3d 38 (1st Cir. 2004).............................................................16

*McMillan v. Rodríguez-Negrón*,
  511 F. Supp. 3d 75 (D.P.R. 2020)..........................................11, 16

*Medicaid and Medicare Advantage Prods. Ass'n of P.R., Inc. v. Emanuelli
  Hernández*,
  58 F.4th 5 (1st Cir. 2023).............................................................49

*Medina-Rodríguez v. $3,072,266.59 in United States Currency*,
  471 F. Supp. 3d 465 (D.P.R. 2020)...............................................31

*Merrick v. Diageo Ams. Supply, Inc.*,
  805 F.3d 685 (6th Cir. 2015) .........................................................50

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
  2015 WL 3763645 (S.D.N.Y. June 16, 2015) ...............................57

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*,
  2014 WL 4290433 (S.D.N.Y. Aug. 29, 2014)................................14

*Montalvo v. González-Amparo*,
  587 F.3d 43 (1st Cir. 2009).............................................................14

*In re MTBE Prods. Liab. Litig.*,
  2013 WL 5230814 (S.D.N.Y. July 17, 2013) .................................58

*Mulder v. Kohl's Dep't Stores, Inc.*,
  865 F.3d 17 (1st Cir. 2017).............................................................53

*In re Multidistrict Vehicle Air Pollution*,
  538 F.2d 231 (9th Cir. 1976) ....................................................5, 41

*In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*,
  481 F.2d 122 (9th Cir. 1973) .........................................................59

*Muñiz Negrón v. Worthington Cylinder Corp.*,
  2021 WL 1199014 (D.P.R. Mar. 30, 2021) ..............................55, 56

*Muñiz-Núñez v. Am. Home Prod. Corp.*,
  582 F. Supp. 459 (D.P.R. 1984).....................................................54

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)........................................................................18

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449 (1958)........................................................................21

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)........................................................................21

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*,
  468 U.S. 85 (1984)..........................................................................38

*Nat'l Rev., Inc. v. Mann*,
140 S. Ct. 344 (2019) ....................................................................................... 19

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
663 F. Supp. 2d 863 (N.D. Cal. 2009) ............................................................. 45

*Native Vill. of Kivalina v. ExxonMobil Corp.*,
696 F.3d 849 (9th Cir. 2012) ........................................................................... 45

*In re Neurontin Marketing and Sales Practices Litig.*,
712 F.3d 21 (1st Cir. 2013) .............................................................................. 28

*Next Step Med. Co., Inc. v. Biomet, Inc.*,
2015 WL 993095 (P.R. Cir. Jan. 30, 2015) ..................................................... 52

*Nightingale v. Nat'l Grid USA Serv. Co.*,
2020 WL 4506167 (D. Mass. Aug. 4, 2020) .................................................... 30

*Ocasio Salgado v. NDA Services Corp.*,
2019 WL 4410340 (P.R. Cir. June 21, 2019) .................................................. 53

*Ocasio-Hernández v. Fortuño-Burset*,
640 F.3d 1 (1st Cir. 2011) ................................................................................. 9

*Ortiz Andújar v. E.L.A.*,
122 P.R. Offic. Trans. 774, 1988 WL 580737 (P.R. 1988) .............................. 59

*P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp.*,
485 U.S. 495 (1988) .......................................................................................... 49

*P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*,
118 F. Supp. 3d 447 (D.P.R. 2015) .................................................................. 17

*P.R. Tel. Co. v. SprintCom, Inc.*,
662 F.3d 74 (1st Cir. 2011) .............................................................................. 58

*Padrón v. People of Puerto Rico ex rel Castro*,
142 F.2d 508 (1st Cir. 1944) ............................................................................ 59

*Pers. Dep't, Inc. v. Pro. Staff Leasing Corp.*,
297 F. App'x 773 (10th Cir. 2008) ................................................................... 23

*Philibotte v. Nisource Corp. Services Co.*,
793 F.3d 159 (1st Cir. 2015) ....................................................................... 12, 16

*Prado Álvarez v. R.J. Reynolds Tobacco Co.*,
313 F. Supp. 2d 61 (D.P.R. 2004), *abrogated on other grounds, Portugués-
Santana v. Rekomdiv Int'l*, 657 F.3d 56 (1st Cir. 2011) ................................. 55

*Puerto Rico Pub. Housing Admin. v. U.S. Dept. of Hous. & Urban Dev.*,
59 F. Supp. 2d 310 (D.P.R. 1999) .................................................................... 59

*Quintana-Ruiz v. Hyundai Motor Corp.*,
303 F.3d 62 (1st Cir. 2002) .............................................................................. 56

*Ramos v. Hyundai Motor Co.*,
    431 F. Supp. 2d 209 (D.P.R. 2006), *aff'd sub nom. Díaz-Ramos v. Hyundai Motor Co.*, 501 F.3d 12 (1st Cir. 2007) .................................................................52

*Recetas Por Menos, Inc. v. Five Dev. Corp.*,
    368 F. Supp. 2d 124 (D.P.R. 2005)................................................................40

*Retractable Tech. Inc.,* v. *Becton Dickinson & Co.*,
    842 F.3d 883 (5th Cir. 2016) ........................................................................39

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)......................................................................................33

*Reynolds v. Sims*,
    377 U.S. 533 (1964)......................................................................................59

*Rhode Island v. Shell Oil Prods. Co.*,
    979 F.3d 50 (1st Cir. 2020)..................................................................3, 13, 15

*Rhode Island v. Shell Oil Products Co., L.L.C.*,
    35 F.4th 44 (1st Cir. 2022)............................................................................46

*Rivera-Diaz v. Humana Ins. of P.R., Inc.*,
    748 F.3d 387 (1st Cir. 2014)...................................................................12, 16

*Rivera-Muñiz v. Horizon Lines Inc.*,
    737 F. Supp. 2d 57 (D.P.R. 2010).................................................................58

*Rodríguez-Suris v. Montesinos*,
    123 F.3d 10 (1st Cir. 1997)...........................................................................15

*Román Rivera v. Puerto Rico Elec. Power Auth.*,
    2012 WL 13170557 (D.P.R. Sept. 25, 2012).................................................34

*Rosenberger v. Rector & Visitors of Univ. of Virginia*,
    515 U.S. 819 (1995)......................................................................................19

*Rubert Armstrong v. E.L.A.*,
    97 P.R. Dec. 588 (1969)................................................................................16

*Rx.com v. Medco Health Solutions, Inc.*,
    322 F. App'x 394 (5th Cir. 2009) ..................................................................12

*Salinas v. United States*,
    522 U.S. 52 (1997)........................................................................................35

*Sánchez v. Pereira-Castillo*,
    590 F.3d 31 (1st Cir. 2009) .............................................................................9

*Santopietro v. Howell*,
    857 F.3d 980 (9th Cir. 2017) ........................................................................22

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
    113 F.3d 405 (3d Cir. 1997).......................................................................5, 41

*Silva v. Am. Airlines, Inc.*,
    960 F. Supp. 528 (D.P.R. 1997) ........................................................................56

*Simonet v. SmithKline Beecham Corp.*,
    506 F. Supp. 2d 77 (D.P.R. 2007) .....................................................................52

*Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*,
    884 F.3d 489 (4th Cir. 2018) .............................................................................26

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) .............................................................................40

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) ...........................................................................................18

*Sosa v. DIRECTV, Inc.*,
    437 F.3d 923 (9th Cir. 2006) .............................................................................23

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ..............................................................................13

*Sterling Merch., Inc. v. Nestle, S.A.*,
    656 F.3d 112 (1st Cir. 2011) .............................................................................40

*Sterling Merchandising, Inc. v. Nestle, S.A.*,
    724 F. Supp. 2d 245 (D.P.R. 2010) ...................................................................40

*Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*,
    990 F.3d 31 (1st Cir. 2021) ...............................................................................27

*Steward Health Care Sys. LLC* v. *Southcoast Health Sys., Inc.*,
    2016 WL 9022444 (D. Mass. Sept. 2, 2016) .....................................................39

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ...........................................................................................43

*Theme Promotions, Inc. v. News Am. Marketing FSI*,
    546 F.3d 991 (9th Cir. 2008) .............................................................................23

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969) ...........................................................................................19

*Torres v. E.I. Dupont De Nemours & Co.*,
    219 F.3d 13 (1st Cir. 2000) ..........................................................................14, 15

*Town of Mamakating, v. Lamm*,
    No. 15-cv-2865, 2015 WL 5311265 (S.D.N.Y. Sept. 11, 2015) ......................30

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ...........................................................................................35

*Tuma v. Kerr Cnty.*,
    336 S.W.3d 277 (Tex. App. 2010) .....................................................................60

*United Mine Workers v. Pennington,*
    381 U.S. 657 (1965) ..................................................................................23

*United States v. Abdelaziz,*
    68 F.4th 1 (1st Cir. 2023) .........................................................................31

*United States v. Álvarez,*
    567 U.S. 709 (2012) ..................................................................................18

*United States v. Binday,*
    804 F.3d 558 (2d Cir. 2015) ................................................................31, 32

*United States v. City of Pittsburg,*
    661 F.2d 783 (9th Cir. 1981) ....................................................................36

*United States v. Kelerchian,*
    937 F.3d 895 (7th Cir. 2019) ....................................................................31

*United States v. Playboy Entm't Grp., Inc.,*
    529 U.S. 803 (2000) ..................................................................................18

*United States v. Rodríguez-Torres,*
    939 F.3d 16 (1st Cir. 2019) ..........................................................28, 29, 35

*United States v. Velázquez-Fontánez,*
    6 F.4th 206 (1st Cir. 2021) .......................................................................21

*Vázquez-Filippetti v. Banco Popular de Puerto Rico,*
    504 F.3d 43 (1st Cir. 2007) .......................................................................54

*Velázquez v. Municipio Autónomo de Carolina,*
    2014 WL 5343480 (P.R. Cir. Sept. 23, 2014) ..........................................17

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ..................................................................23

*White v. R.M. Packer Co.,*
    635 F.3d 571 (1st Cir. 2011) .....................................................................37

*Woods v. Wells Fargo Bank, N.A.,*
    733 F.3d 349 (1st Cir. 2013) .....................................................................32

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.,*
    401 U.S. 321 (1971) ..................................................................................11

*Zschernig v. Miller,*
    389 U.S. 429 (1968) ..................................................................................48

## Constitutional Provisions

U.S. Const. Art. VI, cl. 2 ..................................................................................43

U.S. Const. amend. I ............................................................................................17

**STATUTES**

15 U.S.C. § 15a ..................................................................................................41

15 U.S.C. § 15b ..................................................................................................11

15 U.S.C. § 15c ..................................................................................................41

15 U.S.C. § 45 ..............................................................................................31, 52

15 U.S.C. § 55 ....................................................................................................52

18 U.S.C. § 1341 ................................................................................................31

18 U.S.C. § 1343 ................................................................................................31

18 U.S.C. § 1961 ................................................................................................31

18 U.S.C. § 1962 ..........................................................................17, 33, 34, 35

18 U.S.C. § 1964 ........................................................................................17, 36

42 U.S.C. § 7401 ................................................................................................47

42 U.S.C. § 7602 ................................................................................................49

Article 1815, 2020 Civil Code ........................................................................52

Article 1.005 of the Municipal Code ..............................................................59

Article 1.006 of the Municipal Code ..............................................................59

Article 1.008 of the Municipal Code ..............................................................59

P.R. Laws Ann. tit. 21, § 7011 ........................................................................59

P.R. Laws Ann. tit. 21, § 7013 ........................................................................59

P.R. Laws Ann. tit. 31, § 341e ........................................................................53

P.R. Laws Ann. tit. 31 § 5141 ........................................................................54

P.R. Laws Ann. tit. 31, § 5241 ........................................................................14

P.R. Laws Ann. tit. 31, § 5298 ........................................................................14

P.R. Laws Ann. tit. 31, § 11720 ......................................................................52

P.R. Laws Ann. tit. 32, § 2761 ........................................................................58

Pub. L. No. 117-169, 136 Stat. 1818 (2022) ..................................................47

RULES

Fed. R. Civ. P. 8(a)(2) ...........................................................................................9

Fed. R. Civ. P. 9(b) ........................................................................9, 10, 32, 51, 53

Fed. R. Civ. P. 11 ...................................................................................................1

Fed. R. Civ. P. 12 .......................................................................................1, 3, 26, 33

Fed. R. Evid. 201 ..................................................................................................13

REGULATIONS

16 C.F.R. Part 250 .................................................................................................31

16 C.F.R. Part 260 ............................................................................................31, 52

16 C.F.R. § 260.1 ...................................................................................................52

P.R. Dep't of Consumer Aff., Regul. 9158 (Feb. 6, 2020) ...............................52, 53

TREATISES

3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 9:63 (6th ed.) .............................10

W. Prosser, *Law of Torts*, § 41 (4th Ed. 1971) .................................................54

5A Wright & Miller, *Federal Practice & Procedure* § 1297 (4th ed. Apr. 2023 update)............32

OTHER AUTHORITIES

Andrew C. Revkin, *A Deep Dive into What Exxon Knew About Global Warming and When (1978) It Knew It*, N.Y. Times (Sept. 16, 2015) ......................................13

Angela Fritz, *Harvey. Irma. Maria. Why is This Hurricane Season So Bad?*, Wash. Post (Sep. 23, 2017) ...................................................................................16

Felicity Barringer, *Flooded Village Files Suit, Citing Corporate Link to Climate Change*, N.Y. Times (Feb. 27, 2008) ..................................................................13

Kathy Mulvey & Seth Shulman, *The Climate Deception Dossiers: Internal Fossil Fuel Industry Memos Reveal Decades of Corporate Disinformation*, Union of Concerned Scientists (July 2015).......................................................................13

Lauren Lluveras, *Puerto Rico's Bankruptcy Will Make Hurricane Recovery Brutal - Here's Why*, The Conversation (Sep. 26, 2017) ..............................................28

Puerto Rico Climate Change Council, *Puerto Rico's State of the Climate* (2013) .......................13

Umair Irfan, *One of the Clearest Signs of Climate Change in Hurricanes Maria, Irma, and Harvey Was the Rain*, Vox (Sep. 29, 2017) ..........................................16

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Exxon Mobil Corp., Chevron Corp., ConocoPhillips, Motiva Enterprises LLC, and Occidental Petroleum Corporation[1] (together, "Defendants")[2] respectfully move to dismiss the Complaint.[3]

## INTRODUCTION

This is a copycat lawsuit. On November 22, 2022, sixteen other Puerto Rico municipalities represented by other counsel filed a putative class action alleging the same claims Plaintiff now asserts. *See* Complaint, ECF No. 1, ("Bayamón Complaint") *Municipality of Bayamón, v. Exxon Mobil Corporation*, No. 3:22-cv-01550 (D.P.R. Nov. 22, 2022). Plaintiff's Complaint is largely a word-for-word copy of the Bayamón Complaint,[4] and fails for all of the same reasons—and more. *See* Defendants' Joint Motion to Dismiss for Failure to State a Claim, ECF No. 185, *Municipality of Bayamón, v. Exxon Mobil Corporation*, No. 3:22-cv-01550 (D.P.R. Nov. 22, 2022).

Plaintiff claims that harms from individual hurricanes can be causally attributed to the decades-old alleged statements and conduct of a handful of publicly-traded companies. But, as the Second Circuit found in affirming dismissal of a similar lawsuit, "[g]lobal warming is one of the greatest

---

[1] Occidental Petroleum Corporation is incorrectly named as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp."
[2] Moving Defendants understand that the other named defendants have not yet been served with the action and thus are not parties to this Motion.
[3] Plaintiff's allegations are accepted as true solely for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[4] The complaints include identical typos, *e.g.*, *compare* Compl. ¶ 11 (alleging all injuries were caused "as a result of the Defendant's [singular] acts and omissions") *with* Bayamón Compl. ¶ 11 (same); *compare* Compl. ¶ 373 ("Exxon continued [to] publish") *with* Bayamón Compl. ¶ 297 (same), allegations that are irrelevant to non-class action complaints, *e.g.*, Compl. ¶ 26 (noting San Juan's experience in the 2017 Atlantic Hurricane Season as "representative of the remaining 77 Municipalities in the Commonwealth of Puerto Rico"); there are identical cross-references that are not updated for this Complaint, *e.g.*, *id.* ¶ 163; repeated references to Plaintiff as "Municipalities" (plural), *e.g.*, *id.* ¶¶ 65, 137, 147, 153, 373, 555, 569, 586, 618; references to "Exhibit[s]" "attached hereto" and a "RICO Case Statement" that this Plaintiff never filed or served, *id.* ¶¶ 177-78, 420, 696-97; and apparent artifacts of a PDF-to-Text transcription that was not thoroughly reviewed, such as footnote errors, *e.g., id.* ¶¶ 185-86 & nn. 177-79 (misnumbered footnotes); *id.* p. 57, n.186 (footnote call omitted from text), and odd textual errors, *e.g., id.* ¶¶ 412 ("Shell al o formally withdrew"), 702 ("would inevitably re ult"), 776 ("fuel product were u ed"), *id.* at VII.D ("Fourth Cause of Actio11"). Notably, there are approximately 325 citations to webpages that were "last visited" on November 14 or 15, 2022— more than one year before this case was filed, and shortly before the putative class action was filed. Given Plaintiff's apparent failure to investigate its allegations, Defendants reserve their rights to move for sanctions. *See* Fed. R. Civ. P. 11(c)(2). Indeed, Plaintiff's failure is all the more egregious because Plaintiff filed this copycat complaint *after* Defendants filed their motions to dismiss.

challenges facing humanity today" in part because "every single person who uses gas and electricity—whether in travelling by bus, cab, Uber, or jitney, or in receiving home deliveries via FedEx, Amazon, or UPS—contributes to" it. *City of New York v. Chevron Corp.*, 993 F.3d 81, 86 (2d Cir. 2021). Plaintiff—a municipality and itself a long-time consumer of fossil fuels—nonetheless seeks to impose liability on Defendants for the damage that Hurricanes Irma and Maria caused Puerto Rico in September 2017. Plaintiff theorizes that Defendants' alleged statements about fossil fuels and climate change, and their asserted participation in lobbying and trade groups, led to the regulatory acts and fossil fuel emissions by governments and consumers across decades and around the world—most of which have nothing to do with Defendants. This supposedly resulted in incremental increases in production and purchases of fossil fuels worldwide, Plaintiff claims, caused or exacerbated global climate change, and purportedly led to the 2017 hurricanes.

Plaintiff thus does not seek to hold these select Defendants liable for their own carbon emissions (either in Puerto Rico or elsewhere), or even the emissions of end-users who purchased Defendants' products in Puerto Rico, but for the alleged worldwide impacts of global emissions purportedly spurred by Defendants' speech and conduct—and the conduct of countless other entities and individuals not party to this litigation. No federal court has ever found such a far-fetched theory to state a claim for relief. This Court should not be the first.

**Plaintiff's claims founder on fundamental issues of constitutional law** regarding the ability of States and municipalities to regulate interstate—and indeed international—air pollution and speech. *See*, *e.g.*, *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*"); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961); *Delaware v. BP Am., Inc.*, 2024 WL 98888, at *9 (Del. Super. Ct. Jan. 9, 2024) (holding that claims "seeking damages for injuries resulting from out-of-state or global greenhouse emissions" are "beyond the

limits of [state] common law"). **But this Court need not reach these questions, because Plaintiff's claims are time-barred.** The allegations make plain that Plaintiff knew in 2017—when the hurricanes hit—that it had been damaged, and it cannot plausibly claim it only recently became aware of an alleged link between fossil fuels, climate change, and hurricanes. By 2017, public materials—some of which Plaintiff cites—already alleged such a link. Indeed, the First Circuit noted that "[i]n 2018, faced with . . . more frequent and severe . . . hurricanes . . . , Rhode Island sued . . . nearly every oil and gas company under the sun." *Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 53-54 (1st Cir. 2020) (affirming remand). Plaintiff has no justification for sitting on its claims for five years and cannot plead around this public record. Its federal claims are barred by a four-year statute of limitations, and its putative Puerto Rico law claims by one-year limitations periods. As a Delaware court recently held in dismissing similar climate change claims: The "general public had knowledge of or had access to information about the disputes, regarding the existence of climate change and effects, decades prior to the expiration" of the limitations period. *Delaware*, 2024 WL 98888, at *19. And by copying verbatim the putative class's complaint, the Complaint expressly alleges the untimeliness of its claims—citing that approximately 325 websites forming the basis of Plaintiff's allegations were "last visited" *in November 2022*, more than a year before filing the Complaint. That alone renders Plaintiff's Puerto Rico Law Claims untimely.

**Plaintiff's claims also fail on the merits, just as similar claims have failed elsewhere.** *See City of New York*, 993 F.3d at 86 (affirming Rule 12(b)(6) dismissal of substantially similar complaint). Plaintiff cannot plausibly impose liability for the 2017 hurricanes on Defendants' lawful sale of vital fuels for decades, much less for Defendants' First Amendment protected speech—or *purported* speech, since Plaintiff improperly tries to tag the disparate Defendants named here with statements made by entities for which Defendants are not responsible.

**Plaintiff's civil Racketeer Influenced and Corrupt Organizations Act ("RICO") and antitrust claims are meritless.**  Like Plaintiff's other claims, Plaintiff premises its RICO claims not only on Defendants' lawful worldwide production of oil and gas, but on alleged speech that is constitutionally protected—such as core political speech aimed at "preventing U.S. adoption of the Kyoto Protocol."  Compl. ¶ 343.  The importance of climate change as a public policy issue means that Defendants' speech is entitled to substantial constitutional protection.  The First Amendment protects not only the heartland of political speech, but even "the *prospect* of chilling fully protected expression."  *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) (emphasis added); *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2320 (2023) (reaffirming constitutional protections for speech despite alleged profit motive).  Because the only speech Plaintiff identifies as supposedly having caused its harm (*i.e.*, 2017 hurricane injuries) is political lobbying and publicity campaigns allegedly aimed at influencing the views of lawmakers and the public, Plaintiff's claims violate the First Amendment and the *Noerr-Pennington* doctrine.

**In addition, the civil RICO and antitrust allegations fail to plausibly allege multiple required elements.**  For example, Plaintiff must plead facts showing a *direct* causal relation between the alleged acts of racketeering and the claimed injuries.  *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).  Failing to do so, Plaintiff instead alleges an attenuated, speculative chain of indirect and intervening causes consisting of *at least six* alleged steps, including that: (1) Defendants promoted climate change denial; (2) that promotion resulted in a marginal increase in the sales of Defendants' products and a corresponding increase in the use of those products by Plaintiff, its residents, and billions of other actors worldwide; (3) that incremental purchase and use resulted in increased petroleum production and emissions of greenhouse gases; (4) those incremental greenhouse gas emissions mixed with other greenhouse gases emitted throughout the world to

exacerbate climate change to some unspecified degree; (5) global climate change contributed to the hurricanes in Puerto Rico in 2017; and (6) those hurricanes damaged Plaintiff. The Supreme Court repeatedly has rejected far less attenuated causal chains on motions to dismiss. *See id.*; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-59 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992).

**Plaintiff's antitrust claim fails for additional reasons as well.** Plaintiff has not pleaded an anticompetitive agreement, as required under Section 1 of the Sherman Act. In addition to improperly seeking to burden constitutionally protected speech, Plaintiff pleads no facts supporting its conclusory assertion that Defendants agreed to "maintain their energy monopoly, fix prices, and increase obstacles for competitive entry into the [energy] market." Compl. ¶ 732. That alone defeats Plaintiff's antitrust claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007) ("absent some factual context suggesting agreement, as distinct from identical independent action," a complaint alleging a Section 1 violation "should be dismissed"). Nor has Plaintiff pleaded any adverse effect on competition; on the contrary, Plaintiff claims that Defendants' alleged conduct "*increased production*" and "*lower[ed] prices*" for consumers. Compl. ¶¶ 7(d), 732 (emphases added). That also requires dismissal because an alleged antitrust conspiracy must involve a "'competition-*reducing* aspect or effect of the defendant's behavior,' that is, from 'acts that *reduce output* or *raise prices* to consumers.'" *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 516 (4th Cir. 2002) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Finally, the antitrust laws cannot be used to recover for alleged climate-related harms. *See, e.g.*, *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236 (9th Cir. 1976) (holding antitrust laws cannot be used to remedy environmental rather than anticompetitive economic injuries); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 n.9 (3d Cir. 1997) (same).

**Plaintiff's putative Puerto Rico law claims suffer from additional defects. In particular, under the United States Constitution, transboundary pollution may be governed only by federal law,** so Plaintiff's purported Puerto Rico law claims must fail. Our federal constitutional structure prohibits Plaintiff from invoking Puerto Rico tort law to address global greenhouse gas emissions and climate change. As the Second Circuit made clear in *City of New York*, however artfully pleaded, these issues are inherently interstate and international in nature. And in a materially indistinguishable suit, the Delaware Superior Court held that claims—like Plaintiff's here—ostensibly predicated on allegedly misleading marketing but "seeking damages for injuries resulting from out-of-state or global greenhouse emissions and interstate pollution" are "beyond the limits of [state] common law." *Delaware*, 2024 WL 98888, at *9. Plaintiff's Complaint here is replete with the same types of allegations regarding transboundary pollution and Defendants' worldwide speech and other protected activities that *City of New York* and *Delaware* found insufficient. Under our federal constitutional system, only federal law—not state or commonwealth law—can govern such interstate and international issues associated with climate change. And even if our federal constitutional structure did not preclude Plaintiff's Puerto Rico law claims, the Clean Air Act would preempt them. Finally, Plaintiff fails to properly plead the elements of any Puerto Rico law claim, which it lacks the capacity to bring on behalf of its residents in any event.

Accordingly, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

Plaintiff is the largest Puerto Rico municipality. It brings this action to recover for losses resulting from the September 2017 hurricanes that struck Puerto Rico. According to the Complaint, Defendants' products played a "primary role ... in causing the losses, deaths and destruction of property resulting from the catastrophic storms of September 2017 and their aftermath." Compl.

¶ 1.  Defendants allegedly had an "early awareness" of the danger of fossil fuels, but "misrepresented the dangers" and "embarked on a corporate *worldwide* strategy to hide that information" in order "to maintain their economic monopoly of *the world's* energy supply."  *Id.* ¶¶ 2, 3 (emphasis added).  Plaintiff contends that it "relied upon the Defendants' misrepresentations," *id.* ¶ 3, and only "just recently" learned of the dangers of fossil fuels, *id.* ¶ 18, which it supposedly "did not know and could not have known through the exercise of reasonable diligence," *id.* ¶ 21.

Plaintiff's allegation that Defendants engaged in a "worldwide" strategy of deception is premised on alleged efforts by Defendants to petition governments for favorable regulatory treatment.  For example, the Complaint alleges that "Defendants publicly fought against climate science" and "championed anti-regulation . . . propaganda" to protect their profits from the impact of regulation.  *Id.* ¶ 34, 35.  According to the Complaint, by the early 1980s, Defendants had a plan to "deter regulation of the carbon industry."  *Id.* ¶ 321.  And "Defendants mounted a campaign again t [sic] regulation of their business practices."  *Id.* ¶ 531; *see also id.* ¶ 573 ("Defendants embarked on a decades-long marketing campaign designed to deceive consumers[,] cover-up the climate change implications of their operations, maximize continued dependence on their products and undermine national and international efforts to reign in greenhouse gas emissions.").

In short, while Plaintiff purports to disclaim liability for public advocacy and lobbying, *id.* ¶ 10, the Complaint clearly targets such speech.  In particular, Plaintiff alleges Defendants "funded advertising campaigns and distributed material to misinform the public about climate change, with the specific purpose of preventing U.S. adoption of the Kyoto Protocol," *id.* ¶ 343, and that "[t]he Global Climate Coalition (GCC) was formed in 1989 as a public relations and international lobbyist group of businesses that opposed action to reduce greenhouse gas emissions," *id.* ¶ 342.

Plaintiff's claims also are not limited to the marketing, sale, or combustion of fossil-fuel

products *in Puerto Rico*, much less *by Defendants* in Puerto Rico. The Complaint nowhere alleges a causal connection between the September 2017 hurricanes and *anyone's* Puerto Rico-specific consumption of fossil fuel products. Nor does it allege any causal connection between any injuries and what could be at most a marginal increase in the fossil fuel products sold in Puerto Rico because of any allegedly misleading statements directed to Puerto Rico. The Complaint contains no allegations at all regarding the volume of fossil fuels used or sold in Puerto Rico.

Plaintiff instead seeks to impose liability on Defendants for the global production, marketing, sale, and combustion of their products, after being mixed with emissions for which they have no alleged involvement. Plaintiff alleges that Defendants are together "directly responsible for at least 40.01% of all *global* industrial GHG emissions from 1965-2017." *Id.* ¶ 37 (emphasis added); *see also, e.g.*, *id.* ¶ 35 (alleging "Defendants are responsible for a substantial portion of the total worldwide greenhouse gases emitted between 1965 to present date"), ¶ 64 (alleging Defendants' products "are sold worldwide"), ¶ 334 (alleging Defendants acted "contrary to their own internal scientific conclusions, in order to ensure unabated emissions and the sale of their products to consumers worldwide and in Puerto Rico"), ¶ 606 ("the Defendant companies controlled nearly 100% of worldwide energy production").[5] In fact, Plaintiff cites more than 100 times to nationwide and international emissions and $CO_2$ levels. *See, e.g.*, Compl. ¶¶ 36 & n.14, 37, 38 n.16, 42, 67, 74-79, 89-91, 99-103, 111, 121, 129-30, 135-36, 141, 146, 154-57, 161-62, 165, 170-71, 185 & n.176, 233-34, 282, 285-87, 293-95, 297-14, 315-20, 333-34, 342, 350, 361, 366, 374-75, 377, 419, 571, 575-76, 585, 588-90, 592-96, 615, 619, 625, 722, 765, 768, 776. It is these "global" "collective emissions" from the "industrial" and "end use" of Defendants' products that purportedly "were a

---

[5] The Complaint improperly conflates Defendants' activities with the activities of their separately organized predecessors, subsidiaries, and affiliates, as well as alleged "joint venture" partners and end users of fossil fuel products. Defendants reserve all rights to challenge Plaintiff's improper attempt to hold them liable for the actions of others.

substantial factor in the increase in intensity of the 2017 Atlantic Hurricane Season." *Id.* ¶ 575.

## LEGAL STANDARD

A complaint must "contain enough factual material to 'raise a right to relief above the speculative level.'" *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 555); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "[M]ere labels and conclusions" do not suffice. *Ocasio-Hernández*, 640 F.3d at 12. A complaint must also "allege sufficient facts that comply with the basic elements of the cause of action." *González-Camacho v. Banco Popular de Puerto Rico*, 318 F. Supp. 3d 461, 471 (D.P.R. 2018), *aff'd in part*, No. 17-1973, 2020 WL 5543934 (1st Cir. July 21, 2020); *see also Sánchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). Plaintiff may not "merely parrot the elements of the cause of action." *Ocasio-Hernández*, 640 F.3d at 12.

The Court must ignore bare legal conclusions and use its "judicial experience and common sense" to determine if "plaintiff has stated a claim upon which relief may be granted." *González-Camacho*, 318 F. Supp. 3d at 471. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). And inferences "must be at least as plausible as any 'obvious alternative explanation.'" *González-Camacho*, 318 F. Supp. 3d at 471 (quoting *Iqbal*, 556 U.S. at 679-680).

Allegations sounding in fraud must "state with particularity the circumstances constituting" the fraud, Fed. R. Civ. P. 9(b), including "the time, place and content of the alleged [actions] perpetrating that fraud." *Caro-Bonet v. Lotus Mgmt.*, LLC, 195 F. Supp. 3d 428, 433 (D.P.R. 2016); *see also Cordero-Hernández v. Hernández Ballesteros*, 449 F.3d 240, 244 (1st Cir. 2006). As discussed below, all of Plaintiff's claims are governed by this more exacting standard.

"Rule 9(b)'s heightened pleading requirements apply not only to claims of fraud simpliciter but also to related claims as long as the central allegations of those claims 'effectively charge fraud.'" *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 49 (1st Cir. 2020) (cleaned up).

## ARGUMENT

### I.    All of Plaintiff's Claims Are Time Barred

Plaintiff sued Defendants for their alleged role "in causing the losses . . . resulting from the catastrophic storms of September 2017 and their aftermath." Compl. ¶ 1.[6]  Plaintiff knew of its alleged injuries when they occurred in 2017, and—as another court recently found in a similar climate change lawsuit—"the general public had knowledge of or had access to information . . . regarding the existence of climate change and effects" well before then.  *See Delaware*, 2024 WL 98888, at *19.  Yet Plaintiff waited more than six years after allegedly suffering losses from the September 2017 hurricanes before filing suit.[7]  That unjustified delay bars all its claims.

### A.    Plaintiff's RICO and Antitrust Claims Are Untimely.  (Claims 4, 5, 6, 7, 8)

Plaintiff's RICO and antitrust claims are each subject to a four-year statute of limitations.  A civil RICO claim must be brought within four years of "when a plaintiff knew or should have known of his injury."  *Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 625 (1st Cir. 2019)

---

[6] S*ee also* Compl. ¶ 11 (alleging that Plaintiff's claims are premised on "the devastating storms of September 2017, and the aftermath of those storms which occurred as a result of the Defendant's [sic] acts and omissions"); *id.* ¶ 38 (alleging that Defendants' conduct was "a substantial factor contributing to the Municipality's damages in September 2017 and thereafter"); *id.* ¶ 40 (alleging, absent Defendants' conduct, "the Municipality would not have suffered the intensity of the 2017 storm and subsequent losses and damages"); *id.* ¶ 41 (alleging that Defendants' conduct led to an accelerated pace of ferocious storms "culminating in September 2017").  Indeed, Plaintiff specifies that it does not "claim damages for future storms or catastrophes," but rather only for "the losses that [it] suffered beginning with the hurricane in September 2017 and all of the ensuing impacts.  *Id.* ¶ 10.

[7] Plaintiff's claims do not relate back to the filing of the putative class action for Puerto Rico municipalities for statute of limitations purposes.  Under the "forfeiture rule," "putative class members who commence individual actions before the district court rules on class certification" do not get the benefit of tolling because they "affirmative[ly] demonstrate[d] [their] choice not to rely on the class action mechanism." 3 Newberg and Rubenstein on Class Actions § 9:63 (6th ed.) (quotation marks omitted); *Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) (approving the forfeiture rule because "[t]he policies behind [Federal] Rule [of Civil Procedure] 23 and [*American Pipe & Cons. Co. v. Utah*, 414 U.S. 538 (1974)] would not be served, and in fact would be disserved, by guaranteeing a separate suit at the same time that a class action is ongoing.").

(internal quotation marks omitted); *see also Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987) (establishing four-year limitation period).  As the First Circuit has explained, "[t]his means discovery of *the injury*, not discovery of the other elements of a claim, is what starts the clock" on a RICO claim.  *Álvarez-Maurás*, 919 F.3d at 626 (emphasis added). Similarly, a civil suit under the federal antitrust laws must also be brought within four years of "when a defendant commits an act that injures a plaintiff's business."  *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 338 (1971); *see* 15 U.S.C. § 15b.

Plaintiff alleges RICO and antitrust injuries as of September 2017, purportedly arising from Hurricanes Irma and Maria.  Compl. ¶¶ 1, 10, 11, 702, 735.  The statute of limitations therefore expired in September 2021, more than two years before Plaintiff filed suit.

### B.  No Exception to the Statute of Limitations Applies.

Plaintiff tries to avoid the statute of limitations in four ways, none of which succeeds.  First, Plaintiff claims its "losses are continuous, wrongful, and ongoing."  Compl. ¶ 18.  But ongoing losses from a completed wrong do not extend the limitations period.  *See McMillan v. Rodríguez-Negrón*, 511 F. Supp. 3d 75, 83 (D.P.R. 2020).  Thus, even accepting *arguendo* Plaintiff's allegation that Defendants committed wrongful acts that caused the September 2017 hurricanes, those alleged acts were completed, and the statute of limitations began to run by 2017.  Any ongoing losses are irrelevant.[8]

Second, Plaintiff asserts that Defendants' conduct "has just recently come to the[ir] knowledge."  Compl. ¶ 18.  Even if Plaintiff's assertions were supported by the alleged facts—and they are not—under the RICO Act and the antitrust laws, "'the meter begins to tick when the plaintiff discovers the *injury*, even if the plaintiff is unaware of the precise acts of racketeering that

---

[8] To the extent Plaintiff seeks relief for future injuries—for which it alleges only an increased risk, *see* Compl. ¶¶ 221, 223, 258—it lacks standing to do so, *see Kerin* v. *Titeflex Corp.*, 770 F.3d 978, 983 (1st Cir. 2014).

caused the injury.'" *Álvarez-Maurás*, 919 F.3d at 626 (emphasis added) (quoting *Lares Group, II v. Tobin,* 47 F. Supp. 2d 223, 230 (D.R.I. 1999); *see Rx.com v. Medco Health Solutions, Inc.*, 322 F. App'x 394, 397 (5th Cir. 2009) (applying same standard in Sherman Act case). Regardless of when Plaintiff learned of Defendants' alleged acts, Plaintiff's allegations establish that it knew—more than five years before filing suit in November 2023—that it was injured because of the hurricanes in September 2017. Compl. ¶ 10. Accordingly, the statute of limitations began to run in September 2017 and expired in September 2021.

Third, Plaintiff contends that the limitations period should be equitably tolled because, it alleges, Defendants fraudulently concealed wrongful acts. Compl. ¶ 21. Equitable tolling "is to be employed sparingly and should be reserved for exceptional cases," *Rivera-Diaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 390 (1st Cir. 2014), and this is no such case. Plaintiff has not "plead[ed] with particularity the facts giving rise to the fraudulent concealment claim." *J. Geils Band Employee Ben. Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1255 (1st Cir. 1996). The Complaint lacks any particularized allegations of concealment by Defendants, and certainly lacks any such allegations of concealment since the hurricanes struck in 2017. Plaintiff unquestionably had knowledge of its alleged injuries—the damages from the September 2017 storms were immediately evident—rendering the equitable tolling doctrine inapplicable.

Nor has Plaintiff alleged facts showing that it "exercise[d] reasonable diligence" to discover its claims, *Philibotte v. Nisource Corp. Services Co.*, 793 F.3d 159, 164 (1st Cir. 2015), or that it failed to meet its filing deadline due to "circumstance beyond [its] control," *Rivera-Diaz*, 748 F.3d at 390–91. Plaintiff knew of its alleged injuries when the storms ended in 2017 and other municipalities filed complaints making similar allegations even before those storms made landfall. *See, e.g.*, Complaint, *Cnty. of San Mateo v. Chevron Corp.*, ECF No. 1-2, No. 17-cv-4929 (N.D. Cal.

Aug. 24, 2017).  Major media outlets also aired similar allegations well before then.  *See, e.g.*, Andrew C. Revkin, *A Deep Dive into What Exxon Knew About Global Warming and When (1978) It Knew It*, N.Y. Times (Sept. 16, 2015), https://nyti.ms/3I0WmRz; Felicity Barringer, *Flooded Village Files Suit, Citing Corporate Link to Climate Change*, N.Y. Times (Feb. 27, 2008), https://bit.ly/3KzfSXv.[9]

Indeed, Plaintiff itself cites publicly available sources from 2015 (and even earlier) that would have put it on notice of the alleged misconduct.  *See, e.g.*, Compl. ¶ 353 n.363 (citing Kathy Mulvey & Seth Shulman, *The Climate Deception Dossiers: Internal Fossil Fuel Industry Memos Reveal Decades of Corporate Disinformation*, Union of Concerned Scientists (July 2015), bit.ly/3SiffnX and noting "last visited Nov. 15, 2022"); *id.* ¶ 244 n.244 (citing Puerto Rico Climate Change Council, *Puerto Rico's State of the Climate* (2013) (noting it was "last visited Nov. 15, 2022" and noting, at 32 & 68, increase in global temperatures "very likely due to increase in anthropogenic greenhouse gas concentrations," with "[w]armer sea surface temperatures around . . . Puerto Rico likely to increase the intensity of . . . hurricanes").  And numerous lawsuits filed before Plaintiff's Complaint, including cases that proceeded to the U.S. Supreme Court, alleged that fossil fuels were causing climate change and related weather events, including hurricanes. *See, e.g.*, *AEP*, 564 U.S. at 417 (noting EPA's determination that the "dangers of greenhouse gas emissions" from fossil fuels include "more frequent and intense hurricanes"); *Massachusetts v. EPA*, 549 U.S. 497, 522 (2007) (noting that fossil fuels and the related release of carbon dioxide into the atmosphere "may contribute to the ferocity of hurricanes"); *see also Rhode Island*, 979 F.3d at 53-54 (noting 2018 filing of climate change lawsuit by State of Rhode Island alleging

---

[9] The Court may take judicial notice of news articles to show that information was publicly disseminated.  Fed. R. Evid. 201; *see, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  Defendants do not ask the Court to take judicial notice of newspaper articles for any truth of the matters asserted therein.

increased hurricanes).  Indeed, a Delaware court recently dismissed similar climate change claims as time barred, holding that the "general public had knowledge of or had access to information about the disputes, regarding the existence of climate change and effects, decades prior to the expiration" of the limitations period.  *Delaware*, 2024 WL 98888, at *19.

Fourth, Plaintiff asserts that statutes of limitation cannot run against it as a municipality because it seeks "recovery of the public properties of the Municipality of San Juan."  Compl. ¶ 19. To the extent this is an attempt to invoke the doctrine of *nullum tempus occurrit regi* (*i.e.*, time does not run against the sovereign), that doctrine is not recognized in Puerto Rico.  *Ayala Rosa v. ATPR*, 116 P.R. Offic. Trans. 414 (P.R. 1985); *see also In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 1:00-1898, 2014 WL 4290433, at *5 (S.D.N.Y. Aug. 29, 2014) (noting that *Ayala* "explained that the common law doctrine of *nullum tempus*—which exempts the government from prescription, or limitations periods—does not apply in Puerto Rico").[10]

### C.   The Puerto Rico Law Claims Are Untimely.  (Claims 1, 2, 3, 9, 10, 11, 12, 13, 14)

Each of Plaintiff's Puerto Rico law claims is barred by a one-year statute of limitations.[11]  P.R. Laws Ann. tit. 31, § 5298; *see Cintrón-Luna v. Román-Bultron*, 668 F. Supp. 315, 319 (D.P.R. 2009) (fraud); *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st Cir. 2000) (design defect); *M.R. (Vega Alta), Inc. v. Caribe Gen. Elec. Prods., Inc.*, 31 F. Supp. 2d 226, 240 (D.P.R. 1998) (nuisance).  This period begins to run "from the time the aggrieved person had knowledge" of the harm—*i.e.*, when the victim "has (1) 'notice of the injury' and (2) 'notice of the person who

---

[10] The only potential exceptions involve inapplicable circumstances, such as when a private party is seeking to acquire certain types of government property by adverse possession, *see In re MTBE Prod. Liab. Litig.*, 2014 WL 4290433, at *5, or in certain types of cases brought by the Commonwealth of Puerto Rico, *see* P.R. Laws Ann. tit. 31, § 5241 (statute of limitations does not operate on certain "claims of the Commonwealth of Puerto Rico").

[11] Because Plaintiff does not suggest it is invoking the law of any state or territory other than Puerto Rico, for purposes of this motion, Defendants assume Puerto Rico law applies.  Puerto Rico's statutes of limitations govern when federal courts "apply[] Puerto Rico law to substantive matters."  *Montalvo v. González-Amparo*, 587 F.3d 43, 46 (1st Cir. 2009). Accordingly, for purposes of this motion, Defendants assume that Puerto Rico's statute of limitations applies.

caused it.'" *Torres*, 219 F.3d at 18 (quoting *Colón Prieto v. Géigel*, 15 P.R. Offic. Trans. 313, 330 (P.R. 1984)). Notice "does not require actual knowledge; it is enough that the would-be plaintiff had notice that would have led a reasonable person to investigate and so uncover the needed information." *López-Flores v. Cruz-Santiago*, 526 F. Supp. 2d 188, 190 (D.P.R. 2007). "Once a plaintiff is made aware of facts sufficient to put her on notice that she has a potential tort claim, she must pursue that claim with reasonable diligence." *Rodríguez-Suris v. Montesinos*, 123 F.3d 10, 16 (1st Cir. 1997).

The First Circuit has held that "[i]f a plaintiff brings an action more than a year after the injury took place, she bears the burden of proving that she lacked the requisite 'knowledge' at the relevant times." *Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir. 1987) (Breyer, J.). While *Hodge* addressed the summary judgment context, that same reasoning applies with equal force on a motion to dismiss. *See Baretto Peat, Inc. v. Luis Ayala Colón Sucrs. Inc.*, 896 F.2d 656, 658 (1st Cir. 1990) (applying *Hodge* on motion to dismiss); *Bocanegra-Acevedo v. Toyota Motor Sales USA, Inc.*, 2009 WL 1098084, at *2 (D.P.R. Apr. 23, 2009) (same). Plaintiff does not plausibly allege it lacked that "requisite knowledge," *Hodge*, 833 F.3d at 7, so even "reading [Plaintiff's] pleadings in the most favorable light possible, the only logical conclusion that can be drawn is that" Plaintiff knew of its alleged injuries when they occurred in September 2017, *Aldahonda-Rivera v. Parke Davis & Co.*, 882 F.2d 590, 593 (1st Cir. 1989). And it indisputably knew, or should have known, of any alleged link between Defendants' alleged conduct and climate change well before that. *See, e.g.*, *Rhode Island*, 979 F.3d at 53–54.

Plaintiff's argument boils down to an implausible proposition: It had no reason to investigate the supposed causes of the September 2017 storms until December 2022 (one year prior to filing the Complaint). *See* Compl. ¶¶ 18, 21–22. But there was a widely publicized putative class action

of Puerto Rico municipalities advancing these same claims and making the same allegations in November 2022. *See* Complaint, ECF No. 1, *Municipality of Bayamón, v. Exxon Mobil Corporation*, No. 3:22-cv-01550 (D.P.R. Nov. 22, 2022). Indeed, by copying and pasting the putative class's complaint, the Complaint admits the untimeliness of its claims. It cites that approximately 325 websites forming the basis of Plaintiff's allegations were "last visited" in November 2022. That alone renders all of Plaintiff's Puerto Rico Law Claims untimely. And Plaintiff's allegations further concede it was on notice of its claims when its alleged injuries occurred. The Complaint cites publications from as early as September 2017 that purported to link Hurricanes Irma and Maria to climate change. *E.g.*, Compl. ¶ 193 n. 186 (citing Umair Irfan, *One of the Clearest Signs of Climate Change in Hurricanes Maria, Irma, and Harvey Was the Rain*, Vox (Sep. 29, 2017), http://bit.ly/3S40R2a and noting "last visited Nov. 15, 2022"); *id.* ¶ 216 n. 216 (citing Angela Fritz, *Harvey. Irma. Maria. Why is This Hurricane Season So Bad?*, Wash. Post (Sep. 23, 2017), https://bit.ly/3S2inUI and noting "last visited Nov. 15, 2022"). And there were public allegations of misconduct by Defendants even before those storms. *See supra* Part I.A; *see McIntyre v. United States*, 367 F.3d 38, 60-61 (1st Cir. 2004) (affirming dismissal of complaint as time-barred where press coverage triggered inquiry notice for statute of limitations).

Plaintiff seeks to recover for "the losses that [it] suffered beginning with the hurricane in September 2017 and all of the ensuing impacts," Compl. ¶ 10, and expressly disclaims "damages for future storms or catastrophes." *Id.* Its claims therefore accrued in September 2017, and purported ongoing losses from a completed wrong provide no basis for extending the statute of limitations. *McMillan*, 511 F. Supp. 3d at 83. Once Plaintiff was on notice, it had one year to file. *See Philibotte*, 793 F.3d at 164; *Rivera-Diaz*, 748 F.3d at 390–91; *see also supra* Part I.A.[12] It failed

---

[12] Plaintiff also cites cases holding that actions to establish public rights to public property are not subject to statutes of limitations. *See Rubert Armstrong v. E.L.A.*, 97 P.R. Dec. 588, 615 (1969); *Figueroa v. Municipality of San Juan*,

to do so, and therefore its claims must be dismissed as untimely.

## II.  Plaintiff Fails to State a RICO Claim (Claims 4, 5, 6, 7)

Plaintiff's fourth, fifth, sixth, and seventh causes of action allege RICO violations.  *See* 18 U.S.C. §§ 1962, 1964.  To plead a civil RICO claim, Plaintiff must allege "(1) injury caused by (2) conduct, (3) of an enterprise, (4) through a pattern, (5) of racketeering activity."  *P.R. Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 118 F. Supp. 3d 447, 454 (D.P.R. 2015).  Plaintiff's claims fail for multiple reasons.

First, the RICO claims are premised on Defendants' alleged speech, membership in advocacy organizations, and participation in a public debate on climate change—an issue of undisputed public importance.  The claims therefore violate the First Amendment and the *Noerr-Pennington* doctrine.  *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances.").  Second, the Complaint fails adequately to plead RICO's elements for several reasons.  Most obviously, the Complaint references and allegedly "incorporates herein" a "**RICO Case Statement** in compliance with this Court's Standing Order" as the only allegation listing the "acts" that "constitute[e] a continuous pattern of racketeering activity."  Compl. ¶¶ 696-97 (emphasis original).  But Plaintiff never filed nor served a RICO Case Statement.  Also, Plaintiff's attenuated causal chain— running from alleged speech to "ensuing impacts" from hurricanes—fails as a matter of law under binding Supreme Court precedent.  Third, Plaintiff's RICO claims fail to the extent Plaintiff purports to be seeking damages for injuries allegedly sustained by its residents, rather than Plaintiff itself, and to the extent Plaintiff seeks damages for the costs of government services.

---

98 P.R. Dec. 534, 562-63 (1970); *Velázquez v. Municipio Autónomo de Carolina*, 2014 WL 5343480 (P.R. Cir. Sept. 23, 2014).  But none of Plaintiff's claims here seeks a recognition of any such rights.

### A. Plaintiff's Claims Are Barred by the First Amendment and *Noerr-Pennington*.

All of Plaintiff's claims threaten Defendants' First Amendment rights, but this threat is most apparent in Plaintiff's purported RICO claims. Each of the supposed actions that allegedly formed the basis of a "corrupt" enterprise is nothing more than an allegation of protected speech or alleged membership in a lawful organization that purportedly maintained certain goals for influencing public policy. Specifically, Plaintiff—a government entity—is suing Defendants for their public statements relating to climate change allegedly made by certain of the Defendants over the course of several decades in an alleged effort to defeat or shape treaties, legislation, and regulation relating to fossil-fuels. The First Amendment and the *Noerr-Pennington* doctrine bar such attempts to hold Defendants liable for core political speech.

"The general proposition that freedom of expression upon public questions is secured by the First Amendment" has "long been settled." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964). There is a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *Id.* at 270. As a general matter, then, "the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Álvarez*, 567 U.S. 709, 716 (2012) (quoting *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 573 (2002)). When the government regulates speech because it disagrees with the speaker's message, "[t]he First Amendment requires heightened scrutiny." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011). And when applying this heightened scrutiny, the government "bears the burden of proving the constitutionality of its actions." *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000). There is "[n]o sufficient governmental interest" that justifies limits on the "political speech . . . of . . . for-profit corporations." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010). Indeed, as

the Supreme Court reiterated just this past Term, speakers do not "shed their First Amendment protections by employing the corporate form to disseminate their speech. This fact underlies our cases involving everything from movie producers to book publishers to newspapers." *303 Creative*, 143 S. Ct. at 2312. Whether penalties for speech violate the First Amendment is a legal question for the Court to decide. *See Casey v. City of Newport*, 308 F.3d 106, 110 (1st Cir. 2002).

"[C]limate change" is a "matter[] of profound value and concern to the public." *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2476 (2018) (internal quotations omitted). Speech relating to climate change thus "occupies the highest rung of the hierarchy of First Amendment values" and warrants "special protection." *Id.* (internal quotation marks omitted). "The constitutional guarantee of freedom of expression serves" its "most important role i[n] protect[ing] . . . robust and uninhibited debate on important political and social issues" such as climate change, which has "staked a place at the very center of this Nation's public discourse." *Nat'l Rev., Inc. v. Mann*, 140 S. Ct. 344, 346, 348 (Mem.) (2019) (Alito, J., dissenting from denial of cert.). It is "axiomatic" that government may not "discriminate against speech on the basis of its viewpoint." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828–29 (1995). "[T]he First Amendment stands against attempts to disfavor certain subjects or viewpoints." *Citizens United*, 558 U.S. at 340. No "consensus"—scientific or otherwise—is regarded by the law as above criticism or disagreement. That is because "the First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply 'misguided.'" *303 Creative*, 143 S. Ct. at 2312 (quoting *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 574 (1995)). Nor may government "compel a person to speak its own preferred messages." *Id.* (citing *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505-06 (1969)). "[U]nder the regime of [the First]

Amendment 'we depend for ... correction not on the conscience of judges and juries but on the competition of other ideas.'" *Brown v. Hartlage*, 456 U.S. 45, 61 (1982) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974)). As Justice Ginsburg observed in the Supreme Court's seminal case on climate change, conflicting views on the practical tradeoffs posed by diverse proposals are the foundation of sound regulatory policy, not inconvenient expressions to be punished: "The appropriate amount of regulation in any particular greenhouse gas producing sector cannot be prescribed in a vacuum: As with other questions of national or international policy, *informed assessment of competing interests is required*. Along with the environmental benefit potentially achievable, *our Nation's energy needs and the possibility of economic disruption must weigh in the balance*." *AEP*, 564 U.S. at 427.

Plaintiff—a municipal government—cannot hold Defendants liable for the purported environmental consequences of speech on matters of public importance. It impermissibly seeks to hold private parties liable for alleged speech with which it disagrees—speech that, it claims, minimizes or denies climate change. This is particularly evident with respect to its RICO claims, which are unapologetically premised on Defendants' alleged association with organizations—trade associations, lobbying groups, and think tanks—whose objectives include speaking on issues of public concern and petitioning the government. Indeed, Plaintiff alleges that one of the core purposes of the GCC—the alleged "enterprise"—was "preventing U.S. adoption of the Kyoto Protocol." Compl. ¶ 343.[13] But advocacy to encourage defeat of proposed legislation is core political speech,

---

[13] *See also, e.g.*, Compl. ¶¶ 342 (alleging "[t]he Global Climate Coalition (GCC) was formed in 1989 as a public relations and international lobbyist group of businesses that opposed action to reduce greenhouse gas emissions."); 348 ("GCC's advocacy activities includ[ed] lobbying government officials, grassroots lobbying through press releases and advertising, participation in international climate conferences, criticism of the processes of international climate organizations, critiques of climate models, and personal attacks on scientists and environmentalists."); 560 (noting "Influence Map released a report tracking nearly **$1 billion** in lobbying funds and narrative capture by four big oil companies, including Exxon, Shell, Chevron, and BP"); 562 ("Annually, Influence Map found that Exxon, Shell, Chevron, and BP alone were spending a total of **$135 million** a year just on climate lobbying.").

and "[i]t is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is" Defendants' First Amendment right. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *303 Creative*, 143 S. Ct. at 2312 (noting that "the First Amendment protects acts of expressive association"). Indeed, the First Circuit has recognized that imposing RICO liability "for mere membership in an association, particularly when that association is ideological, may conflict with the First Amendment." *Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995), *overruled on other grounds as recognized by United States v. Veláazquez-Fontáanez*, 6 F.4th 206, 213 n.2 (1st Cir. 2021).

The importance of climate change as a public policy issue means that Defendants' speech is entitled to *more* constitutional protection, not less. The First Amendment protects against even "the *prospect* of chilling fully protected expression." *Counterman*, 143 S. Ct. at 2115 (emphasis added). That some Defendants are commercial entities is irrelevant. "[T]he First Amendment extends to all persons engaged in expressive conduct, including those who seek profit." *303 Creative*, 143 S. Ct. at 2320. And that remains true when, as here, the specific theory of liability is supposed "omissions": "Nor does it matter whether the government seeks to compel a person to speak its message when he would prefer to remain silent or to force an individual to include other ideas with his own speech that he would prefer not to include. All that offends the First Amendment just the same." *Id.* (citations omitted). Because Plaintiff does not identify any allegedly harmful speech *except* for protected lobbying and advocacy activity, Plaintiff cannot meet its burden.

Even if Plaintiff could show that it also attacks some alleged conduct or speech that is not protected, Plaintiff must plead facts showing that it is basing its claims *only* on that unprotected conduct or speech. *See NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 934 (1982) (the

plaintiff bears "[t]he burden of demonstrating that [unprotected conduct] rather than protected conduct" caused injury). It must further show that this unprotected speech was made by each individual Defendant, not by some organization that happened to include a Defendant as one member among many. *See, e.g.*, *Santopietro v. Howell*, 857 F.3d 980, 990 (9th Cir. 2017) (under *Claiborne*, plaintiffs cannot allege the defendant is responsible for a group's conduct). Here, too, Plaintiff fails.

Dismissal is also required under the *Noerr-Pennington* doctrine, which protects activities intended to influence the government—including campaigns designed to influence voters—under the Petition Clause of the First Amendment. The doctrine was first articulated in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), a case brought by trucking plaintiffs against railroads and affiliated defendants. The trucking plaintiffs alleged the railroads violated the Sherman Act by "conduct[ing] a publicity campaign against the truckers designed to foster the adoption and retention of laws and law enforcement practices destructive of the trucking business," and "creat[ing] an atmosphere of distaste for the truckers among the general public." *Id.* at 129. The plaintiffs alleged this "publicity campaign" was "fraudulent," because "the publicity matter circulated in the campaign was made to appear as spontaneously expressed views of independent persons and civic groups when, in fact, it was largely prepared and produced by [the railroads' PR firm] and paid for by the railroads." *Id.* at 130. After a bench trial, the district court awarded "substantial damages" and a "broad injunction" to the plaintiffs. *Id.* at 133–34.

The Supreme Court reversed, explaining that "publicity campaign[s]" aimed at influencing governmental action cannot be the grounds for civil liability, as "representative democracy . . . depends upon the ability of the people"—including businesspeople—"to make their wishes known to their representatives." *Id.* at 137. That the defendants "deliberately deceived the public and

public officials" was irrelevant. *Id.* at 145. The Court soon reiterated that defendants could not be subject to civil liability for "a concerted effort to influence public officials." *United Mine Workers v. Pennington*, 381 U.S. 657, 669–70 (1965); *see also Amphastar Pharms. Inc. v. Momenta Pharms., Inc.*, 850 F.3d 52, 56 (1st Cir. 2017) ("[A] Sherman Act violation cannot be 'predicated upon mere attempts to influence the passage or enforcement of laws.'") (quoting *Noerr*, 365 U.S. at 135). Protected conduct includes "indirect petitioning," such as "a publicity campaign directed at the general public" that is "part of an effort to influence legislative or executive action." *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499, 503 (1988) (*Noerr-Pennington* applies to activities "incidental to a valid effort to influence governmental action").[14]

Plaintiff's claims that the GCC opposed Congress's adoption of the Kyoto Protocol, and that some Defendants sponsored ad campaigns to defeat ballot initiatives, implicate core petitioning activity. Compl. ¶¶ 343, 561. Plaintiff also complains about "advocacy efforts including lobbying government officials," *id.* ¶ 348, videos distributed to "policy makers," *id.* ¶ 358, an "Action Memo" that "outlin[ed] plans to reach the media, the public, and policy makers," *id.* ¶ 420, disseminating a "petition," *id.* ¶ 460, attempts to reach "state elected officials," *id.* ¶ 503, a plan to send a "model bill" to "policy makers nationwide," *id.* ¶ 536, letters sent to members of the House of Representatives, *id.* ¶¶ 446-448, money spent on "climate lobbying," *id.* ¶ 562, and efforts to influence legislators, *see id.* ¶¶ 296, 537-47. Plaintiff repeatedly and unabashedly complains about efforts to "change public opinion" to influence public policy. Compl. ¶¶ 357, 439, 442, 445, 477,

---

[14] Courts regularly apply *Noerr-Pennington* to RICO and business torts. *See, e.g.*, *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (RICO and tortious interference claims); *Pers. Dep't, Inc. v. Pro. Staff Leasing Corp.*, 297 F. App'x 773, 779 (10th Cir. 2008) (tortious interference claims); *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 933 (9th Cir. 2006) (RICO). The doctrine is particularly apt here, where all of Plaintiff's claims are based on the same underlying allegations. *See Sosa*, 437 F.3d at 931 (holding that *Noerr-Pennington* "applies equally in all contexts") (quoting *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000)); *see also Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008) (holding that "because *Noerr-Pennington* protects federal constitutional rights, it applies in all contexts").

636, 650, 695(g).  Plaintiff cannot constitutionally use its municipal powers to attach financial liability to Defendants' lobbying and political advocacy activities, because "the First Amendment protects the right of corporations to petition legislative and administrative bodies."  *Citizens United*, 558 U.S. at 355 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 792 n.31 (1978)).  *Noerr-Pennington* ensures that Plaintiff cannot use this Court to do so, either.

### B.  Plaintiff Has Not Pleaded the Requisite Elements of a RICO Claim

Although the failure to plead even a single element of a RICO claim would be fatal, Plaintiff has failed to plead *any* of the essential elements:  no causation, no enterprise, no racketeering activity, no pattern, no management or control, no investment, no acquisition, and no conspiracy.

#### 1.  Plaintiff Fails to Plausibly Allege That the Claimed Predicate Acts Proximately Caused Its Purported Injuries.

Plaintiff's attenuated theory of causation begins with decades-old speech and production and ends with the 2017 hurricanes.  In between are a host of mediating factors, including the greenhouse gas emissions of billions of persons around the globe that mix with other emissions in the Earth's atmosphere.  Common sense and binding U. S. Supreme Court precedent preclude a finding of proximate causation for such a remote and attenuated theory.  Plaintiff's failure to adequately allege causation is fatal to all of its claims, for the reasons discussed elsewhere in this brief.

"[T]o state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well."  *Hemi Grp.,* 559 U.S. at 9.  Proximate cause "requires some *direct* relation between the injury asserted and the injurious conduct alleged."  *Id.* (emphasis added) (quotations omitted).  That "link" between the alleged predicate criminal activity—here, the purported acts of mail and wire fraud based on supposed misrepresentations about climate change—and the alleged injury cannot be "remote, purely contingent, or indirec[t]."  *Id.* (quotations omitted) (alteration in original).  The "central

question [a court] must ask is whether the alleged violation led *directly* to the plaintiff's injuries."
*Anza*, 547 U.S. at 460–61 (emphasis added). Indeed, "[t]he general tendency of the law[] . . . is not to go beyond the first step" in the causation chain, and that "tendency applies with full force to proximate cause inquiries under RICO." *Hemi Grp.*, 559 U.S. at 2 (quotations omitted) (alteration in original).

Plaintiff's RICO allegations go far beyond the first step. In fact, its chain of causation has *at least six* distinct steps, almost all of which themselves consist of multiple, diffuse components:

1. Defendants, "over the course of decades" (*i.e.*, beginning in 1989 to the present), allegedly engaged in an "enterprise-in-fact" "to promote climate change denial and undermine scientific consensus as a deceptive means to manipulate the Municipality of San Juan, and their citizens into continuing to purchase their products." Compl. ¶ 650.

2. As a result of those allegedly deceptive statements, Plaintiff and its residents continued to purchase some Defendants' products, such that some marginal increase in the amount of Defendants' products purchased and used by Plaintiff—and its residents, who are not properly before the Court, as demonstrated in Section II.C—took place.

3. By purchasing and using Defendants' products, Plaintiff and its residents produced greenhouse gases.

4. Those greenhouse gases combined with greenhouse gas emissions produced by billions of third parties and allegedly exacerbated *global* climate change in some unspecified and marginal manner.

5. As a result of *global* climate change, Puerto Rico was hit by hurricanes in 2017.

6. Puerto Rico sustained damages (including damaged infrastructure, damaged buildings, devastated crops, decimated livestock, the cost of emergency services, and decreased tax revenue) because of the hurricanes.

Plaintiff's claims fail at step one because it does not plead facts showing that it or anybody else relied on Defendants' supposed misrepresentations—instead, it offers only conclusory assertions. *See*, *e.g.*, Compl. ¶¶ 3, 35, 373, 410, 602. Plaintiff does not allege, for example, when it heard the alleged statements or how the alleged statements caused it to do anything different from what it already was doing. *See Twombly*, 550 U.S. at 557.

In any event, Plaintiff's alleged causal chain is too indirect to support any liability. Beyond the six steps listed above, some of Plaintiff's alleged damages require a seventh, eighth, or even ninth step. For example, Plaintiff alleges that because of greater flooding, fewer Puerto Rico homeowners will "qualify for mortgages," which will "caus[e] property value reduction," which will in turn cause "a loss of the taxes derived therefrom." Compl. ¶ 260. Similarly, Plaintiff alleges that because of greater environmental damages, Puerto Rico became incrementally less attractive to tourists and residents, and "taxes previously collected by the Municipality of San Juan were significantly reduced." *Id*. ¶¶ 247 (tourism); 250 (emigration); 700 (RICO claim). Plaintiff even suggests that Defendants are responsible for a higher suicide rate in the aftermath of Hurricane Maria. *Id.* ¶ 219.

The Supreme Court has held that far less attenuated chains of causation fail as a matter of law and must be dismissed at the pleading stage. In *Hemi Group*, the Supreme Court held that the City of New York could not hold an online cigarette retailer liable under RICO. 559 U.S. at 9. The City alleged that it suffered tax losses when the retailer failed to pass along data to New York State; the City claimed the data may have enabled it to pursue the retailer's customers for cigarette taxes, which the City alleged many customers did not pay. *Id.* The Supreme Court held that the chain of causation was too attenuated because the conduct directly responsible for the City's harm was the customers' failure to pay taxes, not the alleged fraud, and thus the City could not show that the alleged fraud proximately caused the tax losses. *Id.* at 9-11; *see also Slay's Restoration, LLC v. Wright Nat'l Flood Ins. Co.*, 884 F.3d 489, 493 (4th Cir. 2018) (focus of RICO inquiry is "directness," not "on whether the harm to the RICO plaintiff was a foreseeable result of the defendant's conduct or even whether it was the *intended* consequence") (alteration in original) (citations omitted). It thus affirmed Rule 12(b)(6) dismissal. *Hemi Grp*, 559 U.S. at 7, 18.

The Supreme Court repeatedly has rejected indirect, contingent injuries. *See, e.g.*, *Anza*, 547 U.S. at 457-59 (affirming dismissal of RICO action by retailer against competitor on the theory that the competitor's failure to charge and remit sales tax allowed the competitor to charge artificially low prices); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992) (holding that RICO does not permit insurer to recover losses due to stock manipulation that victimized third parties because the alleged injuries were attenuated and indirect).

The First Circuit also has rejected RICO claims when the injury lies as few as two causal links away from the conduct. *See, e.g.*, *Sterling Suffolk Racecourse, LLC v. Wynn Resorts, Ltd.*, 990 F.3d 31, 36 (1st Cir. 2021) (affirming grant of motion to dismiss and rejecting as too attenuated theory of causation that "[defendant's] wrongful conduct cost [a third party] the gaming license, which in turn cost [plaintiff] the benefit of a potential lease with [the third party]"). Here, Plaintiff's multistep causal chain relies not merely on the acts of a third party, but on the acts of billions of third parties—every human being or entity that has combusted any oil and gas product—and also turns on the vagaries of how and where a hurricane developed and made landfall. Such an attenuated chain cannot establish proximate cause.

To make matters worse, Plaintiff cannot plausibly allege that Defendants' alleged speech or conduct was the but-for cause of the 2017 hurricanes. In contrast to parts of the Complaint, which allege damages resulting from Defendants' *global* conduct, *see* Compl. ¶¶ 37, 67, 74, 79, 89, 91, 99, 103, 111, elsewhere Plaintiff purports to base its RICO claims on sales in Puerto Rico, *see, e.g.*, *id.* ¶ 650 (alleging scheme to "keep the Municipality of San Juan, of Puerto Rico fooled into purchasing their products"). But Puerto Rico makes up just a tiny fraction of global energy consumption and carbon production, and climate change is a global phenomenon, and the Municipality of San Juan makes up just a small fraction of Puerto Rico's energy consumption and carbon

production. Plaintiff itself alleges that stopping the harms of climate change would require a significant *global* effort for over almost a century. *See* Compl. ¶ 590. Plaintiff cannot therefore plausibly allege that had Defendants not sold incrementally more fossil fuel products *to the Municipality of San Juan* between 1989 and 2017, climate change would have been stopped, and the 2017 hurricanes would not have occurred or would not have caused Plaintiff's damages. Plaintiff even admits that Puerto Rico is located in the "notorious Hurricane Alley." *Id.* ¶ 4. That it repeatedly has been struck by hurricanes and severe tropical storms renders any causal link between Defendants' conduct and the 2017 storms less plausible, not more. To suggest that the damage caused by the 2017 storms (and their impacts on the Municipality of San Juan, or even Puerto Rico citizens) was caused by Defendants' allegedly deceptive statements, rather than other factors, is sheer speculation and facially implausible. *See* Lauren Lluveras, *Puerto Rico's Bankruptcy Will Make Hurricane Recovery Brutal – Here's Why*, The Conversation (Sep. 26, 2017) (cited in Compl. ¶ 213 n.206), http://bit.ly/3EhBxAq; *see also Gonzalez-Caban v. JR Seafood Inc.*, 48 F.4th 10, 17 (1st Cir. 2022) (proximate cause cannot be established by "pure speculation" (citation omitted)).[15] Thus, Plaintiff fails to allege but-for and proximate causation.[16]

### 2. Plaintiff Fails to Adequately Allege an *Enterprise*.

Under RICO, an "enterprise" is a long-lasting group acting together to advance a common purpose. *United States v. Rodríguez-Torres*, 939 F.3d 16, 24 (1st Cir. 2019). Plaintiff alleges that

---

[15] In resolving a motion to dismiss, the court may consider documents relied on in the complaint, whether attached as exhibits or not. *See Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000).

[16] The First Circuit has identified three additional factors relevant to causation: (1) "concerns about proof;" (2) "concerns about administrability and the avoidance of multiple recoveries;" and (3) the "societal interest in deterring illegal conduct and whether that interest would be served in a particular case." *In re Neurontin Marketing and Sales Practices Litig.*, 712 F.3d 21, 36 (1st Cir. 2013) (internal quotation marks omitted). These factors further illustrate the infirmities in Plaintiff's allegations. Questions of proof abound. Plaintiff has not plausibly described how to determine whether and to what extent Defendants—as opposed to state and local governments, consumers, and companies in other industries across the world—have caused global warming. Nor has Plaintiff plausibly explained how to attribute the damage to Puerto Rico from the 2017 hurricanes to any alleged conduct by Defendants. And there is substantial risk of multiple recoveries here, as Plaintiff's allegations involve global conduct allegedly giving rise to global harms.

Defendants formed an "association-in-fact" enterprise, which requires "[1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)) (brackets in *Rodríguez-Torres*). Plaintiff inadequately pleads these elements here.

To have the requisite "purpose," "the group must share the 'common purpose of engaging in a course of conduct.'" *Id.* (quoting *Boyle*, 556 U.S. at 946). Plaintiff alleges that Defendants acted "through their enterprise-in-fact, the GCC and its members." Compl. ¶ 650. But Plaintiff pleads no facts to support that the GCC shared the "common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 948. Nor does Plaintiff plead facts to show that the members of the GCC came together to advance "a certain object" or "engag[e] in a course of conduct," as is necessary to establish sufficient relationships for an enterprise under RICO. *Boyle*, 556 U.S. at 948.

In any event, Plaintiff implicitly concedes that the GCC ceased operating. Compl. ¶ 168(g) (alleging it "continues informally today as an association-in-fact of the Defendants"). While Plaintiff alleges that the GCC somehow continues operating "informally," its post-2002 allegations are generic and amorphous. *Id.* It does not plead any facts showing that the alleged "enterprise" was, in fact, an enterprise, or that it functioned as a continuing unit after the GCC disbanded in 2002 (or even before then). At most, Plaintiff alleges that various entities, including entities not named as defendants, "funded," "promoted," or "disseminated" articles and advertisements that opined on global warming and expressed opinions with which Plaintiff disagrees. *E.g.*, Compl. ¶¶ 369. But for nearly all named Defendants, Plaintiff does not identify any advertisements that Defendants are alleged to have disseminated.

Perhaps the missing allegations are in the "RICO Case Statement" that is cited but was never served nor filed, but the Complaint pleads no facts or advertisements for most Defendants. *See*

Compl. ¶¶ 696–97. Simply put, the Complaint fails to plead facts showing these entities or Defendants operated as a "continuing unit" after 2002. *See Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 440 (S.D.N.Y. 2019) ("A plaintiff may not simply 'string' [ ] together . . . various defendants and label[ ] them an enterprise.") (quoting *Town of Mamakating, v. Lamm*, No. 15-cv-2865, 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015)). Plaintiff also fails to plead that the GCC engaged in racketeering activity under RICO when it was operating.

Further, it is improper to plead an enterprise by "lumping" defendants (or other alleged members) together, but that is exactly what Plaintiff does. *Nightingale v. Nat'l Grid USA Serv. Co.*, 2020 WL 4506167, at *3 (D. Mass. Aug. 4, 2020). Plaintiff fails to allege, as it must, what role each Defendant played in the enterprise or how their roles differed from those of other alleged members. *See In re Asbestos School Litig.*, 46 F.3d 1284, 1290 (3d Cir. 1994) (Alito, J.) (recognizing that, generally, a "member of a trade group or other similar organization does not necessarily endorse everything done by that organization or its members").

At bottom, all that Plaintiff alleges is a supposed "similarity of viewpoint, rhetoric and strategy." *Libertad*, 53 F.3d at 443. But the First Circuit has emphasized that "liability for mere membership in an association, particularly when that association is ideological, may conflict with the First Amendment." *Id.* Thus, it is "particularly important" in such cases that plaintiffs be able to point to sufficient facts "beyond [defendants'] similarity of viewpoint, rhetoric and strategy, to show an enterprise." *Id.* Plaintiff has failed to do so here.

### 3. Plaintiff Has Not Adequately Alleged *Racketeering Activity*.

"'Racketeering activity' means an act that violates one of the federal laws specified in the RICO statute, including the mail and wire fraud statutes." *Giuliano v. Fulton*, 399 F.3d 381, 386 (1st Cir. 2005) (citations omitted). But there is nothing illegal or fraudulent about Defendants'

sales of lawful fossil fuel products, the lawful promotion of those products, or the lawful and protected speech and petitioning activity that forms the basis of Plaintiff's Complaint.

Plaintiff alleges two racketeering predicates: mail fraud and wire fraud.[17] Compl. ¶ 696 (citing 18 U.S.C. §§ 1341, 1343). Both offenses must be pleaded with particularity with respect to each Defendant and require, as an element, that the Defendant act to deprive the victim of money or property. *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020); *United States v. Abdelaziz*, 68 F.4th 1, 33 (1st Cir. 2023). Plaintiff failed to allege fraud with particularity as to each Defendant and, even in the aggregate, has not alleged any predicate offense because it fails to allege that it did not receive the full economic benefit of the complained of commercial transactions—purchases of oil and gas products.

Courts "'have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes.'" *Medina-Rodríguez v. $3,072,266.59 in United States Currency*, 471 F. Supp. 3d 465, 478 (D.P.R. 2020) (quoting *United States v. Kelerchian*, 937 F.3d 895, 912 (7th Cir. 2019)); *see also United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015) (same), *abrogated on other grounds by Ciminelli v. United States*, 598 U.S. 306 (2023). Indeed, just last year the Supreme Court held that mail or wire fraud cannot be predicated on the notion that the supposed victim merely was denied information, as opposed to property, by means of the alleged deception. *See Ciminelli*, 598 U.S. at 309. Just so here: at most, Plaintiff alleges that consumers were deprived of information about fossil fuels, not that they

---

[17] Plaintiff also alleges that Defendants violated Puerto Rico Rule 7, 15 U.S.C. §§ 45, 55, 16 C.F.R. Part 255 & Part 260, and the common-law rule against fraud. *E.g.*, Compl. ¶ 650. But none of these provisions is a predicate act of "racketeering activity" under 18 U.S.C. § 1961(1).

were defrauded of any property when they chose to purchase, and then received, fossil fuel products. Courts including the First Circuit "repeatedly [have] rejected application of the mail and wire fraud statutes where the purported victim received the full economic benefit of its bargain." *Binday*, 804 F.3d at 570.

Plaintiff does *not* allege that it or anyone else was deprived of the money it spent when it purchased some of Defendants' products. Thus, Plaintiff does not seek damages based on a failure to receive the property for which it bargained. Rather, Plaintiff alleges that it and its residents were harmed because, purportedly unbeknownst to them, by using Defendants' products, they contributed to climate change and, in some attenuated fashion, to the 2017 hurricanes. But, in the absence of allegations that Defendants deprived Plaintiff of the benefit of the products it purchased (which could not plausibly be pleaded), Plaintiff has failed to plead mail or wire fraud.

Moreover, Plaintiff fails to plead fraudulent conduct with the requisite particularity. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). That requirement is even "more demanding . . . for claims under [RICO], particularly with regard to pleading the predicate acts for claims of extortion and wire and mail fraud." 5A Wright & Miller, *Federal Practice & Procedure* § 1297 & n.21 (4th ed. Apr. 2023 update) (collecting cases). Because Plaintiff does not allege "when, where, and how often the allegedly false statements were made or what, specifically, was stated," the allegations of fraud as a racketeering predicate "fall[ ] short of Rule 9(b)'s particularity requirement." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013); *see also Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985) ("[M]ere allegations of fraud, . . . averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement . . . ."). In a similar climate change case, the Delaware Superior Court recently dismissed "[a]ll claims alleging

misrepresentation" because the State there "failed to specifically identify alleged misrepresentations for each individual defendant." *Delaware*, 2024 WL 98888, at \*17.

### 4. Plaintiff Has Not Adequately Alleged a *Pattern* of Racketeering Activity.

To allege a pattern, Plaintiff must show "at least two predicate acts of 'racketeering activity.'" *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 233 (1st Cir. 2003). These acts must be "related" and "amount to or pose a threat of continued criminal activity." *Efrón v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 15 (1st Cir. 2000) (quoting *H.J. Inc. v. N.W. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). The Complaint contains *no* allegations relating to the required pattern. It references a "RICO Case Statement" that was never filed or served. Compl. ¶¶ 696-97.[18] As such, Plaintiff fails to plead a pattern of racketeering activity.

### 5. Plaintiff Fails to Allege That Defendants *Conducted* the Alleged Enterprise.

Additionally, Plaintiff's RICO claims fail because it does not plead sufficient facts showing each (or any) Defendant *conducted* the alleged enterprise, much less that they did so through a pattern of predicate crimes. To state a claim under § 1962(c), a plaintiff must "plead sufficient facts to allow for a plausible inference that the defendant somehow 'le[d], [ran], manag[ed], or direct[ed] the enterprise's affairs.'" *Friendly Hotel Boutique Corp. v. ME & A Cap., LLC*, 2012 WL 4062795, at \*2 (D.P.R. Sept. 14, 2012) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993)) (brackets in *Friendly Hotel*)). Even "aid[ing] or abet[ing] the enterprise's affairs" is insufficient. *Id.* at \*3. Plaintiff fails to surmount this high bar.

Plaintiff does not plausibly allege that any Defendant exercised control over any enterprise. As to ConocoPhillips, Motiva, and Anadarko/Occidental, Plaintiff does not even attempt to plead control. As to the remaining Defendants, Plaintiff merely alleges they provided funding to third

---

[18] Since the "RICO Case Statement" was "incorporated" into the Complaint but never served, service was never properly effectuated under Rule 4, and therefore the Complaint should also be dismissed pursuant to Rule 12(b)(5).

parties, *see, e.g.,* Compl. ¶¶ 465, 518, or engaged in other independent activities that do not plausibly allege control over any enterprise. This is insufficient. *See Aetna Cas. & Sur. Co. v. P & B Autobody*, 1994 WL 717998, at *11 (1st Cir. Dec. 29, 1994) (requiring showing that "defendants' activities affected, in a material degree, the direction" of the enterprise).

### 6. Plaintiff Has Not Alleged Defendants *Invested In or Acquired or Maintained Control* of the Alleged Enterprise.

Plaintiff's claims under sections 1962(a) and (b) should also be dismissed because the Complaint fails to plead injuries caused by Defendants' purported violations of those subsections.

"A claim brought pursuant to Section 1962(a) is premised on injury by means of [a] defendant['s] *investment* of racketeering income." *Román Rivera v. Puerto Rico Elec. Power Auth.*, 2012 WL 13170557, at *5 (D.P.R. Sept. 25, 2012) (emphasis added) (quotations omitted). And the alleged "injury resulting from the investment of racketeering income" must be "distinct from an injury caused by the predicate acts themselves." *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (quotations omitted). But Plaintiff fails to allege how it suffered any injuries from the use or investment of any alleged income, much less injury that is distinct from the damages it allegedly sustained in connection with the 2017 storms.

To state a claim under § 1962(b), plaintiffs must plead "that they were harmed by reason of [Defendants'] *acquisition or maintenance of control* of an enterprise through a pattern of racketeering activity." *Compagnie*, 57 F.3d at 92 (emphasis added). Again, however, Plaintiff fails to allege that Defendants acquired or maintained control of the alleged enterprise or that it sustained "a harm beyond that resulting from the fraud which constituted the predicate act." *Id.*

### 7. Plaintiff Fails to Adequately Allege a Conspiracy.

Plaintiff also fails to state a claim under section 1962(d), which prohibits conspiracies to violate

RICO and requires Plaintiff to allege that Defendants committed an overt act that is "independently wrongful under [a] substantive provision of the statute." *Beck v. Prupis*, 529 U.S. 494, 506 (2000). It has made no such allegation. *See supra* Part II.B. Plaintiff would also lack standing to raise the claim because, as noted, it does not allege that it suffered a concrete injury directly caused by the alleged conspiracy. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-30 (2021) (requiring plaintiffs be concretely harmed by the conduct constituting the alleged violation).

Further, "a RICO-conspiracy conviction requires proof"—and thus stating such a claim requires an adequate allegation—"that the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators 'to further [the] endeavor which, if completed, would satisfy all the elements of a substantive [RICO] offense.'" *Rodríguez-Torres*, 939 F.3d at 23-24 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). Plaintiff offers nothing but conclusory assertions that any of the nine Defendants agreed to do anything with one another. Despite the Complaint's length, Plaintiff never actually alleges the existence of an agreement. *See* Compl. ¶¶ 24–609. The conclusory allegations that Defendants "agreed and conspired to violate 18 U.S.C. §1962(a), (b) and (c)," *id.* ¶ 722; *see also id.* ¶ 723, do not suffice.

### C. Plaintiff Cannot Recover Under RICO for Its Resident's Alleged Injuries or for Its Own Governmental Expenditures.

Plaintiff's Complaint is replete with references to Plaintiff's residents' alleged injuries, but Plaintiff cannot sue *parens patriae* to recover for injuries sustained by its residents or for Plaintiff's own governmental expenditures.[19]

It is the "normal rule" of adjudication that individuals may sue to redress only their own injuries. The doctrine of *parens patriae* is a limited "exception" to that rule, which allows a "State"

---

[19] Although *parens patriae* is sometimes referred to as a doctrine of "standing," it concerns whether the plaintiff has a cause of action to bring a representative claim; for example, in *Hawaii v. Standard Oil Co. of California*, the Court held a State lacked a *cause of action* under the antitrust laws to pursue a claim *parens patriae*. 405 U.S. 251 (1972).

to pursue its "quasi-sovereign interests in the 'well-being of its populace.'" *Estados Unidos Mexicanos v. DeCoster*, 229 F.3d 332, 335 (1st Cir. 2000) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982)).  A *parens patriae* right of action must be "narrowly construed."  *Id.*  Fatal here, municipalities lack *any* cause of action to pursue claims in a *parens patriae* capacity, a power reserved for "[o]nly the States and the federal government."  *See United States v. City of Pittsburg*, 661 F.2d 783, 787 (9th Cir. 1981).  Plaintiff is a political subdivision that lacks its own sovereignty, meaning there is no sovereign interest it can pursue in court.  Further, "RICO does not authorize a state to obtain relief on account of a fraud practiced against its residents. RICO allows suits by the federal government, § 1964(b), but otherwise only by persons injured in their 'business or property,' § 1964(c), a phrase that does not include sovereign or derivative interests."  *Dillon v. Combs*, 895 F.2d 1175, 1177 (7th Cir. 1990) (citations omitted)).[20]  Therefore, to the extent Plaintiff seeks damages on behalf of its citizens, those claims should be dismissed. And to the extent Plaintiff seeks reimbursement for alleged increases in the costs of providing services, *see, e.g.*, Compl. ¶¶ 5, 700, 708, 717, 725, 759, 770, 780, that claim fails as a matter of law.  *Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976, 980 (9th Cir. 2008) (holding that law enforcement and public health care services are not recoverable, as there is no property interest in the provision of governmental services).

### III. Plaintiff Fails to Adequately Plead an Antitrust Violation (Claim 8)

Plaintiff's antitrust claim should be dismissed because it does not plausibly allege the existence of any agreement—much less an anticompetitive one—and Plaintiff cannot use the antitrust laws to recover for alleged environmental harms or for harms sustained by its residents.

---

[20] The private right of action contained in the RICO statute uses language "identical" to the Clayton Act's damages provision.  But unlike the Clayton Act, Congress has never amended RICO to permit *parens patriae* actions in any context.  *Illinois v. Life of Mid-Am. Ins. Co.*, 805 F.2d 763, 767 (7th Cir. 1986).  *See infra* Part III.C.

**A. The Complaint Does Not Plausibly Allege an Anticompetitive Agreement.**

To plausibly plead an antitrust conspiracy, a plaintiff must allege that a Defendant entered into an anticompetitive agreement. That, in turn, requires "some factual context" excluding the possibility of "independent action." *Twombly*, 550 U.S. at 549.

Plaintiff alleges no such context: it never alleges the existence of an agreement in its lengthy "factual" recitation. *See* Compl. ¶¶ 24–609. Instead, it asserts that the Defendants had an "agreement" to "maintain their energy monopoly, fix prices, and increase obstacles for competitive entry into the [energy market]." Compl. ¶ 732. That conclusory assertion is insufficient to plead an antitrust conspiracy as a matter of law. *See Twombly*, 550 U.S. at 557 ("conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Nor could Plaintiff plead any facts supporting an anticompetitive agreement: Because Defendants are competitors, they had every incentive to "increase[] production" and "lower prices" to win sales from one another. Compl. ¶¶ 7(d), 732. Accordingly, no agreement can be inferred, and the antitrust claim must be dismissed. *See Twombly*, 550 U.S. at 566 (antitrust complaint failed where plaintiff essentially alleged that "companies had agreed among themselves to do what was only natural anyway; so natural, in fact, that . . . pleading a § 1 violation against almost any group of competing businesses would be a sure thing"). Section 1 of the Sherman Act "does not reach independent decisions, even if they lead to the same anticompetitive result as an actual agreement among market actors." *White v. R.M. Packer Co.*, 635 F.3d 571, 575 (1st Cir. 2011) (citations omitted).

Nor can Defendants' membership in trade organizations establish an unlawful agreement. *See Clamp-All Corp. v. Cast Iron Soil Pipe Inst.*, 851 F.2d 478, 484 (1st Cir. 1988) (holding that parallel conduct by trade association members is insufficient to show an agreement under the Sherman

Act).  Here, each Defendant would have promoted its product regardless of any other Defendant's conduct, and mere membership in trade organizations does not tend to exclude the possibility of independent action.  *See Twombly*, 550 U.S. at 569.

Even if Plaintiff could allege the existence of an agreement, it has not plausibly alleged an *anticompetitive* agreement—an agreement that increases price or decreases output to consumers' detriment.  If anything, Plaintiff alleges Defendants are competing too much.  It alleges that Defendants excluded rival "alternative energy companies" by "*increas[ing]* production," Compl. ¶ 732 (emphasis added); *see also id.* ¶ 7(g) ("Defendants *increased their production* to monopolize their control of the world's energy" (emphasis added)), and "jointly schemed to maintain their energy production monopoly" by "*lower[ing] prices*" to "block the development of alternative energy sources," *id.* ¶ 7(d) (emphasis added).  Setting aside that Defendants are competitors in the market for the sale of oil and gas products, and thus cannot be accurately described as an "energy monopoly," increasing output or lowering prices is *pro-competitive* behavior that the antitrust laws encourage, rather than prohibit.  *See Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 114 (1984) (if challenged business practice "produced procompetitive efficiencies, [it] would increase output and reduce the [relevant] price," whereas "operat[ing] to raise prices and reduce output" are "hallmarks of anticompetitive behavior"); *see also In re German Auto. Mfrs. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1072–73 (N.D. Cal. 2019) (dismissing Section 1 claim because the "prices [plaintiffs] paid for [the] inputs would presumably have dropped" due to agreements).

Moreover, to the extent the claim is premised on Defendants' alleged promotional activities, under the Sherman Act "co-operative advertising" is a permitted and even procompetitive type of arrangement.  *Maple Flooring Mfrs.' Ass'n* v. *United States*, 268 U.S. 563, 566 (1925)

(acknowledging that "defendants have engaged in many activities . . . which are *admittedly beneficial to the industry and to consumers*; *such as co-operative advertising* and the standardization and improvement of its product") (emphasis added). Such conduct *increases* output and is not a restraint on trade. And even if Defendants had engaged in *false* advertising (they did not), that would still not give rise to a viable antitrust claim. "[F]alse advertising alone hardly ever operates in practice to threaten competition." *Retractable Tech. Inc.*, v. *Becton Dickinson & Co.*, 842 F.3d 883, 895 (5th Cir. 2016) ("*RTI*"); *see also Steward Health Care Sys. LLC* v. *Southcoast Health Sys., Inc.*, 2016 WL 9022444, at *7 (D. Mass. Sept. 2, 2016) ("[E]ven false advertising would not damage competition and hence be a violation of the Sherman Act unless . . . it could potentially exclude competition."). The antitrust laws "do not create a federal law of unfair competition or purport to afford remedies for all torts committed by or against persons engaged in interstate commerce." *Brooke Grp. Ltd.* v. *Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993). Indeed, "[u]nfair competition is still competition . . . [and therefore], absent a demonstration that a competitor's false advertisements had the potential to eliminate, or did in fact eliminate, competition, an antitrust lawsuit will not lie." *RTI*, 842 F.3d at 895; *see* also *Steward*, 2016 WL 9022444, at *7 (dismissing Sherman Act claim premised on allegedly defamatory statements because "even false statements made by a competitor are outside the reach of antitrust laws because, inter alia, the effects of such statements are minimal at best"). At most, as in *RTI*, clean energy competitors allegedly "may have lost some sales or market share because of [Defendants' purported] false advertising, but [they] remain[] [] vigorous competitor[s]" and Plaintiff does "not contend that [Defendants'] advertising erected barriers to entry in the" energy market. *Id.* Accordingly, the Complaint's boilerplate references to a "conspiracy" with an "anticompetitive purpose," Compl. ¶ 731, "fail[] to state a valid § 1 claim." *Twombly*, 550 U.S. at 569.

### B.  Plaintiff Has Not Alleged an Antitrust Injury.

Plaintiff also failed to plead the "threshold requirement" of antitrust injury—competitive harm. *Somers v. Apple, Inc.*, 729 F.3d 953, 964 n.5 (9th Cir. 2013).  Plaintiff must allege an "injury of the type that the antitrust laws were designed to prevent and that flows from that which makes defendants' acts unlawful.'" *Sterling Merchandising, Inc. v. Nestle, S.A.*, 724 F. Supp. 2d 245, 258 (D.P.R. 2010) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). "The injury must originate in proscribed anti-competitive activity . . . and it must also be sufficiently direct, nonspeculative, and measurable." *Id.* (citing *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 533 (1983)).  The antitrust laws are not a panacea to be asserted any time a plaintiff suffers harm from an alleged conspiracy; the alleged conspiracy must relate to "some competition-reducing aspect or effect of the defendant's behavior." *Atl. Richfield*, 495 U.S. at 344; *see also E. Food Servs., Inc. v. Pontifical Cath. Univ. Servs. Ass'n*, 357 F.3d 1, 4 (1st Cir. 2004) ("antitrust claims are [ ] concerned . . . with conduct that stifles competition"); *Recetas Por Menos, Inc. v. Five Dev. Corp.*, 368 F. Supp. 2d 124, 132 (D.P.R. 2005) (Sherman Act concerned with "the competitive *structure* of the market").  As described above, Plaintiff has not done so here; at best, it complains about Defendants' alleged pro-competitive, output-enhancing activities to promote and sell more of their products.

Further, Plaintiff's attempt to use antitrust laws to address alleged *environmental* harms is inappropriate.  Plaintiff's alleged injuries arise from the environmental events of Hurricanes Irma and Maria, which Plaintiff does not, and cannot, allege create "the type of injury the antitrust violation would cause *to competition.*"  *Sterling Merch., Inc. v. Nestle, S.A.*, 656 F.3d 112, 121 (1st Cir. 2011) (emphasis in original).  At most, Plaintiff alleges that Defendants' alleged activities "prevent[ed] market entry by alternative energy sources" and "unfairly ke[pt] the alternative fuel

sources from the marketplace." Compl. ¶¶ 668, 670; *see id.* ¶ 732. To the extent Plaintiff's injury

can be interpreted as the purported deprivation of access to alternative energy sources, however,

such injury is not a cognizable "antitrust injury." *See Schuylkill Energy Res., Inc. v. Pa. Power &*

*Light Co.*, 113 F.3d 405, 414 (3d Cir. 1997) (where plaintiff alleged that defendant had impermis-

sibly curtailed purchases of electric energy and that created harm "by reducing the availability to

consumers of power produced using alternative, environmentally pro-active energy sources," court

found that "[d]epriving consumers of 'energy sources' is not, however, cognizable antitrust in-

jury"); *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236-37 (9th Cir. 1976) (stating that

liability for pollution under antitrust laws was "never intended by the drafters").

Finally, Plaintiff's alleged injuries are far too indirect and attenuated from Defendants' al-

leged conduct to be cognizable. *See Illinois Brick Co. v. Illinois*, 431 U.S. 720, 735 (1977) (anti-

trust law permits recovery by "direct" purchasers); *In re London Silver Fixing, Ltd., Antitrust Litig*.,

332 F. Supp. 3d 885, 908 (S.D.N.Y. 2018) (no antitrust liability where damages depend on "atten-

uated" series of events). As discussed above, *supra* II.B.1, Plaintiff cannot plausibly allege that

the injuries it claims—damage from storms—have any direct connection to Defendants' alleged

conduct, where countless actions of intervening actors lie between them.

### C. Plaintiff Lacks a Cause of Action Under the Antitrust Laws to Assert Injuries Al-legedly Sustained by Its Residents.

Plaintiff's antitrust claim also fails—or must at least be substantially narrowed—because

Plaintiff lacks a cause of action to pursue its claims *parens patriae* on behalf of its residents. Sec-

tion 4 of the Clayton Act, the basis of the antitrust claim, provides a private right of action for

violations of the antitrust laws, 15 U.S.C. § 15a, and Congress has authorized *State* attorneys gen-

eral to "bring a civil action in the name of such State, as *parens patriae* on behalf of natural persons

residing in such State," 15 U.S.C. § 15c. But § 15c "simply created a new procedural device—

*parens patriae* actions by States on behalf of their citizens—to enforce existing rights of recovery under § 4." *Illinois Brick*, 431 U.S. at 735 n.14. By expressly limiting the *parens patriae* cause of action only to suits by an attorney general of a State, Congress necessarily excluded the possibility of a territorial municipality bringing such an action.

## IV. Plaintiff's Puerto Rico Law Claims Are Barred By Federal Law and Are Inadequately Pleaded (Claims 1, 2, 3, 9, 10, 11, 12, 13, 14)

Plaintiff asserts nine claims under Puerto Rico law: Claim 1 (Common Law Consumer Fraud); Claim 2 (Conspiracy to Commit Common Law Consumer Fraud); Claim 3 (Violation of Puerto Rico Rule 7); Claim 9 (Public Nuisance); Claim 10 (Strict Liability – Failure to Warn); Claim 11 (Strict Liability – Design Defect); Claim 12 (Negligent Design Defect); Claim 13 (Private Nuisance); and Claim 14 (Unjust Enrichment). Although these claims vary in their elements, as pleaded, they turn on the same core factual allegations and fail for three independent reasons.

First, claims for injuries due to transboundary pollution can be governed only by federal law, because the federalism principles embodied in the structure of the Constitution leave no room for state or territorial law to govern these types of interstate or international issues. And even if the Constitution did not preclude these claims, the Clean Air Act preempts state-law causes of action that would have the effect of regulating out-of-state emissions. Second, the allegations fail to state claims under Puerto Rico law. Third, Plaintiff cannot seek relief on behalf of its residents.

### A. Federal Law Governs Plaintiff's Purported Puerto Rico Law Claims.

Each of the purported Puerto Rico law claims depends on proof of harms caused by quintessentially interstate and international activity: the worldwide combustion of fossil fuels and other sources of emissions and their resulting accumulation in the atmosphere, which in turn has allegedly altered the global climate. Plaintiff does not contend that the production, allegedly fraudulent marketing, and combustion of fossil fuels *exclusively within the boundaries of Puerto Rico* have

altered the world's climate. Nor does Plaintiff allege that any supposedly deceptive statements by Defendants within Puerto Rico are responsible for climate change. Rather, the Complaint targets publications and statements by Defendants and others around the country and the globe, as well as corresponding sales of fossil fuels on an equally national and global scale. *See*, *e.g.*, Compl. ¶ 37 (alleging each Defendants' supposed "global industrial [GHG] emissions from 1965-2017"), ¶ 575 (alleging that Defendants' purported global "collective emissions were a substantial factor in the increase in intensity of the 2017 Atlantic Hurricane Season"). Given the interstate and international sources of the emissions allegedly causing Plaintiff's injuries, federal law precludes and preempts application of Puerto Rico law. *See* U.S. Const. Art. VI, cl. 2.

### 1. Plaintiff's Claims Intrude Upon, and Are Precluded and Preempted by Federal Constitutional Structure, Law, and Policy.

"For over a century, a mostly unbroken string of cases has applied federal law to disputes involving interstate air or water pollution." *City of New York v. Chevron Corp.*, 993 F.3d 81, 91 (2d Cir. 2021). One State cannot apply its own law to claims dealing with "air and water in their ambient or interstate aspects," because, under our Constitution in that context, "borrowing the law of a particular State would be inappropriate." *AEP*, 564 U.S. at 421–22. "[B]asic interests of federalism … demand[]" this result. *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 n.6 (1972). This rule flows from a basic premise that, by virtue of the federal structure of our Constitution, "a few areas, involving uniquely federal interests, are so committed by the Constitution . . . to federal control that state law is pre-empted." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) (citation omitted). These exclusively federal areas include "interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations," and other areas "in which a federal rule of decision is 'necessary to protect uniquely federal interests.'"; in such cases, "our federal system does not permit the controversy to be resolved under state law." *Tex.*

*Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640-41 (1981).  "[T]he Constitution implicitly forbids that exercise of power because the interstate nature of the controversy makes it inappropriate for state law to control."  *Franchise Tax Bd. Of Cal. v. Hyatt*, 139 S. Ct. 1485, 1498 (2019) (cleaned up).  Allowing a single State's law to govern claims based on interstate or international environmental phenomena would permit one State to "impose its own legislation on … the others," violating the "cardinal" principle that "[e]ach State stands on the same level with all the rest." *Kansas v. Colorado*, 206 U.S. 46, 97 (1907).  Plaintiff's claims violate these fundamental principles because they allege that Plaintiff's injuries are the result of Defendants' and others' nationwide (indeed, global) conduct producing interstate and global emissions that in turn lead to global climate change that allegedly injured Plaintiff.

The Second Circuit recently affirmed dismissal of a suit with similar claims.  The City of New York alleged that "a group of [energy companies including Defendants in this case] are primarily responsible for global warming and should bear the brunt of these costs," even though "every single person who uses gas and electricity . . . contributes to global warming."  *City of New York*, 993 F.3d at 86.  New York City brought tort claims for nuisance and trespass under New York law alleging, as here, that the defendants engaged in deception and concealment in the sale of their products and seeking damages to the City caused by global emissions.  New York alleged that the defendants "have known for decades that their fossil fuel products pose a severe risk to the planet's climate" and yet "downplayed the risks and continued to sell massive quantities of fossil fuels." *Id.* at 86–87.  The Second Circuit rejected these claims:  "Stripped to its essence, . . . the question before us is whether a nuisance suit seeking to recover damages for the harms caused by global greenhouse gas emissions may proceed under New York law. Our answer is simple: no."  *Id.*

In reaching this conclusion, the Second Circuit emphasized that the dispute "implicate[d] two

federal interests that are incompatible with the application of state law"—namely, the "overriding need for a uniform rule of decision" on matters influencing national energy and environmental policy and the "basic interests of federalism." *Id*. at 91–92. The court explained that applying state law would "risk upsetting the careful balance that has been struck between the prevention of global warming, a project that necessarily requires national standards and global participation, on the one hand, and energy production, economic growth, foreign policy, and national security, on the other." *Id*. at 93. "[M]unicipalities may [not] utilize state tort law to hold multinational oil companies liable for the damages caused by global greenhouse gas emissions," and the Court "cannot condone such an action" because such plaintiffs "seek[] to replace [a series of interlocking and] carefully crafted frameworks [for regulating emissions]—which are the product of the political process— with a patchwork of claims under state nuisance law." *Id.* at 86. Plaintiff's case here, like New York's, "hinges on the link between the release of greenhouse gases and the effect those emissions have on the environment generally," and Plaintiff's claimed damages stem entirely from global emissions. *Id*. at 97. Indeed, Plaintiff's theory is that Defendants' alleged "deception" induced an unreasonably high level of global emissions, which purportedly exacerbated climate change. As a matter of constitutional structure, only federal law can govern such a sweeping theory that seeks to impose and recover for a duty of care beyond Puerto Rico. Accordingly, federal law precludes and preempts Plaintiff's commonwealth law claims.[21]

The Delaware Superior Court recently reached a similar conclusion in a materially identical

---

[21] Other courts have reached the same conclusion. *See City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466, 471-72 (S.D.N.Y. 2018) (claims of this sort "are ultimately based on the 'transboundary' emission of greenhouse gases," so "our federal system does not permit the controversy to be resolved under state law"); *City of Oakland v. BP P.L.C.*, 325 F. Supp. 3d 1017, 1028 (N.D. Cal. 2018), *vacated and remanded on other grounds*, 960 F.3d 570 (9th Cit. 2020), *opinion amended and superseded on other grounds on denial of reh'g*, 969 F.3d 895 (9th Cir. 2020) (same); *but see City & Cnty. of Honolulu v. Sunoco LP*, 537 P.3d 1173 (Haw. 2023). And other courts have dismissed similar lawsuits because these purportedly local suits "seek[] to impose liability and damages on a scale unlike any prior environmental pollution case." *Native Vill. of Kivalina v. ExxonMobil Corp.*, 663 F. Supp. 2d 863, 876 (N.D. Cal. 2009), aff'd, 696 F.3d 849, 858 (9th Cir. 2012). The federal Constitution precludes such overreach.

case, holding that claims—like Plaintiff's Puerto Rico law claims here—ostensibly predicated on allegedly misleading marketing but "seeking damages for injuries resulting from out-of-state or global greenhouse emissions and interstate pollution" are "beyond the limits of [state] common law." *Delaware*, 2024 WL 98888, at *9. That principle bars *all* of Plaintiff's Puerto Rico law claims here, which necessarily seek damages for interstate and international emissions.

That the Clean Air Act, rather than federal common law, now generally governs domestic interstate (but not international) emissions, does not mean that any one State's or Commonwealth's law may regulate emissions outside its borders. As *City of New York* held, "state law does not suddenly become presumptively competent to address issues that demand a unified federal standard simply because Congress saw fit to displace a federal court made standard with a legislative one"; indeed, such an argument is "too strange to seriously contemplate." 993 F.3d at 98-99. The reason that federal common law arose initially is "because state law cannot be used." *Id.*[22]

The First Circuit's decision in *Rhode Island v. Shell Oil Products Co., L.L.C.*, 35 F.4th 44 (1st Cir. 2022), is not to the contrary. *Rhode Island* held only that the defendants in a state-law action alleging nuisance, products liability, trespass, impairment of public trust resources, and state environmental statutes could not *remove* to federal court on the basis of federal common law—*i.e.*, that those claims do not "arise under" federal law for purposes of 28 U.S.C. § 1331. Indeed, the First Circuit expressly distinguished *City of New York* because *Rhode Island* called for the application of "the heightened standard unique to the removability inquiry." *Rhode Island*, 35 F.3d at 55. *Rhode Island* is no barrier to this Court's application of the "preemption defense" consistent with the body of federal case law rejecting on the merits claims similar to those Plaintiff presses

---

[22] The CAA does not apply beyond U.S. borders, and thus it does not displace federal common law as to international emissions. *Id.* at 101. *Accord Delaware*, 2024 WL 98888, at *9 (climate change claims "seeking damages for injuries resulting from out of state or global greenhouse emissions" are "beyond the limits of [state] common law").

here. *City of New* York, 993 F.3d at 94.

Nor would dismissal leave these matters unregulated. Global energy production is one of the most regulated activities in the world. The federal government, exercising its exclusive constitutional prerogative to regulate transboundary pollution issues, has imposed various regulations concerning matters of "environmental protection," which falls within the "national legislative power" over commerce. *AEP*, 564 U.S. at 421. These regulations, including under the Clean Air Act, 42 U.S.C. § 7401, reflect delicate cost-benefit analyses intended to balance tradeoffs between energy production and environmental concerns, *see AEP*, 564 U.S. at 426-27. The recent Inflation Reduction Act makes many of the same tradeoffs, for example, investing in Alaskan oil drilling while also investing in clean energy—reflecting the federal government's decision that economic incentives rather than mandates (or worse, piecemeal litigation) should guide the transition to clean energy. Pub. L. No. 117-169, 136 Stat. 1818 (2022).

The federal government's decisions regarding fossil fuels and climate change also "require consideration of competing social, political, and economic forces," not to mention "economic [and] defense considerations." *Juliana v. United States*, 947 F.3d 1159, 1167 (9th Cir. 2020). The federal government "affirmatively promotes fossil fuels in a host of ways, including beneficial tax provisions, permits for imports and exports, subsidies for domestic and overseas projects, and leases for fuel extraction on federal land." *Id*. Imposing tort liability would undermine such policies. The unworkable consequences that would ensue if municipalities could each seek to wield local law to extract massive damages for harms allegedly caused by interstate and international emissions confirm that the Constitution leaves no room for such claims.

### 2. Plaintiff's Claims Are Precluded and Preempted Because They Intrude On Foreign Affairs.

The U.S. Constitution "allocat[es] . . . the foreign relations power to the National Government

in the first place." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 413 (2003). "Our system of government . . . imperatively requires that federal power in the field affecting foreign relations be left entirely free from local interference." *Zschernig v. Miller*, 389 U.S. 429, 442-43 (1968) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 64 (1941)); *Garamendi*, 539 U.S. at 418 (same). Thus, state "regulations must give way if they impair the effective exercise of the Nation's foreign policy." *Zschernig*, 389 U.S. at 440; *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 193-94 (1983) (observing that the "Federal Government" must not be prevented from "speaking with one voice in international trade") (quotation omitted). "[E]ven in absence of a treaty, a State's policy may disturb foreign relations." *Id.* Accordingly, "state action with more than incidental effect on foreign affairs is preempted, even absent any affirmative federal activity in the subject area of the state law, and hence without any showing of conflict." *Garamendi*, 539 U.S. at 418.

Plaintiff's claims have far more than an "incidental" effect on foreign affairs. Plaintiff seeks to impose monetary liability and require abatement of supposed injuries allegedly caused in Puerto Rico, not by the production, marketing, and sale of fossil fuels only in Puerto Rico or even only in the United States. Rather, Plaintiff expressly premises its claims on effects in Puerto Rico purportedly arising from "global" emissions by both Defendants and entities they do not own or control. *See, e.g.*, Compl. ¶¶ 37, 575. But, of course, global emissions from Defendants' products and those of their alleged joint venture partners are necessarily the result of activities undertaken in foreign countries, including activities undertaken by foreign governments. Indeed, some of the joint venture partners whose emissions Plaintiff attempts to attribute to Defendants are owned in part by foreign governments. And the Complaint repeatedly notes that Defendants produce and sell their fossil fuel products in dozens of countries around the world. *See, e.g.*, Compl. ¶¶ 69, 81, 96, 107, 118, 127, 149. What is more, the Complaint casts as actionable misconduct Defendants'

alleged lobbying activities at international gatherings of foreign nations to discuss regulation of worldwide usage of fossil fuels.  *See, e.g.*, *id.* ¶ 360.

Plaintiff seeks to impose monetary liability for Defendants' global exploration, production, marketing, sale, and third-party combustion of fossil-fuel products in other nations on the theory that those activities caused environmental effects worldwide, including in Puerto Rico.  Because this extension of Puerto Rico law would affect the energy policies of foreign nations, and thus the relations of the United States, it would intrude upon the exclusive purview of the federal government, as the federal government has noted in similar litigation.  *See* Brief for the United States, *City of Oakland v. BP p.l.c.*, 2019 WL 2250196, at *15 (9th Cir. May 17, 2019) ("Where, as here, the Cities seek to project state law into the jurisdiction of other nations, the potential is particularly great . . . for interference with United States foreign policy.").  At a minimum, the claims must be dismissed to the extent they seek damages based on the exploration, production, marketing, sale, or combustion of fossil fuels and resulting emissions outside the United States.

**B.  Plaintiff's Puerto Rico Law Claims Are Preempted by the Clean Air Act.**

Even if the Constitution did not preclude the application of Puerto Rico law to Plaintiff's claims, Plaintiff's claims would still fail because the Clean Air Act preempts state-law causes of action that would have the effect of applying state law to out-of-state greenhouse gas emissions.[23] The U.S. Supreme Court held more than 30 years ago that the Clean Water Act "precludes a court from applying the law of an affected State against an out-of-state source" because doing so would "upset[] the balance of public and private interests so carefully addressed by the Act."  *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987).  Specifically, the Court relied on the Clean Water Act's

---

[23] The Clean Air Act defines "State" to include the Commonwealth of Puerto Rico, 42 U.S.C. § 7602(d), and "[t]he test for federal preemption of a Puerto Rico law is the same as the test under the Supremacy Clause for preemption of the law of a state." *Medicaid and Medicare Advantage Prods. Ass'n of P.R., Inc. v. Emanuelli Hernández*, 58 F.4th 5, 10-11 (1st Cir. 2023) (citing *P.R. Dep't of Consumer Affairs v. Isla Petroleum Corp.*, 485 U.S. 495, 499 (1988)).

"pervasive regulation and the fact that the control of interstate pollution is primarily a matter of federal law" in concluding that state-law claims are preempted to the extent they target out-of-state sources of pollution. *Id.* at 492. The Clean Air Act shares all the features of the Clean Water Act that led the Supreme Court to find preemption of State regulation of interstate pollution. Both laws authorize "pervasive regulation" that entails a "complex" balancing of economic costs and environmental benefits, *id.* at 492, 494–95; both laws provide States with a circumscribed role that is "subordinate" to the EPA's role as the federal environmental regulatory agency, *id.* at 491; and both ensure that "control of interstate . . . pollution is primarily a matter of federal law," *id.* at 492.

Accordingly, every federal appellate court to consider the question has held that the preemptive scope of the Clean Air Act is materially identical to that of the Clean Water Act.[24] Through the Clean Air Act, Congress has enacted a comprehensive scheme to regulate interstate air pollution, including economy-wide greenhouse gas emissions resulting from fossil fuels. The EPA is actively carrying out that mandate, promulgating regulations to set permissible levels for greenhouse gas emissions from mobile and stationary sources, while balancing the societal costs and benefits of such regulations against the backdrop of national energy and environmental policy. Plaintiff's claims—which seek to remedy harms that they expressly connect to emissions stemming from the use of Defendants' products in every State (and around the world), *see, e.g.*, Compl. ¶¶ 1, 36-37, 666—stand in direct conflict with this statutory regime. Imposing liability for the sale and use of oil and gas products outside of Puerto Rico would force Defendants to conform their external conduct to an assessment under Puerto Rico law—rather than the Clean Air Act—of the relative benefits and risks of fossil fuels. *See, e.g.*, *Ouellette*, 479 U.S. at 495 (damages imposed

---

[24] *See, e.g.*, *Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 693 (6th Cir. 2015) ("[C]laims based on the common law of a non-source state . . . are preempted by the Clean Air Act."); *Bell v. Cheswick Generating Station*, 734 F.3d 188, 194–96 & n.6 (3d Cir. 2013) (same); *North Carolina, ex rel. Cooper v. Tenn. Valley Auth.*, 615 F.3d 291, 306 (4th Cir. 2010) (same).

by one State's court can force a defendant to "change its methods of doing business and controlling pollution to avoid the threat of ongoing liability"). Indeed, a Delaware court recently ruled in a similar climate lawsuit brought under state law that *Ouellette* is on all fours with the climate change theory at issue here, and thus that claims "seeking damages for injuries resulting from out-of-state or global greenhouse emissions and interstate pollution[] are pre-empted by the CAA." *Delaware*, WL 98888, at *9.

While *AEP* reserved the narrow question whether to allow state-law claims brought under "the law of each State *where the defendants operate powerplants*," 564 U.S. at 429 (emphasis added), that potential exception merely proves the rule—one State cannot apply its law to claims based on emissions from another State. Here, Plaintiff intentionally and expressly targets interstate and international emissions. But Plaintiff is suing under its own Commonwealth's law—which federal law prohibits. *See Ouellette*, 479 U.S. at 495; *City of New York*, 993 F.3d at 92.

The Clean Air Act thus bars the attempt to use Puerto Rico law to obtain damages for injuries allegedly caused by interstate emissions. "The inevitable result of [sustaining these claims] would be that [Puerto Rico] and other States [and Commonwealths] could do indirectly what they could not do directly—regulate the conduct of out-of-state sources." *Ouellette*, 479 U.S. at 495.

## C. Plaintiff Has Not Pleaded Cognizable Puerto Rico Law Claims. (Claims 1, 2, 3, 9, 10, 11, 12, 13, 14)

Plaintiff's Puerto Rico claims fail because such claims do not exist or Plaintiff fails to plead their elements, much less with the particularity Rule 9(b) requires where "the central allegations . . . 'effectively charge fraud.'" *Foisie*, 967 F.3d at 49 (citation omitted).

### 1. Plaintiff's Fraud-Based Claims Are Not Cognizable. (Claims 1, 2, 3)

Plaintiff's first, second, and third causes of action all allege some form of fraud. Plaintiff lacks causes of action to assert any of these claims.

For its first and second causes of action, Plaintiff purports to assert "common law consumer fraud" and conspiracy to do the same. But as a civil law jurisdiction, *Álvarez-Crespo v. Olavarría-Rivera*, 994 F.2d 35, 36 (1st Cir. 1993), Puerto Rico does not recognize "*common law* consumer fraud."[25] And "Puerto Rico has no specific consumer protection statute that provides a private right of action for consumer fraud." *Simonet v. SmithKline Beecham Corp.*, 506 F. Supp. 2d 77, 91 (D.P.R. 2007); *see also Ramos v. Hyundai Motor Co.*, 431 F. Supp. 2d 209, 212 (D.P.R. 2006), *aff'd sub nom. Díaz-Ramos v. Hyundai Motor Co.*, 501 F.3d 12 (1st Cir. 2007). Nor is there a cause of action for civil conspiracy. *See Next Step Med. Co., Inc. v. Biomet, Inc.*, 2015 WL 993095, at *13 (P.R. Cir. Jan. 30, 2015) (holding that Puerto Rico law does not recognize civil conspiracy pursuant to Article 1802 of the 1930 Civil Code) (Ex. 1). Because Plaintiff's fraud and conspiracy to commit civil fraud claims are not cognizable under Puerto Rico law, they should be dismissed.

To try to save these claims, Plaintiff cites the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45, and FTC regulations, 16 C.F.R. part 260. Compl ¶¶ 622-23. But "the FTC Act contains no private right of action." *Liu v. Amerco*, 677 F.3d 489, 492 (1st Cir. 2012). Nor can Plaintiff sue under FTC regulations, which "do not confer any rights on any person and do not operate to bind the FTC or the public." 16 C.F.R. § 260.1. "Regulations alone cannot create private rights of action; the source of the right must be a statute." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 (1st Cir. 2007) (citing *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001)).

For its third cause of action, Plaintiff purports to assert a cause of action under the Puerto Rico Rules Against Misleading Practices and Advertisements. P.R. Dep't of Consumer Aff., Regul. 9158 at Rule 14 (Feb. 6, 2020) ("Consumer Rules").[26] But the Consumer Rules protect consumers,

---

[25] Because the alleged acts and omissions occurred before 2020, Plaintiff's claims are governed by the 1930 Civil Code, which does not authorize punitive damages. *See* Article 1815, 2020 Civil Code, P.R. Laws Ann. tit. 31, § 11720.
[26] Plaintiff cites former Rule 7(A) and (B) of the Consumer Rules, provisions that now appear in Rule 14.

which is limited to "natural persons." *Id.* at Rule 5(i).

Further, there is no private right of action under the Consumer Rules; the Department of Consumer Affairs ("DACO") has exclusive enforcement jurisdiction. *See Hipólito Rivera Ortiz v. Municipio de Guaynabo*, 141 P.R. Dec. 257, 268, 269–70 (1996) (explaining that agencies have exclusive jurisdiction to enforce regulations when established by their enabling acts) (Ex. 2). The Puerto Rico Supreme Court has held that Article 6(x) of DACO's enabling act confers primary exclusive jurisdiction to the agency with respect to certain antitrust or trade regulation matters. *See Aguadilla Paint Center v. Esso*, 183 P.R. Dec. 901, 928 (2011) (Ex. 3). The provisions of DACO's enabling act that allow it to enforce the Consumer Rules should not be read any differently.[27] *See* P.R. Laws Ann. tit. 31, § 341e. Thus, Plaintiff cannot sue for violations of the Consumer Rules.

Additionally, consumer fraud must be pleaded with particularity, which Plaintiff fails to do. *See, e.g.*, *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21 (1st Cir. 2017). As discussed above, Plaintiff fails to plead the time, place, and content of the allegedly fraudulent statements. The putative fraud claims thus must be dismissed for that additional reason. *See* Fed. R. Civ. P. 9(b).

Finally, just as with its RICO claims, Plaintiff cannot establish proximate causation for the same reasons stated above. *See Baum-Holland v. Hilton El Con Mgmt., LLC*, 964 F.3d 77, 88 (1st Cir. 2020) (proximate cause is shown only where the alleged act or omission "in fact caused the injuries and the defendant could have reasonably foreseen that the injuries (or related harms) would result from his actions").

---

[27] *Ocasio Salgado v. NDA Services Corp.*, 2019 WL 4410340 (P.R. Cir. June 21, 2019) is not precedential, considered a prior version of the rules, and did not address corporate or municipal plaintiffs.

## 2. Plaintiff Fails to Plead Any Design "Defect" That Caused Its Injuries. (Claims 11, 12)

The 1930 Civil Code has been interpreted to provide causes of action for negligent and strict liability design defect. P.R. Laws Ann., tit. 31 § 5141; *see Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 449 F.3d 85, 88 (1st Cir. 2006). To establish negligent design defect, a plaintiff must show "that (1) defendant owed a duty to prevent the harm by conforming to a reasonable standard of conduct, (2) defendant breached that duty through a negligent act or omission, and (3) the negligent act or omission caused the plaintiff's harm." *Carballo-Rodríguez v. Clark Equip. Co.*, 147 F. Supp. 2d 66, 72 (D.P.R. 2001). "To establish strict liability . . . , a plaintiff must prove that (1) the product had a defect that made the product unsafe, and (2) the defect proximately caused the plaintiff's injury." *Id.* at 71. "[P]roof of causation is essential." *Muñiz-Núñez v. Am. Home Prod. Corp.*, 582 F. Supp. 459, 462 (D.P.R. 1984). The plaintiff "'must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'" *Id.* (quoting W. Prosser, *Law of Torts*, § 41 (4th Ed. 1971)). For the same reasons stated above, Plaintiff fails to plead causation for its design defect claims. *Supra* Part II.B.1.

Additionally, Plaintiff has not alleged any defect. A design is defective only if a plaintiff can satisfy either the consumer expectation test or the cost-benefit analysis test. *See Vázquez-Filippetti v. Banco Popular de Puerto Rico*, 504 F.3d 43, 52 (1st Cir. 2007). Plaintiff satisfies neither.

Under the consumer expectations test, a product is defective only if a plaintiff demonstrates that the product failed to perform as an ordinary consumer would expect when used in the intended (or a reasonably foreseeable) manner. *See Carballo-Rodríguez*, 147 F. Supp. 2d at 71. The

consumer expectations test "is reserved for cases in which the *everyday experience* of the product's users permit a conclusion that the product's designs violated *minimum* safety assumptions." *Muñiz Negrón* v. *Worthington Cylinder Corp.*, 2021 WL 1199014, at *4 (D.P.R. Mar. 30, 2021). It is irrelevant for "cases involving complex technical matters." *Id.*

Plaintiff fails to allege any basis for applying the consumer expectations test. Indeed, Puerto Rico courts have declined to apply the consumer expectations test to matters far simpler than global climate change, such as automobile safety features. *See e.g.*, *Fremaint v. Ford Motor Co.*, 258 F. Supp. 2d 24, 29 (D.P.R. 2003) (consumer expectation test not applicable because "an ordinary consumer would simply not know what minimum safety to expect from" the SUV model at issue when plaintiff lost control of the vehicle); *Collazo-Santiago v. Toyota Motor Corp.*, 937 F. Supp. 134 (D.P.R. 1996), *aff'd*, 149 F.3d 23 (1st Cir. 1998) (consumer expectations test inapplicable because the ordinary consumer would probably not know about the technical aspects of the airbag design in defendant's vehicles).

Even assuming the consumer expectation test applied, it would not be satisfied. As the Complaint alleges, it has long been well known that carbon emissions are an inherent feature of fossil fuel products when combusted by end users. And a design defect claim cannot be stated where the presence of the alleged defect is a characteristic of the product itself. *Kotler v. Am. Tobacco Co.*, 926 F.2d 1217, 1225 (1st Cir. 1990) (rejecting liability for design defect absent a showing that the product was defective in a way aside from its inherent characteristics).

In any event, Plaintiff does not and cannot allege that "the ordinary consumer in Puerto Rico" was unaware of the alleged impact of fossil fuels on global climate change. *See Prado Álvarez v. R.J. Reynolds Tobacco Co.*, 313 F. Supp. 2d 61, 74 (D.P.R. 2004) (rejecting design defect claim based on injury from using cigarettes because "there [had] been widespread, pervasive common

knowledge . . . that cigarette smoking can cause serious, life-shortening diseases"), *abrogated on other grounds*, *Portugués-Santana v. Rekomdiv Int'l*, 657 F.3d 56 (1st Cir. 2011); *see also supra* Part I (documenting long-held knowledge of the alleged link between greenhouse gas emissions and climate change in Puerto Rico.  In other words, Plaintiff has not pleaded that Defendants' fossil fuel products failed to perform as an ordinary consumer would expect when used in the intended (or a reasonably foreseeable) manner.  *See Carballo-Rodríguez*, 147 F. Supp. 2d 66.

Plaintiff fares no better under the cost-benefit analysis test.  *See id.* at 72.  To satisfy that test, a plaintiff must first establish that the defendant's product's design proximately caused its injuries, after which the burden shifts to the defendant to show that the "benefits of the design at issue outweighs the risk of danger inherent in such a design."  *Muñiz Negrón*, 2021 WL 1199014, at *5 (quoting *Quintana-Ruiz v. Hyundai Motor Corp.*, 303 F.3d 62, 71 (1st Cir. 2002)).  Again, Plaintiff cannot plausibly allege that the purportedly defective design of Defendants' products was the prox-imate cause of Plaintiff's climate change injuries.  That is the end of the inquiry.

### 3.  Defendants Had No Duty to Warn of Climate Risks (Claim 10)

Plaintiff's failure-to-warn claim also fails because Defendants had no duty to disclose infor-mation about climate risks.  No Puerto Rico court has recognized a duty to warn "consumers, the public, and regulators" of climate risks.  Compl. ¶ 333.  Puerto Rico courts instead recognize a duty to warn that "extends to all the *uses* that can be reasonably foreseen by the defendant"—that is, a duty to warn product *users* "to assure the safest *use* of the product."  *Silva v. Am. Airlines, Inc.*, 960 F. Supp. 528, 533 (D.P.R. 1997) (emphases added).  But Plaintiff does not allege, as it must, that Defendants violated a duty to warn *users* of specific dangers *to those users* presented by *their use* of Defendants' products; instead, it alleges that Defendants violated a duty to warn the world about climate risks resulting from the *aggregate global use* of fossil fuels combined with

global policy decisions. No such sweeping duty exists under Puerto Rico law—which, in any event, would violate the First Amendment—and this Court should not recognize it under Puerto Rico law in the first instance.[28] Plaintiff also does not plausibly allege that any warning would have made a difference with respect to the 2017 hurricanes.

Finally, the widespread public discussion of climate risks during the relevant period would vitiate any duty. Under the common knowledge doctrine, "a manufacturer cannot be held liable under either strict liability or negligence for failure to warn of a danger commonly known to the public." *Cruz-Vargas v. R.J. Reynolds Tobacco Co.*, 348 F.3d 271, 275 (1st Cir. 2003). Because fossil-fuel-related climate risks were common knowledge to average consumers, Defendants cannot be liable for failing to warn. As for the government Plaintiff, the sophisticated buyer doctrine "provides that '[a] manufacturer is not liable to a sophisticated user of its product for failure to warn of a risk, harm, or danger, if the sophisticated user knew or should have known of that risk, harm, or danger.'" *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, No. 07-cv-10470, 2015 WL 3763645, at *4 & n.55 (S.D.N.Y. June 16, 2015) (quoting *Johnson v. American Standard, Inc.*, 43 Cal.4th 56, 74 (Cal. 2008)) (making *Erie* prediction on Puerto Rico law). This is because "'the failure to provide warnings about risks already known to a sophisticated purchaser usually is not a proximate cause of harm resulting from those risks suffered by the buyer's employees or downstream purchasers.'" *Id.* (quoting *Johnson*, 43 Cal. 4th at 74). The link between greenhouse gas emissions and climate change has been widely publicized for decades. Defendants could not have had a duty to warn sophisticated public entities like Plaintiff or its residents about a danger

---

[28] "In making an informed '*Erie* prediction' when state courts have not spoken directly, federal courts are restrained. A 'plaintiff, who made a deliberate choice to sue in federal court rather than in . . . state court, is not in a position to ask us to blaze a new trail that the [state] courts have not invited." *Aronstein v. Massachusetts Mut. Life Ins. Co.*, 15 F.4th 527, 534 (1st Cir. 2021) (citations omitted; alteration and omission in original); *see also City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002) ("[I]t is not the role of a federal court to expand state law in ways not foreshadowed by state precedent.").

about which the public was well-aware.

### 4. Plaintiff's Nuisance Claims Fail. (Claims 9, 13)

The Puerto Rico Code of Civil Procedure provides causes of action for private and public nuisance. P.R. Laws Ann. tit. 32, § 2761. Plaintiff must allege facts sufficient to show (among other things) a causal nexus between Defendants' acts or omissions and the harm Plaintiff suffered. *See Martínez Romero v. Super Asphalt Pavement, Co.*, 2018 WL 3037397, at *11 (P.R. Cir., Apr. 23, 2018) (Ex. 4); *Casiano Sales v. Lozada Torres*, 91 P.R.R. Dec. 473 (1964). For the same reasons stated above, *see supra* Part II.B.1, Plaintiff fails to plead causation for its nuisance claims.

Moreover, the purposes of § 2761 are (1) to obtain injunctive relief in the form of abatement of the nuisance, and (2) to obtain indemnification. *See Casiano* Sales, 91 P.R.R. at 483. Yet Plaintiff does not seek to enjoin Defendants' oil and coal activities, Compl. ¶ 10, so it is unclear how this lawsuit could abate the alleged nuisance. And if Plaintiff cannot obtain abatement, it cannot obtain damages because both purposes of § 2761 must be implemented in tandem. *See Casiano Sales*, 91 P.R.R. at 483.

### 5. Plaintiff Cannot Sue for Unjust Enrichment Because It Seeks Other Legal Remedies. (Claim 14)

Unjust enrichment "is unavailable if the plaintiff may seek other forms of relief." *Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57, 65 (D.P.R. 2010); *see also P.R. Tel. Co. v. Sprint-Com, Inc.*, 662 F.3d 74, 97 (1st Cir. 2011); *In re MTBE Prods. Liab. Litig.*, No. 1:00-cv-1898, 2013 WL 5230814, at *11 (S.D.N.Y. July 17, 2013) ("This principle applies even when unjust enrichment is sought in the alternative."). "When plaintiffs allege conduct that is covered by an applicable statute, even if plaintiffs have failed to sufficiently allege that claim or if the claim is time-barred, it is inappropriate to allow a claim for unjust enrichment." *In re Fin. Oversight & Mgmt. Bd.*, 578 F. Supp. 3d 267, 296 (D.P.R. 2021), *aff'd*, 54 F.4th 42 (1st Cir. 2022). Because

Plaintiff has asserted thirteen other claims under Puerto Rico and federal statutes for the same conduct and injuries, it may not pursue unjust enrichment. Even though Plaintiff "ha[s] failed to sufficiently allege th[ose] claim[s]," its unjust enrichment claim still fails. *Id.*; *see also Ortiz Andújar v. E.L.A.*, 122 P.R. Offic. Trans. 774, 780, 1988 WL 580737 (P.R. 1988).

### D. Plaintiff Lacks a Cause of Action Under Puerto Rico Law to Assert Injuries Allegedly Sustained by Its Residents.

Plaintiff cannot seek representative damages. It has no cause of action to pursue claims for damages suffered by it "citizens." *Puerto Rico Pub. Housing Admin. v. U.S. Dept. of Hous. & Urban Dev.*, 59 F. Supp. 2d 310, 326 n.20 (D.P.R. 1999) ("A city, as opposed to a state, usually lacks *parens patriae* standing.") (citing *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122, 131 (9th Cir. 1973)). Because the Municipality of San Juan is a political subdivision of the Commonwealth, it lacks the powers of a sovereign, including a right to bring a suit *parens patriae*: "as entities created by provision of the Legislative Assembly, [municipalities'] powers are those expressly delegated to them by law or implied therein." *Arroyo Cruz v. Mun. de San Juan,* 2016 WL 885382, at *6 (P.R. Cir., Jan. 28, 2016) (Ex. 5) (citing *Café Rico, Inc. v. Mun. de Mayagüez*, 155 P.R. Dec. 548, 553–54 (2001) (Ex. 6)); *Aut. de Puertos v. Mun. de San Juan*, 23 P.R. Offic. Trans. 437, at 7 n.1, 1989 WL 607311, (P.R. 1989); Article 1.005 of the Municipal Code.[29]

The Municipal Code of Puerto Rico confirms that municipalities have the power to bring suits only when those suits are municipal and local in nature. *See* Article 1.006 of the Municipal Code, P.R. Laws Ann. tit. 21, § 7011); *see also* Article 1.008 of the Municipal Code, P.R. Laws Ann. tit.

---

[29] Municipalities have no inherent authority. *See Reynolds v. Sims*, 377 U.S. 533, 575 (1964) ("Political subdivisions of States" are "created as convenient agencies for exercising such of the governmental powers of the state as may be entrusted to them."); *Padrón v. People of Puerto Rico ex rel Castro*, 142 F.2d 508, 510 (1st Cir. 1944) (a municipal corporation "is a mere agent or instrumentality of the state for the convenient administration of the government").

21, § 7013(o). Without an "express" (or even an "implied") delegation of power from the Legislative Assembly, the Court should not imply a right of action. *Arroyo Cruz*, 2016 WL 885382, at *6.[30] The Court therefore should dismiss all the Puerto Rico law allegations as lacking a cause of action, just as it should for the federal law claims. At the very least, the doctrine of *parens patriae* makes clear that any cause of action that could survive a motion to dismiss would be limited to damages suffered by Plaintiff itself, and not by its residents.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

---

[30] *Accord, e.g.*, *Bd. of Cnty. Comm'rs of Arapahoe Cnty. v. Denver Bd. of Water Comm'rs*, 718 P.2d 235, 241 (Colo. 1986); *Bd. of Comm'rs v. Kokomo City Plan Comm'n*, 330 N.E.2d 92, 101 (Ind. 1975); *Clark Cnty. v. City of Las Vegas*, 574 P.2d 1013, 1014 n.1 (Nev. 1978); *Cnty. of Lexington v. City of Columbia*, 400 S.E.2d 146, 147 (S.C. 1991); *Tuma v. Kerr Cnty.*, 336 S.W.3d 277, 282 (Tex. App. 2010). *See also Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 848 (9th Cir. 1985) ("[P]olitical subdivisions such as [the Town of] Parker cannot sue as *parens patriae* because their power is derivative and not sovereign."); *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1256 n.7 (5th Cir. 1976) ("The City of Safety Harbor does not enjoy the quasi-sovereign status of a state. As a creature of the state, it is not endowed with the same prerogatives in representing the interests of its residents as is the state in protecting the interests of its citizens. . . ." (citations omitted)).

**CERTIFICATE OF SERVICE:** We hereby certify that on this same date the foregoing joint motion was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys and participants of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 8th day of April, 2024.

By: _Roberto C. Quiñones-Rivera_
Roberto C. Quiñones-Rivera
USDC-PR Bar No. 211512
Eduardo A. Zayas-Marxuach
USDC-PR Bar No. 216112
Myrgia M. Palacios-Cabrera
USDC-PR Bar No. 230807
MCCONNELL VALDÉS LLC
P.O. Box 364225
San Juan, PR 00936-4225
Telephone:  787-250-2631
Facsimile:  787-474-9201
E-mail:  rcq@mcvpr.com
E-mail:  ezm@mcvpr.com
E-mail:  mpc@mcvpr.com


Theodore J. Boutrous, Jr. (_pro hac vice_ forthcoming)
William E. Thomson (_pro hac vice_ forthcoming)
Joshua D. Dick (_pro hac vice_ forthcoming)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000
E-mail: tboutrous@gibsondunn.com
E-mail: wthomson@gibsondunn.com
E-mail: jdick@gibsondunn.com

Thomas G. Hungar (_pro hac vice_ forthcoming)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 887-3784
E-mail: thungar@gibsondunn.com

Neal S. Manne (_pro hac vice_ forthcoming)
Erica Harris (_pro hac vice_ forthcoming)
SUSMAN GODFREY LLP
1000 Louisiana, Suite 5100
Houston, TX 77002
Telephone:  713.651.9366
Facsimile:  713.654.6666
E-mail:  nmanne@susmangodfrey.com
E-mail:  eharris@susmangodfrey.com

_Attorneys for Defendant CHEVRON CORPORATION_

By: *s/ Néstor M. Méndez Gómez*
Néstor M. Méndez Gómez
USDC-PR Bar No. 118409
María D. Trelles Hernández
USDC-PR Bar No. 225106
PIETRANTONI MENDEZ & ALVAREZ LLC
Popular Center, 19th Floor
208 Ponce de León Ave.
San Juan, Puerto Rico 00918
Telephone: (787) 274-1212
Facsimile: (787) 274-1470
Email: nmendez@pmalaw.com
Email: mtrelles@pmalaw.com

Theodore V. Wells, Jr. (*pro hac vice* pending)
Daniel J. Toal (*pro hac vice* pending)
Yahonnes Cleary (*pro hac vice* pending)
Caitlin E. Grusauskas (*pro hac vice* pending)
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email: twells@paulweiss.com
Email: dtoal@paulweiss.com
Email: ycleary@paulweiss.com
Email: cgrusauskas@paulweiss.com

*Attorneys for Defendant EXXON MOBIL CORPORATION*


By: s/Kenneth C. Suria
Kenneth C. Suria
USDC-PR Bar No. 213302
ESTRELLA, LLC
P.O. Box 9023596
San Juan, Puerto Rico 00902-3596
Telephone: (787) 977-5050
Facsimile: (787) 977-5090
E-mail: kcsuria@estrellallc.com

Tracie J. Renfroe (*pro hac vice*)
KING & SPALDING LLP
1100 Louisiana, Suite 4100
Houston, TX 77002
Telephone:  (713) 751-3200
Facsimile:  (713) 751-3290
E-mail:  trenfroe@kslaw.com

Oliver Thoma (*pro hac vice*)
West, Webb, Allbritton & Gentry, P.C.
1515 Emerald Plaza
College Station, Texas 77845
Ph: (979) 694-7000
Fax: (979) 694-8000
Email: oliver.thoma@westwebblaw.com

*Attorneys for Defendant MOTIVA ENTERPRISES LLC*


By: s/ David Indiano
David Indiano
USDC-PR Bar No. 200601
Jeffrey M. Williams
USDC-PR Bar No. 202104
INDIANO & WILLIAMS, P.S.C.
207 del Parque Street; 3rd Floor
San Juan, P.R. 00912


Duke K. McCall, III (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave, NW
Washington D.C., 20004


*Attorneys for Defendant OCCIDENTAL PETROLEUM
CORPORATION*

By: *s/Ricardo F. Casellas Sánchez*
Ricardo F. Casellas Sánchez
USDC-PR No. 203114
Heriberto J. Burgos-Pérez
USDC-PR No. 204809
CASELLAS ALCOVER & BURGOS, P.S.C.
2 Tabonuco, Suite 400
San Patricio, PR 00968
Telephone: (787) 756-1400
Facsimile: (787) 756-1401
Email: hburgos@cabprlaw.com
Email: rcasellas@cabprlaw.com

Matthew T. Martens (*pro hac vice* forthcoming)
Ericka Aiken (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
Email: matthew.martens@wilmerhale.com
Email: ericka.aiken@wilmerhale.com

Hallie B. Levin (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
E-mail: hallie.levin@wilmerhale.com

Robert Kingsley Smith (*pro hac vice* forthcoming)
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street,
Boston, MA 02109
Telephone: 617-526-6000
Facsimile: 617-526-5000
E-mail: robert.smith@wilmerhale.com

*Attorneys for Defendant ConocoPhillips*