## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

THE MUNICIPALITY OF SAN JUAN PUERTO RICO,

    Plaintiff

        v.

EXXON MOBIL CORP., ET ALS.

    Defendants

CIVIL NO.: 23-cv-01608 ADC

# PLAINTIFF'S OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF JURISDICTION
# (Dockets 119 and 123)

## Table of Contents

**INTRODUCTION** ....................................................................................................................... 1

**STATEMENT OF FACTS** ........................................................................................................ 4

**LEGAL STANDARD** ................................................................................................................. 6

**ARGUMENT** ............................................................................................................................... 8

    **I. Puerto Rico's Nationwide Jurisdiction Provision Establishes Personal Jurisdiction Over Defendants** ................................................................................................................................... 8

    **II. Defendants' Activity Falls Under Puerto Rico's Long-Arm Statute** ........................................... 9

    **III. Defendants are Subject to Specific Jurisdiction in Puerto Rico** ................................................ 11

      *a. Defendants Purposefully Availed Themselves to Puerto Rico Through In-State Activities* ....... 16

        i. Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245) .................................................................................... 17

      ***b. Plaintiff's Claims "Arise Out Of" and/or "Relate to" Defendants' Contacts with Puerto Rico*** 20

        i.   The Plaintiff's Allegations Sufficiently Relate to Defendants' Conduct in Puerto Rico to Establish Jurisdiction .......................................................................................................................... 14

          A.  Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245) ....................................................................................... 15

      *c. Defendants Have Failed to Show How Exercising Personal Jurisdiction Over Defendants Would Be Unreasonable and How It Would Conflict with Principles of Federalism* .................... 17

        i. Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245) .................................................................................... 20

**CONCLUSION** .......................................................................................................................... 21

**COME NOW** the Plaintiffs, through their undersigned counsel, hereby move and request that the Court enter an order granting Plaintiffs leave to file three (3) omnibus responses in opposition to Defendants' pending motions to dismiss and for judicial notice. In support thereof, Plaintiffs state and pray as follows:

## INTRODUCTION

Plaintiff initiated this action to seek remedies for injuries to the Municipality of Puerto Rico resulting from the Defendants' including BHP Group, extensive efforts to undermine the scientific consensus on global warming and hide the risks associated with their fossil fuel products. Defendants collectively knowingly deceived the municipality leaders and residents, and this action seeks to hold them accountable for propaganda that left them ill-prepared to face the inevitable devastation from national disasters that ensued because of a false sense of security pervaded by the maleficent actors as exposed in Plaintiff's pleadings. Plaintiff's Complaint thoroughly asserts several claims against the Defendants, as set forth in Plaintiff's Response in Opposition to Defendants' Joint Motion to Dismiss for Failure to State a Claim.

Plaintiff's Complaint further sets forth ample allegations to demonstrate personal jurisdiction over the Defendants. Each of the Defendants involved in this lawsuit has sufficient ties to Puerto Rico to support the exercise of personal jurisdiction. The ties establish a pattern of deceptive marketing practices regarding global warming that this Court has the jurisdictional power to allow Plaintiff to seek justice for regarding the resultant grave destruction that resulted from the successful campaigns. Clearly, had Plaintiff been better educated it could have better confronted the catastrophic storms that led to the loss of lives and billions in devastation. The systemic cleansing of the dialogue regarding the use of fossil fuels is at the crux of why this Court has jurisdiction and why the Municipality of San Juan must have its day in Court to seek justice for its residents for the tantamount suffering and devastation that resulted from defendants' heinous and preventable behavior.

Section 1965 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") extends nationwide service of process where the "ends of justice require." *See* 18 U.S.C. § 1965(b). Arguably, all the Defendants can be subject to personal jurisdiction by this Court. However, the statute requires that this Court only needs to find that one defendant has personal jurisdiction for this matter to move forward. Undoubtedly, the extensive marketing, distributing, processing and other actions as plead in the various pleadings establishes prima facie actions against at least one of the defendants to this Court's satisfaction or it should. Defendants are unable to rebut the arguments against its coconspirators because they cannot. This Court should not allow the discordant arguments woven between social policy and a misapprehension of what Plaintiff's plead to find that none of the defendants herein are subject to personal jurisdiction. That simply cannot be the case based upon the pleadings presented herein.

Notwithstanding Section 1965 which affords for jurisdiction as previously stated against one defendant as satisfying for all, all three elements of the specific jurisdiction test are satisfied for each Defendant as artfully plead herein because: (1) they purposefully availed themselves of the privilege of conducting activities in Puerto Rico, where each of them sold, marketed, and promoted their fossil fuel products; (2) Plaintiff's claim arises out of and/or relate to Defendants' production, marketing, and sale of those products in Puerto Rico and their tortious conduct of disseminating disinformation to the Plaintiff in Puerto Rico; and (3) Defendants did not meet their burden to illustrate that exercising personal jurisdiction over them would be unreasonable.

Various arguments including Defendants' also hint that the Plaintiff cannot meet the second prong of the specific jurisdiction test because their injuries were not exclusively caused by their Puerto Rico activities. This conflicts with established case law on personal jurisdiction. In *Ford Motor Co. v. Mont. Eight Judicial Dist. Court*, the Supreme Court clearly rejects the notion

2

"only a strict causal relationship between the defendant's in-state activity and the litigation will do." 141 S. Ct. 1017, 1026 (2021). Rather, it is sufficient that there be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 1025 (cleaned up). Ultimately, the strict causal connection between the allegations brought against the Defendants' actions and Plaintiff's injuries is a merits question, to be determined by the Court at a later pleading stage. Further, the argument regarding specific causation as raised did not address the deceptive propaganda arguments as evinced in Plaintiff's pleadings. Again, that question is at the crux as to why this Court has personal jurisdiction over this litigation and Defendants cannot rebut that, so they are largely silent on the monies and efforts spent to rebut global warming and instead attempt to confuse this Court as to the heart of this instant action. Again, defendants must answer for their conduct that led to the Municipality of San Juan's lack of apprehension for the gravity of what they faced because of global warming resulting in loss of life and property. This action seeks justice for that conduct and this court has jurisdiction to allow it to proceed as plead.

Lastly, even if this Court accepted a more draconian interpretation and required an obligation of strict causation, Plaintiff has plainly demonstrated a causal connection between Defendants' conduct and the injuries. For almost seven decades, Defendants knew that their fossil fuel products were the primary cause of climate change, and that with the increasing production and use of fossil fuels, the effects of climate change due to greenhouse gases would accumulate in deadly and dangerous ways, like the superstorms that have ravaged the Municipality of San Juan. Knowing of these impacts, the Defendants intentionally deceived consumers by disseminating climate disinformation to the public, including consumers and residents of the Municipality of San Juan, and marketed and sold their fossil fuel products in Puerto Rico.

3

The fact that Defendants contribute to climate change in other places does not negate the fundamental link between their actions in Puerto Rico and the extensive damages caused by climate change that occurred during the hurricanes. Had Defendants acted responsibly and educated Plaintiff, the mass devastation and loss of lives could have been mitigated. This action seeks to hold them accountable for their propaganda based on federal statute, Puerto Rico law and common law claims. This Court should afford for this action to proceed for an adjudication on its merits so that justice can be served for those who perished and the billions in devastation that resulted because of defendants' successful propaganda that still permeates today.

## STATEMENT OF FACTS

### a. Background of Litigation

Plaintiff brings this action for the role Defendants' fossil fuel products played in causing the losses, deaths, and destruction of property resulting from storms and their aftermath in September 2017. Plaintiff seeks remedies for the losses and economic damages resulting from Defendants' acts which caused, and continue to cause, significant damage and alteration to Puerto Rico's climate. Plaintiff's injuries were a direct result of Defendants' decades-long campaign to promote fossil fuels and deceive and mislead the public on fossil fuels' direct causation to climate change and the risks associated with it. Plaintiff brings forward RICO claims due to Defendants' formation of an enterprise and collusion regarding their climate disinformation campaign. Plaintiff further seeks remedies for injuries caused by Defendants' failure to warn about the serious effects of unrestricted fossil fuel usage, antitrust, nuisance, negligent design defect, and unjust enrichment. All Defendants are subject to the jurisdiction of this Court, first through RICO Section 1965, as well as through specific jurisdiction.

4

Regarding the Defendants' conduct performed in Puerto Rico, directed towards Puerto Rico, and profoundly threatening the well-being of and vitality of the Municipality of San Juan, the Complaint:

- Describes each Defendant's substantial fossil fuel-related business in Puerto Rico, including, e.g., advertisement, marketing, and sales of products in Puerto Rico, retention of Plaintiff as customers of their fossil fuel products, retention of Plaintiff as investors in their publicly traded companies, operation, and sale of service stations in Puerto Rico, sale of access to terminals and airports in Puerto Rico, sale of branded gasoline and other fossil fuel products in Puerto Rico.;

- Describes the specific harm caused to Puerto Rico due to the superstorms of September 2017 which were caused by Defendants' conduct and fossil fuel products.

- Details Defendants' decades-long understanding—obtained via industry-controlled research—that the continuous use of the fossil fuel products will cause a steady rise in the average world temperature, resulting in serious ramifications, like sea level rise and superstorms, for an island like Puerto Rico; and

- Details the intentional and fraudulent actions Defendants took "to mislead regarding climate science they knew to be true and an extensive, multi-decade long campaign of denial to deceive consumers, the media, policymakers, and the public about the potentially 'catastrophic' impacts of their business practices.

Plaintiff's Complaint thoroughly outlines facts that demonstrate the Defendants' substantial fossil fuel-based connections in Puerto Rico. Plaintiff's allegations also set forth their deliberate and malicious actions to deceive it from the grave ramifications of fossil fuel usage that now particularly harm Puerto Rico. The dire consequences of climate change reached Puerto Rico and the effects will continue for many years to come.

### b. Procedural History

Plaintiff filed their Complaint on December 23, 2023. Dkt 1. Defendants then filed joint motions to dismiss, individual motions, and a Joint Motion for Judicial Notice on April 8, 2024. Defendants again filed joint motions to dismiss, individual motions, and motions to dismiss for

lack of personal jurisdiction on November 21, 2024. Plaintiff now files this response in opposition to Defendants Joint Motion to Dismiss for Lack of Personal Jurisdiction. Plaintiff contemporaneously has filed another opposition to Defendants' joint motion for failure to state a cause of action under Rule 12(b)(6).

## **LEGAL STANDARD**

When a district court considers a motion to dismiss for lack of personal jurisdiction, the Court conducts inquiries into whether Puerto Rico's long-arm statute grants jurisdiction over the Defendant and whether the exercise of personal jurisdiction over the Defendant comports with the Due Process clause of the United States Constitution. *See N. Laminate Sales, Inc. v. Davis*, 403 F.3d 14, 24 (1st Cir. 2005); *Rodriguez v. Dixie S. Indus., Inc.*, 113 F. Supp. 2d 242, 249 (D.P.R. 2000); *see also American Express International, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir. 1989); *Muñiz v. Walgreen Co.*, 2014 U.S. Dist. WL 4702203 at *3 (D.P.R. 2014); *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1985). Puerto Rico's long-arm statute, 32 L.P.R.A. App. III Rule 4.7, has been construed to extend "as far as the Federal Constitution permits." *Pritzker v. Yari*, 42 F.3d 53, 60 (1st Cir. 1994); *see also* Fed. R. Civ. P. 4 (k)(1)(A). This includes extending the court's jurisdiction over a non-resident defendant so as long as it remains constitutional. *See, e.g., Mangual v. General Battery Corp.*, 710 F.2d 15, 19 (1st Cir.1983); *Commonwealth of Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 668 (1st Cir.1980); *Vencedor Manufacturing Co., Inc. v. Gougler Industries, Inc.*, 557 F.2d 886, 889 (1st Cir.1977). Implicitly, the need to satisfy the long-arm statute is fulfilled if this Court finds that it is constitutionally legitimate to exercise jurisdiction over Defendants. *Rodriguez v. Dixie*, 113 F. Supp. 2d at 250. The Court bases its reasoning on whether the non-resident defendants "maintain[] sufficient minimum contacts with Puerto Rico so as to comport to traditional notions of fair play and substantial justice." *Muñiz v. Walgreen Co.*, 2014 U.S. Dist. WL 4702203 at *3 (D.P.R. 2014) (quoting *Int'l Shoe Co. v. Wash. Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 (1945)).

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of

"establishing that jurisdiction exists over the non-resident defendant. FRCP 12(b)(2). *Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002). When evaluating the motion and assessing whether the plaintiff has satisfied this burden, the court may use several different techniques. When a matter is in its early stages of litigation and no evidentiary hearing has been held, as in this case, the Court should use the *prima facie* standard. *See Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997); *Rodriguez v. Dixie Southern*, 113 F.Supp.2d at 249; *Mohajer v. Monique Fashions*, 945 F. Supp. 23, 26 (D.P.R. 1996). Under this standard, the court considers whether the plaintiff has proffered evidence that, "if credited, is enough to support findings of all the facts essential to personal jurisdiction." *Boit v. Gar-Tec Products Inc.*, 967 F. 2d 671, 675 (1st Cir. 1992), *Rodriguez v. Dixie*, 113 F. Supp. 2d at 249. For purposes of a Rule 12(b)(2) motion, the Court must accept the well-pleaded factual allegations in the Plaintiff's complaint as true and construe them in the "light most congenial to the Plaintiff's jurisdictional claim." *Massachusetts Sch. of L. at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26 (1st Cir. 1998); *see also Daynard*, 290 F.3d at 51.

Additionally, if the court has jurisdiction established by the minimal connections of at least one defendant with the forum State, Section 1965 of RICO permits the court to exercise personal jurisdiction over an out-of-state defendant based on nationwide contacts. *Marrero-Rolón v. Autoridad de Energía Eléctrica de P.R.*, 2015 WL 5719801, at *3 (D.P.R. Sept. 29, 2015), *report and recommendation adopted*, (D.P.R. Mar. 31, 2016); *Ponce Fed. Bank, F.S.B. v. Ramiro Colon*, 1996 WL 590274, at * 3 (D.P.R. Sept. 26, 1996).

## ARGUMENT

**I.     Puerto Rico's Nationwide Jurisdiction Provision Establishes Personal Jurisdiction Over Defendants**

Defendants are, first and foremost, subject to this Court's jurisdiction through Section 1965

of RICO. Section 1965 authorizes nationwide service of process "when it is shown that the ends of

justice require." *See* 18 U.S.C. § 1965(b). Though there is a Circuit split on this provision, the

majority of courts interpret Section 1965(b) to hold that "a federal court may exercise personal

jurisdiction over a civil RICO defendant otherwise lacking traditional minimum contacts with the

forum state," if "(i) personal jurisdiction over another civil RICO defendant otherwise exists in

the forum," and "(ii) 'the ends of just require' that the court exercise personal jurisdiction over the

civil RICO codefendant lacking the requisite contacts." *Dispensa v. Nat'l Conf. of Cath. Bishops*,

No. 19-CV-556-LM, 2020 WL 2573013, at *10 (D.N.H. May 21, 2020); *see also Butcher's Union*

*Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538-39 (9th Cir. 1986); *Lisak v. Mercantile*

*Bancorp, Inc.*, 834 F.2d 668, 671-72 (7th Cir. 1987); *PT United Can Co. Ltd. v. Crown Cork &*

*Seal Co., Inc.*, 138 F.3d 65, 70-72 (2d Cir. 1998); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226,

1229-33 (10th Cir. 2006). The Fourth and Eleventh Circuit have found that section 1965(d)

controls, allowing personal jurisdiction over any RICO defendant if personal jurisdiction exists

over any other RICO codefendant in the forum. *See Republic of Panama v. BCCI Holdings*

*(Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997); *ESAB Group, Inc. v. Centricut, Inc.*, 126

F.3d 617, 626 (4th Cir. 1997). This analysis requires no inquiry into the ends of justice. *See*

*Panama*, 119 F.3d at 942; *ESAB Group*, 126 F.3d at 626.

The First Circuit has not ruled on this issue, however, four district courts, in the First

Circuit, have decided upon it. *See Kalika, LLC v. Bos. & Maine Corp.*, Case No. CV 15-14043-

GAO, 2019 WL1276099, at *1, 7 (D. Mass. Mar. 20, 2019) (following the majority); *Dispensa v.*

*National Conference of Catholic Bishops* No. CV 15-14043-GAO, 2020 WL 2573013, at *10

(following the majority); *Marrero-Rolon v. Autoridad de Energia Electrica de P.R.*, 2015 WL 5719801, at *3 (D.P.R. Sep. 29, 2015), *report and recommendation adopted,* 2016 WL 9459821, at *1 (D.P.R. Mar. 31, 2016) (following the majority); *but see Bridge v. Invest Am., Inc.*, 748 F. Supp. 948, 949 (D.R.I. 1990) (following the Fourth and Eleventh Circuits). Regardless of how this Court chooses to interpret the provision, Plaintiff's allegations are sufficient to confer personal jurisdiction over Defendants.

Plaintiff has met both requirements for Puerto Rico's Nationwide jurisdiction provision to apply. First, Plaintiff states a valid RICO claim. Plaintiff alleges each element of a RICO claim throughout the Complaint. Plaintiff provides cited allegations regarding Defendants' racketeering activities throughout the factual portions of the Complaint to support the elements of RICO, as well. Finally, Plaintiff provides a RICO Case Statement and an Appendix outlining each instance of a RICO violation—describing the nature of the violation, the means, the date, and the Defendant or Defendants involved. *See Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 817 F. Supp. 326, 1993 U.S. Dist. LEXIS 4450 (E.D.N.Y. 1993) ("Jurisdiction may be established over foreign co-conspirator in RICO action, even though 18 USCS § 1965(d) makes no provision for service outside of U.S., because service may be made under law of state in which District Court sits.").

Further, for the reasons stated below, Plaintiff has established jurisdiction over all the Defendants including Shell, PLC, BP PLC, and BHP Group in this matter, meeting the minimal requirement for RICO's Section 1965 to apply. The Court should not dismiss based on personal jurisdiction when a valid RICO claim has been made and questions of both law and fact remain to be resolved at a later stage based on those RICO claims.

## II.    Defendants' Activity Falls Under Puerto Rico's Long-Arm Statute

Even if the Court does not find that RICO's Section 1965 nationwide service of process

9

subjects the Defendants to this Court's jurisdiction, Plaintiff has still adequately established personal jurisdiction over all Defendants through traditional means. "[T]he reach of Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause," *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011). When analyzing whether activity falls under Puerto Rico's long-arm statute, 32 L.P.R.A. App. III Rule 4.7, the Court considers that the phrase "participated in tortious acts within Puerto Rico" should include the tortious acts performed outside Puerto Rico when the effects of such acts are felt within the Commonwealth. *Davila-Fermin v. Se. Bank, N.A.*, 738 F. Supp. 45, 48 (D.P.R. 1990). Codefendants whose conduct may not have been performed directly in Puerto Rico, but the results of which were felt by Plaintiff in Puerto Rico, can be subject to the Court's personal jurisdiction through the long-arm statute. *De La Rosa v. Philip Morris Prod., Inc.*, 975 F. Supp. 161, 166-67 (D.P.R. 1997). It is in the interest of the Commonwealth to utilize the long-arm statute to protect its citizens as far as the Constitution permits. *Id.* at n.3. Further, under Puerto Rico's long-arm statute, international defendants can still be subject to the Court's jurisdiction. *See Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 817 F. Supp. 326, RICO Bus. Disp. Guide ¶ 8295, 1993 U.S. Dist. LEXIS 4450 (E.D.N.Y. 1993) ("Jurisdiction may be established over foreign co-conspirator in RICO action, even though 18 USCS § 1965(d) has no provision for service outside of U.S., because service may be made under law of state in which District Court sits.").

Defendants' activity in Puerto Rico falls under the forum's long-arm statute. Plaintiff's Complaint alleges that Defendants conducted fossil fuel-related business in Puerto Rico, committed torts outside of and within Puerto Rico that had major effects on Puerto Rico, and caused injury in Puerto Rico. Due to Defendants' conduct affecting Puerto Rico, and the below

10

arguments detailing how jurisdiction comports with the Due Process Clause, Puerto Rico's long-arm statute will allow for this Court to exercise personal jurisdiction over each Defendant.

### III. **Defendants are Subject to Specific Jurisdiction in Puerto Rico**

The question brought now before the Court is whether it may exercise jurisdiction over the Defendants in accordance with federal constitutional Due Process. In short, the Court may do so due to all three requirements for specific jurisdiction being met. Specific jurisdiction may be applied to an out-of-state defendant where the claim "arises directly out of, or relates to, the defendant's forum-based contacts." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1088–89 (1st Cir.1992). The Court "should embark on a tripartite inquiry as to defendant's contacts with the forum state: relatedness, purposeful availment, and reasonableness" to determine whether special jurisdiction over the defendant exists in this case. *See, e.g., Salgado-Santiago v. American Baler Co.,* 394 F.Supp.2d 394, 400 (D.P.R. 2005) (Casellas, D.J.) (citing *Sawtelle v. Farrell,* 70 F.3d 1381, 1389 (1st Cir. 1985)). "This tripartite analysis must be made on a case-by-case basis." *Id.* (citation omitted).

First, Defendants clearly are within the prong of the minimum contacts test as they purposefully avail[ed] themselves of the forum. They focus on the issues of whether Plaintiff's claims "arise out of or relate to" Defendants' Puerto Rico contacts and whether the exercise of specific jurisdiction is reasonable. *Ford,* 141 S. Ct. at 1025. Also, Plaintiff's claims in the Complaint relate to Defendants' contact with Puerto Rico because they marketed, promoted, and sold their fossil fuel products within and to Puerto Rico, while also targeting Puerto Rico through their disinformation campaign on fossil fuels and climate change. Finally, it is constitutionally

11

reasonable for the Court to exercise jurisdiction over Defendants because their activities within Puerto Rico are extensive. Moreover, Plaintiff has substantial interest in the litigation, and there would be no burden on Defendants in litigating here.

### a. Defendants Purposefully Availed Themselves to Puerto Rico Through In-State Activities

To establish jurisdiction that comports with federal Due Process, a defendant must take "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Ford*, 141 S. Ct. at 1024-25 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "[A]ctivities" include, but are not limited to, designing products for markets in the forum state or marketing or advertising products to the forum state. *See Asahi Metal Indus. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987) (plurality opinion). Defendants cannot contest purposeful availment due to their extensive contacts with Puerto Rico. All Defendants, including Shell, PLC, BP PLC and BHP Group, have marketed, advertised, sold, supplied, or made business-specific arrangements relating to fossil fuel products with Puerto Rico. Some Defendants have operated fossil fuel infrastructure in Puerto Rico through their own activities, subsidiaries, or otherwise. Further, all Defendants have engaged in a coordinated and long-standing disinformation campaign designed to deceive the public about the dangers of usage of their fossil fuel products. Not only did Defendants fail to warn Plaintiff, but it actively sought to conceal and deny such information— conduct that continues to this day. Due to the extensive contacts Defendants had with Puerto Rico, the prong of purposeful availment is met.

### i. Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction

BHP Group filed a separate motion to dismiss for lack of personal jurisdiction attempting to redefine what "contacts" with a forum means, Defendant BHP Group Limited ("BHP")

12

claims that its operations of the Cerrejón Entities do not constitute a demonstration of BHP's purposeful availment to the forum. Even though BHP was a 1/3 owner of the Cerrejón Entities, which exported 1.6 million short tons of coal *every year* to Puerto Rico's coal-fired electricity plant, BHP maintains that such extensive and long-standing activity with the forum does not count as a contact or purposeful availment. BHP attests that the jurisdictional contacts of the Cerrejón Entities cannot be imputed to it, as its parent company. Despite "corporate separateness" between the two companies, BHP still targeted Puerto Rico customers, its electricity market, and pursued their business ventures in this jurisdiction. Even further, BHP itself is alleged to have engaged in the RICO enterprise and mislead the public, including the Municipality of San Juan for its product's contribution to climate change.

Additionally, because the Court should find that RICO Section 1965 provides nationwide jurisdiction, BHP's numerous contacts with the United States provides jurisdiction. Plaintiff alleges several different contacts which demonstrate that BHP has purposefully availed itself of the U.S. as BHP conducts business in the United States through various exploration and remediation operations. Furthermore, BHP has had established interests in the US for over 40 years and has business operations located in Arizona, California, New Mexico, and Utah with corporate offices in Tucson and Washington, DC. Moreover, BHP has also established a foundation headquartered in the United States. BHP was a member of the American Petroleum Institute (API) since at least 2019, and continues to operate coal mines in Queensland and operates several mines in the US. These contacts provide additional foundation to assert personal jurisdiction over BHP.

### b. Plaintiff's Claims "Arise Out Of" and/or "Relate to" Defendants' Contacts With Puerto Rico

Plaintiff's claims easily satisfy the relatedness prong of the tripartite analysis. The relatedness test requires a plaintiff to demonstrate a "nexus between [its] claims and [the defendant's] forum-based activities..." *Adelson v. Hananel,* 652 F.3d 75 81 (1st Cir. 2011) (internal citation omitted). This test is a "flexible, relaxed standard." *Pritzker v. Yari*, 42 F.3d 53, 61 (1st Cir. 1994). Moreover, the controlling precedent *Ford* creates no legal requirement that demands that the Plaintiff allege that the "use or malfunction of a defendant's product in the State injured the plaintiff in the State." It is more than clear and evident that the facts alleged in Plaintiff's Complaint plainly relate to Defendants' numerous business contacts with Puerto Rico.

It should be noted that the *Ford* Court explicitly rejected the *causation-only* approach. 141 S. Ct. at 1026 ("[W]e have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the Plaintiff's claim came about *because of the defendant's in-state conduct*.") (emphasis added). Rather, it is sufficient that there be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 1025.

Plaintiff's allegations satisfy *Ford*'s actual requirements. Defendants promote and/or sell fossil fuel products throughout Puerto Rico, have done so for years, and have worked together through trade and industry organizations, to target consumers including Plaintiff's residents as well as municipal officials. Further, all Defendants have individually and in concert failed to warn the Plaintiff about the risks posed by the intended use of their fossil fuel products. and in their own individual capacities, engaged in a decades-long campaign to deceive the Plaintiff about fossil fuels' connection to climate change.

14

i.    *The Plaintiff's Allegations Sufficiently Relate to Defendants' Conduct in Puerto Rico to Establish Jurisdiction*

Plaintiff's Complaint allegations satisfy the relatedness requirement so that there be personal jurisdiction since the claim that forms the basis of the cause of action is directly connected to, or result from, the defendant's forum state activity. *Daynard*, 290 F.3d at 60; *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994) ("[Relatedness] focus on the nexus between the defendant's contacts and the Plaintiff's cause of action.").

Here, Defendants' contacts with Puerto Rico suggest a strong connection to Plaintiff's claims. Plaintiff's lawsuit is directly related to the Defendants' climate change disinformation campaign, as well as their marketing and sales practices. Additionally, Plaintiff relied on the false assertions and misrepresentations made by Defendants. In their scheme to develop a climate disinformation campaign that they directed at Puerto Rico, and wherein they failed to warn Plaintiff about the dangers of unabated use of their products, and availed themselves to the privilege of doing business in Puerto Rico. Defendants marketed directly to Plaintiff, its residents and  sold their products to them.

A. Defendant BHP Group Limited's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction

BHP's contacts with Puerto Rico suggest a strong connection to Plaintiff's claims. Plaintiff's claims against BHP are directly related to BHP's conduct in furthering the climate change disinformation campaign, as well as their marketing and sales practices. Plaintiff relied, and continue to rely, on the false assertions and misrepresentations made by BHP. Plaintiff alleges that BHP engaged in the climate disinformation campaign that was directed at the

15

Municipality of San Juan and its residents and failed to warn them about the dangers of unabated use of their products. Moreover, Defendants availed themselves to the privilege of doing business within Puerto Rico, its residents and the Municipality of San Juan by marketing and selling to the Commonwealth and conducting business there. Thus, from these specified assertions, Plaintiff claims nuisance, failure to warn, design defect, consumer fraud, conspiracy to commit consumer fraud, a pattern of racketeering, antitrust, and unjust enrichment. BHP's contacts with Puerto Rico and Plaintiff's claims are directly connected through its fossil fuel products and the sale, marketing, and promotion of said products. Further, Plaintiff's consumption and use of Defendants' fossil fuel products, including BHP's, in Puerto Rico are directly related to Defendants' failure to warn about the dangers of unabated fossil fuel usage. Additionally, BHP's contact with the US is directly connected to the Plaintiff's allegations given that BHP's numerous mining operations throughout the US contribute significantly to climate change. Further, with regards to BHP's connection to the RICO enterprise, BHP's membership, and participation with the GCC and with other fossil fuel trade and industry associations took place in the US with US groups. BHP's actions with these groups targeted US legislation and the US public, including the Plaintiff and its citizens in Puerto Rico. As such, BHP's contacts with the US directly relate to Plaintiff's allegations and injuries.

Contrary to BHP's argument that its contacts with the forum do not fall within the statute of limitations period, BHP's contacts with both Puerto Rico and the US continue to this day. BHP asserts that any contact with the Cerrejón Entities ceased in 2009. Regardless, the marketing and sale of fossil fuels directed as Puerto Rico and the US continue today, as do the tortious and fraudulent activities to conceal their involvement in the RICO enterprise. Due to BHP's ongoing

16

and continuous activity relating to Plaintiff's activities, the statute of limitation also continues

to run. Because both the conduct of BHP availing itself of Puerto Rico and the US and the statute

of limitations period are ongoing, BHP's argument fails.

### c. Defendants Have Failed to Show How Exercising Personal Jurisdiction Over Defendants Would Be Unreasonable and How It Would Conflict with Principles of Federalism

Exercising specific jurisdiction over Defendants comports with Due Process because their

arguments do not prove that jurisdiction would be unreasonable. The Court must determine

whether it is just to subject a nonresident defendant to the Court's jurisdiction to meet the

reasonableness criterion. *See Ticketmaster–New York,* 26 F.3d at 209. The reasonableness test,

often referred to as the Gestalt considerations in the First Circuit, is the third prong of the tripartite

test. *Id.* When determining whether the claim of personal jurisdiction would be consistent with

"fair play and substantial justice," it may be concluded that the defendant intentionally created

minimal connections inside the forum State. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment*

*Comp. & Placement*, 326 U.S. 310, 320 (1945). The Supreme Court has identified five factors to

consider. *See Ticketmaster–New York,* 26 F.3d at 209. The factors are: (1) the defendant's burden

of appearance; (2) the forum state's adjudicatory interest; (3) the Plaintiff's interest in obtaining

convenient and effective relief; (4) the judicial system's interest in finding effective resolution for

the controversy; and (5) the common interests of sovereigns in promoting social policies. *Id.*

(citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)).

First, when looking at the burden on a defendant, a court typically considers two issues:

whether a defendant would be subjected to a "burden if litigation occurred in the forum," and

whether a defendant would have to "submit to the coercive power of a State that may have little

17

legitimate interest in the claims in question." *See Bristol-Myers Squibb Co.*, 582 U.S. at 263, 256. Here, the burden placed on the Defendants to appear in court is reasonable. For example, given the advancements in communications and transportation, Defendants would not be subject to burdensome tasks to be present in the forum. *Pritzker*, 42 F3d at 64 (finding "no especially ponderous burden" in bringing a New York corporation into Puerto Rico court); *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988) (finding that modern communication and transportation significantly reduces the burden of litigating in other forums). Further, the District Court for the District of Puerto Rico has held that business travelers do not find traveling between two U.S. states to be particularly difficult, at least not when there are no "special or unusual considerations." *Malave-Torres v. Cusido*, 839 F. Supp. 2d 501, 510 (D.P.R. 2012). Further, Defendants identify no other practical obstacle to litigating in this Court that would render exercising jurisdiction constitutionally unreasonable. *See Core-Vent Corp. v. Nobel Indus. AB*, 11F.3d 1482, 1489 (9th Cir. 1993) (finding that a "large international corporation," like each of the Defendants, would not face unreasonable burden in the forum). Thus, this first factor weighs in favor of the Court's exercise of jurisdiction over the Defendants.

The second factor looks to the forum's interest in adjudicating the dispute. "Courts have made clear that this consideration does not weigh Plaintiff's interest against that of other locations, but simply considers whether the Municipality of San Juan has an interest in the dispute." *See e.g., Hogar Crea*, 708 F. Supp. 2d at 173 (citation omitted). Here, the Defendants are all major fossil fuel companies that do significant business with the United States and Puerto Rico. Regarding the Plaintiff, "[t]he Commonwealth has a cognizable stake in providing a forum to redress its citizens' complaints[.]" *Malave-Torres v. Cusido*, 839 F. Supp. 2d 501, 510 (D.P.R. 2012) (observing that the Plaintiff's "inclusion of plausible causes of action under [Puerto Rico] law underscores this

18

point."). Plaintiff alleged to suffer injury in the Commonwealth under numerous tortious claims and other counts attributed to the Defendants. As such, Puerto Rico, as a forum, "has a demonstrable interest in exercising jurisdiction over a defendant who has caused a tortious injury within the state." *Mohajer v. Monique Fashions*, 945 F. Supp. 23, 28 (D.P.R. 1996) (citations omitted). By exercising jurisdiction over these Defendants, the Court could guarantee efficacy and prevent multiple lawsuits regarding the same issue. Further, as an island state with significant adverse impacts mounting against it as climate change progresses, Plaintiff and their residents face a large threat due to Defendants' deceit and failure to warn. Thus, the second factor weighs in favor of the Court's exercise of jurisdiction over the Defendants.

The third factor takes the Plaintiff's desire for convenient relief into account. The First Circuit has "repeatedly held that 'a Plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience.'" *Salgado-Santiago v. Am. Baler Co.*, 394 F. Supp. 2d 394, 405 (D.P.R. 2005) (quoting *Sawtelle*, 70 F3d at 1395). Plaintiff is an autonomous municipality within Puerto Rico and chose to bring its suit to this Court. Certainly, it is more convenient for the Plaintiff to litigate where it resides. Plaintiff interest in obtaining convenient and effective relief weigh in favor of Puerto Rico being the forum of litigation. Thus, the third factor weighs in favor of the Court's exercise of jurisdiction over the Defendants.

The fourth factor considers the judicial system's interest in finding the most efficient resolution for the case at hand. Because this Court is better equipped to apply Puerto Rican law to the facts of the case at hand and analyze the extent of injuries to the Plaintiff in Puerto Rico, this element thus works in Plaintiff's' advantage. *E.g.*, *Malavé-Torres*, 839 F.Supp.2d at 510. Further, because the damages and losses incurred by the Plaintiff has been experienced in Puerto Rico, this factor further favors allowing this action to move forward in this Court.

The last factor addresses the shared interest of all sovereigns in advancing substantive social policies. All sovereigns and the legal system would benefit from this Court asserting jurisdiction because it is well-versed in Puerto Rican law and in the losses incurred by the Municipality. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 719 (1st Cir. 1996). Puerto Rico has an interest in protecting its citizens and its municipalities from out-of-state businesses who provide fossil fuel products to its residents and consumers. Puerto Rico also has interest in providing a convenient forum where they can bring a claim. Puerto Rico's interest in protecting its citizens would be best served by this Court exercising its jurisdiction over Defendants.

### i.  Defendant BHP Group Limited's Motion to Dismiss the Amended Complaint for Lack of Personal Jurisdiction (ECF No. 245)

BHP contends that it would be unreasonable to assert personal jurisdiction over BHP due to it being a foreign corporation without contacts in Puerto Rico. As has been demonstrated in previous sections, BHP does indeed have contacts with Puerto Rico and the U.S. sufficient to meet the first two prongs, even using contacts unrelated to the Cerrejón Entities. Even if the court finds that Plaintiff's allegations are merely a borderline showing of the first two prongs, there is strong support to show that subjecting BHP to this Court's jurisdiction would be reasonable. *See Ticketmaster–New York,* 26 F.3d at 210 ("[I]n certain circumstances, unreasonableness can trump a minimally sufficient showing of relatedness and purposefulness.").

Under the five Gestalt factors analyzed previously, Plaintiff demonstrates a strong case for why subjecting all Defendants, including BHP, to the jurisdiction of this Court in the instant matter would be reasonable. For the first factor, though BHP is a foreign defendant, it has contacts throughout the United States and is a large, international business. Also, there are no unusual circumstances that would make it overly burdensome for BHP to appear in Puerto Rico. Therefore, under the first factor, BHP would not be overly burdened by appearing in this forum.

20

The analysis for Gestalt factors 2-5 is the same as Plaintiff previously asserted. Because Plaintiff has adequately shown personal jurisdiction over BHP to be reasonable, BHP should be subject to the Court's jurisdiction.

Finally, Plaintiff's factual assertions regarding BHP's US contacts are sufficient to support a showing that BHP is subject to personal jurisdiction under RICO's Section 1965 nationwide contacts' provision.

**CONCLUSION**

Defendants fail to establish that this Puerto Rico Federal Court is not a proper venue for this action to proceed in. Defendants cannot rebut their extensive contacts within the Commonwealth and the United States. They must answer for their propaganda machine that resulted in fraudulent marketing and for their products that caused so much harm to the environment. The law is clear on jurisdiction that the deceptive marketing and distribution of the fossil fuels within the United States and Puerto by Defendants establishes jurisdiction for the Federal, Puerto Rico and common law causes of action as plead herein. This Court should not allow Defendants to escape from their responsibilities for the loss of life and billions of property loss that their conduct resulted in from the environmental tragedies in Puerto Rico in 2017.

For the foregoing reasons, this Court has specific personal jurisdiction over each of the Defendants, and, thus, this Court should deny Defendants' motion in their entirety together with such, other and further relief it deems just and equitable under the circumstances.

**WHEREFORE**, Plaintiff respectfully requests of this Honorable Court that it deny Defendants' Motions to Dismiss for Lack of Jurisdiction at Dockets 119 and 123.

21

**RESPECTFULLY SUBMITTED.**

In San Juan, this January 3, 2025.

By: David Efron

*/s/ David Efron*
USDC-PR Bar No.
Law Office David Efron PC
221 Ponce de Leon Ave.
221 Plaza 6th Floor
San Juan, Puerto Rico 00917
Telephone: (787) 753-6455
Facsimile: (787) 765-1210

Email: efron@davidefronlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he electronically filed the Joint Stipulation using the CM/ECF system which will send notification of such filings to the following attorneys of record.

22