# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

THE MUNICIPALITY OF SAN JUAN,
PUERTO RICO,

      **Plaintiff,**

      **v.**

EXXON MOBIL CORP., et al.,

      **Defendants.**

**Civ. No. 23-1608 (ADC)**

## OPINION AND ORDER

## I.    Introduction

This Opinion and Order should serve as a cautionary tale for all members of the bar. The Court faces a pair of deceptively simple procedural questions: should the Court strike a couple of untimely filed oppositions to several pending motions to dismiss[1], as well as an equally untimely opposition to a motion for judicial notice[2], because counsel for plaintiff was too busy with his other cases to meaningfully respond to e-mails from opposing counsel or to timely request an extension of time from the Court? Additionally, should the Court take corrective action on counsel's alleged plagiarism of another attorney's briefs in a related case? Beneath this veneer of simplicity, however, lie ethical principles which the Court finds were violated here, specifically, an attorney's duties of diligence and competence.

---

[1] *See* **ECF Nos. 28, 31, 32, 34, 36, 37, 39.**

[2] *See* **ECF No. 35.**

Several motions that were recently pending on the Court's docket depended on a decision as to these questions. For the sake of brevity and efficiency, the Court advanced its rulings on those matters. *See* **ECF Nos. 158, 159, 160**. Ultimately, the Court's decision flowed directly from its examination of the consequences of the plaintiff's attorney's abdication of his ethical duties to his client and to the Court. At this point in the litigation, responsibility for this will be assessed properly without the Court penalizing the client, the Municipality of San Juan, for its attorney's misconduct. But the facts and circumstances examined below evince the need for corrective action.

## II.    Relevant Procedural Background[3]

On December 13, 2023, the plaintiff in this case, the Municipality of San Juan, Puerto Rico ("San Juan") filed a 241-page complaint against several oil industry defendants claiming damages from climate change-related events that it alleges were caused by the defendants' industrial activities throughout the years.[4] San Juan is Puerto Rico's capital city and its most

---

[3] The following background includes information detailed in several electronic communications submitted by the parties in response to the Court's August 28, 2024 Order, which read: "The parties are hereby ordered to submit all pertinent written communications between them that are referenced in the motions at ECF Nos. 41, 42, 44, 52, 63, 71, and 75, for the Court's consideration." **ECF No. 89**. However, the Court may only take into consideration defendants' exhibits because they were translated to English, whereas San Juan's exhibits are almost entirely in Spanish. *Compare* **ECF No. 99** *with* **ECF No. 98**; *see* 48 U.S.C. § 864; L. Civ. R. 5(c); *see also Kenyon v. Cedeno-Rivera*, 47 F.4th 12, 19 (1st Cir. 2022) (citing *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 67 (1st Cir. 2008) for the rule that "the parties have an obligation to provide certified translations of any Spanish-language documents on which they rely.").

[4] The named defendants are Exxon Mobil Corp. ("Exxon"); Shell PLC ("Shell"); Chevron Corp. ("Chevron"); BP PLC ("BP"); ConocoPhillips Company ("Conoco"); Motiva Enterprises, LLC ("Motiva"); Occidental Petroleum ("Occidental"); BHP Group Limited ("BHP"); Arch Resources Inc. ("Arch Resources"); Rio Tinto PLC ("Rio Tinto"); and Peabody Energy Incorporated ("Peabody"). The complaint was voluntarily dismissed without prejudice as to

populous municipality.[5] However, it was not at the forefront of this significant legal effort. Little more than a year *before* San Juan filed its complaint, a group of around forty other Puerto Rico municipalities filed a putative class action complaint against the exact same group of defendants, which is pending before a sister Court in this District. *See* Compl., *Municipality of Bayamón, et al. v. Exxon Mobil Corp., et al.*, Civ. No. 22-1550 (SCC) (D.P.R. Nov. 22, 2022), ECF No. 1 (the "Municipalities' Case"). The municipalities there are represented by attorneys Luis V. Almeida-Oliveri of Milberg Coleman Bryson Phillips Grossman, LLC and Roy L. Mason of Smouse & Mason, LLC. For unknown reasons, San Juan decided to file a separate complaint against the same defendants for the same conduct and raising the same causes of action more than a year after its fellow municipalities, retaining its own counsel, attorney David Efron, for this task.[6]

San Juan's 241-page complaint is almost a word-for-word carbon copy of the original complaint filed in the Municipalities' Case.[7] That fact is significant here, but will be dealt with further below. For now, it is enough to say that the filing of this complaint activated the machinery of civil procedure, which sets deadlines for plaintiff to serve all named parties within

---

Arch Resources and Peabody on February 9, 2024. **ECF Nos. 6, 9**. Shell, BP, BHP, and Rio Tinto appeared in this case in the latter half of 2024, and were not part of the motion practice with which this Opinion and Order is primarily concerned. Accordingly, the term "defendants" as used collectively in this Opinion and Order shall refer primarily to Exxon, Chevron, Conoco, Motiva, and Occidental.

[5] According to the 2020 Decennial Census, San Juan's population is 342,259, or 10.5% of Puerto Rico's total population of 3,285,874.

[6] It is so far unclear why San Juan chose not to join the other municipalities in their class action.

[7] That complaint has since been amended. *See* Municipalities' Case, Civ. No. 22-1550, ECF No. 205.

ninety days of filing upon pain of dismissal, Fed. R. Civ. P. 4(m), and which provides the

defendants with an opportunity to raise specific dispositive defenses by pre-trial motion, like

those allowed in Fed. R. Civ. P. 12(b).

By December 28, 2023, San Juan had served or attempted to serve several, but not all, of

the named defendants. These defendants then appeared before the Court on January 17, 2024,

and requested an extension of time to file an answer or otherwise plead, stating that negotiations

between the parties to stipulate to a comprehensive briefing schedule were ongoing. *See* **ECF

No. 5**. These negotiations began with a set of e-mails sent by counsel for Chevron, Joshua Dick,

to Attorney Efron on January 4 and 8, 2024, which went unanswered. *See* **ECF No. 99-1**. Per an

e-mail sent by Chevron's co-counsel Roberto Quiñones on January 11, 2024, he had spoken with

Attorney Efron two days earlier "on behalf of the defense group to discuss extending the time

to respond to the complaint in order for the parties to discuss entering procedural stipulations

similar to those entered in the [Municipalities' Case]." **ECF No. 99-2** at 2. Attached was a draft

motion to extend the answer deadlines to March 4, 2024, and a draft stipulation for Attorney

Efron's review. *Id.*, at 3-15. Attorney Efron agreed to the extension on behalf of San Juan on

January 15, 2024. **ECF No. 99-4** at 4. The draft motion was the same motion that was then filed

by several defendants on January 17, 2024 (**ECF No. 5**), which the Court granted. **ECF No. 7**.[8]

---

[8] Following the e-mail trail, it appears that even though counsel for Chevron was taking the lead in this discussion, San Juan had not yet served process on Chevron.

On February 21, 2024 (about a week and a half before the answer deadline expired), Attorney Quiñones again reached out via e-mail to Attorney Efron, attaching a revised briefing schedule. **ECF No. 99-4**. In this e-mail, Attorney Quiñones mentions that some defendants had not yet been served, including his client, Chevron. **ECF No. 99-4** at 2.[9] That complicated the mechanics of the proposed briefing schedule, because the idea was for the defendants to file "joint motions." *Id.* Presumably, the concern was that some defendants would not be able to join these motions to dismiss without waiving their defenses related to lack of process. Attorney Quiñones requested that Attorney Efron clarify when he would expect to have completed service on all defendants in order to "fill in the blanks in paragraph 5.a of the draft with the dates agreed upon for presenting the motions to dismiss, oppositions, and responses." *Id.*

Attorney Efron did not respond to the February 21 e-mail, so Attorney Quiñones sent a follow-up two days later, on February 23, 2024. **ECF No. 99-5** at 2. He again reiterated the request for an expected date of service on the remaining co-defendants, writing that defendants "needed this information to determine when the motions to dismiss will be presented and thus finalize the joint motion . . . ." *Id.* On February 26, Attorney Efron's secretary informed Attorney Quiñones that Attorney Efron was in a trial and would respond to the e-mail the next day. **ECF No. 99-6** at 2.

---

[9] The ninety-day term for San Juan to serve process on defendants for in Fed. R. Civ. P. 4(m) had still not expired but would have run on March 12, 2024.

Accordingly, on February 27, 2024, Attorney Efron finally replied to Mr. Quiñones, saying: "Sorry that I couldn't reply earlier, but I've been in a jury trial in a Federal court. You have the municipality of San Juan's authorization to file the motion as submitted." **ECF No. 99-7** at 2. Attorney Quiñones quickly replied by noting that his response did not address the matter of the expected date of completion of service on the remaining defendants, on which the proposed timeline for the filing of the motions to dismiss would depend. *Id.*

Two days later, on February 29, 2024, Attorney Quiñones again wrote to Attorney Efron, following up on his earlier message. **ECF No. 99-8** at 2. He attached a draft motion for extension of time to extend the defendants' deadline to answer the complaint or otherwise plead to March 25, 2024. *Id.* He explained that:

> The purpose of this additional extension is to give the parties the opportunity to complete their conversations regarding the joint motion that I sent you last week, proposing (as in the [Municipalities' Case]) a uniform schedule for presenting the motions to dismiss, oppositions, and responses. (As I explained in my email last Tuesday (see the message directly below), we need to know when you expect to have completed the services, to then determine the schedule that we're going to propose in this joint motion.)

*Id.* Attorney Efron acceded to the requested extension later that same day. **ECF No. 99-10** at 2. The extension of time was then filed and was later granted by the Court. **ECF Nos. 10, 13**.

Attorney Quiñones reached out to Attorney Efron on March 5, 2024 to continue discussing the briefing schedule. **ECF No. 99-10** at 1. Attorney Efron sent an email to Attorney Quiñones on March 6: "Your motion looks good to me. What date were you planning to put on it?" **ECF No. 99-11** at 2. Attorney Quinones responded that same day: "Depends on when you

expect to complete the services." *Id.* But Attorney Efron apparently failed to reply, so, twelve days later, Attorney Quiñones sent an email attaching the proposed briefing schedule and including proposed dates:

> I've attached the motion as revised to include the proposed dates for presenting the motions to dismiss (April 22), oppositions to the motions (July 22), and replies to the oppositions (September 20) – see paragraph 6.a. The defendants who have been served appear in the motion. I'd be grateful if you could confirm that we have your client's consent to present this motion. We'd like to present it as soon as possible given that the second extension granted by Judge Delgado expires next Monday.

*Id.* Due to Attorney Efron's continuing lack of response, Attorney Quiñones again followed up by e-mail on March 19. **ECF No. 92-12** at 2. Attorney Efron replied to Attorney Quiñones' follow-up that evening, telling Attorney Quiñones that he was "at trial in a federal jury case" and that he would not be "coming into the office." **ECF No. 99-13** at 2. For that reason, he asked Attorney Quiñones to give him "a couple of days to carefully look this over." *Id.*

On March 22, 2024, counsel for Chevron filed a motion for extension of time. **ECF No. 18**. Chevron requested, on behalf of all served defendants, to extend the deadline to answer or otherwise plead to April 8, 2025. *Id.* As opposed to its two prior requests for extension, this one did not state whether San Juan had consented to the extension, but only that "[p]laintiff's counsel recently informed [d]efendants he is in trial and unable to discuss the proposed schedule at present." *Id.*, at 2. The Court, again, granted the extension. **ECF No. 19**.

On April 2, 2024, Attorney Quiñones *again* wrote to Attorney Efron for his input on the proposed briefing schedule, re-attaching the document to this e-mail. **ECF No. 99-13** at 2.

Attorney Efron replied that same day, but to a different, previous e-mail sent on March 20 from Attorney Quiñones' co-counsel, Eduardo A. Zayaz-Marxuach, regarding the already approved request for an extension of time. **ECF No. 99-14** at 2. He said: "I'm in a jury trial in federal court. Give me a break." *Id.*

And so, on April 8, 2024, defendants filed a total of seven separate motions to dismiss the complaint on various grounds. *See* **ECF Nos. 28, 31, 32, 34, 36, 37, 39**. They also filed a request for the Court to take judicial notice of several news publications and scientific reports. **ECF No. 35**. Oppositions were due on April 22, 2024.

The response deadline came and went without any indication that San Juan intended to oppose the motions. Consequently, on April 26, 2024, defendants filed a motion to deem all of the above unopposed. **ECF No. 41**; *see* L. Civ. R. 7(b) ("Unless within fourteen (14) days after the service of a motion the opposing party files a written opposition to the motion, **the opposing party shall be deemed to have waived any objection to the motion**." (emphasis added)). Then, according to the e-mail records submitted by the parties, Attorney Efron reached out to Attorney Quiñones on April 29, 2024—seven days after the deadline to oppose expired and three days after receiving notice of the defendants' request to deem their motions unopposed—to inform him that he was "finally done with the trial and [was] catching up on everything," and to ask for defendants' consent to an extension of time to file San Juan's responses. **ECF No. 99-15** at 3. Attorney Quiñones responded by saying he would need to discuss the issue with the other

defendants' counsels and that he was not sure he could have a response by April 30, as requested by Attorney Efron. *Id.*, at 2.

San Juan went ahead and filed a request for extension of time up until May 30, 2024, to oppose the defendants' motions. **ECF No. 42**. The request was based on Attorney Efron's participation in the referenced jury trial and his subjective belief that a briefing schedule had been agreed to: "What the undersigned was expecting was a briefing schedule which the parties had been discussing and not for defendants to go directly into dispositive motions." *Id.*, at 1. Predictably, the defendants opposed the request and put forth their version of the story on record, summarized as follows:

> In short, over the course of three months, Defendants sought repeatedly to reach an agreement with Plaintiff concerning a comprehensive briefing schedule and stipulations. They were clear in their March 22 motion that, absent agreement on the final proposal before expiration of the April 8 deadline, they would be filing the Motions to Dismiss on that date. But, despite their efforts, Defendants did not receive confirmation of Plaintiffs' acceptance of their final proposal by April 8 and therefore were required to file the Motions to Dismiss as the March 22 motion had provided.

**ECF No. 44** at 4. However, they declined to take a position on whether the extension should be granted and expressed a willingness to reach future agreements with Attorney Efron on "a more comprehensive briefing schedule and stipulations . . . ." *Id.*, at 4-5.

On May 29, 2024, San Juan filed an opposition to the motion requesting judicial notice, which it titled "*Plaintiff's Omnibus Response in Opposition to Defendants' Joint Motion for Judicial Notice.*" **ECF No. 63**. Notably, there are no references in the opposition to the docket entry for

defendant's request for judicial notice. There is, however, a reference to "Defendants' Second Joint Motion for Judicial Notice." *See id.*, at 4. There is no such filing in this case's docket—but there is one in the Municipalities' Case. *See* Municipalities' Case, Civ. No. 22-1550, ECF No. 238. Separately, on June 13, 2024, San Juan filed a ninety-four-page response titled "*Plaintiff's Omnibus Response in Opposition to Defendants' Motions to Dismiss for Failure to State a Claim (Docket Entries 28, 34, 36, 37, 39).*" **ECF No. 72.**[10] That same day, San Juan filed a thirty-nine-page opposition to the motion to dismiss at **ECF No. 31** filed jointly by Conoco, Motiva, Exxon, Occidental, and Chevron. **ECF No. 73.**[11]

## III.    Implications of Attorney Efron's Actions and Omissions

### A.    Attorney Efron's failure to attend to case matters.

As per the above review, several defendants, through the efforts of counsel for Chevron, attempted in good faith to reach procedural stipulations with Attorney Efron regarding their then-contemplated motions to dismiss, aiming to ease the burden on all parties and the Court by streamlining page limits and response deadlines. During this time, defendants diligently filed extensions of time with the Court to file their responsive pleadings or motions and apprised it of the status of its attempted discussions with the other side. Behind the scenes, however, no agreement had been finalized on the briefing schedule for the motions to dismiss because San

---

[10] Missing from the title is reference to Exxon's motion to dismiss filed by Exxon at **ECF Nos. 32**. The motion, however, is referenced further below in the response. *See* **ECF No. 72** at 60, 71.

[11] Like San Juan's complaint and the response to the motion requesting judicial notice, this filing seems to have been scanned and is not in a digitally searchable format. This is in contrast to the response at **ECF No. 72**.

Juan had not moved to serve the remaining defendants in this case. Once the time to serve them expired without action by San Juan, defendants then proposed concrete dates for the motion to dismiss briefing schedule. But Attorney Efron was too busy with other matters to respond—he could not express his agreement with the briefing schedule prepared by defendants because he was in the midst of a federal jury trial.

Attorney Efron's professional conduct before this Court is governed by the American Bar Association's Model Rules of Professional Conduct ("Model Rules"), made applicable by L. Civ. R. 83E(a). As counsel for San Juan, Attorney Efron has a duty of competence to his client, which requires of him "the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Model Rules of Pro. Conduct r. 1.1 (Am. Bar. Ass'n 2025). In major litigation, of which this case has all the trappings of becoming, an attorney's duty of competence requires a higher level of attention and preparedness "than matters of lesser complexity and consequence." Model Rules of Pro. Conduct r. 1.1 cmt. 5. Add to this Attorney Efron's duty of diligence, which requires him to "act with reasonable diligence and promptness in representing a client." Model Rules of Pro. Conduct r. 1.3. This necessarily implies an obligation to control his workload "so that each matter can be handled competently." Model Rules of Pro. Conduct r. 1.3 cmt. 2.[12]

---

[12] Puerto Rico's Canons of Professional Ethics contain a similar obligation: "It would be improper for a lawyer to assume professional representation when he is conscious that he cannot render suitable, competent service and that he cannot prepare himself properly without it entailing unreasonable expenses or delay to his client, or to the administration of justice. . . ." PR. Laws Ann. t. 4 Ap. IX, § 18a. And although these Canons "do not govern the

The fact that Attorney Efron was in the middle of a federal jury trial (a claim which the Court has no reason to doubt) is no excuse for his failure to diligently attend to pending matters in this case. Attorney Efron's "expectation" that a briefing schedule was in place between the parties is belied by the e-mail record.[13] Attorney Efron had ample and repeated notice that Attorney Quiñones needed an answer as to his expected date for completing service on the remaining defendants before finalizing and filing the briefing schedule. It was unreasonable for Attorney Efron to assume, or "expect," that the defendants would continue to withhold filing their motions to dismiss absent a substantive response to Attorney Quiñones' repeated queries.

Attention to other matters in his book of business did not relieve Attorney Efron from his duty to exercise a minimum degree of diligence to make sure that he complied with this case's deadlines. Certainly, once the motions were filed on April 8, 2024, counsel could have taken five minutes from his day, regardless of whether he was at trial, to check his e-mail and examine the electronic notifications that he received for the **nine** motions filed that day. Any attorney, whether straight out of law school or a courthouse veteran, would have been curious as to what was going on in the docket. Attorney Efron had fourteen days to draft a one or two-page motion

conduct of attorneys in federal court, the *raison d'etre* of both the Model Rules and the Puerto Rico Canons of Ethics is akin—to preserve the integrity of the legal profession. As such, courts in this District look to the Puerto Rico Canons of Professional Ethics and their interpretive jurisprudence for illustrative purposes." *In re Pena*, No. 18-04009 (ESL), 2024 WL 3912827, at *6 (Bankr. D.P.R. Aug. 22, 2024) (cleaned up).

[13] That is, assuming (generously) that this was his "expectation." From the record, it is easily inferable that Attorney Efron expected that this entire case would grind to a halt until his busy schedule cleared up. But absent an agreement with the defendants, which he patently failed to reach, there was no reasonable basis to hold that belief. Procedural fairness does not tolerate that much hubris.

for extension of time—much like the barebones one he filed on April 30, 2024. **ECF No. 42**. That would have at least put the Court and the defendants on notice that Attorney Efron had difficulties attending to the deadlines in this case. But he failed to do so, exposing his client to inadvertently waiving its defenses to the dispositive motions.

"Counsel 'have an obligation to remain informed about the status of their cases and comply with applicable scheduling orders issued by the court.'" *Pimentel-Soto*, 957 F.3d 82, 85 (1st Cir. 2020) (quoting *United States v. Romero-López*, 661 F.3d 106, 108 (1st Cir. 2011)). "When electronic case filing is utilized . . . counsel needs to monitor the docket for electronic filings." *Romero-López*, 661 F.3d at 108; *see also id.* (finding that the "attorney's failure to monitor for electronic notices constituted a violation of this obligation.").

The Court finds that Attorney Efron's failure to respond to defense counsel's repeated attempts to reach an agreement on a briefing schedule, and his subsequent failure to timely oppose the filed motions or request an extension of time, violate his duties of diligence and competence and amount to attorney misconduct.

**B.    Attorney Efron's copycat filings.**

Unfortunately, this is not the end of the matter. This case also presents an astonishing example of plagiarism in the legal profession.

From early on in this case, the defendants have pointed to substantial similarities between many of the filings made by San Juan here and those filed by the plaintiffs in the Municipalities' Case. Despite being on notice of defendants' plagiarism accusations at almost every step of the

way, San Juan did not respond to these allegations in any meaningful way. Some of the instances

of plagiarism are summarized below.[14]

**1.  The plagiarized complaint at ECF No. 1.**

San Juan's 241-page complaint is almost a carbon copy of the original complaint filed a

year before in the Municipalities' Case by different, unrelated counsel. *Compare* **ECF No. 1** *with*

Municipalities' Case, Civ. No. 22-1550, ECF No. 1. Just a review of the first couple of paragraphs

of the complaint is enough to warrant suspicion. Apart from substituting "plaintiffs" for

"plaintiff" (*id.*, at ¶ 2), occasionally making reference to "the Municipality of San Juan" instead

of the collective municipalities, sprinkling some adverbs such as "incredibly" at the beginning

of a paragraph (*id.*, at ¶ 3), and breaking a paragraph in two (*id.*, at 6, ¶ 5), the language,

footnotes, and citations are identical to the corresponding paragraphs in the complaint filed in

the Municipalities' Case.

And these suspicions are well-founded. As defendants point out in their joint motion to

dismiss, the complaint in this case is rife with examples of plagiarism:

> The complaints include identical typos, *e.g.*, *compare* Compl. ¶ 11 (alleging all
> injuries were caused "as a result of the Defendant's [singular] acts and omissions")
> *with* Bayamón Compl. ¶ 11 (same); *compare* Compl. ¶ 373 ("Exxon continued [to]
> publish") *with* Bayamón Compl. ¶ 297 (same), allegations that are irrelevant to
> non-class action complaints, *e.g.*, Compl. ¶ 26 (noting San Juan's experience in the
> 2017 Atlantic Hurricane Season as "representative of the remaining 77
> Municipalities in the Commonwealth of Puerto Rico"); there are identical cross-

---

[14] From the Court's estimation, the five briefs it has been able to identify as plagiarized (in no small part thanks to defendants' motions), run up to a total of approximately 440 pages. Some of these briefs are not text-searchable, as they appear to be scanned copies uploaded to CM/ECF. For these reasons, the Court is impeded from listing all instances of the suspected plagiarism, but a sample is enough to reach a conclusion on the matter.

references that are not updated for this Complaint, *e.g.*, *id.* ¶ 163; repeated references to Plaintiff as "Municipalities" (plural), *e.g.*, *id.* ¶¶ 65, 137, 147, 153, 373, 555, 569, 586, 618; references to "Exhibit[s]" "attached hereto" and a "RICO Case Statement" that this Plaintiff never filed or served, *id.* ¶¶ 177-78, 420, 696-97; and apparent artifacts of a PDF-to-Text transcription that was not thoroughly reviewed, such as footnote errors, *e.g.*, *id.* ¶¶ 185-86 & nn. 177-79 (misnumbered footnotes); *id.* p. 57, n.186 (footnote call omitted from text), and odd textual errors, *e.g.*, *id.* ¶¶ 412 ("Shell al o formally withdrew"), 702 ("would inevitably re ult"), 776 ("fuel product were u ed"), *id.* at VII.D ("Fourth Cause of Actio11").

**ECF No. 34** at 18, n.1. Add to this that the complaint here is not a putative class action complaint. Those allegations are present in the Municipalities' Case but were removed from San Juan's complaint. *Compare* **ECF No. 1** at 191, ¶¶ 609, 610 *with* Municipalities Case, Civ. No. 22-1550, ECF No. 1 at ¶¶ 633-648. It is (almost) inexplicable, then, why San Juan claims to be "validating" a climate change prediction "by bringing this class action" when it disclaimed having brought any such action. **ECF No. 1** at 7.

Evidently, San Juan's complaint is a poorly plagiarized version of the complaint in the Municipalities' Case.

### 2. The plagiarized motion for leave to file omnibus opposition at ECF No. 52.

In response to the motions to dismiss, as well as the motion requesting judicial notice at **ECF No. 35**, San Juan filed a motion requesting leave to file three omnibus oppositions. **ECF No. 52**. As it relates to the motion requesting judicial notice, the choice of title is odd (to say the least), given that there is only one such motion on the docket. However, San Juan refers to the "3) Motion requesting that the Court take judicial notice of documents (filed jointly and by an

individual defendant)." *Id.*, at 2. It accordingly requested "leave to file: . . . 3) an Omnibus

Opposition to Defendants' Motions for Judicial Notice . . . ." *Id.* at 2, 4.

This oddity, however, is explained by the defendants:

On April 17, 2024, Plaintiffs in the Bayamón case moved for leave to file omnibus oppositions to Defendants' motions to dismiss and related motions there. *See Plaintiffs' Motion for Leave to File Omnibus Oppositions*, Dkt. No. 270 ("*Bayamón* Pls.'s Motion") in the Bayamón case. Here, Plaintiff's counsel copied large sections of that motion nearly word-for-word, many aspects of which obviously have no application in this case. *Compare* Dkt. No. 52, ¶¶ 2–5, 7–8 *with Bayamón* Pls.'s Motion ¶¶ 5–8, 10–11. Perhaps most egregious, the Motion for Leave asserts that this case involves multiple motions for judicial notice "filed jointly and by an individual defendant" and therefore moves the Court for leave to file "an Omnibus Opposition to Defendants' Motions for Judicial Notice." Dkt. No. 52, ¶ 5. But—in this case, unlike in *Bayamón*—Defendants filed only one joint motion for judicial notice and no Defendant filed an individual motion for judicial notice. *See Defendants' Request for Judicial Notice*, Dkt. No. 35; *contra Bayamón* Pls.'s Motion at ¶ 5; Dkt. Nos. 238, 241 (two motions for judicial notice).

**ECF No. 67** at 8.

A review of the motion in question confirms the defendants' claims and lends credence

to their concern that San Juan and/or Attorney Efron's "litigation strategy appears to be to

plagiarize from and ride the coattails of the earlier-filed Bayamón case." *Id.*, at 9.

### 3. The plagiarized "omnibus" opposition to the request for judicial notice at ECF No. 63.

Following on the heels of the motion for leave (and defendants' calling out of its

plagiarized nature), San Juan proceeded to file its "omnibus" opposition to the motion

requesting judicial notice. **ECF No. 63**. No mention was made as to defendants' accusations of

plagiarism. In fact, this eight-page motion is a copycat brief, ripped from the one filed in the

Municipalities' Case. *Compare* **ECF No. 63** *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 282. Attorney Efron evidently invested *some* minimal effort in adapting the motion to the facts of this case, changing some sentences to, for example, recognize that defendants had made the same request for judicial notice in the Municipalities' Case. *Compare* **ECF No. 63** at 4 ("Defendants show their hand for this vague request in a similar motion filed in a similar case 'establish that the statute of limitation had passed.'") *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 282 at 5 ("Finally, Defendants avail us their reasoning for this vague request – to 'establish that the statute of limitations had passed.'"). He also substituted some words for synonyms. *Compare, e.g.,* **ECF No. 63** at 6 ("Judicial notice should not be permitted to be used as a **sword** for dismissal") *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 282 at 6 ("Judicial notice should not be permitted to be used as a **shotgun** for dismissal") (emphasis added).[15]

However, aside from the specific examples above, the legal reasoning and argumentation used in San Juan's motion is an almost an exact copy of that employed by its counterpart in the Municipalities' Case. All of this shows that the "omnibus" opposition was, indeed, plagiarized as the defendants contend. *See* **ECF No. 67** at 8 n.6.

---

[15] Curiously, San Juan's motion fails to cite to the complaint's allegations, whereas the one filed in the Municipalities' Case does. *Compare, e.g.,* **ECF No. 63** at 7 (". . . which they seek to prove through the current request for judicial notice of news articles and non-governmental reports.") *with* Municipalities' Case, Civ. No. 22-1550, ECF No. 282 at 7 (". . . which they seek to prove through the current request for judicial notice of news articles and non-governmental reports. Am. Compl. ¶¶ 297-579."). One would presume that the attorney who had drafted the complaint would be able to insert this citation without issue.

**4.  The plagiarized responses to the motions to dismiss at ECF Nos. 72 and 73.**

As to San Juan's oppositions to the motions to dismiss, these are likewise copycat briefs ripped from those filed in the Municipalities' Case. Like in the complaint, Attorney Efron tried to eliminate references to class actions, but he failed to thoroughly purge these references from San Juan's briefs and some survived. *See*, *e.g.*, **ECF No. 71** at 21 ("**Plaintiff brings this litigation as a class action**. . . . This applies both for **the Plaintiff who were** [sic] part of the original lawsuit and for all potential Plaintiff who are members of the class, including those who were unaware of the proceedings." (emphasis added)). [16] Defendants likewise raised an accusation of plagiarism as to these briefs (**ECF No. 75** at 5-6), which has gone unanswered by San Juan. From what the Court is able to see, those parts of the briefs filed in the Municipalities' Case that were not omitted by Attorney Efron are virtually identical in legal and factual reasoning.

**5.  The plagiarized Racketeering Case Statement at ECF No. 76.**

Finally, to add insult to ethical injury, San Juan's unsolicited "Racketeering Case Statement," filed on June 25, 2024 (**ECF No. 76**), is also taken largely verbatim from the amended statement filed in the Municipalities Case. *See* Municipalities Case, Civ. No. 22-1550, ECF No. 206.

---

[16] As with San Juan's "omnibus" opposition to the motion requesting judicial notice, there are exactly zero citations to the allegations in the complaint, only unspecific references. *See*, *e.g.*, **ECF No. 71**. On the other hand, the briefs filed in the Municipalities' Case are overflowing with such references. This further deepens the Court's suspicion that Attorney Efron had little (if any) hand in drafting, researching, or otherwise preparing the complaint or the oppositions to the motions to dismiss, and that he rather copied them wholesale from those of the Municipalities' Case to use here, expending the bare minimum effort to adapt them to San Juan's procedural and substantive circumstances.

Notably, the plaintiffs in the Municipalities' Case had originally filed a racketeering statement alongside their original complaint. *Municipalities' Case*, Civ. No. 22-1550, ECF No. 4. When they amended their complaint on November 3, 2023, they also amended their racketeering statement. *Id.*, Civ. No. 22-1550, ECF Nos. 205, 206. As a result of these amendments, a new defendant, the American Petroleum Institute, was added to that case, and reference to it is made in the amended statement. *See, e.g., Municipalities' Case*, Civ. No. 22-1550, ECF No. 206 at 12 (referring to an action plan "written by Defendant American Petroleum Institute"), 27 ("The following persons conducted the association-in-fact enterprise: . . . AMERICAN PETROLEUM INSTITUTE . . ."), and 28 (referring to a "workshop held at the American Petroleum Institute"); *see also, e.g., id.*, at 2, 3, and 10 (including the American Petroleum Institute in the list of named defendants and raising allegations directed at it as "API"). San Juan, which filed its complaint in December of 2023, waited half a year to file its statement in this case, and only after several motions to dismiss had already been filed. Its racketeering statement includes the same references to the American Petroleum Institute, even though it is not a defendant in this case. *Compare id. with* **ECF No 76** at 2, 3, 10, 12, 27, 28.[17] From what the Court can gather from the rest of San Juan's statement, it seems substantively identical to the amended statement of the plaintiffs in the Municipalities' Case.

---

[17] The Court can only speculate as to why Attorney Efron waited so long to file the racketeering statement here, given that his modus operandi has been to copy the filings in the Municipalities' Case. Whether it was his prior professional commitments or not, the original omission and the timing of the subsequent filing speak volumes.

Like in the previously detailed instances, defendants brought many of these examples to the Court's attention. *See* **ECF No. 77** at 2-4. And likewise, San Juan did not submit any meaningful rebuttal.

In sum, probably more so than the other briefs discussed above, this statement seems to be close to 100% plagiarized.

### 6.  Attorney Efron's plagiarism constitutes attorney misconduct and an ethical violation.

The touchstone of plagiarism is lack of attribution. As in law school, passing someone else's work off as one's own is wrong as a matter of fact and professional ethics. *See Odom v. Syracuse City Sch. Dist.*, No. 519CV835TJMATB, 2020 WL 1689879, at *8 (N.D.N.Y. Apr. 7, 2020) ("Passing off another's ideas as one's own is unacceptable in a first-year college class, and can lead to failing grade or even expulsion. Doing so while engaged in the professional practice of law is worse, and is both feckless and embarrassing."). Pursuant to Model Rule 8.4(c) "[i]t is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation," and "[t]he essence of plagiarism is deceit." Model Rules of Pro. Conduct r. 8.4(c); *Ayala v. Lockheed Martin Corp.*, 67 V.I. 290, 314 (Super. Ct. 2017) (quoting *In re Lamberis*, 443 N.E.2d 549, 552 (Ill. 1982)). Courts have not wavered in admonishing or even sanctioning litigants who copy whole sections of judicial opinions without providing

attribution.[18] They have done the same in relation to plagiarism of articles written by scholars or legal professional.[19] Court have also called out the copy-pasting of briefs in one case for use in another without due care to adapt the same to the circumstances of the case.[20]

Here, Attorney Efron lifted not only the entire theory of San Juan's case from the Municipalities' Case but went so far to use virtually the very same words and ideas, usurping

---

[18] *See, e.g., United States v. Lavanture*, 74 F. App'x 221, 224 (3d Cir. 2003) ("[I]t is certainly misleading and quite possibly plagiarism to quote at length a judicial opinion (or, for that matter, any source) without clear attribution."); *Matthews v. Kijakazi*, No. 2:21-CV-193 RLM-JPK, 2022 WL 3025887 (N.D. Ind. Aug. 1, 2022) ("[P]resenting another's analysis as one's own raises questions about plagiarism and professional ethics."); *Rosselló v. Avon Prods., Inc.*, No. CIV. 14-1815 JAG, 2015 WL 5693018, at *2 (D.P.R. Sept. 28, 2015) ("Plaintiffs plagiarized federal court decisions without any attribution in their Opposition Brief. . . . Plaintiffs' plagiarism is dishonest, unprofessional, and potentially sanctionable."); *Ramírez Lluveras v. Pagán Cruz*, No. CV 08-1486 (FAB), 2010 WL 11679649, at *4 n.5 (D.P.R. Aug. 5, 2010) ("The Commonwealth should try to indicate clearly with proper quotation marks which words are its own and which words are someone else's, lest it be accused of plagiarism - often found to constitute deceit under many codes of attorney ethics."); *Denton v. Rievley*, No. 1:07-CV-211, 2008 WL 4899526, at *2 n.2 (E.D. Tenn. Nov. 12, 2008) ("Counsel's assertion that large amounts of text can be copied without attribution is incorrect."); *Venesevich v. Leonard*, No. CIV A 1:07CV2118, 2008 WL 5340162, at *2 n.2 (M.D. Pa. Dec. 19, 2008) (strongly rebuking attorney who had plagiarized a significant portion of a brief in opposition to a motion to dismiss from uncited judicial opinions and finding that such actions were professional misconduct in the form of misrepresentation); *Álamo v. Commonwealth of Puerto Rico*, No. CIV. 05-1955 (JAF), 2006 WL 1716422 (D.P.R. June 19, 2006) ("The brief that Plaintiff's counsel . . . 'wrote' for his client in this regard, however, constitutes nothing more than seven pages of text copied nearly word-for-word from the United States Supreme Court's opinion in *Tennessee v. Lane*, 541 U.S. 509 (2004), without even one citation to that case. This plagiarism, for which we can only guess [plaintiff's counsel] actually billed his client, is unacceptable."); *Pagán Vélez v. Laboy Alvarado*, 145 F. Supp. 2d 146 (D.P.R. 2001) ("In fact, by our estimation, approximately sixty-six percent of the brief is a verbatim reproduction of . . . Judge Casellas' Opinion and Order. This behavior is reprehensible.").

[19] *See, e.g., Bogar v. Szeles*, No. 2:23-CV-09189-AB-SSC, 2024 WL 4406788, at *2 (C.D. Cal. May 6, 2024) (". . .[d]efendants directly copied about 5 pages of text, without attribution, from 5 different secondary sources, including law review articles, Wikipedia, a Congressional Research Service paper, and a Guide for Judges from the Federal Judicial Center. . . . In response to Counsel's apparent belief that plagiarism is fine, and to deter such conduct in the future, the Court admonishes counsel for the plagiarism reflected in his opening brief."); *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 541 n.6 (E.D.N.Y. 2017) (admonishing attorney for committing plagiarism where he "directly copi[ed] pages of the article without attribution.").

[20] *See, e.g., In re Mundie*, 453 F. App'x 9, 10 (2nd Cir. 2011) (publicly reprimanding attorney who "incorporate[d] portions of a brief from a different case without making necessary changes."); *In re Summit Fin., Inc.*, 634 B.R. 376, 378-80 (Bankr. C.D. Cal. 2021) (discussing whether it is plagiarism to "copy[] and past[e] significant text from another law firm's pleading into your own . . ., and even if not, is it ethical?").

the thought processes and legal theories a client hires an attorney to develop and perform. The Court finds that this conduct runs afoul not only of Attorney Efron's duty of competence to his client, but also his duty of candor to the Court. *See* Model Rules of Pro. Conduct r. 8.4(c) ("It is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation"). To be clear, the misconduct here is not merely following a legal theory used by other parties or attorneys in another case. Neither is this an instance of using a template or a standard form document. The misconduct is taking another lawyer's work for a different client, filing it verbatim in this case—apparently without due review or regard for the client's specific circumstances—and on top of all that, doing so without attribution. All of this taken together amounts to misconduct.

Attorney Efron's actions also raise concerns about his compliance with Fed. R. Civ. P. 11. "Rule 11(b) instructs that an attorney certifies that what he or she presents to the court is formed from an inquiry that is reasonable under the circumstances." *Zell v. Ricci*, 957 F.3d 1, 19 (1st Cir. 2020). The attorney's certification is to the effect that:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(1)-(3). A violation of Rule 11(b) may entail sanctions upon motion or on the court's own initiative. Fed. R. Civ. P. 11(c).

Taking another attorney's work product without attribution, adopting it wholesale as the foundation of your client's case, and subsequently submitting plagiarized briefs certainly would throw any attorney's Rule 11(b) certification into serious doubt. Here, that is exactly what Attorney Efron did, and it should merit either the imposition of monetary sanctions, disciplinary action, or both.

**IV.    Conclusion**

As Judge Fusté wrote more than twenty years ago:

It is well established that federal courts possess those inherent powers which "are necessary to the exercise of all others." *United States v. Hudson,* 11 (7 Cranch) U.S. 32, 34, 3 L.Ed. 259 (1812). Part of the court's inherent power is the authority to sanction counsel for misconduct and to "assess expenses . . . against counsel who willfully abuse [the] judicial process." *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *see also Ramos Colon v. United States Attorney for Dist. of P.R.,* 576 F.2d 1, 3 (1st Cir. 1978) (quoting *Flaksa v. Little River Marine Constr. Co.,* 389 F.2d 885, 888 (5th Cir. 1968) ("[T]he inherent power of the court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it.")); *United States v. Kouri–Pérez,* 8 F.Supp.2d 133, 140 (D.P.R. 1998) (reprimanding defense counsel for inappropriate behavior and imposing monetary fine of $4,000), *appeal dismissed,* 187 F.3d 1, 14 (1st Cir. 1999).

*Pagán Vélez*, 145 F. Supp. 2d at 160.

Under both its inherent authority to govern the conduct of proceedings before it and its authority under Fed. R. Civ. P. 11(c)(3), the Court is empowered to sanction Attorney Efron for his failure to exercise reasonable diligence in this case and for engaging in plagiarism. Therefore,

Attorney Efron is **ORDERED TO SHOW CAUSE**, in writing, within fifteen days, why he should not be monetarily sanctioned in the amount of $7,000 for his untimely filings and lack of diligence in the management of case deadlines. With regards to the matter of plagiarism, the Court considers that a monetary sanction on its own would be insufficient to address the seriousness of the circumstances. Accordingly, the Court will be issuing a separate order to address that issue.

Finally, the Clerk of the Court is instructed to provide notice of this Opinion and Order to Mayor Miguel Romero and the Honorable Gloria Escudero Morales, the President of the Municipal Legislature of San Juan.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 9th day of April, 2025.

**S/AIDA M. DELGADO-COLÓN**
**United States District Judge**