## IN THE UNITED STATES DISTR5ICT COURT
## FOR THE DISTRICT OF PUERTO RICO

THE MUNICIPALITY OF SAN JUAN PUERTO RICO,

    Plaintiff

       v.

EXXON MOBIL CORP., ET ALS.

    Defendants

CIVIL NO. 23cv01608 ADC

## PLAINTIFF'S SEPARATE RESPONSE IN OPPOSITION TO DEFENDANTS' BP PLC MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM DOCKET 121 IN COMPLIANCE WITH ORDER AT D.E. 163[1]

**TO THE HONORABLE COURT:**

Plaintiff through the undersigned counsel and respectfully states, prays, and submits Plaintiff Municipality of San Juan's response and opposition to Defendant's BP PLC Motion to Dismiss. In support thereof Plaintiff states and prays as follows:

### **INTRODUCTION**

Plaintiff initiated this lawsuit to address the grievous injuries inflicted upon the Municipality of San Juan, Puerto Rico, directly resulting from Defendants' concerted efforts to manipulate scientific discourse and conceal the grave risks posed by their fossil fuel products. The Complaint details Defendants' roles in a calculated and enduring disinformation campaign that not only obscured the causal link between fossil fuels and global climate change but also exacerbated the catastrophic storms that devastated Puerto Rico in September 2017.

---

[1] This motion is one of several separate responses to substitute what is included in our stricken omnibus responses. Due to our collaboration with counsel in the similar sister case of Municipality of Bayamón, civil 22–01550 – SCC, and with their counsel's knowledge and consent, to achieve a unified non-contradictory posture, Plaintiff herein adopts by reference, and adapts for its use, some of their same arguments and language included at Docket 280 in the Bayamon case.

BP PLC filed a separate motion to dismiss in addition to the general motion to dismiss filed by Foreign Defendants and incorporated prior motions to the same. To that extent in this response and opposition we commence with several legal and factual assertions:

**Sufficiency of the Complaint:** The Plaintiffs Complaint presents a compelling array of factual allegations that cogently outline actionable claims. These claims are rooted in Defendants' orchestrated campaign to mislead and deceive the public and the scientific community about the dangers inherent in the continued use of fossil fuels, despite overwhelming scientific consensus to the contrary.

**Personal Jurisdiction:** Each Defendant engaged in substantial activities within Puerto Rico and the Municipality of San Juan, including the aggressive marketing and widespread distribution of fossil fuels, directly linking them to the resultant environmental and economic devastations. Such connections furnish ample grounds for the exercise of personal jurisdiction, as their actions have had direct, deleterious effects on the territory.

**Statute of Limitations and Equitable Tolling:** In response to the Defendants' statute of limitations defense, Plaintiff invokes the discovery rule, equitable tolling, justified by their deliberate concealment of critical data on the harmful impacts of fossil fuels. This systematic deception significantly delayed the Plaintiff's recognition of the true extent of the injuries and Defendants' culpability.

**Foreign Affairs Preemption:** Plaintiff counters Defendants' claim of interference with U.S. foreign policy by clarifying that their lawsuit seeks redress for localized damages resulting from deceptive commercial practices, a matter well within the scope of Puerto Rico law and independent of federal foreign policy considerations.

**RICO and Antitrust Claims:** The Plaintiff asserts that Defendants effectively formed a collusive enterprise, engaging in a comprehensive scheme to mislead the public about climate change risks and stifle competition in the energy sector. This scheme involved promoting discredited scientific voices, leveraging mail and wire communications to perpetuate their market dominance, and

obstructing the advancement of clean energy alternatives-actions that constitute clear violations of RICO and antitrust laws.

**Failure to Warn and Other State Law Claims:** The Plaintiff maintains that its Puerto Rico law claims, including public nuisance, unjust enrichment, and negligent misrepresentation, are well-founded. Defendants had an obligation to inform the public about the known, significant dangers of their products. Their failure to fulfill this duty has inflicted widespread harm on the people and the environment of Puerto Rico and the Municipality of San Juan, justifying the claims for remedies.

In sum, the Plaintiff's action responds to a sophisticated, multi-decade conspiracy by Defendants to distort public understanding of climate science and maintain fossil fuel dependency, utilizing the U.S. Mail and wire to facilitate their fraudulent activities.

## STATEMENT OF FACTS

### I. Background of Litigation

Plaintiff initiated this lawsuit due to the central role Defendants' fossil fuel products have played in causing extensive losses, fatalities, and property damage during the storms of September 2017 and their subsequent effects. The action seeks redress for the economic damages and ongoing detrimental changes to Puerto Rico's climate directly attributable to Defendants' activities. The injuries sustained by Plaintiff directly arise from Defendants' prolonged campaign to endorse fossil fuels while misleading the public about the direct link between them and climate change, along with the associated risks. The lawsuit includes RICO claims against Defendants for establishing an enterprise and colluding in a disinformation campaign about climate. Additionally, Plaintiff pursues compensation for harms resulting from Defendants' failure to warn of the severe impacts of unregulated fossil fuel use, along with claims of antitrust violations, nuisance, negligent design defect, and unjust enrichment. This Court has jurisdiction over all Defendants under RICO Section 1965 and specific jurisdiction provisions as argued in Plaintiff counsels' brief on that specific subject.

For decades, Defendants recognized that their fossil fuel products' greenhouse gas emissions significantly alter the Earth's climate. Research into the connection between fossil

fuels and global warming began as early as the 1950s, providing Defendants with an extensive understanding of the climatic effects of their products. They ultimately acknowledged the pressing need to mitigate the escalating threats of climate change. This acknowledgment spurred Defendants to protect their assets and exploit emerging opportunities in a warming world, leveraging their exclusive insights.

Instead of alerting the public and consumers about the dangers of their fossil fuel products, Defendants launched a sophisticated, coordinated campaign to distort and hide the contribution of their products to climate change. Over decades, Defendants sold their fossil fuels without disclosing their risks, while actively spreading misinformation about climate science. To cast doubt on the growing consensus about climate change, Defendants utilized trade associations and front groups such as the American Petroleum Institute ("API"), the Global Climate Coalition ("GCC"), and others to disseminate climate change denial literature and foster widespread skepticism and confusion for their benefit.

As public awareness of climate science and the genuine risks associated with burning fossil fuels increased, Defendants found their position increasingly challenged. In response, they shifted their marketing strategies to present themselves as environmentally responsible companies moving away from fossil fuels. However, these claims were deceptive, aimed merely at continuing consumer reliance on their products to sustain their profits. Employing misleading tactics, Defendants projected an image of transitioning to renewable energy while intensifying their fossil fuel production. Through these strategies, Defendants not only continued to profit significantly from fossil fuels but also perpetuated decades of public deception and contributed to the escalating threat of climate change. Consequently, the Municipality of San Juan including Plaintiff Municipality of San Juan citizens and their citizens endure ongoing severe harm due to Defendants' actions.

## II. Procedural History

Plaintiff filed their complaint on December 13, 2023. *See* Dkt 1. Subsequently, several Defendants filed a series of motions including joint motions to dismiss, individual motions, and a Joint Motion for Judicial Notice. *See* Dkts. 28-39. Plaintifffiled response and opposition to the same in documents 72 and 73 Defendants have responded by filing additional joint motions to dismiss and individual motions. *See* Dkts. 119-123. In response, Plaintiff filed omnibus responses and oppositions to the multiple new motions to dismiss by Defendants Dkts. 137, 139. However, the Court ordered the responses and oppositions be individual. As such Plaintiff now submits this opposition to Defendant BP PLC's Motion to Dismiss for Failure to State a Claim ("Dfts.' Mot."). Alongside this, Plaintiff has also filed another opposition addressing Defendants' joint Motion to Dismiss for Failure to State a Claim and another for Lack of Personal Jurisdiction.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). To the contrary, a complaint should only be dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558, or "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal,* 556 U.S. at 679. In assessing a motion to dismiss, the Court must "accept all well-pied factual averments as true and draw all reasonable inferences in favor of the non-moving party." *Berezin v. Regency Savings Bank,* 234 F.3d 68, 70 (1st Cir.2000). Finding whether a complaint states plausible claims "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## ARGUMENT

Defendant BP PLC incorporates into its Motion to Dismiss prior joint and individual motions to dismiss by other defendants. As such Plaintiff incorporates its arguments and positions in tis responses and oppositions to those motions including Documents 72 and 73 and we adopt the contents of them in this response.

BP argues that Plaintiff does not cite specific instances nor alleges that it directed, participated in, or knew about misconduct of industry organizations it belonged to. However, Plaintiff's allegations clearly state as such. BP was not just a mere member of these associations or groups, but actively participated and had leading roles which allowed it to further the RICO enterprise to produce climate change denial advertising and communications. Like other defendants, BP knew of the illegal aims of these associations, actively participated in them, and gained specific and specialized information that it knew was deceptive. With this knowledge, BP chose to support, and participate in the misrepresentations. Case law is clear, an entity can be held liable if it supports a group that is known to have "illegal aims." *NAACP v. Claiborne Hardware Co.*, *458 U.S. 886 at 920; 102 S.Ct. 3409, at 3429 (1932)*. See also *Kline v. Caldwell Banker & Co., 508 F.2d 2261 (9th Cir. 1974) Cert. Denied 42 U.S. 963(1975)* and *Phelps Dodge Refining v. FTC 139 F2 393 (2d Cir. 1943)*. The company knew of the harmful effects of its products, turned a blind eye, and contributed to the deception campaign. Thus, BP must be held accountable for its conduct in this action.

### I. Plaintiff Adequately States a RICO Claim

Defendant BP attacks the Complaint alleging that the RICO claims fall short but Plaintiff has adequately alleged each element sufficient to plead a RICO claim. Section 1962(c) states that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  18 U.S.C. § 1962(c).

RICO further establishes that it is unlawful "for any person to conspire to violate any of the provisions" of the RICO statute, including Section 1962(c). *Id.* § 1962(d). Section 1964(c) then

"provides a private right of action to any person injured in its business or property by reason of a violation of the activities prohibited by section 1962." *Kim v. Kimm,* 884 F.3d 98, 103 (2d Cir. 2018). To plead a cause of action under RICO successfully, a plaintiff must offer sufficient allegations demonstrating: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity. *Efron v. Embassy Suites (Puerto Rico), Inc.,* 223 F.3d 12, 21 (1st Cir.2000). These allegations must be specific and non-conclusory. *Tashjian* v. *Minnich,* 2019 WL 11029449, at *2 (D. Mass. June 11, 2019). Plaintiff has alleged each essential element of its RICO claim with as much detail as can be expected prior to discovery. Moreover, the defendants including BP have fraudulently concealed their activities and deliberately obscured involvement in climate denial through back channels, yet they expect Plaintiff to be able to plead with detailed specificity regarding these concealed facts.

### A. Plaintiff Has Pleaded the Requisite Elements of a RICO Claim.

Defendant's claim that under Rule 12(b)(6) that Plaintiff's Complaint does not allege facts specific enough to meet RICO's pleading standard. Contrary to Defendant's assertions, as stated above, to the extent possible based on defendants own deceptive and concealing fact-specific allegations rather than mere recitations of legal conclusions have been brought forward. First, by referring to the RICO Claims of the Complaint, this Court can confirm that there is indeed sufficient factual substance to plead a claim against the Defendant, that justifies relief that is plausible on its face. *See Grajales v. P.R. Ports Auth.,* 682 F.3d 40, 44 (1st Cir.2012). Plaintiff has identified instances of events, dates, actions, and conduct to provide fair notice to all Defendants of the "predicate acts" which constituted violations of RICO. However, much of the fraudulent activity conducted by the Defendants is under their control and will remain in Defendants' possession until discover has occurred. Considering the First Circuit's court cases and construing Plaintiff's well pleaded facts as true, this Court should find that Plaintiff has cognizable RICO claims.

Plaintiff's RICO allegations also meet the requirement of Federal Rule of Civil Procedure Rule 8, showing that the pleader is entitled to relief and has met the plausibility standard. Construing

the facts of the Complaint as true, the predicate acts alleged constitute specific allegations sufficient to show they plausibly affect interstate commerce---a prerequisite for a RICO action. 28 U.S.C. § 1331.

To meet the plausibility standard for a RICO claim, the Supreme Court and subsequent caselaw established clear obligations for a plaintiff to assert claims that state a plausible, not just conceivable, case for relief. *See Rodriguez-Reyes v. Molina-Rodriguez,* 711 F.3d 49 (1st Cir. 2013). The First Circuit ruled in *Rodriguez-Reyes* that a plaintiff does not have to prove a *prima facie* case at the pleading stage to satisfy the plausibility standard. Rather, the elements necessary to create a *prima facie* case will only be employed to provide context for the claim's plausibility. *Id.* at 54. Further, a critical step in evaluating whether the complaint is credible on its face is for the defendants to address the cumulative effect of the circumstances charged in the complaint, which Defendant here has neglected to do. *See Ocasio-Hernandez v. Fortuno-Burset,* 640 F.3d 1, 14-15 (1st Cir. 2011) ("[E]vidence proving the allegations in the complaint is not required" to survive a Rule 12(6)(6) motion.); *Rodriguez-Vazquez v. Consejo de Titulares def Condominio El Canton Mall,* 2017 WL 908267, at *4 (D.P.R. Jan. 20, 2017) *(citing Foley v. Wells Fargo Bank, NA.,* 772 F.3d 63, 72 (1st Cir. 2014)).

### B. Plaintiff Has Adequately Alleged That the Claimed Predicate Acts Proximately Caused Their Purported Injuries

Defendants argue that the allegations in the Complaint do not meet the proximate causation standard. Generally, a plaintiff's injury must be caused by the defendant's violation of § 1962 both factually and proximately for them to have standing to file a RICO action. *Holmes v. Sec. Inv. Prat. C01p.,* 503 U.S. 258, 267-274 (1992). To raise a civil RICO claim, "a plaintiff must allege 'a violation of section 1962' and an injury 'by reason of that violation." *Lerner v. Colman,* 26 F.4th 71, 77 (1st Cir. 2022) (quoting 18 U.S.C. § 1964(c)).

To make a claim under RICO, a plaintiff must allege (1) that Defendants violated section 1962, (2) that an injury was suffered to his or her "business or property," and (3) that the injury was caused "by reason of the violation was standard equivalent to the "proximate cause" standard.

*See Holmes,* 503 U.S. at 268,276. The causation prong requires an analysis as to whether a plaintiff's harm "would not have occurred [1] but for' the breach" of a defendant's legal duty. *Id.* at 268. Foreseeability is the criterion used to determine the "proximate cause." According to the Supreme Court, proximate causation must be demonstrated by "some direct relationship between the injury asserted and the injurious conduct alleged." *Id.* at 268-269.

Here, Plaintiff meets each element necessary for a *prima facie* RICO claim as Plaintiff alleges violations of sections 1962(a)-(d). The causal relationship between Defendant's conduct and Plaintiff's injury is easily recognizable:

Defendants including BP, through their violations of 18 U.S.C. § 1962(c) and (d), are alleged to have funded a fraudulent marketing campaign of deception that continues to date, to convince all consumers, including Plaintiff, that Defendants' fossil fuel-based products did not and would not-adversely alter the climate, while knowing the disastrous consequences of their combined carbon pollution on the world and Plaintiff more so than most. Defendants engaged in this decades-long disinformation campaign to sow doubt on their own science, the causes and effects, and the dangers of global warming, knowing full well the 1isks associated with unabated use of their fossil fuel products. This led to increased consumption of fossil fuels and greenhouse gas emissions, which in tum destroyed Puerto Rico's infrastructure and property during the record-breaking 2017 Hurricane Season.

When reviewing the Complaint, this Court can corroborate that Plaintiff sufficiently alleges the suffering of specific damages because of the Defendants' predicate acts including some that are attributable to BP. Plaintiff has already suffered, and continues to suffer, a "clear" and "definite" injury due to Defendants' RICO violations. Not only monetarily, but in their prope1ty rights and its value. *Id.* Defendants' fraudulent and deceptive activities have caused insurmountable damage to the island of Puerto Rico and deceived the Puerto Rican public and the Municipality of San Juan into purchasing their goods without informing them of the major dangers inherent to their fossil fuel products. Plaintiff has claimed that every Defendant engaged in the transportation,

trading, distribution, marketing, promotion, refining, manufacturing, selling, and/or use of fossil fuels in Puerto Rico. Because the allegations of the Complaint are to be taken as true, BP cannot circumvent such claims simply because Plaintiff do not have access to the necessary information pre-discovery. Plaintiff further contends that Defendants participated in a fraudulent marketing strategy to hide and prevent efforts to educate the public on the risks associated with utilizing the fossil fuel products Defendants marketed to the public, including Puerto Rico, and the Municipality of San Juan of these risks. In addition, Plaintiff claims that Defendants' false advertising and failure to warn led to several injuries in Puerto Rico.

BP argues that Plaintiff's fraud-based claims fail because certain claims rest "on information and belief." The First Circuit has asserted that Rule 9(6) requires specificity in pleading RICO mail and wire fraud, but such specificity needs to be no more or no less than that which is required in general fraud. *New England Data Servs., Inc. v. Becher,* 829 F.2d 286, 290 (1st Cir. 1987). The First Circuit recognized that certain circumstances warrant leniency regarding RICO claims. *Id.* at 290-291 (acknowledging the "apparent difficulties in specifically pleading mail and wire fraud as predicate acts."). Other Courts have agreed: "Allegations of fraud cannot ordinarily be based 'upon information and belief,' except as to matters peculiarly within the opposing party's knowledge." *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986) (citing *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975)). "To satisfy Rule 9(b) ... the allegations must be accompanied by a statement of the facts upon which the belief is founded." *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986); *Blue v. Doral Fin. Corp.,* 123 F. Supp. 3d 236 (D.P.R. 2015). Plaintiff's allegations not only lay out, in detail, the overarching scheme of Defendants' mail and wire fraud of which BP actively participated in, but gives specificity to the violations. While certain claims may rely on the language of "information and belief," Plaintiff's Complaint outlines facts that leads Plaintiff to believe such allegations, including facts provided by Congressional investigations on Defendants' deception.

### C.  Plaintiff Has Adequately Alleged an Enterprise

To find liability under RICO, Plaintiff must establish an "enterprise." *United States v. Rodriguez-Torres,* 939 F.3d 16, 24 (1st Cir. 2019). An "enterprise" is a long-lasting group acting in concert to advance a common purpose. *Id*.

Plaintiff's allegations specifically state all requisite facts to establish an "association-in-fact" enterprise. An association-in-fact enterprise is generally governed by Supreme Court law. In *United States v. Turkette,* 452 U.S. 576,583 (1981), the Court held that an association-in-fact enterprise can be established by showing facts of a continuous organization, formal or informal, and that the named associates function as an ongoing unit working in furtherance of a common goal. In *Boyle v. United States,* 556 U.S. 938, 945-948 (2009), the Court held that an "ascertainable structure" was not a requirement, but rather an association-in-fact enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. *Id.* at 946. These two cases affirmed that the evidence used to show "proof of a pattern[ed]... activity may be sufficient in a particular case to permit a jury to *infer* the existence of an association- in-fact enterprise." *Id.* at 947 (emphasis added).

Specifically, Plaintiff alleges that Defendants were involved in, associated with, and/or controlled API and GCC and other industry organizations and that these organizations were an enterprise engaged in interstate commerce. *See* 18 U.S.C. *§* 1961 (defining an enterprise under the RICO statute as any individual, partnership, corporation, association, or other legal entity"); The Plaintiff alleges that the purpose of the Defendants enterprise was to sow misunderstanding regarding climate science and alter public perception of fossil fuels contribution to climate change. In doing so, Plaintiff further provides ample evidence of Defendants' coordination among each other in association with the enterprise. Further, the longevity of the enterprise is also demonstrated through its decades-long disinformation campaign that continues through today.

In its Complaint Plaintiff explains how industry organizations controlled by Defendants operated and how they were able to fund their enterprise both directly and under the guise of their marketers and promoters, setting in motion a deception that fostered each element necessary to continue selling their fossil fuel products while maintaining the enterprise's goal of undermining climate science and misleading the public about the harmful contribution of their fossil fuel products to climate change.

Defendants concealed their involvement in industry organizations and deliberately obscured their efforts to conceal and misrepresent their fossil fuel products' known dangers, including through nominally independent organizations like coalitions, front groups, and organizations pushing a denialist view of climate change that the Defendants knew to be false. These groups disseminated climate disinformation from third-party sources on Defendants' behalf. In doing so, it aided the Defendants in concealing their misconduct.

### D.  Plaintiff Has Adequately Alleged Racketeering Activity

RICO's definition section, 18 U.S.C. § 1961, "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." *HJ Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 237 (1989). "Racketeering activity" is the necessary element common to all RICO violations. Under RICO, "racketeering activity" is limited to a particular set of predicate offenses, or "predicate acts" found in 18 U.S.C. § 1961(1). *See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 788 (1st Cir.1990). The First Circuit explained that "[i]t is not enough for a plaintiff to file a RICO action, chant the statute mantra, and leave the identification of predicate acts to the time of trial." *Ahmed v. Rosenblatt,* 118 F.3d 886, 889 (1st Cir. 1997) (citing *Feinstein v. Resol. Tr. Corp.,* 942 F.2d 34, 42 (1st Cir. 1991)). Defendants argue that the Complaint does not plead specific predicate acts under §1961(1) and that the predicate acts alleged were not asserted with necessary particularity as is required by FRCP 9(b). However, in a RICO case alleging mail and wire fraud, if details of just when and where the mail or wires were used are missing, then dismissal will not be automatic. *New England Data Servs., Inc. v, Becher,* 829 F.2d 286,290 (1st Cir. 1987).

Rather, the Court should make a "determination as to whether the claim as presented warrants the allowance of discovery." *Id.* The First Circuit offered three factors to consider: (1) whether the plaintiff presents "a general scheme to defraud," (2) whether the plaintiffs' allegations "make it likely that the defendant used interstate mail or telecommunications facilities," and (3) whether "the specific information as to use is likely in the exclusive control of the defendant." *Id.* at 290-291. Here, Plaintiff alleges that Defendants including BP engaged in multiple instances of mail and wire fraud by using the mail and internet to try to obtain money by false pretenses and misrepresentations, which constitutes a pattern of racketeering. To establish mail or wire fraud, Plaintiff established that Defendants "engaged in a scheme to defraud with the specific intent to defraud and that [it] used the United States mails and/or the interstate wires in furtherance of the scheme." *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 790 (1st Cir. 1990); Particularly, "the scheme must be intended to deceive another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct," as established herein. *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir. 1990).

Unlike other cases in the First Circuit, Plaintiff's allegations of mail and wire fraud are neither solely breaches in a fiduciary duty nor a breach of contract. *See United States v. Greenleaf,* 692 F.2d 182, 188 (1st Cir. 1982) (A "breach of a fiduciary duty, standing alone, does not constitute mail fraud."); *see also McEvoy Travel Bureau, Inc.,* 904 F.2d at 791 ("Nor does a breach of contract in itself constitute a scheme to defraud."); *Arzuaga-Collazo v. Oriental Fed. Sav. Bank,* 913 F.2d 5, 6 (1st Cir. 1990), The violations named in Plaintiffs complaint constitute actual violations due to the Defendants' intention to defraud in their use of the mails and interstate wires through deceptive advertisements, statements, and dissemination of known misinformation.

Federal Rules of Civil Procedure Rule 9(b) requires a plaintiff to plead the instances of fraud in a RICO claim with particularity. Fed. R. Civ. P. 9(b); *see also Naicom Corp. v. DISH Network Corp.,* 2024 WL 1363781, at *20 (D.P.R. Mar. 29, 2024). A complaint must specify "the time,

place, and content of an alleged false representation." *United States ex rel. Kelly v. Novartis Pharms. Corp.,* 827 F.3d 5, 13 (1st Cir. 2016) (quoting *Doyle v. Hasbro, Inc.,* 103 F.3d 186, 194 (1st Cir. 1996)). Considering recent litigation, federal courts agreed that in cases of lengthy, fraudulent schemes, Rule 9(b)'s heightened standard is not as stringent the Defense assert. *See In re Nat'l Prescription Opiate Litig.,* 458 F. Supp. 3d 665, 696-697 (N.D. Ohio 2020); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.,* 497 F. Supp. 3d 552, 666 (N.D. Cal. 2020); *City & Cnty. of San Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d 610,668 n.34 (N.D. Cal. 2020); *In re Nat'/ Prescription Opiate Litig.,* 2019 WL 3737023, at *2 (N.D. Ohio June 13, 2019). The standard has become more lenient to accommodate for the complexity of such cases.

The Complaint demonstrates that Plaintiff has detailed Defendant's specific acts that qualify as violations under§ 1961(1). Moreover, it is important to note that "[c]ourts must also keep in mind the balance between, on the one hand, Rule 9(b)'s purposes of avoiding groundless claims and providing adequate notice to defendants, and on the other, 'the policy in favor of allowing amendments and trying cases on their merits, and against dismissals which would deny Plaintiff its day in court." *P.R. Med. Emergency Gm., Inc. v. Iglesia Episcopal Puertorriqueña. Inc.,* 118 F. Supp. 3d 447,458 (D.P.R. 2015) (citing *Becher,* 829 F.2d at 292) (finding that policy considerations warranted providing discovery for Plaintiff's section 1962(c) RICO claims to satisfy Rule 9(b)'s particularity requirement).

The First Circuit recognized repeatedly that the general purpose of RICO is to ensure protection of businesses and consumers against fraudulent activity. *Puerto Rico Am. Ins. Co. v. Burgos,* 867 F. Supp. 2d 216, 227-28 (D.P.R. 2011); *Sedima, S.P.R.I v. Imrex Co.,* 473 U.S. 479, 497-98 (1985) ("RICO is to be read broadly... The statute's remedial purposes are nowhere more evident than in the provision of a private action for those injured by racketeering activity.") This arises from both Congress' fully expansive language and its express warning that RICO is to "be liberally construed to effectuate its remedial purposes." *Boyle v. United States,* 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265

(2009) (quoting Pub.L. 91A52, §904(a), 84 Stat. 947). If Plaintiffs Complaint is considered insufficient to meet Rule 9(b) standards, they should be given a time-frame for further discovery to aid the continuing effort to comply with the rule. *New England Data Services, Inc. v. Becher,* 829 F.2d 286,292 (1st Cir.1987) (allowing plaintiff to submit discovery requests after the court found plaintiffs complaint failed to meet Rule 9(b)'s requisite standards). This is even more necessary given the fact that BP has almost complete control, access, and manipulation of evidence relevant to the details of this matter and have procured to conceal the same.

### E.  Plaintiff Has Adequately Alleged a Pattern of Racketeering Activity.

Furthermore, Plaintiff's allegations meet the requirements of RICO for a "pattern" of racketeering activity. However, Plaintiff offers allegations that demonstrate several related acts that were all committed with the same intent and goal. Such allegations are sufficient to support a pattern of ongoing racketeering. To sufficiently allege a "pattern," a plaintiff must establish at least two acts of racketeering occurred within ten years of each other. 18 U.S.C § 1961(5). Additionally, a "pattern" also requires "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *HJ. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

The First Circuit acknowledged this as the "continuity plus relationship" standard. *Efron v. Embassy Suites (P.R.). Inc.,* 223 F.3d 12, 15 (l8t Cir. 2000). In this continuity analysis, courts must consider the specific facts of each case. *See D&T Partners, L.L.*C. *v. Baymark Partners Mgmt., L.L.C.,* 98 F.4th 198,205 (5th Cir. 2024) (citing *HJ. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229,240 (1989)).

A plaintiff alleging RICO violations can satisfy the "continuity plus requirement"  by establishing open continuity or closed continuity. *HJ.,* 492 U.S. at 241. Closed continuity involves "a series of related predicates extending over a substantial period of time," which is present in this matter. *Id.* at 242. When "the temporal duration of the alleged activity and the alleged number of predicate acts are so extensive that common sense compels a conclusion

of continuity, closed-ended continuity should be found." *Giuliano v. Fulton,* 399 F.3d 381,387 (1st Cir. 2005). As required by case law, the predicate acts asserted by the Plaintiff are, for the most part, not isolated incidents and have the same victims, participants, and goals. *See HJ., Inc.,* 492 U.S. at 240; *see also Fleet Credit Corp. v, Sion,* 893 F.2d 441, 444-45 (1st Cir.1990).

In this case Plaintiff's allegations identify two or more predicate actions that constitute a pattern of racketeering and are sufficiently connected to have caused harm to Plaintiff. Plaintiff explains in the Complaint that the predicate racketeering activities perpetrated by Defendants were not isolated incidents because they were carried out continuously for the same goals over a significant amount of time. Further, the Plaintiff mentions acts that were committed pursuant to and in furtherance of the Enterprise, including false and misleading statements, as well as other uses of the mails and wire transmissions, to further Defendants' scheme and artifice to defraud. Plaintiff is certain that even more predicate racketeering acts will be uncovered through the discovery process.

### F.  Plaintiff Has Adequately Alleged That Defendants Conducted, Maintained, and Controlled the Alleged Enterprise.

RICO's Section 1962(c)'s "conduct" component requires that a defendant "conduct or participate, directly or indirectly, in the conduct" of the enterprise. 18 U.S.C. § 1962(c). The Supreme Court interprets this to mean that a defendant must "participate" in the operation or management of the enterprise." *Reves v. Ernst & Young,* 507 U.S. 170, 183, 113 S. Ct. 1163, 122 L. Ed. 2d 525 (1993).

Here, Plaintiff brought RICO claims against all Defendants alleging that the Defendants conducted and participated in the conduct of API's and GCCs enterprise's affairs, and did so, and continue to do so, through a pattern of racketeering activity for the unlawful purpose of intentionally defrauding Plaintiff into accepting a substantial risk that it otherwise would not have taken by purchasing the Defendants' carbon-based products.

Plaintiffs Complaint also describes how the Defendants including BP directly and

indirectly maintained interests and control of the GCC and API enterprise through the pattern of racketeering activity, in violation of 18 U.S.C. 1962(b).Furthermore, Plaintiff has described specific facts that demonstrate that BP as well as the other Defendants are not mere associates with the industry organizations, but controlled those enterprises through several varying methods of maintaining operative power over them such as senior executives sitting on a Board of Directors; they make up a large percentage of financial contributions; lead initiatives, committees, task forces, communications teams, marketing efforts, and lobbying. By doing so Defendants not only participated in the enterprise's activities, but they held leadership and controlling positions of the enterprises which allowed them to direct, decide on, and operate the activities of the enterprises. These facts, taken as true, demonstrate that Plaintiff has adequately alleged that Defendants participated in the conduct of the alleged enterprise and that their allegations surpass mere association.

### G.  Plaintiff Has Adequately Alleged a Conspiracy

The elements of a RICO conspiracy claim include the same elements of alleging a RICO violation, plus one additional element: "an agreement with others to commit a substantive RICO violation." *United States v. Marino,* 277 F.3d 11 (1st Cir. 2002). By claiming that Plaintiff does not present facts evidencing the existence of an agreement, the Defendants including BP once again place an inappropriately high burden on Plaintiff that is not required by caselaw. The First Circuit has time and time again affirmed that it follows the *Salinas* standard and denies that a "RICO conspiracy conviction requires *proof* that a defendant agreed to commit, or in fact committed, two, or more predicate offenses. "*See United States v. Leaner-Aguirre,939* F.3d 310, 317 (1st Cir. 2019) (emphasis added); *United States v. Millan- Machuca,* 991 F.3d 7, 18 n.3 (1st Cir. 2021); *United States v, Sandoval,* No. 18-1993, 6 F.4th 63, 76 n.1 (1st Cir. July 7, 2021). Instead, under *Salinas,* the First Circuit confirms that an agreement may be shown through allegations which assert that the Defendant had agreed to participate in the enterprise

with the knowledge and intent that at least one member of the RICO conspiracy would commit at least two racketeering acts in pursuit of the goals of the enterprise. *United States v. Velazquez-Fontanez,* 6 F.4th 205, n.11 (1st Cir. 2021).

Plaintiff's Complaint explains that Defendants agreed to directly and indirectly use or invest income that was derived from a pattern of racketeering activity in an interstate enterprise, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.  Plaintiff has met its requirement with regard to the allegations of BP identified within the conspiracy and that BP agreed to the enterprise and was not a mere member but was an active participant of the same.

The Plaintiff has set forward BP's participation and involvement in the conspiracy and racketeering and specificity in its actions. These allegations demonstrate BP's knowing involvement with and control  of associations whose aims were illegal.

## II. Plaintiff Has Plead Cognizable Puerto Rico Law Claims.

In diversity cases, state law controls the substantive elements of a fraud claim. *Century Packing Corp. v. Giffin Specialty Equip. Co., LLC,* 438 F. Supp. 2d 16, 25 (D.P.R. 2006). Plaintiff must also comply with federal pleading requirements. *Simonet v. SmithKline Beecham Corp.,* 506 F. Supp.2d 77, 89 (D.P.R. 2007). Rule 9(6) of the Federal Rules of Civil Procedure sets forth that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(6). Plaintiff must plead "the who, what, where, and when of the allegedly false or fraudulent representation." *Rodi v. S. New England Sch. of Law,* 389 F.3d 5, (1st Cir. 2004), Here, Plaintiff has done so by explaining, in detail, what Defendants have said, when it was said, and to whom it was said.

 BP tries to wrap itself in some passing comments made by its CEO which in fact were just words in the air made to mislead as it did not act on them. However, contrary to BP's assertions the Complaint is void of false misleading statements the Complaint describes how BP and the other defendants mislead and deceived the Municipality of San Juan. Despite

BP's assertions, its statements highlighted in the Complaint do constitute deceptive and fraudulent statements. Plaintiff identifies distinct statements where BP told the public it acted in a climate-friendly manner when it was inapposite in order to elicit purchases from Plaintiff.

### A. Defendants Had a Duty to Warn of Climate Risks. (Claim 10)

Under Puerto Rico law:

> [A] plaintiff alleging failure to warn must prove (1) the manufacturer knew or should have known of the risk inherent in the product; (2) there were no warnings or instructions, or those provided were inadequate; (3) the absence of warnings made the product inherently dangerous; and (4) the absence of adequate warnings or instructions was the proximate cause of plaintiffs injury." *Cruz Vargas v. R.J. Reynolds Tobacco Co.,* 348 F.3d 271, 276 (1st Cir. 2003) (citing *Aponte Rivera v. Sears Roebuck,* 144 D.P.R. 830 (1998)).

Under Puerto Rico's strict liability, consumer consumer-expectations based regime, "[t]he manufacturer's liability will depend on whether the deficiencies in the warnings or instructions render the product unreasonably dangerous, that is, more dangerous than would be expected by the ordinary consumer." *Aponte Rivera v, Sears Roebuck, supra* at 841.

As alleged in the Complaint, each Defendant knew of the risk inherent to their fossil fuel products and did not warn the public or their consumers. That duty applied to all Defendants and thus, the claim alleged here applies, as well.

The Defendants knew about the inherent risk of its fossil fuel products. With such knowledge it continued, and continues, to produce dangerous products that cause harm to the Plaintiff; however, the Defendants including BP have never applied notices or labels to warn consumers about the danger of their usage. Yet they had a duty to do so, and their inability to do so, constitutes a failure to warn consumers like the Plaintiff. *See Cruz Vargas v. R.J. Reynolds Tobacco Co.,*348 F.3d 271,276 (1st Cir. 2003) *(citing Aponte Rivera v. Sears Roebuck,* 144 D.P.R. 830 (1998)).

BP continuously repeats in its motion that in 1997 in passing its CEO linked fossil fuels to climate change as if by merely stating something without acting on it excused its malfeasance. This is even more egregious when in fact BP did something totally different and proceeded

to mislead, deceive, make misrepresentations, and hide the truth all the while enjoined in a RICO enterprise.

   The Complaint contains names of fraudulent reports and communications, describing fraudulent information that Defendant BP either promoted or helped promote, as well as reports and consultants such as Fred Singer and organizations that assisted it in disseminating misleading information. Plaintiff has set forward sufficient information to support its Complaint.

## CONCLUSION

   Defendant BP has presented multiple arguments to urge this Court to dismiss Plaintiff's action. Nowhere in their arguments can they rebut that they engaged in propaganda that was deceptive and misleading that defended their products' efficacy knowing that it caused global warming and so much harm. Nowhere in their arguments can they rebut the systemic efforts to promote their products' safety and to establish a sense of calm that undoubtedly at a minimum contributed and at a maximum caused the apathy towards global warming that led to the lack of preventative acts and measures to ensure Plaintiff proactivity to ensure the safety of their residents. This Court must allow Plaintiff an opportunity to hold Defendant BP accountable for their propaganda and allow for discovery to ensue that will bolster the prima facie causes of action as plead in Plaintiff's pleadings. This Court should not allow defenses misplaced application of caselaw and misconstrued conclusions on Plaintiff's allegations to jade its decision regarding the Motions to Dismiss. Simply stated, Plaintiff has established why this action should move forward and justice would not be served should this Court halt their efforts to hold BP accountable for its malfeasance.

   **WHEREFORE,** for the foregoing reasons, this Court should deny Defendant BP's motion to dismiss Plaintiff's Complaint in its entirety together with such, other, further, and different relief as deemed just and equitable under the circumstances.

**RESPECTFULLY SUBMITTED.**

In San Juan Puerto Rico, April 21, 2025.

**LAW OFFICES DAVID EFRON, PC**
Attorneys for Plaintiff
P.O. Box 29314
San Juan, PR 00929-0314
Tel. 787-753-6455
Fax 787-758-5515
efron@davidefronlaw.com


s/DAVID EFRON
USDC-PR 125701