EXHIBIT
I

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

THE MUNICIPALITY OF SAN JUAN,

PUERTO RICO

Plaintiff

V.                            Civ. No. 23-1608 (ADC)

EXXON MOBIL CORP., et al

Defendants

RE: OPINION AND ORDER RE DAVID EFRON, ESQ

OF

THE HONORABLE AIDA M. DELGADO-COLON

United States District Judge

EXPERT OPINION OF ARNOLD ROSENFELD, ESQ.

I. Introduction

David Efron, Esq., a member of the bar in the Federal District Court of the United States Territory of Puerto Rico, is the subject of the above Opinion and Order, raising the issues of whether, in filing claims on behalf of his client, the City of San Juan, in the above referenced case, he has violated the Rules Professional Conduct adopted in the Federal District Court of Puerto Rico and also whether, with that same filing, he has violated Federal District Court Rule 11.

II. Background and Expertise of Arnold Rosenfeld, Esq.

My relevant background, experience, training, and expertise are summarized below. I also am attaching my full curriculum vitae.

I attended and graduated from Bowdoin College, in Brunswick, Maine, in 1962. I completed one year at Boston College Law School, from 1962-1963 and then entered the U.S. Army (Infantry)

as an officer on active duty for twenty-seven months, between June,1963 until the end of August,1965. I then returned to Boston College Law School and graduated in 1967.

After graduation from law school and passing the Massachusetts bar examination, I served as a Deputy-Assistant Attorney General in the Massachusetts Office of the Attorney General for six months, and then transferred to a state agency, working as part of the Governor's Office, and chaired by the Attorney General, that administered federal funds for law enforcement, criminal justice agencies, and the state's courts. I served as the Deputy Director and Executive Director of that state agency between 1968-1974.

In 1974, I joined the Massachusetts Defenders Committee (MDC), the state fulltime public defender agency, as its Deputy Chief Counsel, from 1974-1984. While there, I represented over five hundred defendants in criminal cases in the district and superior courts, tried over thirty cases before juries as lead counsel, and wrote briefs and orally argued ten cases in the Appeals Court and the Supreme Judicial Court in Massachusetts. In 1984, I was selected as the first Chief Counsel of the Committee for Public Counsel Services (CPCS), a new state agency that oversaw all public defender services in Massachusetts. I served in that position through 1990.

In 1990, I was named as the Chief Bar Counsel of the Office of the Bar Counsel by the Massachusetts Board of Bar Overseers. I remained in that position until 1999. The Office of the Bar Counsel handles all complaints against lawyers in Massachusetts. These complaints are analyzed first to determine if the allegation falls within the scope of the Massachusetts Rules of Professional Conduct and then makes a determination as to the seriousness of the alleged violation. In addition to supervising the staff, I handled a reduced caseload of cases, prosecuting bar discipline cases before hearing committees and the Board of Bar Overseers and handling the appeals of cases before the Supreme Judicial Court. While I was the Chief Bar Counsel, I also authored numerous articles interpreting the meaning of the Rules of Professional Conduct in publications including for the Massachusetts Bar Association and the Massachusetts Lawyers Weekly. During that time, f also served on the Massachusetts Supreme Judicial Court Committee on Bar Discipline matters.

In 1999, I entered the private practice of law as Of Counsel at the international law firm that became K&L Gates LLP. While my primary duties at K&L Gates involved large scale civil litigation in Massachusetts and other jurisdictions including Washington, D.C., New York, Florida, and Minnesota, I also accepted appointments of Criminal Justice Act cases and became the pre-eminent attorney in Massachusetts representing respondents before the Massachusetts Board of Bar Overseers and advising lawyers and law firms on professional responsibility matters and acted as an expert witness in state and federal courts on legal malpractice cases. After eleven years at K&L Gates, I joined the boutique law firm of Sarrouf Law, continuing with the same type of practice I had at K&L Gates. When the firm founder, Camille Sarrouf, Sr. died and his

son, Camille Sarrouf, Jr was appointed to be a judge, I opened my own practice, Arnold Rosenfeld Law. My practice now is limited to representing lawyers and advising law firms and acting as an expert witness in legal malpractice cases.

Concurrent with my employment as the Chief Bar Counsel, in 1990, I began teaching Professional Responsibility at Boston University Law School and in 1994, I was appointed as a Visiting Professor of Law and continued to teach at BU Law School until 2012. In 1995, while continuing to teach at BU Law School, I was hired to teach Professional Responsibility at Northeastern University School of Law where I continue to teach to this day.

I have been an active member of the American Bar Association Center for Professional Responsibility (CPR) since the early 1990's. I have served on various committees and in various capacities at the ABA, including serving a three-year term as a member and another three-year term of the Chair of the ABA Standing Committee on Professional Discipline, appointed by the President of the ABA. I also served as a member of the CPR State Bar and Judicial Discipline Evaluation and consultation Team, participating in the evaluation of eight state bar discipline programs,

I have received numerous awards for my accomplishments as a lawyer including, but not limited to, serving as the Wasserstein Public Service Fellow in Residence at Harvard Law School in 1997; as the recipient of Boston College Law School's most prestigious award, the St. Thomas More Award, in 2001; the Thurgood Marshall Award, in 2008 and the Clarence Earl Gideon Award, in 2020, for public service from the Committee for Publlic Counsel Services. I am an elected member of the American Law Institute. I also have authored several law review articles and numerous newspaper articles on legal ethical issues.

I am being compensated for the time I spent preparing this Opinion at a rate of $700 per hour. I have no professional, personal, or financial interest in the outcome of this litigation and my compensation is not dependent on my reaching any particular conclusions.

III. Opinion

In its Opinion and Order, the Court correctly alleges that "San Juan's 241-page complaint is almost word-for-word carbon copy of the original complaint filed in the Municipalities case." As the Court pointed out, this filing "activated the machinery of civil procedure, which sets deadlines for plaintiff to serve all named parties within ninety days of filing upon pain of

dismissal, Fed. R. Civ. P. 4(m), and which provides the defendants with an opportunity to raise specific dispositive defenses by pre-trial motion, like those allowed in Fed. R. Civ .P. 12(b)."

The Court initially points to Rules 1.1, Comment 5; and 1.3, Comment 2, as potential violations. These rules deal with competence and diligence. The Court then identifies what it considers to be its principal ethical concern: "an astonishing example of plagiarism in the legal profession." This allegation raises the question whether copying another party's pleading violates the ethical rules in force in Puerto Rico, the ABA Model Rules of Professional Conduct.

Before undertaking a legal analysis of the issue of copying pleadings and other documents in any legal matter, it must be acknowledged that the respondent in this matter, David Efron, Esq., did not handle this matter without making ethical errors that closer attention to his duty as counsel to his client, the City of San Juan, would have avoided. Nonetheless, it is my opinion, based upon my qualifications, professional experience, and review of the trial judge's analyses and conclusions, that, with the exception of the allegations of violation of Rules 1.1, Comment 5 and 1.3, Comment 2, the ethical violations attributed to Attorney Efron alleged by the Court do not rise to major attorney misconduct and are correctable within the Court's broad discretion regarding possible attorney misconduct..

The Allegation of Plagiarism as a Violation of Rule 8.4(c)

In its Opinion, the Court states that "(T)he touchstone of plagiarism is the lack of attribution." The Court analogizes the facts in this case to a situation in law school, where passing someone else's work off as one's own is wrong as a matter of fact and ethics, citing "Odom v. Syracuse City School District", (citation omitted), where plagiarism can lead to a failing grade or expulsion". The Court then segues to Model Rule 8.4(c), which states "{i}t is professional misconduct for a lawyer to.... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." This analogy is inapt. As a lawyer who has represented five different law students in "plagiarism" cases at Boston University Law School, the cases there all involved specific provisions in the law school's rules and regulations that explicitly define the term "plagiarism" and its elements. Neither ABA Model Rule 8.4(c), nor any other Model Rule, ever mention the word "plagiarism" or define it as being within the scope of Rule 8.4(c). Rule 8.4(c) states: "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. In the Comments section to Rule 8.4, which describe various types of conduct that are compatible with a violation of Rule 8.4, there is no mention or reference to plagiarism or copying the work of others in preparing pleadings or other legal documents.

As a former Chief Bar Counsel for nine years and a lawyer specializing in representing lawyers in literally hundreds of cases, and as a big and small firm lawyer representing numerous clients in

both civil and criminal matters of consequence, I am aware, as I am sure this Court is also aware, that it is common in the practice of law for lawyers to utilize their own and other lawyers previously filed work in preparing pleadings, making arguments, and writing briefs. The work product of lawyers is commonly available, and good lawyers often review the work product of their peers to improve their submissions.

As I recognized earlier in this analysis, the respondent, David Efron, Esq., may have acted precipitously in submitting his 241-page pleading without informing the Court of the fact that he had the permission of the authors of the Municipalities submission to utilize their work product. It also is alleged that he did not take the time to adapt the language from that pleading to address the differences in the pleadings that existed because one matter differed from the other in material ways, e.g. one was a class action, and one was not. While the Court pointed out that not making those changes was a violation of Rules 1.1 and 1.3, it reached this conclusion without undertaking any fair judicial inquiry to determine whether Efron was collaborating with the plaintiffs in the Municipalities case.

It is my opinion, based upon my experience in interpreting Rule 8.4(c), both as a bar discipline prosecutor and bar discipline defense counsel, while it is a rule that is intended to deal with a broad stroke of violations, it also is a rule in which alternative diversions are available to the Court in lieu of formal bar discipline charges. For example, in 1990, when I was the Chief Bar Counsel in Massachusetts, I established a program, called ACAP, under which cases involving lawyers who are accused of misconduct the first or second time, could be diverted into a special program to try to resolve the complaint through informal negotiation. The program, still used today, has reduced the number of formal investigations each year by one-third, saving time and resources while achieving satisfactory results. If that approach were utilized in this case, the Court could have informed counsel of its concerns and advised counsel to make changes in the pleading, within a specified period, rather than bring charges against the lawyer where interpretation of whether the rule, (8.4(c)), applies to the alleged misconduct is open to dispute. Taking that approach, which is still available, would save valuable time and effort for both the Court and the Respondent. Keeping in mind that the purpose of the Rules of Professional Conduct and bar discipline are to ensure that lawyers act within the scope of generally acceptable norms as well as to protect the public, a negotiated resolution would bring about a fair result and teach the lawyer to act more professionally. In my representation of respondents, I often suggest and utilize admissions of wrongdoing by my clients in return for negotiated settlements.

IV. Conclusion

Based upon my more than fifty (50) years of experience as a trial attorney in the public and private sector, my thirty-five years prosecuting and defending bar discipline matters, my thirty-

five years in academia teaching Professional Responsibility (Legal Ethics) at highly regarded law schools (Boston University Law School and Northeastern University School of Law), my authorship of over fifty articles analyzing and interpreting the Rules of Professional Conduct, and my experiences on American Bar Association committees involving bar discipline matters nationally, it is my opinion that the Court's conclusion, if correct, that the ABA Rules of Professional Conduct, 1.1, Comment 5 and 1.3, Comment 2, were possibly violated by the respondent, David Efron, Esq.,, and that discipline for those violations would be at the most a monetary assessment. It is also my opinion that there appears to be no factual or legal basis to conclude that the Respondent, David Efron, Esq., acted in violation of ABA Rule 8.4 (c), because there is no language in the rule or Comments to support a finding that his submission in the underlying case was "plagiarism" or that, even if it was "plagiarism", that plagiarism is a violation of Rule 8.4(c). My recommendation to the Court is to treat this allegation as correctible by attributing the source of the materials used, which the respondent assures us he is now doing, and resolved through an Order of the Court.

/s/ Arnold Rosenfeld

Arnold Rosenfeld

Arnold Rosenfeld Law

32 Milford St., No. 2

Boston, MA 02118

Arnierlaw@gmail.com

617-312-4576