Case 3:23-cv-01608-ADC   Document 186-2   Filed 04/24/25   Page 6 of 30



EXHIBIT
II A

Defendants Exxon Mobil Corp., Chevron Corp., ConocoPhillips, Motiva Enterprises LLC, and Occidental Petroleum Corporation[1] (together, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(2), respectfully submit this Joint Opening Brief in Support of their Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (the "Motion").[2]

## INTRODUCTION

Plaintiff, the Municipality of San Juan, seeks to impose liability on Defendants for harms allegedly resulting from more than a century of energy consumption by third-party end-users around the world. The Complaint suffers from numerous defects, as set forth in Defendants' Joint Motion to Dismiss for Failure to State a Claim. This Motion focuses on one defect in particular: The allegations, even if accepted as true, do not establish personal jurisdiction over these nonresident Defendants.

Plaintiff does not allege "general" personal jurisdiction over any Defendant. None is incorporated or headquartered in Puerto Rico, and thus none is "at home" in this forum. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Nor has any Defendant consented to general personal jurisdiction in Puerto Rico. *See Mallory v. Norfolk & Southern Railway Co.*, 143 S. Ct. 2028 (2023). And because the Court also lacks "specific" personal jurisdiction over Defendants and lacks jurisdiction under RICO's nationwide service provision, as demonstrated below, the Court should dismiss the Complaint with prejudice.

   1. **Based on Plaintiff's own allegations—which Defendants accept as true for purposes of this Motion only—Plaintiff's claims do not "arise out of or relate to" Defendants'**

---

[1] Occidental Petroleum Corporation is incorrectly named as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp."

[2] Moving Defendants understand that the other named defendants have not yet been served with the action and thus are not parties to this Motion. Plaintiff purported to voluntarily dismiss Arch Resources Inc. F.K.A. Arch Coal Company and Peabody Energy from this action on February 9, 2024. Dkt. 6. This dismissal was effectuated by order of the Court on February 21, 2024. Dkt. 9.

**alleged contacts with Puerto Rico, as specific personal jurisdiction requires.** Under the Supreme Court's recent decision in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), to satisfy the "arising out of or related to" prong, a plaintiff must allege facts that, taken as true, would show that *use or malfunction of a defendant's product in the State injured the plaintiff* in the State. *See id.* at 363 (emphasis added). Plaintiff is required to establish "*more than just an attenuated connection* between [defendant's] contacts and [plaintiff's] claim." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) (emphasis added) (internal quotation marks omitted). As the First Circuit has explained, "the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." *Id.* (cleaned up).

Plaintiff's allegations fall far short of that mark. Plaintiff does not allege that the use or malfunction of any Defendant's products in Puerto Rico (or any acts in Puerto Rico) themselves injured Plaintiff in Puerto Rico. Plaintiff instead seeks to impose liability on Defendants for injuries allegedly resulting from the cumulative worldwide use of all oil, natural gas, coal, and other sources of emissions—the vast majority of which have no connection to Defendants, much less to Puerto Rico. Plaintiff alleges that injuries sustained during the 2017 hurricane season were all due to "global warming," allegedly caused by "[a]nthropogenic (human caused) greenhouse gas pollution." Compl. ¶ 185. But "[e]veryone has contributed to the problem of global warming"—there are billions of contributors to greenhouse gas emissions across the world, including Plaintiff itself. *See City of Oakland v. BP p.l.c.*, 325 F. Supp. 3d 1017, 1026 (N.D. Cal. 2018) ("*Oakland I*"), *vacated on other grounds*, 960 F.3d 570 (9th Cir. 2020). And because "greenhouse gases once emitted become well mixed in the atmosphere," emissions from a particular State or Commonwealth contribute no more to the effects of climate change in that jurisdiction than emissions from elsewhere. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021) (quoting *Am.*

2

*Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 422 (2011)) (cleaned up). Since Plaintiff's claims ultimately have nothing to do with how much oil, gas, or coal (if any) Defendants allegedly refined or sold in Puerto Rico, or how much marketing or advertising (if any) purportedly occurred in Puerto Rico, those claims do not arise out of or even relate to Defendants' alleged activities in Puerto Rico.

Plaintiff's allegations of marketing activities in Puerto Rico (Compl. ¶ 13) cannot save its claims from dismissal. Plaintiff does not allege use of the products marketed in Puerto Rico injured it in Puerto Rico. Indeed, Plaintiff's theory, if accepted, would dramatically expand the bounds of specific personal jurisdiction by subjecting defendants to jurisdiction in any State or territory in which their products were marketed or used, no matter how insignificant and attenuated the connection with the alleged claims. Such an unprecedented and unprincipled expansion of personal jurisdiction would violate Defendants' due process rights and has been squarely rejected by the U.S. Supreme Court and the First Circuit. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017); *see also Sawtelle v. Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995) (finding no personal jurisdiction where the plaintiff was injured by "numerous non-forum decisions reached by the defendants in Virginia and Florida, but not in" the forum State).

**2.     The exercise of specific personal jurisdiction over Defendants would be unreasonable under the Due Process Clause.** Litigating this case in Puerto Rico would contravene "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'" because Plaintiff's claims implicate *global* conduct and are not localized to Puerto Rico. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). And it would threaten the "interest of the several States in furthering fundamental substantive social policies," *id.*, because, among other things,

many States and the federal government promote the very energy production, policies, and advocacy that Plaintiff seeks to penalize through this lawsuit. Moreover, it would impermissibly require nonresident Defendants to submit to the "coercive power" of an out-of-State tribunal with respect to conduct unconnected with the forum, leaving their conduct in other States, as well as national and even worldwide conduct, subject to conflicting state rules. *See Bristol-Myers Squibb*, 582 U.S. at 263.

3. **Plaintiff's attempt to sidestep these manifest deficiencies by relying on Section 1965 of the Racketeer Influenced & Corrupt Organizations ("RICO") Act fails.** Section 1965 provides for the exercise of personal jurisdiction over nonresident defendants that are served in other federal districts based on their nationwide, as opposed to forum, contacts "when it is shown that the ends of justice require." 18 U.S.C. § 1965(b); *see* Compl. ¶ 16. Plaintiff, however, can satisfy neither of the conditions for Section 1965's application. *First*, before considering Defendants' nationwide contacts, a Court must initially find that personal jurisdiction is proper as to at least one Defendant based on that Defendant's forum contacts. No such finding can be made here, as the Complaint fails to allege facts sufficient to establish personal jurisdiction in Puerto Rico over *any* Defendant. *Second*, Section 1965 can have no application at all where, as here, Plaintiff has failed to state a valid claim under RICO. *See* Defs.' Joint Merits Mot. to Dismiss Compl. at 15.

Because the factual allegations in Plaintiff's Complaint provide no basis for exercising personal jurisdiction that would comport with the Due Process Clause, and because no amendment can remedy the inherent flaws in Plaintiff's jurisdictional theory, the Court should dismiss all claims against Defendants with prejudice.

4

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff initiated this case on December 13, 2023. Dkt 1. The undersigned Defendants now file this joint motion to dismiss for lack of personal jurisdiction. Contemporaneously with this brief, all Defendants are jointly moving to dismiss Plaintiff's claims for failure to state a claim pursuant to Rule 12(b)(6).

## STATEMENT OF ALLEGED FACTS

Plaintiff's claims irreducibly depend on the cumulative and worldwide use of fossil fuel products for more than a century. Without those worldwide emissions, the causation chain alleged in the Complaint simply could not occur. Plaintiff alleges an attenuated (and implausible) causal chain between Defendants' allegedly tortious acts and Plaintiff's purported injuries from storms that occurred in September 2017. In order to circumvent well-established case law, Plaintiff focuses on one alleged link in this chain—Defendants' alleged misrepresentations and deception. But this attempt to target Defendants' speech is a red-herring. Among the many other links in Plaintiff's causal chain are the decisions of countless third parties around the world—including Plaintiff itself—to extract, refine, transport, market, offer for sale, purchase, and ultimately combust (*i.e.*, use) fossil fuel products.

As alleged in the Complaint, the combustion of fossil fuel products, among numerous other natural and manmade sources, releases greenhouse gas emissions. Plaintiff alleges that these worldwide emissions—in addition to emissions originating from other sources, virtually all of which are also outside of Puerto Rico—increase the total amount of greenhouse gases in the Earth's atmosphere. Compl. ¶¶ 170–85. And, according to Plaintiff, that change in atmospheric composition causes the atmosphere to trap heat, which increases global temperature, which, in turn, increases the magnitude and acceleration of climate change, which increases the intensity of

5

Defendants Exxon Mobil Corp., Shell plc (f/k/a Royal Dutch Shell plc), BP P.L.C., Chevron Corp., ConocoPhillips, Motiva Enterprises LLC, Occidental Petroleum Corporation,[1] BHP Group, and Rio Tinto plc[2] (together, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(2), respectfully submit this Joint Opening Brief in Support of their Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (the "Motion").[3]

## INTRODUCTION

Plaintiffs, the municipalities of Bayamón, Caguas, Loíza, Lares, Barranquitas, Comerío, Cayey, Las Marías, Trujillo Alto, Vega Baja, Añasco, Cidra, Aguadilla, Aibonito, Morovis, and Moca (together, "Plaintiffs"), seek to impose liability on Defendants for harms allegedly resulting from more than a century of energy consumption around the world. The Complaint suffers from numerous defects, as set forth in Defendants' Joint Motion to Dismiss for Failure to State a Claim. This Motion focuses on one defect in particular: the allegations, even if accepted as true, do not establish personal jurisdiction over these nonresident Defendants.

Plaintiffs do not allege "general" personal jurisdiction over any Defendant. None is incorporated or headquartered in Puerto Rico, and thus none is "at home" in this forum. *Daimler AG*

---

[1] Occidental Petroleum Corporation is incorrectly named as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp."

[2] While eight of the Defendants are energy companies, Defendant Rio Tinto plc is a global mining company engaged in the exploration, extraction, and processing of mineral resources. As such, Rio Tinto is not involved in the production, promotion, or sale of fossil fuels. For ease of reading, this brief sometimes refers to all defendants as "energy companies" or as producers of fossil fuel products. These references should not be read as concessions that Rio Tinto is an energy company, nor that it is engaged in producing, promoting or selling any fossil fuel products. Rio Tinto expressly reserves all rights in this regard.

[3] On March 29, 2023, to facilitate and streamline the briefing on the anticipated motions to dismiss, Plaintiffs and Defendants filed a *Joint Motion For Extension of Time to Answer or Otherwise Respond to the Complaint and to Establish Briefing Schedule and Other Procedural Terms Concerning Motions to Dismiss* (ECF Doc. No. 25, the "Joint Motion"). The Joint Motion requested an Order setting a briefing schedule for the motions to dismiss and related papers and granting other procedural stipulations, including page limitations on the motions, oppositions and replies and the period of time that Plaintiffs or Defendants would have to file the corresponding papers. *Id.* ¶ 3b-c. By Order entered on March 30, 2023, the Court granted the Joint Motion. *See* ECF Doc. No. 31. This Motion to Dismiss is filed pursuant to the Joint Motion and the March 30 Order.

1

*v. Bauman*, 571 U.S. 117, 122 (2014). Nor has any Defendant consented to general personal jurisdiction in Puerto Rico. *See Mallory v. Norfolk & Southern Railway Co.*, 143 S. Ct. 2028 (2023). And because the Court also lacks "specific" personal jurisdiction over Defendants, as demonstrated below, the Court should dismiss the Complaint with prejudice.

**1. Based on Plaintiffs' own allegations—which Defendants accept as true for purposes of this Motion only—Plaintiffs' claims do not "arise out of or relate to" Defendants' alleged contacts with Puerto Rico, as specific personal jurisdiction requires.** Under the Supreme Court's recent decision in *Ford Motor*, to satisfy the "arising out of or related to" prong, a plaintiff must allege facts that, taken as true, would show that *use or malfunction of a defendant's product in the State injured the plaintiff* in the State. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021) (emphasis added). Plaintiffs are required to establish "*more than just an attenuated connection* between [defendant's] contacts and [plaintiff's] claim." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) (emphasis added) (internal quotation marks omitted). As the First Circuit has explained, "the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." *Id.* (cleaned up).

Plaintiffs' allegations fall far short of that mark. Plaintiffs do not allege that the use or malfunction of any Defendant's products in Puerto Rico (or any acts in Puerto Rico) themselves injured Plaintiffs in Puerto Rico. Plaintiffs instead seek to impose liability on Defendants for injuries allegedly resulting from the cumulative worldwide use of all oil, natural gas, coal, and other sources of emissions—the vast majority of which have no connection to Defendants, much less to Puerto Rico. *See Ford Motor*, 141 S. Ct. at 1025. Plaintiffs allege that injuries sustained during the 2017 hurricane season were all due to "global warming," allegedly caused by "[a]nthro-

2

pogenic (human caused) greenhouse gas pollution." Compl. ¶ 201. But "[e]veryone has contributed to the problem of global warming"—there are billions of contributors to greenhouse gas emissions across the world, including Plaintiffs themselves. *See City of Oakland v. BP p.l.c.*, 325 F. Supp. 3d 1017, 1026 (N.D. Cal. 2018) (*"Oakland I"*), *vacated on other grounds*, 960 F.3d 570 (9th Cir. 2020). And because "greenhouse gases once emitted become well mixed in the atmosphere," emissions from a particular State contribute no more to the effects of climate change in that State than emissions from elsewhere. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021) (quoting *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 422 (2011)) (cleaned up). Since Plaintiffs' claims ultimately have nothing to do with how much oil, gas, or coal (if any) Defendants allegedly refined or sold in Puerto Rico, or how much marketing or advertising (if any) purportedly occurred in Puerto Rico, those claims do not arise out of or even relate to Defendants' alleged activities in Puerto Rico.

Plaintiffs' allegations of marketing activities in Puerto Rico (Compl. ¶ 13) cannot save their claims from dismissal. Plaintiffs do not allege use of the marketed products in Puerto Rico injured them in Puerto Rico. Indeed, Plaintiffs' theory, if accepted, would dramatically expand the bounds of specific personal jurisdiction by subjecting defendants to jurisdiction in any State or territory in which their products were marketed or used, no matter how insignificant and attenuated the connection with the alleged claims. Such an unprecedented and unprincipled expansion of personal jurisdiction would violate Defendants' due process rights and has been squarely rejected by the U.S. Supreme Court and the First Circuit. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017); *see also Sawtelle v. Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995) (finding no personal jurisdiction where the plaintiff was injured by "numerous non-forum decisions reached by the defendants in Virginia and Florida, but not in" the forum State).

2. **The exercise of specific personal jurisdiction over Defendants would be unreasonable under the Due Process Clause.** Litigating this case in Puerto Rico would contravene "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" because Plaintiffs' claims implicate *global* conduct and are not localized to Puerto Rico. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). And it would threaten the "interest of the several States in furthering fundamental substantive social policies," *id.*, because, among other things, many States and the federal government promote the very energy production, policies, and advocacy that Plaintiffs seek to penalize through this lawsuit. Moreover, it would impermissibly require nonresident Defendants to submit to the "coercive power" of an out-of-State tribunal with respect to conduct unconnected with the forum, leaving their conduct in other States, as well as national and even worldwide conduct, subject to conflicting state rules. *See Bristol-Myers Squibb*, 582 U.S. at 263.

3. **Plaintiffs' attempt to sidestep these manifest deficiencies by relying on Section 1965 of the Racketeer Influenced & Corrupt Organizations ("RICO") Act fails.** Section 1965 provides for the exercise of personal jurisdiction over nonresident defendants that are served in other federal districts based on their nationwide, as opposed to forum, contacts "when it is shown that the ends of justice require." 18 U.S.C. § 1965(b); *see* Compl. ¶ 16. Plaintiffs, however, can satisfy neither of the conditions for Section 1965's application. *First*, before considering Defendants' nationwide contacts, a Court must initially find that personal jurisdiction is proper as to at least one Defendant based on that Defendant's forum contacts. No such finding can be made here, as the Complaint fails to allege facts sufficient to establish personal jurisdiction in Puerto Rico over *any* Defendant. *Second*, Section 1965 is inapplicable where, as here, Plaintiffs have failed to state a valid claim under RICO. Defendants Joint Motion to Dismiss for Failure to State a

Claim at 15.

Because the factual allegations in Plaintiffs' Complaint provide no basis for exercising personal jurisdiction that would comport with the Due Process Clause, and because no amendment can remedy the inherent flaws in Plaintiffs' jurisdictional theory, the Court should dismiss all claims against Defendants with prejudice.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs initiated this case on November 22, 2022. Defendants now file this joint motion to dismiss for lack of personal jurisdiction. Contemporaneously with this brief, all Defendants are jointly moving to dismiss Plaintiffs' claims for failure to state a cause of action.

## STATEMENT OF ALLEGED FACTS

Plaintiffs' claims irreducibly depend on the cumulative and worldwide use of fossil fuel products for more than a century. Without those worldwide emissions, the causation chain alleged in the Complaint simply could not occur. Plaintiffs allege an attenuated (and implausible) causal chain between Defendants' allegedly tortious acts and Plaintiffs' purported injuries from storms that occurred in September 2017. In order to circumvent well-established case law, Plaintiffs focus on one alleged link in this chain—Defendants' alleged misrepresentations and deception. But this attempt to target Defendants' speech is a red-herring. Among the many other links in Plaintiffs' causal chain are the decisions of countless third parties around the world—including Plaintiffs themselves—to extract, refine, transport, market, offer for sale, purchase, and ultimately combust (*i.e.*, use) fossil fuel products.

As alleged in the Complaint, the combustion of fossil fuel products, among numerous other natural and manmade sources, releases greenhouse gas emissions. Plaintiffs allege that these worldwide emissions—in addition to emissions originating from other sources, virtually all of

5