

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Exxon Mobil Corp., Chevron Corp., ConocoPhillips, Motiva Enterprises LLC, and Occidental Petroleum Corporation[1] (together, "Defendants")[2] respectfully move to dismiss the Complaint.[3]

## INTRODUCTION

This is a copycat lawsuit. On November 22, 2022, sixteen other Puerto Rico municipalities represented by other counsel filed a putative class action alleging the same claims Plaintiff now asserts. *See* Complaint, ECF No. 1, ("Bayamón Complaint") *Municipality of Bayamón, v. Exxon Mobil Corporation*, No. 3:22-cv-01550 (D.P.R. Nov. 22, 2022). Plaintiff's Complaint is largely a word-for-word copy of the Bayamón Complaint,[4] and fails for all of the same reasons—and more. *See* Defendants' Joint Motion to Dismiss for Failure to State a Claim, ECF No. 185, *Municipality of Bayamón, v. Exxon Mobil Corporation*, No. 3:22-cv-01550 (D.P.R. Nov. 22, 2022).

Plaintiff claims that harms from individual hurricanes can be causally attributed to the decades-old alleged statements and conduct of a handful of publicly-traded companies. But, as the Second Circuit found in affirming dismissal of a similar lawsuit, "[g]lobal warming is one of the greatest

---

[1] Occidental Petroleum Corporation is incorrectly named as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp."
[2] Moving Defendants understand that the other named defendants have not yet been served with the action and thus are not parties to this Motion.
[3] Plaintiff's allegations are accepted as true solely for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[4] The complaints include identical typos, *e.g.*, *compare* Compl. ¶ 11 (alleging all injuries were caused "as a result of the Defendant's [singular] acts and omissions") *with* Bayamón Compl. ¶ 11 (same); *compare* Compl. ¶ 373 ("Exxon continued [to] publish") *with* Bayamón Compl. ¶ 297 (same), allegations that are irrelevant to non-class action complaints, *e.g.*, Compl. ¶ 26 (noting San Juan's experience in the 2017 Atlantic Hurricane Season as "representative of the remaining 77 Municipalities in the Commonwealth of Puerto Rico"); there are identical cross-references that are not updated for this Complaint, *e.g.*, *id.* ¶ 163; repeated references to Plaintiff as "Municipalities" (plural), *e.g.*, *id.* ¶¶ 65, 137, 147, 153, 373, 555, 569, 586, 618; references to "Exhibit[s]" "attached hereto" and a "RICO Case Statement" that this Plaintiff never filed or served, *id.* ¶¶ 177-78, 420, 696-97; and apparent artifacts of a PDF-to-Text transcription that was not thoroughly reviewed, such as footnote errors, *e.g.*, *id.* ¶¶ 185-86 & nn. 177-79 (misnumbered footnotes); *id.* p. 57, n.186 (footnote call omitted from text), and odd textual errors, *e.g.*, *id.* ¶¶ 412 ("Shell al o formally withdrew"), 702 ("would inevitably re ult"), 776 ("fuel product were u ed"), *id.* at VII.D ("Fourth Cause of Actio11"). Notably, there are approximately 325 citations to webpages that were "last visited" on November 14 or 15, 2022— more than one year before this case was filed, and shortly before the putative class action was filed. Given Plaintiff's apparent failure to investigate its allegations, Defendants reserve their rights to move for sanctions. *See* Fed. R. Civ. P. 11(c)(2). Indeed, Plaintiff's failure is all the more egregious because Plaintiff filed this copycat complaint *after* Defendants filed their motions to dismiss.

- 1 -

challenges facing humanity today" in part because "every single person who uses gas and electricity—whether in travelling by bus, cab, Uber, or jitney, or in receiving home deliveries via FedEx, Amazon, or UPS—contributes to" it. *City of New York v. Chevron Corp.*, 993 F.3d 81, 86 (2d Cir. 2021). Plaintiff—a municipality and itself a long-time consumer of fossil fuels—nonetheless seeks to impose liability on Defendants for the damage that Hurricanes Irma and Maria caused Puerto Rico in September 2017. Plaintiff theorizes that Defendants' alleged statements about fossil fuels and climate change, and their asserted participation in lobbying and trade groups, led to the regulatory acts and fossil fuel emissions by governments and consumers across decades and around the world—most of which have nothing to do with Defendants. This supposedly resulted in incremental increases in production and purchases of fossil fuels worldwide, Plaintiff claims, caused or exacerbated global climate change, and purportedly led to the 2017 hurricanes.

Plaintiff thus does not seek to hold these select Defendants liable for their own carbon emissions (either in Puerto Rico or elsewhere), or even the emissions of end-users who purchased Defendants' products in Puerto Rico, but for the alleged worldwide impacts of global emissions purportedly spurred by Defendants' speech and conduct—and the conduct of countless other entities and individuals not party to this litigation. No federal court has ever found such a far-fetched theory to state a claim for relief. This Court should not be the first.

**Plaintiff's claims founder on fundamental issues of constitutional law** regarding the ability of States and municipalities to regulate interstate—and indeed international—air pollution and speech. *See, e.g., Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*"); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961); *Delaware v. BP Am., Inc.*, 2024 WL 98888, at *9 (Del. Super. Ct. Jan. 9, 2024) (holding that claims "seeking damages for injuries resulting from out-of-state or global greenhouse emissions" are "beyond the

- 2 -

limits of [state] common law"). **But this Court need not reach these questions, because Plaintiff's claims are time-barred.** The allegations make plain that Plaintiff knew in 2017—when the hurricanes hit—that it had been damaged, and it cannot plausibly claim it only recently became aware of an alleged link between fossil fuels, climate change, and hurricanes. By 2017, public materials—some of which Plaintiff cites—already alleged such a link. Indeed, the First Circuit noted that "[i]n 2018, faced with . . . more frequent and severe . . . hurricanes . . . , Rhode Island sued . . . nearly every oil and gas company under the sun." *Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 53-54 (1st Cir. 2020) (affirming remand). Plaintiff has no justification for sitting on its claims for five years and cannot plead around this public record. Its federal claims are barred by a four-year statute of limitations, and its putative Puerto Rico law claims by one-year limitations periods. As a Delaware court recently held in dismissing similar climate change claims: The "general public had knowledge of or had access to information about the disputes, regarding the existence of climate change and effects, decades prior to the expiration" of the limitations period. *Delaware*, 2024 WL 98888, at *19. And by copying verbatim the putative class's complaint, the Complaint expressly alleges the untimeliness of its claims—citing that approximately 325 websites forming the basis of Plaintiff's allegations were "last visited" *in November 2022*, more than a year before filing the Complaint. That alone renders Plaintiff's Puerto Rico Law Claims untimely.

**Plaintiff's claims also fail on the merits, just as similar claims have failed elsewhere.** *See City of New York*, 993 F.3d at 86 (affirming Rule 12(b)(6) dismissal of substantially similar complaint). Plaintiff cannot plausibly impose liability for the 2017 hurricanes on Defendants' lawful sale of vital fuels for decades, much less for Defendants' First Amendment protected speech—or *purported* speech, since Plaintiff improperly tries to tag the disparate Defendants named here with statements made by entities for which Defendants are not responsible.

- 3 -

**Plaintiff's civil Racketeer Influenced and Corrupt Organizations Act ("RICO") and antitrust claims are meritless.** Like Plaintiff's other claims, Plaintiff premises its RICO claims not only on Defendants' lawful worldwide production of oil and gas, but on alleged speech that is constitutionally protected—such as core political speech aimed at "preventing U.S. adoption of the Kyoto Protocol." Compl. ¶ 343. The importance of climate change as a public policy issue means that Defendants' speech is entitled to substantial constitutional protection. The First Amendment protects not only the heartland of political speech, but even "the *prospect* of chilling fully protected expression." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) (emphasis added); *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2320 (2023) (reaffirming constitutional protections for speech despite alleged profit motive). Because the only speech Plaintiff identifies as supposedly having caused its harm (*i.e.*, 2017 hurricane injuries) is political lobbying and publicity campaigns allegedly aimed at influencing the views of lawmakers and the public, Plaintiff's claims violate the First Amendment and the *Noerr-Pennington* doctrine.

**In addition, the civil RICO and antitrust allegations fail to plausibly allege multiple required elements.** For example, Plaintiff must plead facts showing a *direct* causal relation between the alleged acts of racketeering and the claimed injuries. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Failing to do so, Plaintiff instead alleges an attenuated, speculative chain of indirect and intervening causes consisting of *at least six* alleged steps, including that: (1) Defendants promoted climate change denial; (2) that promotion resulted in a marginal increase in the sales of Defendants' products and a corresponding increase in the use of those products by Plaintiff, its residents, and billions of other actors worldwide; (3) that incremental purchase and use resulted in increased petroleum production and emissions of greenhouse gases; (4) those incremental greenhouse gas emissions mixed with other greenhouse gases emitted throughout the world to

- 4 -

exacerbate climate change to some unspecified degree; (5) global climate change contributed to the hurricanes in Puerto Rico in 2017; and (6) those hurricanes damaged Plaintiff. The Supreme Court repeatedly has rejected far less attenuated causal chains on motions to dismiss. *See id.*; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-59 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992).

**Plaintiff's antitrust claim fails for additional reasons as well.** Plaintiff has not pleaded an anticompetitive agreement, as required under Section 1 of the Sherman Act. In addition to improperly seeking to burden constitutionally protected speech, Plaintiff pleads no facts supporting its conclusory assertion that Defendants agreed to "maintain their energy monopoly, fix prices, and increase obstacles for competitive entry into the [energy] market." Compl. ¶ 732. That alone defeats Plaintiff's antitrust claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007) ("absent some factual context suggesting agreement, as distinct from identical independent action," a complaint alleging a Section 1 violation "should be dismissed"). Nor has Plaintiff pleaded any adverse effect on competition; on the contrary, Plaintiff claims that Defendants' alleged conduct "*increased production*" and "*lower[ed] prices*" for consumers. Compl. ¶¶ 7(d), 732 (emphases added). That also requires dismissal because an alleged antitrust conspiracy must involve a "'competition-*reducing* aspect or effect of the defendant's behavior,' that is, from 'acts that *reduce output* or *raise prices* to consumers.'" *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 516 (4th Cir. 2002) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Finally, the antitrust laws cannot be used to recover for alleged climate-related harms. *See, e.g., In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236 (9th Cir. 1976) (holding antitrust laws cannot be used to remedy environmental rather than anticompetitive economic injuries); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 n.9 (3d Cir. 1997) (same).

**Plaintiff's putative Puerto Rico law claims suffer from additional defects. In particular, under the United States Constitution, transboundary pollution may be governed only by federal law,** so Plaintiff's purported Puerto Rico law claims must fail. Our federal constitutional structure prohibits Plaintiff from invoking Puerto Rico tort law to address global greenhouse gas emissions and climate change. As the Second Circuit made clear in *City of New York*, however artfully pleaded, these issues are inherently interstate and international in nature. And in a materially indistinguishable suit, the Delaware Superior Court held that claims—like Plaintiff's here—ostensibly predicated on allegedly misleading marketing but "seeking damages for injuries resulting from out-of-state or global greenhouse emissions and interstate pollution" are "beyond the limits of [state] common law." *Delaware*, 2024 WL 98888, at *9. Plaintiff's Complaint here is replete with the same types of allegations regarding transboundary pollution and Defendants' worldwide speech and other protected activities that *City of New York* and *Delaware* found insufficient. Under our federal constitutional system, only federal law—not state or commonwealth law—can govern such interstate and international issues associated with climate change. And even if our federal constitutional structure did not preclude Plaintiff's Puerto Rico law claims, the Clean Air Act would preempt them. Finally, Plaintiff fails to properly plead the elements of any Puerto Rico law claim, which it lacks the capacity to bring on behalf of its residents in any event.

Accordingly, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

Plaintiff is the largest Puerto Rico municipality. It brings this action to recover for losses resulting from the September 2017 hurricanes that struck Puerto Rico. According to the Complaint, Defendants' products played a "primary role ... in causing the losses, deaths and destruction of property resulting from the catastrophic storms of September 2017 and their aftermath." Compl.

- 6 -

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants respectfully move to dismiss the Complaint.[2]

## INTRODUCTION

Plaintiffs claim that harms from individual hurricanes can be causally attributed to the alleged statements and conduct of just nine publicly-traded companies. But, as the Second Circuit found in affirming dismissal of a similar lawsuit, "[g]lobal warming is one of the greatest challenges facing humanity today" in part because "every single person who uses gas and electricity—whether in travelling by bus, cab, Uber, or jitney, or in receiving home deliveries via FedEx, Amazon, or UPS—contributes to" it. *City of New York v. Chevron Corp.*, 993 F.3d 81, 86 (2d Cir. 2021). Plaintiffs—a purported class of municipalities and themselves long-time consumers of fossil fuels—nonetheless seek to impose liability on nine select Defendants for the damage that Hurricanes Irma and Maria caused Puerto Rico in September 2017. Plaintiffs theorize that Defendants' alleged statements about fossil fuels and climate change, and their asserted participation in lobbying and trade groups, led to the acts and emissions of governments and consumers across decades and around the world—most of which have nothing to do with Defendants. These supposed marginal increases in production and purchases of fossil fuels worldwide, Plaintiffs claim, caused or exacerbated global climate change, and purportedly led to the 2017 hurricanes.

Plaintiffs thus do not seek to hold these select Defendants liable for their own carbon emissions, or even those of end-users who purchased Defendants' products in Puerto Rico, but for the alleged worldwide impacts of Defendants' purported speech and conduct. No federal court has ever found such a far-fetched theory to state a claim for relief. This Court should not be the first.

**Plaintiffs' claims founder on fundamental issues of constitutional law** regarding the ability

---

[2] Plaintiffs' allegations are accepted as true solely for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

- 1 -

of States, commonwealths, and municipalities to regulate interstate—and indeed international—air pollution and speech regarding its public policy implications. *See, e.g., Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*"); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961). **But this Court need not reach these questions, because Plaintiffs' claims are time-barred.** The allegations make plain that Plaintiffs knew in 2017—when the hurricanes hit—they had been damaged, and they cannot plausibly claim they only recently became aware of an alleged link between fossil fuels, climate change, and hurricanes. That is because, by 2017, public materials—some of which Plaintiffs cite—already alleged such a link. Indeed, the First Circuit noted that "[i]n 2018, faced with . . . more frequent and severe . . . hurricanes . . . , Rhode Island sued . . . nearly every oil and gas company under the sun." *Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 53–54 (1st Cir. 2020) (affirming remand to state court). Plaintiffs have no justification for sitting on their claims for five years and cannot plead around this public record. Their federal claims are barred by a four-year statute of limitations, and their putative Puerto Rico law claims by one-year limitations periods. That alone requires dismissal.

**Plaintiffs' claims also fail on the merits, just as similar claims have failed elsewhere.** *See City of New York*, 993 F.3d at 86 (affirming Rule 12(b)(6) dismissal of substantially similar complaint). Plaintiffs cannot plausibly impose liability for the 2017 hurricanes on Defendants' lawful sale of vital fuels for decades, much less on Defendants' First Amendment protected speech—or *purported* speech, since Plaintiffs improperly try to tag the disparate Defendants named here with statements made by entities for which Defendants are not responsible.

**Plaintiffs' civil Racketeer Influenced and Corrupt Organizations Act ("RICO") and antitrust claims are meritless.** Like Plaintiffs' other claims, these claims are expressly based on alleged speech that is constitutionally protected and on issues of great public importance—such as

- 2 -

core political speech aimed at "preventing U.S. adoption of the Kyoto Protocol." Compl. ¶ 365. The importance of climate change as a public policy issue means that Defendants' speech is entitled to substantial constitutional protection, and governmental entities like Plaintiffs here are the *least* appropriate speech-policing parties. As the Supreme Court has underscored repeatedly, the First Amendment protects not only the heartland of political speech, but even "the *prospect* of chilling fully protected expression." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) (emphasis added). And this includes so-called commercial speech, as a "consumer's interest in the free flow of commercial information . . . may be as keen, if not keener by far, than his interest in the day's most urgent political debate." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481 (1995); *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2320 (2023) (reaffirming constitutional protections for speech despite alleged profit motive). Because the only speech Plaintiffs identify as supposedly having caused their harm (*i.e.*, 2017 hurricane injuries) is political lobbying and publicity campaigns allegedly aimed at influencing the views of lawmakers and the public, Plaintiffs' claims violate the First Amendment and the *Noerr-Pennington* doctrine.

**In addition, the civil RICO and antitrust allegations fail to plausibly allege multiple required elements.** For example, Plaintiffs must plead facts showing a *direct* causal relation between the alleged acts of racketeering and the claimed injuries. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Failing to do so, Plaintiffs instead rely on an indirect and remote causal theory. Plaintiffs allege an attenuated and speculative chain of indirect and intervening causes consisting of *at least six* alleged steps, including that: (1) Defendants engaged in promotion of climate change denial; (2) that promotion resulted in a marginal increase in the sales of Defendants' products and a corresponding increase in the use of those products by Plaintiffs, their residents, and billions of other actors worldwide; (3) that incremental purchase and use resulted in

- 3 -

increased petroleum production and emissions of greenhouse gases; (4) those incremental greenhouse gas emissions mixed with other greenhouse gases emitted throughout the world to exacerbate climate change to some unspecified degree; (5) global climate change contributed to the hurricanes in Puerto Rico in 2017; and (6) those hurricanes damaged Plaintiffs. The Supreme Court repeatedly has rejected far less attenuated causal chains on motions to dismiss. *See id.*; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–59 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992). The Complaint even makes the fatal admission that the purported "enterprise" (the Global Climate Coalition ("GCC")) *disbanded in 2002.* Compl. ¶¶ 2(b), 8(b). While Plaintiffs attempt to allege that the GCC somehow continues operating "informally," Plaintiffs' post-2002 allegations are conclusory, superficial, and fail to carry the burden that RICO places on them to plead an enterprise.

**Plaintiffs' antitrust claim is equally far-fetched.** Plaintiffs have not pleaded an anticompetitive agreement, as required under Section 1 of the Sherman Act. In addition to improperly seeking to burden constitutionally protected speech, Plaintiffs plead no facts supporting their conclusory assertion that Defendants agreed to "maintain their energy monopoly, fix prices, and increase obstacles for competitive entry into the [energy] market." Compl. ¶ 770. That alone is fatal to Plaintiffs' antitrust claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007) ("absent some factual context suggesting agreement, as distinct from identical independent action," a complaint alleging a Section 1 violation "should be dismissed"). Nor have Plaintiffs pleaded any adverse effect on competition; on the contrary, Plaintiffs claim that Defendants' alleged conduct "*increased production*" and "*lower[ed] prices*" for consumers. Compl. ¶¶ 7(d), 770 (emphases added). That also requires dismissal because an alleged antitrust conspiracy must involve a "'competition-*reducing* aspect or effect of the defendant's behavior,' that is, from 'acts that *reduce output*

- 4 -

Case 3:23-cv-01608-ADC-HRV   Document 186-4   Filed 04/24/25   Page 12 of 84

or *raise prices* to consumers.'" *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 516 (4th Cir. 2002) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Finally, the antitrust laws cannot be used to recover for alleged climate-related harms. *See, e.g.*, *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236 (9th Cir. 1976) (holding antitrust laws cannot be used to remedy environmental rather than anticompetitive economic injuries); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 n.9 (3d Cir. 1997) (same).

**Plaintiffs' putative Puerto Rico law claims suffer from additional defects. In particular, under the United States Constitution, transboundary pollution can be governed only by federal law,** so Plaintiffs' purported Puerto Rico law claims must fail. Our federal constitutional structure prohibits Plaintiffs from invoking Puerto Rico tort law to address global greenhouse gas emissions and climate change. As the Second Circuit made clear in *City of New York*, however artfully pleaded, these issues are inherently interstate and international in nature. Plaintiffs' Complaint is replete with the same types of allegations regarding transboundary pollution and Defendants' worldwide speech and other protected activities that *City of New York* found insufficient. Under our federal constitutional system, only federal law—not state or commonwealth law—can govern such interstate and international issues associated with climate change. And even if our federal constitutional structure did not preclude Plaintiffs' Puerto Rico law claims, the Clean Air Act would preempt them. Finally, Plaintiffs fail to plead the elements of any Puerto Rico law claim, which they lack the capacity to bring on behalf of their residents in any event.

Accordingly, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

Plaintiffs are Puerto Rico municipalities. They bring this action against Defendants to recover

- 5 -

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants respectfully move to dismiss the Amended Complaint.[2]

## INTRODUCTION

Plaintiffs claim that harms from individual hurricanes can be causally attributed to the alleged statements and conduct of just nine publicly-traded companies and a trade association. But, as the Second Circuit found in affirming dismissal of a similar lawsuit, "[g]lobal warming is one of the greatest challenges facing humanity today" in part because "every single person who uses gas and electricity—whether in travelling by bus, cab, Uber, or jitney, or in receiving home deliveries via FedEx, Amazon, or UPS—contributes to" it. *City of New York v. Chevron Corp.*, 993 F.3d 81, 86 (2d Cir. 2021). Plaintiffs—a purported class of municipalities and themselves long-time consumers of fossil fuels—nonetheless seek to impose liability on ten select Defendants for the damage that Hurricanes Irma and Maria caused Puerto Rico in September 2017.

After Defendants moved to dismiss Plaintiffs' initial Complaint, Plaintiffs did not attempt to defend the sufficiency of their claims. Instead, Plaintiffs dodged Defendants' motions by filing an Amended Complaint. But that Amended Complaint fails to remedy the myriad pleading deficiencies that Defendants already identified. The amendments are at best window dressing. Some even undermine Plaintiffs' case. The Amended Complaint falls far short of stating any viable claim:

1. Plaintiffs replaced coal defendants with the American Petroleum Institute ("API"), a trade association that does not produce or sell fossil fuels but engages in lobbying and speech on issues of public importance. Plaintiffs' addition of API only confirms that this action is an improper attack on (protected) speech that Plaintiffs disfavor, doubling down on the Complaint's constitutional and other defects.

2. In an attempt to resurrect their causation allegations in the face of on-point U.S. Supreme Court precedent foreclosing Plaintiffs' RICO and other claims, Plaintiffs now allege that Defendants controlled API and the Global Climate Coalition ("GCC") through their participation in or funding of those organizations, which engage in

---

[2] Plaintiffs' allegations are accepted as true solely for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

constitutionally protected speech on issues of public importance. But such group and highly generalized allegations regarding protected speech activities do not suffice.

3. Plaintiffs now attempt to attribute to Defendants all emissions of their alleged joint venture partners, many of which are foreign state-owned entities that Defendants neither own nor control, and that are engaged in activities far beyond the Commonwealth's jurisdiction. While Plaintiffs disclaim any intent to enjoin Defendants' fossil fuel production, the Amended Complaint makes clear Plaintiffs seek to regulate emissions and fuel production through this lawsuit. Such attempts are precluded and preempted by the U.S. Constitution's structure and the Clean Air Act. *See, e.g.*, *State of Delaware v. BP Am., Inc.*, 2024 WL 98888, at *9 (Del. Super. Ct. Jan. 9, 2024) (holding that climate change related-claims "seeking damages for injuries resulting from out-of-state or global greenhouse emissions" are "beyond the limits of [state] common law").

Equally revealing is what the Amended Complaint now omits, as Plaintiffs attempt to distance themselves from the original Complaint's allegations confirming their claims are hopelessly time-barred. Gone, for example, are references to many 2017 articles that Plaintiffs cited—allegations that, despite their omission now, nonetheless constitute binding admissions that Plaintiffs were on notice by 2017 at the latest of the harms that they now belatedly allege Defendants caused. While Plaintiffs now try to run from their own prior allegations, they cannot hide from them.

Thus, despite some cosmetic changes, the Amended Complaint, like its predecessor, is fatally deficient in numerous respects. At its core, it is premised on the breathtaking notion that Defendants may be held liable for all carbon emissions, everywhere and at any time, because, Plaintiffs claim, Defendants produced lawful products used all over the world and/or spoke about climate change in ways with which Plaintiffs now disagree. Such a theory is untenable.

**Plaintiffs' claims founder on fundamental issues of constitutional law** regarding the ability of States, Commonwealths, and municipalities to regulate interstate—and indeed international—air pollution and speech about how to address it. *See, e.g.*, *Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*"); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961). Plaintiffs theorize that Defendants' alleged statements about fossil fuels and climate change, and their asserted participation in lobbying and trade groups, led

Case 3:23-cv-01608-ADC   Document 186-4   Filed 04/24/25   Page 14 of 19
Case 3:22-cv-01550-SCC-HRV   Document 235   Filed 01/30/24   Page 20 of 85

inexorably to the regulatory acts and fossil-fuel emissions by governments and consumers over the course of decades, all around the world—most of which have nothing to do with Defendants. This supposedly resulted in incremental increases in production, purchases, and uses of fossil fuels worldwide, which allegedly caused or exacerbated global climate change and purportedly led to the 2017 hurricanes. Plaintiffs thus do not seek to hold these select Defendants liable for their own carbon emissions (either in Puerto Rico or elsewhere), or even the emissions of end-users who purchased Defendants' products in Puerto Rico, but for the alleged worldwide impacts of global emissions purportedly spurred by Defendants' speech and conduct—and the conduct of countless other entities and individuals not party to this litigation. No federal court has ever found such a far-fetched theory to state a claim for relief. This Court should not be the first.

**This Court need not reach these questions, because Plaintiffs' claims are time-barred.** The allegations make plain that Plaintiffs knew in 2017—when the hurricanes hit—that they had been damaged, and Plaintiffs cannot plausibly claim they only recently became aware of an alleged link between fossil fuels, climate change, and hurricanes. By 2017, public materials—some of which Plaintiffs cite, and more of which Plaintiffs referenced previously—already alleged such a link. Indeed, the First Circuit noted that "[i]n 2018, faced with . . . more frequent and severe . . . hurricanes . . . , Rhode Island sued . . . nearly every oil and gas company under the sun." *Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 53–54 (1st Cir. 2020) (affirming remand). Plaintiffs have no justification for sitting on their claims for five years and cannot plead around this public record. Omitting now-inconvenient allegations from the Amended Complaint *after* Defendants pointed out this failing in their prior motions to dismiss is of no effect. Plaintiffs' federal claims are barred by a four-year statute of limitations, and their putative Puerto Rico law claims by one-year limitations periods. As a Delaware court recently held in dismissing similar climate change

claims: The "general public had knowledge of or had access to information about the disputes, regarding the existence of climate change and effects, decades prior to the expiration" of the limitations period. *Delaware*, 2024 WL 98888, at *19. That alone requires dismissal.

**Plaintiffs' claims also fail on the merits, just as similar claims have failed elsewhere.** *See City of New York*, 993 F.3d at 86 (affirming Rule 12(b)(6) dismissal of substantially similar complaint). Plaintiffs cannot plausibly impose liability for the 2017 hurricanes on Defendants' lawful sale of vital fuels for decades, much less for Defendants' First Amendment protected speech—or *purported* speech, since Plaintiffs improperly try to tag the disparate Defendants named here with statements made by entities for which Defendants are not responsible.

**Plaintiffs' civil Racketeer Influenced and Corrupt Organizations Act ("RICO") and antitrust claims are meritless.** Like their other claims, Plaintiffs premise their RICO claims on alleged speech that is constitutionally protected—such as core political speech aimed at preventing U.S. adoption of the Kyoto Protocol. Am. Compl. ¶¶ 391, 396. The importance of climate change as a public policy issue means that Defendants' speech is entitled to substantial constitutional protection. The First Amendment protects not only the heartland of political speech, but even "the *prospect* of chilling fully protected expression." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) (emphasis added). *See also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2320 (2023) (reaffirming constitutional protections for speech despite alleged profit motive). Because the only speech Plaintiffs identify as supposedly having caused their harm (*i.e.*, 2017 hurricane injuries) is political lobbying and publicity campaigns allegedly aimed at influencing the views of lawmakers and the public, Plaintiffs' claims violate the First Amendment and the *Noerr-Pennington* doctrine.

**In addition, the civil RICO and antitrust allegations fail plausibly to allege multiple required elements.** For example, Plaintiffs must plead facts showing a *direct* causal relation

- 4 -

between the alleged acts of racketeering and the claimed injuries. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Failing to do so, Plaintiffs instead allege an attenuated, speculative chain of indirect and intervening causes consisting of *at least six* alleged steps, including that: (1) Defendants promoted climate change denial; (2) that promotion resulted in a marginal increase in the sales of Defendants' products and a corresponding increase in the use of those products by Plaintiffs, their residents, and billions of other actors worldwide; (3) that incremental purchase and use resulted in increased petroleum production and emissions of greenhouse gases; (4) those incremental greenhouse gas emissions mixed with other greenhouse gases emitted throughout the world to exacerbate climate change to some unspecified degree; (5) global climate change contributed to the hurricanes in Puerto Rico in 2017; and (6) those hurricanes damaged Plaintiffs. The Supreme Court repeatedly has rejected far less attenuated causal chains on motions to dismiss. *See id.* at 10; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–59 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992). The Amended Complaint also admits—fatally—that the purported "enterprise" (the Global Climate Coalition ("GCC")) *disbanded in 2002*. Am. Racketeering Case Stmt. ¶¶ 2(b), 8(b). While Plaintiffs allege that the GCC continues operating "informally" through other organizations like API, Plaintiffs' allegations are conclusory, superficial, and fail to carry the burden that RICO places on them to plead an enterprise.

**Plaintiffs' antitrust claim fails for additional reasons as well.** Plaintiffs have not pleaded an anticompetitive agreement, as required under Section 1 of the Sherman Act. In addition to improperly seeking to burden constitutionally protected speech, Plaintiffs plead no facts supporting their conclusory assertion that Defendants agreed to "maintain their energy monopoly, fix prices, and increase obstacles for competitive entry into the [energy] market." Am. Compl. ¶ 767. That alone defeats Plaintiffs' antitrust claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548

(2007) ("absent some factual context suggesting agreement, as distinct from identical independent action," a complaint alleging a Section 1 violation "should be dismissed"). Nor have Plaintiffs pleaded any adverse effect on competition; indeed, Plaintiffs claim that Defendants' alleged conduct "*increased production*" and "*lower[ed] prices*" for consumers. Am. Compl. ¶¶ 7(d), 767 (emphases added). That also requires dismissal because an alleged antitrust conspiracy must involve a "'competition-*reducing* aspect or effect of the defendant's behavior,' that is, . . . 'acts that *reduce output* or *raise prices* to consumers.'" *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 516 (4th Cir. 2002) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Finally, the antitrust laws cannot be used to recover for alleged climate-related harms. *See, e.g.*, *In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236 (9th Cir. 1976) (holding antitrust laws cannot be used to remedy environmental injuries); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 n.9 (3d Cir. 1997) (same).

**Plaintiffs' putative Puerto Rico law claims suffer from additional defects. In particular, under the United States Constitution, transboundary pollution may be governed only by federal law,** so Plaintiffs' purported Puerto Rico law claims must fail. Our federal constitutional structure prohibits Plaintiffs from invoking Puerto Rico tort law to address global greenhouse gas emissions and climate change. As the Second Circuit made clear in *City of New York*, however artfully pleaded, these issues are inherently interstate and international in nature. Plaintiffs' Complaint is replete with the same types of allegations regarding transboundary pollution. Under our federal constitutional system, only federal law—not state or commonwealth law—can govern such interstate and international issues associated with climate change. And even if our federal constitutional structure did not preclude Plaintiffs' Puerto Rico law claims, the Clean Air Act ("CAA") would preempt them. Indeed, in a similar lawsuit over alleged climate deception brought by the

State of Delaware, the court concluded that "the CAA preempts state law to the extent a state attempts to regulate air pollution originating in other states," which is precisely what Plaintiffs' sprawling lawsuit seeks to do here. *Delaware*, 2024 WL 98888, at *10. Finally, Plaintiffs fail to plead the elements of any Puerto Rico law claim, which they lack the capacity to bring on behalf of their residents in any event.

Accordingly, the Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND

Plaintiffs are Puerto Rico municipalities. They bring this action against Defendants to recover for losses resulting from the September 2017 hurricanes that struck Puerto Rico.[3] According to the Amended Complaint, Defendants' products played a "primary role . . . in causing the losses, deaths and destruction of property resulting from the catastrophic storms of September 2017 and their aftermath." Am. Compl. ¶ 1. Defendants allegedly had an "early awareness" of the danger of fossil fuels, but "misrepresented the dangers" and "embarked on a corporate *worldwide* strategy to hide that information" in order "to maintain their economic monopoly on *the world's* energy supply." *Id.* ¶¶ 2, 3 (emphasis added). Plaintiffs implausibly contend that they "relied upon the Defendants' misrepresentations," *id.* ¶ 3, and only "just recently" learned of the dangers of fossil fuels, *id.* ¶ 20, about which they supposedly "did not know and could not have known through the exercise of reasonable diligence," *id.* ¶ 23.

Plaintiffs' allegation that Defendants engaged in a "worldwide" strategy of deception is premised on alleged efforts by Defendants to petition governments for favorable regulatory treatment. For example, the Amended Complaint alleges that "Defendants publicly fought against climate

---

[3] Defendant API is a trade association and Rio Tinto plc is a global mining company engaged in the exploration, extraction, and processing of mineral resources. Neither produces, markets, or sells fossil fuels. This brief sometimes refers to defendants as "energy companies." Neither API nor Rio Tinto concedes it is an energy company, or is engaged in producing, marketing or selling fossil fuel products. API and Rio Tinto expressly reserve all rights.

- 7 -

science" and "championed anti-regulation . . . propaganda" "to protect their profits from the impact of regulation." *Id.* ¶¶ 72, 73; *see also id.* ¶ 415 (Defendants "mounted a campaign against regulation of their business practices."); ¶ 589 ("Defendants embarked on a decades-long marketing campaign designed to maximize continued dependence on their products and undermine national and international efforts to rein in greenhouse gas emissions").

In short, while Plaintiffs purport to disclaim liability based on public advocacy and lobbying, *id.* ¶ 10, the Amended Complaint is premised precisely upon such speech—even without considering, as this Court must, those allegations that Plaintiffs have attempted to evade by omitting them from the Amended Complaint. For example, the original Complaint affirmatively alleged that Defendants supposedly "funded advertising campaigns and distributed material to misinform the public about climate change, with the specific purpose of preventing U.S. adoption of the Kyoto Protocol," Compl. ¶ 365, and that "[t]he Global Climate Coalition (GCC) was formed in 1989 as a public relations and international lobbyist group of businesses that opposed action to reduce greenhouse gas emissions," *id.* ¶ 364. As explained below, to the extent Plaintiffs have now omitted any such allegations, Plaintiffs cannot avoid the debilitating legal effect of such allegations merely by silently dropping them from an amended pleading. *See infra*, at 14, n.8.

Plaintiffs' claims also are not limited to the marketing, sale, or combustion of fossil-fuel products *in Puerto Rico*, much less *by Defendants* in Puerto Rico. The Amended Complaint nowhere alleges a causal connection between the September 2017 hurricanes and *anyone's* Puerto Rico-specific consumption of fossil fuel products. Nor does it allege any causal connection between any injuries and what could be at most a marginal increase in the fossil fuel products sold in Puerto Rico because of any allegedly misleading statements directed to Puerto Rico. The Amended Complaint contains no allegations at all regarding the volume of fossil fuels used or sold in Puerto Rico.