# EXHIBIT I, IN BLOCK

EXHIBIT

II.A

Defendants Exxon Mobil Corp., Chevron Corp., ConocoPhillips, Motiva Enterprises LLC, and Occidental Petroleum Corporation[1] (together, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(2), respectfully submit this Joint Opening Brief in Support of their Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (the "Motion").[2]

## INTRODUCTION

Plaintiff, the Municipality of San Juan, seeks to impose liability on Defendants for harms allegedly resulting from more than a century of energy consumption by third-party end-users around the world. The Complaint suffers from numerous defects, as set forth in Defendants' Joint Motion to Dismiss for Failure to State a Claim. This Motion focuses on one defect in particular: The allegations, even if accepted as true, do not establish personal jurisdiction over these nonresident Defendants.

Plaintiff does not allege "general" personal jurisdiction over any Defendant. None is incorporated or headquartered in Puerto Rico, and thus none is "at home" in this forum. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Nor has any Defendant consented to general personal jurisdiction in Puerto Rico. *See Mallory v. Norfolk & Southern Railway Co.*, 143 S. Ct. 2028 (2023). And because the Court also lacks "specific" personal jurisdiction over Defendants and lacks jurisdiction under RICO's nationwide service provision, as demonstrated below, the Court should dismiss the Complaint with prejudice.

1.      **Based on Plaintiff's own allegations—which Defendants accept as true for purposes of this Motion only—Plaintiff's claims do not "arise out of or relate to" Defendants'**

---

[1]    Occidental Petroleum Corporation is incorrectly named as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp."

[2]    Moving Defendants understand that the other named defendants have not yet been served with the action and thus are not parties to this Motion. Plaintiff purported to voluntarily dismiss Arch Resources Inc. F.K.A. Arch Coal Company and Peabody Energy from this action on February 9, 2024. Dkt. 6. This dismissal was effectuated by order of the Court on February 21, 2024. Dkt. 9.

**alleged contacts with Puerto Rico, as specific personal jurisdiction requires.** Under the Supreme Court's recent decision in *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021), to satisfy the "arising out of or related to" prong, a plaintiff must allege facts that, taken as true, would show that *use or malfunction of a defendant's product in the State injured the plaintiff* in the State. *See id.* at 363 (emphasis added). Plaintiff is required to establish "*more than just an attenuated connection* between [defendant's] contacts and [plaintiff's] claim." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) (emphasis added) (internal quotation marks omitted). As the First Circuit has explained, "the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." *Id.* (cleaned up).

Plaintiff's allegations fall far short of that mark. Plaintiff does not allege that the use or malfunction of any Defendant's products in Puerto Rico (or any acts in Puerto Rico) themselves injured Plaintiff in Puerto Rico. Plaintiff instead seeks to impose liability on Defendants for injuries allegedly resulting from the cumulative worldwide use of all oil, natural gas, coal, and other sources of emissions—the vast majority of which have no connection to Defendants, much less to Puerto Rico. Plaintiff alleges that injuries sustained during the 2017 hurricane season were all due to "global warming," allegedly caused by "[a]nthropogenic (human caused) greenhouse gas pollution." Compl. ¶ 185. But "[e]veryone has contributed to the problem of global warming"— there are billions of contributors to greenhouse gas emissions across the world, including Plaintiff itself. *See City of Oakland v. BP p.l.c.*, 325 F. Supp. 3d 1017, 1026 (N.D. Cal. 2018) ("*Oakland I*"), *vacated on other grounds*, 960 F.3d 570 (9th Cir. 2020). And because "greenhouse gases once emitted become well mixed in the atmosphere," emissions from a particular State or Commonwealth contribute no more to the effects of climate change in that jurisdiction than emissions from elsewhere. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir. 2021) (quoting *Am.*

2

*Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 422 (2011)) (cleaned up). Since Plaintiff's claims ultimately have nothing to do with how much oil, gas, or coal (if any) Defendants allegedly refined or sold in Puerto Rico, or how much marketing or advertising (if any) purportedly occurred in Puerto Rico, those claims do not arise out of or even relate to Defendants' alleged activities in Puerto Rico.

Plaintiff's allegations of marketing activities in Puerto Rico (Compl. ¶ 13) cannot save its claims from dismissal. Plaintiff does not allege use of the products marketed in Puerto Rico injured it in Puerto Rico. Indeed, Plaintiff's theory, if accepted, would dramatically expand the bounds of specific personal jurisdiction by subjecting defendants to jurisdiction in any State or territory in which their products were marketed or used, no matter how insignificant and attenuated the connection with the alleged claims. Such an unprecedented and unprincipled expansion of personal jurisdiction would violate Defendants' due process rights and has been squarely rejected by the U.S. Supreme Court and the First Circuit. *See Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017); *see also Sawtelle v. Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995) (finding no personal jurisdiction where the plaintiff was injured by "numerous non-forum decisions reached by the defendants in Virginia and Florida, but not in" the forum State).

    **2.**    **The exercise of specific personal jurisdiction over Defendants would be unreasonable under the Due Process Clause.** Litigating this case in Puerto Rico would contravene "'the interstate judicial system's interest in obtaining the most efficient resolution of controversies'" because Plaintiff's claims implicate *global* conduct and are not localized to Puerto Rico. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). And it would threaten the "interest of the several States in furthering fundamental substantive social policies," *id.*, because, among other things,

many States and the federal government promote the very energy production, policies, and advocacy that Plaintiff seeks to penalize through this lawsuit. Moreover, it would impermissibly require nonresident Defendants to submit to the "coercive power" of an out-of-State tribunal with respect to conduct unconnected with the forum, leaving their conduct in other States, as well as national and even worldwide conduct, subject to conflicting state rules. *See Bristol-Myers Squibb*, 582 U.S. at 263.

3.    **Plaintiff's attempt to sidestep these manifest deficiencies by relying on Section 1965 of the Racketeer Influenced & Corrupt Organizations ("RICO") Act fails.** Section 1965 provides for the exercise of personal jurisdiction over nonresident defendants that are served in other federal districts based on their nationwide, as opposed to forum, contacts "when it is shown that the ends of justice require." 18 U.S.C. § 1965(b); *see* Compl. ¶ 16. Plaintiff, however, can satisfy neither of the conditions for Section 1965's application. *First*, before considering Defendants' nationwide contacts, a Court must initially find that personal jurisdiction is proper as to at least one Defendant based on that Defendant's forum contacts. No such finding can be made here, as the Complaint fails to allege facts sufficient to establish personal jurisdiction in Puerto Rico over *any* Defendant. *Second*, Section 1965 can have no application at all where, as here, Plaintiff has failed to state a valid claim under RICO. *See* Defs.' Joint Merits Mot. to Dismiss Compl. at 15.

Because the factual allegations in Plaintiff's Complaint provide no basis for exercising personal jurisdiction that would comport with the Due Process Clause, and because no amendment can remedy the inherent flaws in Plaintiff's jurisdictional theory, the Court should dismiss all claims against Defendants with prejudice.

4

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff initiated this case on December 13, 2023. Dkt 1. The undersigned Defendants now file this joint motion to dismiss for lack of personal jurisdiction. Contemporaneously with this brief, all Defendants are jointly moving to dismiss Plaintiff's claims for failure to state a claim pursuant to Rule 12(b)(6).

## STATEMENT OF ALLEGED FACTS

Plaintiff's claims irreducibly depend on the cumulative and worldwide use of fossil fuel products for more than a century. Without those worldwide emissions, the causation chain alleged in the Complaint simply could not occur. Plaintiff alleges an attenuated (and implausible) causal chain between Defendants' allegedly tortious acts and Plaintiff's purported injuries from storms that occurred in September 2017. In order to circumvent well-established case law, Plaintiff focuses on one alleged link in this chain—Defendants' alleged misrepresentations and deception. But this attempt to target Defendants' speech is a red-herring. Among the many other links in Plaintiff's causal chain are the decisions of countless third parties around the world—including Plaintiff itself—to extract, refine, transport, market, offer for sale, purchase, and ultimately combust (*i.e.*, use) fossil fuel products.

As alleged in the Complaint, the combustion of fossil fuel products, among numerous other natural and manmade sources, releases greenhouse gas emissions. Plaintiff alleges that these worldwide emissions—in addition to emissions originating from other sources, virtually all of which are also outside of Puerto Rico—increase the total amount of greenhouse gases in the Earth's atmosphere. Compl. ¶¶ 170–85. And, according to Plaintiff, that change in atmospheric composition causes the atmosphere to trap heat, which increases global temperature, which, in turn, increases the magnitude and acceleration of climate change, which increases the intensity of

Defendants Exxon Mobil Corp., Shell plc (f/k/a Royal Dutch Shell plc), BP P.L.C., Chevron Corp., ConocoPhillips, Motiva Enterprises LLC, Occidental Petroleum Corporation,[1] BHP Group, and Rio Tinto plc[2] (together, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(2), respectfully submit this Joint Opening Brief in Support of their Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction (the "Motion").[3]

## INTRODUCTION

Plaintiffs, the municipalities of Bayamón, Caguas, Loíza, Lares, Barranquitas, Comerío, Cayey, Las Marías, Trujillo Alto, Vega Baja, Añasco, Cidra, Aguadilla, Aibonito, Morovis, and Moca (together, "Plaintiffs"), seek to impose liability on Defendants for harms allegedly resulting from more than a century of energy consumption around the world. The Complaint suffers from numerous defects, as set forth in Defendants' Joint Motion to Dismiss for Failure to State a Claim. This Motion focuses on one defect in particular: the allegations, even if accepted as true, do not establish personal jurisdiction over these nonresident Defendants.

Plaintiffs do not allege "general" personal jurisdiction over any Defendant. None is incorporated or headquartered in Puerto Rico, and thus none is "at home" in this forum. *Daimler AG*

---

[1]    Occidental Petroleum Corporation is incorrectly named as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp."

[2]    While eight of the Defendants are energy companies, Defendant Rio Tinto plc is a global mining company engaged in the exploration, extraction, and processing of mineral resources. As such, Rio Tinto is not involved in the production, promotion, or sale of fossil fuels. For ease of reading, this brief sometimes refers to all defendants as "energy companies" or as producers of fossil fuel products. These references should not be read as concessions that Rio Tinto is an energy company, nor that it is engaged in producing, promoting or selling any fossil fuel products. Rio Tinto expressly reserves all rights in this regard.

[3]    On March 29, 2023, to facilitate and streamline the briefing on the anticipated motions to dismiss, Plaintiffs and Defendants filed a *Joint Motion For Extension of Time to Answer or Otherwise Respond to the Complaint and to Establish Briefing Schedule and Other Procedural Terms Concerning Motions to Dismiss* (ECF Doc. No. 25, the "Joint Motion"). The Joint Motion requested an Order setting a briefing schedule for the motions to dismiss and related papers and granting other procedural stipulations, including page limitations on the motions, oppositions and replies and the period of time that Plaintiffs or Defendants would have to file the corresponding papers. *Id.* ¶ 3b-c. By Order entered on March 30, 2023, the Court granted the Joint Motion. *See* ECF Doc. No. 31. This Motion to Dismiss is filed pursuant to the Joint Motion and the March 30 Order.

*v. Bauman*, 571 U.S. 117, 122 (2014). Nor has any Defendant consented to general personal jurisdiction in Puerto Rico. *See Mallory v. Norfolk & Southern Railway Co.*, 143 S. Ct. 2028 (2023). And because the Court also lacks "specific" personal jurisdiction over Defendants, as demonstrated below, the Court should dismiss the Complaint with prejudice.

　　**1.　　Based on Plaintiffs' own allegations—which Defendants accept as true for purposes of this Motion only—Plaintiffs' claims do not "arise out of or relate to" Defendants' alleged contacts with Puerto Rico, as specific personal jurisdiction requires.** Under the Supreme Court's recent decision in *Ford Motor*, to satisfy the "arising out of or related to" prong, a plaintiff must allege facts that, taken as true, would show that *use or malfunction of a defendant's product in the State injured the plaintiff* in the State. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1027 (2021) (emphasis added). Plaintiffs are required to establish "*more than just an attenuated connection* between [defendant's] contacts and [plaintiff's] claim." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008) (emphasis added) (internal quotation marks omitted). As the First Circuit has explained, "the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." *Id.* (cleaned up).

　　Plaintiffs' allegations fall far short of that mark. Plaintiffs do not allege that the use or malfunction of any Defendant's products in Puerto Rico (or any acts in Puerto Rico) themselves injured Plaintiffs in Puerto Rico. Plaintiffs instead seek to impose liability on Defendants for injuries allegedly resulting from the cumulative worldwide use of all oil, natural gas, coal, and other sources of emissions—the vast majority of which have no connection to Defendants, much less to Puerto Rico. *See Ford Motor*, 141 S. Ct. at 1025. Plaintiffs allege that injuries sustained during the 2017 hurricane season were all due to "global warming," allegedly caused by "[a]nthro-

2

pogenic (human caused) greenhouse gas pollution." Compl. ¶ 201. But "[e]veryone has contrib-

uted to the problem of global warming"—there are billions of contributors to greenhouse gas emis-

sions across the world, including Plaintiffs themselves. *See City of Oakland v. BP p.l.c.*, 325 F.

Supp. 3d 1017, 1026 (N.D. Cal. 2018) ("*Oakland I*"), *vacated on other grounds*, 960 F.3d 570 (9th

Cir. 2020). And because "greenhouse gases once emitted become well mixed in the atmosphere,"

emissions from a particular State contribute no more to the effects of climate change in that State

than emissions from elsewhere. *See City of New York v. Chevron Corp.*, 993 F.3d 81, 92 (2d Cir.

2021) (quoting *Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 422 (2011)) (cleaned up).

Since Plaintiffs' claims ultimately have nothing to do with how much oil, gas, or coal (if any)

Defendants allegedly refined or sold in Puerto Rico, or how much marketing or advertising (if any)

purportedly occurred in Puerto Rico, those claims do not arise out of or even relate to Defendants'

alleged activities in Puerto Rico.

Plaintiffs' allegations of marketing activities in Puerto Rico (Compl. ¶ 13) cannot save their

claims from dismissal. Plaintiffs do not allege use of the marketed products in Puerto Rico injured

them in Puerto Rico. Indeed, Plaintiffs' theory, if accepted, would dramatically expand the bounds

of specific personal jurisdiction by subjecting defendants to jurisdiction in any State or territory in

which their products were marketed or used, no matter how insignificant and attenuated the con-

nection with the alleged claims. Such an unprecedented and unprincipled expansion of personal

jurisdiction would violate Defendants' due process rights and has been squarely rejected by the

U.S. Supreme Court and the First Circuit. *See Bristol-Myers Squibb Co. v. Superior Court*, 582

U.S. 255, 264 (2017); *see also Sawtelle v. Farrell*, 70 F.3d 1381, 1390 (1st Cir. 1995) (finding no

personal jurisdiction where the plaintiff was injured by "numerous non-forum decisions reached

by the defendants in Virginia and Florida, but not in" the forum State).

2.    **The exercise of specific personal jurisdiction over Defendants would be unreasonable under the Due Process Clause.** Litigating this case in Puerto Rico would contravene "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" because Plaintiffs' claims implicate *global* conduct and are not localized to Puerto Rico. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). And it would threaten the "interest of the several States in furthering fundamental substantive social policies," *id.*, because, among other things, many States and the federal government promote the very energy production, policies, and advocacy that Plaintiffs seek to penalize through this lawsuit. Moreover, it would impermissibly require nonresident Defendants to submit to the "coercive power" of an out-of-State tribunal with respect to conduct unconnected with the forum, leaving their conduct in other States, as well as national and even worldwide conduct, subject to conflicting state rules. *See Bristol-Myers Squibb*, 582 U.S. at 263.

3.    **Plaintiffs' attempt to sidestep these manifest deficiencies by relying on Section 1965 of the Racketeer Influenced & Corrupt Organizations ("RICO") Act fails.** Section 1965 provides for the exercise of personal jurisdiction over nonresident defendants that are served in other federal districts based on their nationwide, as opposed to forum, contacts "when it is shown that the ends of justice require." 18 U.S.C. § 1965(b); *see* Compl. ¶ 16. Plaintiffs, however, can satisfy neither of the conditions for Section 1965's application. *First*, before considering Defendants' nationwide contacts, a Court must initially find that personal jurisdiction is proper as to at least one Defendant based on that Defendant's forum contacts. No such finding can be made here, as the Complaint fails to allege facts sufficient to establish personal jurisdiction in Puerto Rico over *any* Defendant. *Second*, Section 1965 is inapplicable where, as here, Plaintiffs have failed to state a valid claim under RICO. Defendants Joint Motion to Dismiss for Failure to State a

4

Claim at 15.

Because the factual allegations in Plaintiffs' Complaint provide no basis for exercising personal jurisdiction that would comport with the Due Process Clause, and because no amendment can remedy the inherent flaws in Plaintiffs' jurisdictional theory, the Court should dismiss all claims against Defendants with prejudice.

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs initiated this case on November 22, 2022. Defendants now file this joint motion to dismiss for lack of personal jurisdiction. Contemporaneously with this brief, all Defendants are jointly moving to dismiss Plaintiffs' claims for failure to state a cause of action.

## STATEMENT OF ALLEGED FACTS

Plaintiffs' claims irreducibly depend on the cumulative and worldwide use of fossil fuel products for more than a century. Without those worldwide emissions, the causation chain alleged in the Complaint simply could not occur. Plaintiffs allege an attenuated (and implausible) causal chain between Defendants' allegedly tortious acts and Plaintiffs' purported injuries from storms that occurred in September 2017. In order to circumvent well-established case law, Plaintiffs focus on one alleged link in this chain—Defendants' alleged misrepresentations and deception. But this attempt to target Defendants' speech is a red-herring. Among the many other links in Plaintiffs' causal chain are the decisions of countless third parties around the world—including Plaintiffs themselves—to extract, refine, transport, market, offer for sale, purchase, and ultimately combust (*i.e.*, use) fossil fuel products.

As alleged in the Complaint, the combustion of fossil fuel products, among numerous other natural and manmade sources, releases greenhouse gas emissions. Plaintiffs allege that these worldwide emissions—in addition to emissions originating from other sources, virtually all of

EXHIBIT
IIB

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant Exxon Mobil Corporation ("ExxonMobil") respectfully moves to dismiss Plaintiff's Complaint for failure to state a claim due to failure to plead allegations of fraud with particularity.[1]

## PRELIMINARY STATEMENT

Plaintiff's claims against ExxonMobil should be dismissed because they sound in fraud, but are not pleaded with the particularity that Federal Rule of Civil Procedure 9(b) requires.

Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud. To satisfy Rule 9(b), a plaintiff must plead with particularity—for *each* alleged misrepresentation by *each* defendant—who made the misrepresentation, to whom it was made, when it was made, and its specific contents. Rule 9(b) also requires that a plaintiff allege with particularity its detrimental reliance on each purportedly misleading statement.

Plaintiff's claims do not remotely satisfy this standard. Plaintiff has cobbled together purportedly fraudulent statements that it attributes to ExxonMobil, but none of them have been pled with the particularity required by Rule 9(b). Among other fatal deficiencies in Plaintiff's claims, Plaintiff has not claimed that a single allegedly fraudulent statement by ExxonMobil was made in Puerto Rico, directed at Puerto Rico, or even seen by Plaintiff in Puerto Rico. Indeed, none of the allegedly deceptive statements that Plaintiff identifies have *any* nexus to Puerto Rico at all. It is therefore unsurprising that Plaintiff has also failed to allege detrimental reliance on those statements.

To the extent Plaintiff seeks to impose liability on ExxonMobil for statements allegedly made by others, those allegations also fail to satisfy Rule 9(b). Although Plaintiff alleges that

---

[1] ExxonMobil has joined in Defendants' Joint Motion to Dismiss the Complaint, and incorporates those arguments herein. In filing this brief, ExxonMobil does not waive, and expressly preserves, any right, defense, affirmative defense, or objection, including, without limitation, lack of personal jurisdiction.

"Defendants" are responsible for certain purportedly fraudulent conduct, it makes little to no effort to differentiate between Defendants, and falls far short of identifying each Defendant's alleged fraudulent conduct. That approach plainly violates Rule 9(b)'s mandate that pleadings identify *each* alleged misrepresentation by *each* defendant. Further, Plaintiff cannot impute statements by non-party "industry associations" to ExxonMobil because Plaintiff has failed to plead the requisite connection between those statements and ExxonMobil.

Because Plaintiff has failed to allege claims against ExxonMobil with the particularity required by Rule 9(b), its claims must be dismissed.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Plaintiffs must comply with Rule 9(b) even if they do not explicitly claim fraud, but their allegations nonetheless sound like fraud." *Gonzalez-Camacho* v. *Banco Popular de P.R.*, 318 F. Supp. 3d 461, 481 (D.P.R. 2018); *see Mulder* v. *Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017); *Garcia* v. *Carrión,* No. CIV 09-1507, 2010 WL 3662593, at *7 (D.P.R. Aug. 11, 2010) (holding that Rule 9(b) applies if a claim either "explicitly alleges fraud" or "sounds in fraud").

Rule 9(b) imposes a "higher pleading standard" than Rule 8(a)'s notice-pleading standard. *Surén-Millán* v. *United States*, 38 F. Supp. 3d 208, 217 (D.P.R. 2013). To plead fraud with "particularity," as Rule 9(b) requires, a plaintiff "usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). Furthermore, where a plaintiff alleges multiple acts of fraud, multiple schemes, and/or multiple defendants, the complaint must detail with particularity *each* act of fraud, *each* scheme, and the role of *each* defendant therein. *See Emery* v. *Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 578 F. Supp.

2

3d 267, 285 (D.P.R. 2021); *Vázquez Lazo* v. *Emeterio Walker*, No. CV 15-1891, 2016 WL 8711710, at *2 (D.P.R. Sept. 30, 2016). "[M]ere allegations of fraud, corruption or conspiracy, averments to conditions of mind, or referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times those accusations are repeated." *Generadora de Electricidad del Caribe, Inc.* v. *Foster Wheeler Corp.*, 92 F. Supp. 2d 8, 18 (D.P.R. 2000) (quoting *Hayduk* v. *Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)).

Rule 9(b) "requires a complaint in an action based on fraud . . . to allege all the substantive elements of fraud." 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1297 (4th ed. 2023). That includes detrimental reliance, which "by definition, is one of the necessary elements for *any* fraud claim." *Cooperativa da Ahorro y Credito Aguada* v. *Kidder, Peabody & Co.*, 758 F. Supp. 64, 73 (D.P.R. 1991); *see Generadora de Electricidad*, 92 F. Supp. 2d at 20 (holding that "the concept of fraud which is present in Rule 9(b)" requires that plaintiff plead "detrimental reliance upon the representation by the person claiming to have been deceived"); *see, e.g., Woods* v. *Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013); *Juárez* v. *Select Portfolio Servicing, Inc.*, 708 F.3d 269, 280 (1st Cir. 2013).

## II.   ARGUMENT

### A.   Rule 9(b) Applies to Plaintiff's Claims Against ExxonMobil.

All of Plaintiff's claims must satisfy Rule 9(b)'s heightened pleading standard, because they all "explicitly allege fraud" or "sound in fraud." *See Garcia*, 2010 WL 3662593, at *7. Plaintiff's theory of liability rests almost entirely on allegations of fraud. Indeed, it announces at the outset of the Complaint that it seeks to impose liability on Defendants for *"misrepresent[ing]* the dangers of the carbon-based products which they marketed and sold." Compl. ¶ 2 (emphasis added). Moreover, Plaintiff alleges in a conclusory fashion that, "[d]ecades ago," Defendants "obtained scientific information establishing that products they marketed and sold in Puerto Rico

accelerated climate change," *id.*, and that Defendants "collude[d] by investing billions into a *fraudulent marketing scheme* to convince consumers that their fossil fuel-based products did not— and would not—alter the climate." *Id.* ¶ 5 (emphasis added); *see id.* ¶ 7(e) (accusing Defendants of "carefully crafted corporate subterfuge").

All of Plaintiff's claims are based on this flawed theory of fraud. Plaintiff's first three causes of action are for "common law consumer fraud"; "conspiracy to commit common law consumer fraud and deceptive business practices"; and violations of "Rule 7 of the Puerto Rico Rules Against Misleading Practices and Advertisements." *Id.* ¶¶ 610–92. Plaintiff's claims under the Racketeering Influenced and Corrupt Organizations Act ("RICO") are premised on mail fraud and wire fraud. *See id.* ¶ 696. Plaintiff also relies on averments of fraud in pleading the elements of the remaining causes of action in its Complaint. *See id.* ¶¶ 746, 791 (public and private nuisance); ¶ 735 (Sherman Act § 1); ¶ 752 (failure to warn); ¶¶ 766, 782 (design defect); ¶¶ 797 ("Restitution-Unjust Enrichment").

Courts routinely require that claims like Plaintiff's—which are premised on allegedly fraudulent conduct—satisfy Rule 9(b) without regard to whether plaintiff asserts standalone fraud claims. In *Garcia*, for example, plaintiffs asserted shareholder derivative claims against corporate board members, including for breach of the fiduciary duties of loyalty and care. 2010 WL 3662593, at *2. While breach of fiduciary duty is not an "explicit fraud claim," the court recognized that the claim rested on allegations that the board publicly offered stock pursuant to a false and misleading registration statement. *Id.* at *2, *7. Therefore, the court held, plaintiff's claims "sound[ed] in fraud," warranting Rule 9(b)'s application. *Id.* at *7. So too, here. There can be no doubt that Rule 9(b) applies to Plaintiff's claims that *are* "explicit fraud claim[s]." *See* Compl. ¶¶ 610–728; *see, e.g., Rodríguez-Ortega* v. *Philip Morris, Inc.*, 2005 WL 8168625, at *5

(D.P.R. Mar. 23, 2005) (applying Rule 9(b) to claims of "fraud, misrepresentation and/or deceit, concealment by omission"). But even Plaintiff's claims that do not expressly assert fraud rest on Plaintiff's allegation that ExxonMobil allegedly "deceived" Puerto Rico consumers about "the role of fossil fuel products in causing" climate change. Compl. ¶ 586; *see id.* ¶¶ 746, 787, 791 (public and private nuisance); ¶ 735 (Sherman Act § 1); ¶¶ 752, 756, 761 (failure to warn); ¶¶ 766, 771, 782 (design defect); ¶¶ 794, 796 ("Restitution-Unjust Enrichment"); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347–48 (3d Cir. 2010) (Rule 9(b) pleading applies to Sherman Act claims sounding in fraud); *Feinstein* v. *RTC*, 942 F.2d 34, 42 (1st Cir. 1991) (Rule 9(b) applies to RICO claims that plead predicate acts of mail and wire fraud). Therefore, Rule 9(b) must apply to all of Plaintiff's claims.

## B.   Plaintiff's Allegations Against ExxonMobil Fail to Satisfy Rule 9(b).

Plaintiff's allegations against ExxonMobil fail to meet Rule 9(b)'s stringent pleading requirements because the Complaint fails to identify *each* alleged misrepresentation by ExxonMobil, or who purportedly saw or relied on each statement to their detriment. Because the complaint "fail[s] to specifically identify alleged misrepresentations for each individual defendant," including ExxonMobil, "[a]ll claims alleging misrepresentation . . . must be dismissed." *State ex rel. Jennings* v. *BP America Inc.*, 2024 WL 98888 (Del. Super. Ct. Jan. 9, 2024) (dismissing a similar complaint for failure to comply with Rule 9(b)).

### 1.   Plaintiff Fails to Plead Any Alleged Misrepresentations Attributable to ExxonMobil with Particularity.

Notwithstanding its length, Plaintiff's Complaint identifies only a handful of purportedly misleading statements allegedly attributable to ExxonMobil, its predecessors, or affiliates. Plaintiff fails to allege those isolated statements, which have absolutely no nexus to Puerto Rico, with the requisite particularity. The Complaint fails to allege any misleading statements that were

5

Defendant Exxon Mobil Corporation ("ExxonMobil") submits this supplemental memorandum of law in further support of Defendants' motion to dismiss for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) and 9(b).[1]

## PRELIMINARY STATEMENT

Plaintiffs' claims against ExxonMobil should be dismissed because they sound in fraud, but are not pleaded with the particularity that Federal Rule of Civil Procedure 9(b) requires.

Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud. To satisfy Rule 9(b), a plaintiff must plead with particularity—for *each* alleged misrepresentation by *each* defendant—who made the misrepresentation, to whom it was made, when it was made, and its specific contents. Rule 9(b) also requires that a plaintiff allege with particularity its detrimental reliance on each purportedly misleading statement.

Plaintiffs' claims do not remotely satisfy this standard. Plaintiffs have cobbled together purportedly fraudulent statements that they attribute to ExxonMobil, but all of them were made far beyond Puerto Rico's borders and long ago. Among other fatal deficiencies, Plaintiffs have not alleged that a single allegedly fraudulent statement by ExxonMobil was made in Puerto Rico, directed at Puerto Rico, or even seen by Plaintiffs in Puerto Rico. Indeed, none of the allegedly deceptive statements that Plaintiffs identify have *any* nexus to Puerto Rico. It is therefore unsurprising that Plaintiffs have also failed to allege detrimental reliance on those statements.

To the extent Plaintiffs seek to hold ExxonMobil liable for statements allegedly made by others, they cannot do so consistent with Rule 9(b). Plaintiffs allege that "Defendants" are responsible for certain purportedly fraudulent conduct, but make no effort to differentiate between

---

[1]   ExxonMobil has joined in Defendants' Joint Memorandum of Law in Support of Their Motion to Dismiss for Failure to State a Claim, and incorporates those arguments herein. In filing this brief, ExxonMobil does not waive, and expressly preserves, any right, defense, affirmative defense, or objection, including, without limitation, lack of personal jurisdiction.

Defendants. That plainly violates Rule 9(b)'s mandate that pleadings identify *each* alleged misrepresentation by *each* defendant. Further, Plaintiffs cannot impute statements by non-party "industry associations" to ExxonMobil because Plaintiffs have not pleaded the requisite connection between those statements and ExxonMobil.

Because Plaintiffs have failed to allege their claims against ExxonMobil with the particularity required by Rule 9(b), these claims must be dismissed.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Plaintiffs must comply with Rule 9(b) even if they do not explicitly claim fraud, but their allegations nonetheless sound like fraud." *Gonzalez-Camacho* v. *Banco Popular de P.R.*, 318 F. Supp. 3d 461, 481 (D.P.R. 2018); *see Mulder* v. *Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017); *Garcia* v. *Carrión*, 2010 WL 3662593, at *7 (D.P.R. Aug. 11, 2010) (holding that Rule 9(b) applies if a claim either "explicitly alleges fraud" or "sounds in fraud").

Rule 9(b) imposes a "higher pleading standard" than Rule 8(a)'s notice-pleading standard. *Surén-Millán* v. *United States*, 38 F. Supp. 3d 208, 217 (D.P.R. 2013). To plead fraud with "particularity," as Rule 9(b) requires, a plaintiff "usually is expected to specify the who, what, where, and when of the allegedly false or fraudulent representation." *Alternative Sys. Concepts, Inc.* v. *Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). Furthermore, where a plaintiff alleges multiple acts of fraud, multiple schemes, and/or multiple defendants, the complaint must detail with particularity *each* act of fraud, *each* scheme, and the role of *each* defendant therein. *See Emery* v. *Am. Gen. Fin.*, 71 F.3d 1343, 1348 (7th Cir. 1995); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 578 F. Supp. 3d 267, 285 (D.P.R. 2021); *Vázquez Lazo* v. *Emeterio Walker*, 2016 WL 8711710, at *2 (D.P.R. Sept. 30, 2016). "[M]ere allegations of fraud, corruption, or conspiracy, averments to conditions of mind, or

2

referrals to plans and schemes are too conclusional to satisfy the particularity requirement, no matter how many times those accusations are repeated." *Generadora de Electricidad del Caribe, Inc.* v. *Foster Wheeler Corp.*, 92 F. Supp. 2d 8, 18 (D.P.R. 2000).

Rule 9(b) "requires a complaint in an action based on fraud . . . to allege all the substantive elements of fraud." Wright & Miller, 5A Fed. Prac. & Proc. Civ. § 1297. That includes detrimental reliance, which "by definition, is one of the necessary elements of *any* fraud claim." *Cooperativa da Ahorro y Credito Aguada* v. *Kidder, Peabody & Co.*, 758 F. Supp. 64, 73 (D.P.R. 1991); *see Generadora de Electricidad*, 92 F. Supp. 2d at 20 (holding that "the concept of fraud which is present in Rule 9(b)" requires that plaintiff plead "detrimental reliance upon the representation by the person claiming to have been deceived"); *see, e.g., Woods* v. *Wells Fargo Bank, N.A.*, 733 F.3d 349, 358 (1st Cir. 2013); *Juárez* v. *Select Portfolio Servicing, Inc.*, 708 F.3d 269, 280 (1st Cir. 2013).

## II.    ARGUMENT

### A.    Rule 9(b) Applies to Plaintiffs' Claims Against ExxonMobil.

All of Plaintiffs' claims must satisfy Rule 9(b)'s heightened pleading standard, because all "explicitly allege fraud" or "sound in fraud." *See Garcia*, 2010 WL 3662593, at \*7. Plaintiffs' theory of liability rests almost entirely on allegations of fraud. Indeed, Plaintiffs use the word "fraud" in the Complaint nearly 60 times, and they announce on the very first page of the Complaint that they "seek to impose liability on Defendants *who misrepresented* the dangers of carbon-based products." Compl. ¶ 2 (emphasis added). In particular, Plaintiffs allege that, "[d]ecades ago," Defendants "obtained scientific information establishing that products they marketed and sold in Puerto Rico accelerated climate change," *id.*, and that Defendants "collude[d] by investing billions into a *fraudulent marketing scheme* to convince consumers that their fossil fuel-based products did not—and would not—alter the climate." *Id.* ¶ 6 (emphasis added); *see id.*

3

¶ 7(e) (accusing Defendants of "carefully crafted corporate subterfuge"). Plaintiffs further allege that Defendants implemented this fraudulent scheme through "front groups, dark money funding, and fringe scientists for hire." *Id.* ¶¶ 6, 7(c).

All of Plaintiffs' claims are based on this flawed theory of fraud. Plaintiffs' first three causes of action are for "common law consumer fraud"; "conspiracy to commit common law consumer fraud and deceptive business practices"; and "violations of Rule 7 of the Puerto Rico Rules Against Misleading Practices and Advertisements." *Id.* ¶¶ 648–730. Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act are premised on mail fraud and wire fraud. *See id.* ¶ 734. In fact, Plaintiffs rely on averments of fraud in pleading the elements of every cause of action in their Complaint. *See id.* ¶¶ 733, 743, 757 (RICO); ¶¶ 779, 825 (public and private nuisance); ¶ 773 (Sherman Act § 1); ¶ 793 (failure to warn); ¶¶ 804, 820 (design defect); ¶ 833 ("Restitution-Unjust Enrichment").

Courts routinely recognize that claims like Plaintiffs, which are premised on allegedly fraudulent conduct, are subject to Rule 9(b) without regard to whether plaintiff asserts standalone fraud claims. In *Garcia*, for example, plaintiffs asserted shareholder derivative claims against corporate board members, including for breach of the fiduciary duties of loyalty and care. 2010 WL 3662593, at *2. While breach of fiduciary duty is not an "explicit fraud claim," it rested on allegations that the board publicly offered stock pursuant to a false and misleading registration statement. *Id.* at *2, *7. Therefore, the court held, plaintiff's claims "sound[ed] in fraud," warranting Rule 9(b)'s application. *Id.* at *7. So, too, here. Some of Plaintiffs' claims *are* "explicit fraud claim[s]," *id.*: "Common Law Consumer Fraud," "Conspiracy to Commit Common Law Consumer Fraud and Deceptive Business Practices," and "Rule 7 of Puerto Rico Rules Against Misleading Practices and Advertisements." *Id.* ¶¶ 648–730; *see, e.g., Rodríguez-Ortega*

4

v. *Philip Morris, Inc.*, 2005 WL 8168625, at *5 (D.P.R. Mar. 23, 2005) (applying Rule 9(b) to claims of "fraud,. misrepresentation and/or deceit, concealment by omission"). But *all* of Plaintiffs' claims "sound in fraud," such that Rule 9(b) must apply. Each claim rests on Plaintiffs' allegation that ExxonMobil allegedly "deceived" Puerto Rico consumers about "the role of fossil fuel products in causing" climate change. Compl. ¶ 610; *see Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 347–48 (3d Cir. 2010) (Rule 9(b) pleading applies to Sherman Act claims sounding in fraud); *Feinstein* v. *RTC*, 942 F.2d 34, 42 (1st Cir. 1991) (Rule 9(b) applies to RICO claims that plead predicate acts of mail and wire fraud).

## B.    Plaintiffs' Allegations Against ExxonMobil Fail to Satisfy Rule 9(b).

Plaintiffs' allegations against ExxonMobil fail to meet Rule 9(b)'s stringent pleading requirements because the Complaint fails to identify *each* alleged misrepresentation by ExxonMobil, or who purportedly saw or relied on each statement to their detriment.

### 1.    Plaintiffs Fail to Plead Any Alleged Misrepresentations Attributable to ExxonMobil with Particularity.

The Complaint identifies only the following purportedly misleading statements allegedly attributable to ExxonMobil, its predecessors, or affiliates:

- advertorials published in the *New York Times* by Mobil prior to 2000, and Exxon from 2000 to 2004, Compl. ¶¶ 402-03; RICO Case Statement Ex. M, N;[2]

- a 1996 corporate publication, published by Exxon in Texas, *id.* ¶¶ 397-400;

- a 1997 speech by Exxon's then-CEO in Beijing, China, *id.* ¶ 405;

- three advertisements by Mobil in *The New York Times* in 1997, *id.* ¶¶ 404, 409-10;

- a 1998 article by the CEO of Imperial Oil—a "smaller subsidiar[y]" of ExxonMobil, *id.* ¶ 72—published in the Imperial Oil Review, a publication for Imperial Oil's shareholders and employees, *id.* ¶ 425; and

---

[2]    Exxon and Mobil merged in 1999.

- a 2007 Corporate Citizenship Report, published by ExxonMobil in Texas, *id.* ¶ 465.

Plaintiffs fail to plead these statements with the requisite particularity.

### (a)    Plaintiffs Fail to Allege Who Was Deceived by Any Statement.

Plaintiffs fail to allege with particularity who supposedly was deceived by *any* of the identified statements. Plaintiffs do not so much as identify anyone—in Puerto Rico or among Plaintiffs themselves—who saw, heard about, or were exposed to any of these statements, let alone were deceived by them. Rather, Plaintiffs only identify statements published in Texas, made in a single speech in China, circulated in national publications based in New York, and sent to investors and employees of a Canadian company. None are alleged to have been crafted for or directed at Puerto Rico. That alone requires dismissal of Plaintiffs' claims against ExxonMobil. *See Alternative Sys. Concepts*, 374 F.3d at 30 (explaining that Rule 9(b) requires plaintiff to allege "the who" of the allegedly false or fraudulent representation, and dismissing plaintiff's claims for failing to identify "to whom" the allegedly "misleading statements . . . were made"); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 578 F. Supp. 3d at 286 (dismissing fraud claims under Rule 9(b) where plaintiff alleged "that fraud occurred at unspecified meetings attended by unspecified individuals").

### (b)    Plaintiffs Fail to Allege Detrimental Reliance on Any Statement.

Because Plaintiffs fail to allege who in particular was deceived by any of the allegedly misleading statements, they similarly fail to allege who in particular detrimentally relied on any of those statements, one of the "necessary elements for *any* fraud claim." *Cooperativa da Ahorro y Credito Aguada*, 758 F. Supp. at 73. Under Plaintiffs' theory of liability, unspecified consumers in Puerto Rico, including Plaintiffs, used fossil fuels at levels beyond what they would have, absent Defendants' alleged deceptive statements. *See, e.g.*, Compl. ¶ 688 (alleging that Defendants

6

EXHIBIT
IIC

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Exxon Mobil Corp., Chevron Corp., ConocoPhillips, Motiva Enterprises LLC, and Occidental Petroleum Corporation[1] (together, "Defendants")[2] respectfully move to dismiss the Complaint.[3]

## INTRODUCTION

This is a copycat lawsuit. On November 22, 2022, sixteen other Puerto Rico municipalities represented by other counsel filed a putative class action alleging the same claims Plaintiff now asserts. *See* Complaint, ECF No. 1, ("Bayamón Complaint") *Municipality of Bayamón, v. Exxon Mobil Corporation*, No. 3:22-cv-01550 (D.P.R. Nov. 22, 2022). Plaintiff's Complaint is largely a word-for-word copy of the Bayamón Complaint,[4] and fails for all of the same reasons—and more. *See* Defendants' Joint Motion to Dismiss for Failure to State a Claim, ECF No. 185, *Municipality of Bayamón, v. Exxon Mobil Corporation*, No. 3:22-cv-01550 (D.P.R. Nov. 22, 2022).

Plaintiff claims that harms from individual hurricanes can be causally attributed to the decades-old alleged statements and conduct of a handful of publicly-traded companies. But, as the Second Circuit found in affirming dismissal of a similar lawsuit, "[g]lobal warming is one of the greatest

---

[1] Occidental Petroleum Corporation is incorrectly named as "Occidental Petroleum F.K.A. Anadarko Petroleum Corp."
[2] Moving Defendants understand that the other named defendants have not yet been served with the action and thus are not parties to this Motion.
[3] Plaintiff's allegations are accepted as true solely for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[4] The complaints include identical typos, *e.g.*, *compare* Compl. ¶ 11 (alleging all injuries were caused "as a result of the Defendant's [singular] acts and omissions") *with* Bayamón Compl. ¶ 11 (same); *compare* Compl. ¶ 373 ("Exxon continued [to] publish") *with* Bayamón Compl. ¶ 297 (same), allegations that are irrelevant to non-class action complaints, *e.g.*, Compl. ¶ 26 (noting San Juan's experience in the 2017 Atlantic Hurricane Season as "representative of the remaining 77 Municipalities in the Commonwealth of Puerto Rico"); there are identical cross-references that are not updated for this Complaint, *e.g.*, *id.* ¶ 163; repeated references to Plaintiff as "Municipalities" (plural), *e.g.*, *id.* ¶¶ 65, 137, 147, 153, 373, 555, 569, 586, 618; references to "Exhibit[s]" "attached hereto" and a "RICO Case Statement" that this Plaintiff never filed or served, *id.* ¶¶ 177-78, 420, 696-97; and apparent artifacts of a PDF-to-Text transcription that was not thoroughly reviewed, such as footnote errors, *e.g.*, *id.* ¶¶ 185-86 & nn. 177-79 (misnumbered footnotes); *id.* p. 57, n.186 (footnote call omitted from text), and odd textual errors, *e.g.*, *id.* ¶¶ 412 ("Shell al o formally withdrew"), 702 ("would inevitably re ult"), 776 ("fuel product were u ed"), *id.* at VII.D ("Fourth Cause of Actio 11"). Notably, there are approximately 325 citations to webpages that were "last visited" on November 14 or 15, 2022—more than one year before this case was filed, and shortly before the putative class action was filed. Given Plaintiff's apparent failure to investigate its allegations, Defendants reserve their rights to move for sanctions. *See* Fed. R. Civ. P. 11(c)(2). Indeed, Plaintiff's failure is all the more egregious because Plaintiff filed this copycat complaint *after* Defendants filed their motions to dismiss.

challenges facing humanity today" in part because "every single person who uses gas and electricity—whether in travelling by bus, cab, Uber, or jitney, or in receiving home deliveries via FedEx, Amazon, or UPS—contributes to" it. *City of New York v. Chevron Corp.*, 993 F.3d 81, 86 (2d Cir. 2021). Plaintiff—a municipality and itself a long-time consumer of fossil fuels—nonetheless seeks to impose liability on Defendants for the damage that Hurricanes Irma and Maria caused Puerto Rico in September 2017. Plaintiff theorizes that Defendants' alleged statements about fossil fuels and climate change, and their asserted participation in lobbying and trade groups, led to the regulatory acts and fossil fuel emissions by governments and consumers across decades and around the world—most of which have nothing to do with Defendants. This supposedly resulted in incremental increases in production and purchases of fossil fuels worldwide, Plaintiff claims, caused or exacerbated global climate change, and purportedly led to the 2017 hurricanes.

Plaintiff thus does not seek to hold these select Defendants liable for their own carbon emissions (either in Puerto Rico or elsewhere), or even the emissions of end-users who purchased Defendants' products in Puerto Rico, but for the alleged worldwide impacts of global emissions purportedly spurred by Defendants' speech and conduct—and the conduct of countless other entities and individuals not party to this litigation. No federal court has ever found such a far-fetched theory to state a claim for relief. This Court should not be the first.

**Plaintiff's claims founder on fundamental issues of constitutional law** regarding the ability of States and municipalities to regulate interstate—and indeed international—air pollution and speech. *See, e.g., Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*"); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961); *Delaware v. BP Am., Inc.*, 2024 WL 98888, at *9 (Del. Super. Ct. Jan. 9, 2024) (holding that claims "seeking damages for injuries resulting from out-of-state or global greenhouse emissions" are "beyond the

- 2 -

limits of [state] common law"). **But this Court need not reach these questions, because Plaintiff's claims are time-barred.** The allegations make plain that Plaintiff knew in 2017—when the hurricanes hit—that it had been damaged, and it cannot plausibly claim it only recently became aware of an alleged link between fossil fuels, climate change, and hurricanes. By 2017, public materials—some of which Plaintiff cites—already alleged such a link. Indeed, the First Circuit noted that "[i]n 2018, faced with . . . more frequent and severe . . . hurricanes . . . , Rhode Island sued . . . nearly every oil and gas company under the sun." *Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 53-54 (1st Cir. 2020) (affirming remand). Plaintiff has no justification for sitting on its claims for five years and cannot plead around this public record. Its federal claims are barred by a four-year statute of limitations, and its putative Puerto Rico law claims by one-year limitations periods. As a Delaware court recently held in dismissing similar climate change claims: The "general public had knowledge of or had access to information about the disputes, regarding the existence of climate change and effects, decades prior to the expiration" of the limitations period. *Delaware*, 2024 WL 98888, at *19. And by copying verbatim the putative class's complaint, the Complaint expressly alleges the untimeliness of its claims—citing that approximately 325 websites forming the basis of Plaintiff's allegations were "last visited" *in November 2022*, more than a year before filing the Complaint. That alone renders Plaintiff's Puerto Rico Law Claims untimely.

**Plaintiff's claims also fail on the merits, just as similar claims have failed elsewhere.** *See City of New York*, 993 F.3d at 86 (affirming Rule 12(b)(6) dismissal of substantially similar complaint). Plaintiff cannot plausibly impose liability for the 2017 hurricanes on Defendants' lawful sale of vital fuels for decades, much less for Defendants' First Amendment protected speech—or *purported* speech, since Plaintiff improperly tries to tag the disparate Defendants named here with statements made by entities for which Defendants are not responsible.

**Plaintiff's civil Racketeer Influenced and Corrupt Organizations Act ("RICO") and antitrust claims are meritless.** Like Plaintiff's other claims, Plaintiff premises its RICO claims not only on Defendants' lawful worldwide production of oil and gas, but on alleged speech that is constitutionally protected—such as core political speech aimed at "preventing U.S. adoption of the Kyoto Protocol." Compl. ¶ 343. The importance of climate change as a public policy issue means that Defendants' speech is entitled to substantial constitutional protection. The First Amendment protects not only the heartland of political speech, but even "the *prospect* of chilling fully protected expression." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) (emphasis added); *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2320 (2023) (reaffirming constitutional protections for speech despite alleged profit motive). Because the only speech Plaintiff identifies as supposedly having caused its harm (*i.e.*, 2017 hurricane injuries) is political lobbying and publicity campaigns allegedly aimed at influencing the views of lawmakers and the public, Plaintiff's claims violate the First Amendment and the *Noerr-Pennington* doctrine.

**In addition, the civil RICO and antitrust allegations fail to plausibly allege multiple required elements.** For example, Plaintiff must plead facts showing a *direct* causal relation between the alleged acts of racketeering and the claimed injuries. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Failing to do so, Plaintiff instead alleges an attenuated, speculative chain of indirect and intervening causes consisting of *at least six* alleged steps, including that: (1) Defendants promoted climate change denial; (2) that promotion resulted in a marginal increase in the sales of Defendants' products and a corresponding increase in the use of those products by Plaintiff, its residents, and billions of other actors worldwide; (3) that incremental purchase and use resulted in increased petroleum production and emissions of greenhouse gases; (4) those incremental greenhouse gas emissions mixed with other greenhouse gases emitted throughout the world to

-4-

exacerbate climate change to some unspecified degree; (5) global climate change contributed to the hurricanes in Puerto Rico in 2017; and (6) those hurricanes damaged Plaintiff. The Supreme Court repeatedly has rejected far less attenuated causal chains on motions to dismiss. *See id.*; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457-59 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992).

**Plaintiff's antitrust claim fails for additional reasons as well.** Plaintiff has not pleaded an anticompetitive agreement, as required under Section 1 of the Sherman Act. In addition to improperly seeking to burden constitutionally protected speech, Plaintiff pleads no facts supporting its conclusory assertion that Defendants agreed to "maintain their energy monopoly, fix prices, and increase obstacles for competitive entry into the [energy] market." Compl. ¶ 732. That alone defeats Plaintiff's antitrust claim. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 548 (2007) ("absent some factual context suggesting agreement, as distinct from identical independent action," a complaint alleging a Section 1 violation "should be dismissed"). Nor has Plaintiff pleaded any adverse effect on competition; on the contrary, Plaintiff claims that Defendants' alleged conduct "*increased production*" and "*lower[ed] prices*" for consumers. Compl. ¶¶ 7(d), 732 (emphases added). That also requires dismissal because an alleged antitrust conspiracy must involve a "'competition-*reducing* aspect or effect of the defendant's behavior,' that is, from 'acts that *reduce output* or *raise prices* to consumers.'" *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 516 (4th Cir. 2002) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Finally, the antitrust laws cannot be used to recover for alleged climate-related harms. *See, e.g., In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236 (9th Cir. 1976) (holding antitrust laws cannot be used to remedy environmental rather than anticompetitive economic injuries); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 n.9 (3d Cir. 1997) (same).

- 5 -

Plaintiff's putative Puerto Rico law claims suffer from additional defects. In particular, under the United States Constitution, transboundary pollution may be governed only by federal law, so Plaintiff's purported Puerto Rico law claims must fail. Our federal constitutional structure prohibits Plaintiff from invoking Puerto Rico tort law to address global greenhouse gas emissions and climate change. As the Second Circuit made clear in *City of New York*, however artfully pleaded, these issues are inherently interstate and international in nature. And in a materially indistinguishable suit, the Delaware Superior Court held that claims—like Plaintiff's here—ostensibly predicated on allegedly misleading marketing but "seeking damages for injuries resulting from out-of-state or global greenhouse emissions and interstate pollution" are "beyond the limits of [state] common law." *Delaware*, 2024 WL 98888, at *9. Plaintiff's Complaint here is replete with the same types of allegations regarding transboundary pollution and Defendants' worldwide speech and other protected activities that *City of New York* and *Delaware* found insufficient. Under our federal constitutional system, only federal law—not state or commonwealth law—can govern such interstate and international issues associated with climate change. And even if our federal constitutional structure did not preclude Plaintiff's Puerto Rico law claims, the Clean Air Act would preempt them. Finally, Plaintiff fails to properly plead the elements of any Puerto Rico law claim, which it lacks the capacity to bring on behalf of its residents in any event.

Accordingly, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

Plaintiff is the largest Puerto Rico municipality. It brings this action to recover for losses resulting from the September 2017 hurricanes that struck Puerto Rico. According to the Complaint, Defendants' products played a "primary role ... in causing the losses, deaths and destruction of property resulting from the catastrophic storms of September 2017 and their aftermath." Compl.

- 6 -

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants respectfully move to dismiss the Complaint.[2]

## INTRODUCTION

Plaintiffs claim that harms from individual hurricanes can be causally attributed to the alleged statements and conduct of just nine publicly-traded companies. But, as the Second Circuit found in affirming dismissal of a similar lawsuit, "[g]lobal warming is one of the greatest challenges facing humanity today" in part because "every single person who uses gas and electricity—whether in travelling by bus, cab, Uber, or jitney, or in receiving home deliveries via FedEx, Amazon, or UPS—contributes to" it. *City of New York v. Chevron Corp.*, 993 F.3d 81, 86 (2d Cir. 2021). Plaintiffs—a purported class of municipalities and themselves long-time consumers of fossil fuels—nonetheless seek to impose liability on nine select Defendants for the damage that Hurricanes Irma and Maria caused Puerto Rico in September 2017. Plaintiffs theorize that Defendants' alleged statements about fossil fuels and climate change, and their asserted participation in lobbying and trade groups, led to the acts and emissions of governments and consumers across decades and around the world—most of which have nothing to do with Defendants. These supposed marginal increases in production and purchases of fossil fuels worldwide, Plaintiffs claim, caused or exacerbated global climate change, and purportedly led to the 2017 hurricanes.

Plaintiffs thus do not seek to hold these select Defendants liable for their own carbon emissions, or even those of end-users who purchased Defendants' products in Puerto Rico, but for the alleged worldwide impacts of Defendants' purported speech and conduct. No federal court has ever found such a far-fetched theory to state a claim for relief. This Court should not be the first.

**Plaintiffs' claims founder on fundamental issues of constitutional law** regarding the ability

---

[2] Plaintiffs' allegations are accepted as true solely for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

of States, commonwealths, and municipalities to regulate interstate—and indeed international—

air pollution and speech regarding its public policy implications. *See, e.g., Am. Elec. Power Co.*

*v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*"); *Eastern R.R. Presidents Conf. v. Noerr*

*Motor Freight, Inc.*, 365 U.S. 127, 135 (1961). **But this Court need not reach these questions,**

**because Plaintiffs' claims are time-barred.** The allegations make plain that Plaintiffs knew in

2017—when the hurricanes hit—they had been damaged, and they cannot plausibly claim they

only recently became aware of an alleged link between fossil fuels, climate change, and hurricanes.

That is because, by 2017, public materials—some of which Plaintiffs cite—already alleged such a

link. Indeed, the First Circuit noted that "[i]n 2018, faced with . . . more frequent and severe . . .

hurricanes . . . , Rhode Island sued . . . nearly every oil and gas company under the sun." *Rhode*

*Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 53-54 (1st Cir. 2020) (affirming remand to state court).

Plaintiffs have no justification for sitting on their claims for five years and cannot plead around

this public record. Their federal claims are barred by a four-year statute of limitations, and their

putative Puerto Rico law claims by one-year limitations periods. That alone requires dismissal.

**Plaintiffs' claims also fail on the merits, just as similar claims have failed elsewhere.** *See*

*City of New York*, 993 F.3d at 86 (affirming Rule 12(b)(6) dismissal of substantially similar com-

plaint). Plaintiffs cannot plausibly impose liability for the 2017 hurricanes on Defendants' lawful

sale of vital fuels for decades, much less on Defendants' First Amendment protected speech—or

*purported* speech, since Plaintiffs improperly try to tag the disparate Defendants named here with

statements made by entities for which Defendants are not responsible.

**Plaintiffs' civil Racketeer Influenced and Corrupt Organizations Act ("RICO") and an-**

**titrust claims are meritless.** Like Plaintiffs' other claims, these claims are expressly based on

alleged speech that is constitutionally protected and on issues of great public importance—such as

core political speech aimed at "preventing U.S. adoption of the Kyoto Protocol." Compl. ¶ 365.
The importance of climate change as a public policy issue means that Defendants' speech is enti-
tled to substantial constitutional protection, and governmental entities like Plaintiffs here are the
*least* appropriate speech-policing parties. As the Supreme Court has underscored repeatedly, the
First Amendment protects not only the heartland of political speech, but even "the *prospect* of
chilling fully protected expression." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) (em-
phasis added). And this includes so-called commercial speech, as a "consumer's interest in the
free flow of commercial information . . . may be as keen, if not keener by far, than his interest in
the day's most urgent political debate." *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481 (1995);
*see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2320 (2023) (reaffirming constitutional pro-
tections for speech despite alleged profit motive). Because the only speech Plaintiffs identify as
supposedly having caused their harm (*i.e.*, 2017 hurricane injuries) is political lobbying and pub-
licity campaigns allegedly aimed at influencing the views of lawmakers and the public, Plaintiffs'
claims violate the First Amendment and the *Noerr-Pennington* doctrine.

**In addition, the civil RICO and antitrust allegations fail to plausibly allege multiple re-
quired elements.** For example, Plaintiffs must plead facts showing a *direct* causal relation be-
tween the alleged acts of racketeering and the claimed injuries. *See Hemi Grp., LLC v. City of
New York*, 559 U.S. 1, 9 (2010). Failing to do so, Plaintiffs instead rely on an indirect and remote
causal theory. Plaintiffs allege an attenuated and speculative chain of indirect and intervening
causes consisting of *at least six* alleged steps, including that: (1) Defendants engaged in promotion
of climate change denial; (2) that promotion resulted in a marginal increase in the sales of Defend-
ants' products and a corresponding increase in the use of those products by Plaintiffs, their resi-
dents, and billions of other actors worldwide; (3) that incremental purchase and use resulted in

- 3 -

increased petroleum production and emissions of greenhouse gases; (4) those incremental green-house gas emissions mixed with other greenhouse gases emitted throughout the world to exacer-bate climate change to some unspecified degree; (5) global climate change contributed to the hur-ricanes in Puerto Rico in 2017; and (6) those hurricanes damaged Plaintiffs. The Supreme Court repeatedly has rejected far less attenuated causal chains on motions to dismiss. *See id.*; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–59 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992). The Complaint even makes the fatal admission that the purported "enterprise" (the Global Climate Coalition ("GCC")) *disbanded in 2002.* Compl. ¶¶ 2(b), 8(b). While Plaintiffs attempt to allege that the GCC somehow continues operating "informally," Plain-tiffs' post-2002 allegations are conclusory, superficial, and fail to carry the burden that RICO places on them to plead an enterprise.

**Plaintiffs' antitrust claim is equally far-fetched.** Plaintiffs have not pleaded an anticompet-itive agreement, as required under Section 1 of the Sherman Act. In addition to improperly seeking to burden constitutionally protected speech, Plaintiffs plead no facts supporting their conclusory assertion that Defendants agreed to "maintain their energy monopoly, fix prices, and increase ob-stacles for competitive entry into the [energy] market." Compl. ¶ 770. That alone is fatal to Plain-tiffs' antitrust claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007) ("absent some factual context suggesting agreement, as distinct from identical independent action," a complaint alleging a Section 1 violation "should be dismissed"). Nor have Plaintiffs pleaded any adverse effect on competition; on the contrary, Plaintiffs claim that Defendants' alleged conduct "*in-creased production*" and "*lower[ed] prices*" for consumers. Compl. ¶¶ 7(d), 770 (emphases added). That also requires dismissal because an alleged antitrust conspiracy must involve a "'com-petition-*reducing* aspect or effect of the defendant's behavior,' that is, from 'acts that *reduce output*

- 4 -

or *raise prices* to consumers.'" *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 516 (4th Cir. 2002) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Finally, the antitrust laws cannot be used to recover for alleged climate-related harms. *See, e.g., In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236 (9th Cir. 1976) (holding antitrust laws cannot be used to remedy environmental rather than anticompetitive economic injuries); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 n.9 (3d Cir. 1997) (same).

**Plaintiffs' putative Puerto Rico law claims suffer from additional defects. In particular, under the United States Constitution, transboundary pollution can be governed only by federal law,** so Plaintiffs' purported Puerto Rico law claims must fail. Our federal constitutional structure prohibits Plaintiffs from invoking Puerto Rico tort law to address global greenhouse gas emissions and climate change. As the Second Circuit made clear in *City of New York*, however artfully pleaded, these issues are inherently interstate and international in nature. Plaintiffs' Complaint is replete with the same types of allegations regarding transboundary pollution and Defendants' worldwide speech and other protected activities that *City of New York* found insufficient. Under our federal constitutional system, only federal law—not state or commonwealth law—can govern such interstate and international issues associated with climate change. And even if our federal constitutional structure did not preclude Plaintiffs' Puerto Rico law claims, the Clean Air Act would preempt them. Finally, Plaintiffs fail to plead the elements of any Puerto Rico law claim, which they lack the capacity to bring on behalf of their residents in any event.

Accordingly, the Court should dismiss the Complaint with prejudice.

## BACKGROUND

Plaintiffs are Puerto Rico municipalities. They bring this action against Defendants to recover

Case 3:23-cv-01608-ADC-HRV    Document 236-1    Filed 06/17/25    Page 34 of 41
Case 3:23-cv-01608-ADC-HRV    Document 186-4    Filed 04/24/25    Page 12 of 19
Case 3:22-cv-01550-SCC-HRV    Document 235    Filed 01/30/24    Page 18 of 85

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants respectfully move to dismiss the Amended Complaint.[2]

## INTRODUCTION

Plaintiffs claim that harms from individual hurricanes can be causally attributed to the alleged statements and conduct of just nine publicly-traded companies and a trade association. But, as the Second Circuit found in affirming dismissal of a similar lawsuit, "[g]lobal warming is one of the greatest challenges facing humanity today" in part because "every single person who uses gas and electricity—whether in travelling by bus, cab, Uber, or jitney, or in receiving home deliveries via FedEx, Amazon, or UPS—contributes to" it. *City of New York v. Chevron Corp.*, 993 F.3d 81, 86 (2d Cir. 2021). Plaintiffs—a purported class of municipalities and themselves long-time consumers of fossil fuels—nonetheless seek to impose liability on ten select Defendants for the damage that Hurricanes Irma and Maria caused Puerto Rico in September 2017.

After Defendants moved to dismiss Plaintiffs' initial Complaint, Plaintiffs did not attempt to defend the sufficiency of their claims. Instead, Plaintiffs dodged Defendants' motions by filing an Amended Complaint. But that Amended Complaint fails to remedy the myriad pleading deficiencies that Defendants already identified. The amendments are at best window dressing. Some even undermine Plaintiffs' case. The Amended Complaint falls far short of stating any viable claim:

1. Plaintiffs replaced coal defendants with the American Petroleum Institute ("API"), a trade association that does not produce or sell fossil fuels but engages in lobbying and speech on issues of public importance. Plaintiffs' addition of API only confirms that this action is an improper attack on (protected) speech that Plaintiffs disfavor, doubling down on the Complaint's constitutional and other defects.

2. In an attempt to resurrect their causation allegations in the face of on-point U.S. Supreme Court precedent foreclosing Plaintiffs' RICO and other claims, Plaintiffs now allege that Defendants controlled API and the Global Climate Coalition ("GCC") through their participation in or funding of those organizations, which engage in

---

[2] Plaintiffs' allegations are accepted as true solely for purposes of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Case 3:23-cv-01608-ADC-HRV    Document 236-1    Filed 06/17/25    Page 35 of 41
Case 3:23-cv-01608-ADC-HRV    Document 186-4    Filed 04/24/25    Page 13 of 19
Case 3:22-cv-01550-SCC-HRV    Document 235    Filed 01/30/24    Page 19 of 85

constitutionally protected speech on issues of public importance. But such group and highly generalized allegations regarding protected speech activities do not suffice.

3. Plaintiffs now attempt to attribute to Defendants all emissions of their alleged joint venture partners, many of which are foreign state-owned entities that Defendants neither own nor control, and that are engaged in activities far beyond the Commonwealth's jurisdiction. While Plaintiffs disclaim any intent to enjoin Defendants' fossil fuel production, the Amended Complaint makes clear Plaintiffs seek to regulate emissions and fuel production through this lawsuit. Such attempts are precluded and preempted by the U.S. Constitution's structure and the Clean Air Act. *See, e.g., State of Delaware v. BP Am., Inc.*, 2024 WL 98888, at \*9 (Del. Super. Ct. Jan. 9, 2024) (holding that climate change related-claims "seeking damages for injuries resulting from out-of-state or global greenhouse emissions" are "beyond the limits of [state] common law").

Equally revealing is what the Amended Complaint now omits, as Plaintiffs attempt to distance themselves from the original Complaint's allegations confirming their claims are hopelessly time-barred. Gone, for example, are references to many 2017 articles that Plaintiffs cited—allegations that, despite their omission now, nonetheless constitute binding admissions that Plaintiffs were on notice by 2017 at the latest of the harms that they now belatedly allege Defendants caused. While Plaintiffs now try to run from their own prior allegations, they cannot hide from them.

Thus, despite some cosmetic changes, the Amended Complaint, like its predecessor, is fatally deficient in numerous respects. At its core, it is premised on the breathtaking notion that Defendants may be held liable for all carbon emissions, everywhere and at any time, because, Plaintiffs claim, Defendants produced lawful products used all over the world and/or spoke about climate change in ways with which Plaintiffs now disagree. Such a theory is untenable.

**Plaintiffs' claims founder on fundamental issues of constitutional law** regarding the ability of States, Commonwealths, and municipalities to regulate interstate—and indeed international—air pollution and speech about how to address it. *See, e.g., Am. Elec. Power Co. v. Connecticut*, 564 U.S. 410, 421–22 (2011) ("*AEP*"); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 135 (1961). Plaintiffs theorize that Defendants' alleged statements about fossil fuels and climate change, and their asserted participation in lobbying and trade groups, led

- 2 -

Case 3:23-cv-01608-ADC-HRV    Document 236-1    Filed 06/17/25    Page 36 of 41
Case 3:23-cv-01608-ADC-HRV    Document 186-4    Filed 04/24/25    Page 14 of 19
Case 3:22-cv-01550-SCC-HRV    Document 235    Filed 01/30/24    Page 20 of 85

inexorably to the regulatory acts and fossil-fuel emissions by governments and consumers over the course of decades, all around the world—most of which have nothing to do with Defendants. This supposedly resulted in incremental increases in production, purchases, and uses of fossil fuels worldwide, which allegedly caused or exacerbated global climate change and purportedly led to the 2017 hurricanes. Plaintiffs thus do not seek to hold these select Defendants liable for their own carbon emissions (either in Puerto Rico or elsewhere), or even the emissions of end-users who purchased Defendants' products in Puerto Rico, but for the alleged worldwide impacts of global emissions purportedly spurred by Defendants' speech and conduct—and the conduct of countless other entities and individuals not party to this litigation. No federal court has ever found such a far-fetched theory to state a claim for relief. This Court should not be the first.

**This Court need not reach these questions, because Plaintiffs' claims are time-barred.** The allegations make plain that Plaintiffs knew in 2017—when the hurricanes hit—that they had been damaged, and Plaintiffs cannot plausibly claim they only recently became aware of an alleged link between fossil fuels, climate change, and hurricanes. By 2017, public materials—some of which Plaintiffs cite, and more of which Plaintiffs referenced previously—already alleged such a link. Indeed, the First Circuit noted that "[i]n 2018, faced with . . . more frequent and severe . . . hurricanes . . . , Rhode Island sued . . . nearly every oil and gas company under the sun." *Rhode Island v. Shell Oil Prods. Co.*, 979 F.3d 50, 53–54 (1st Cir. 2020) (affirming remand). Plaintiffs have no justification for sitting on their claims for five years and cannot plead around this public record. Omitting now-inconvenient allegations from the Amended Complaint *after* Defendants pointed out this failing in their prior motions to dismiss is of no effect. Plaintiffs' federal claims are barred by a four-year statute of limitations, and their putative Puerto Rico law claims by one-year limitations periods. As a Delaware court recently held in dismissing similar climate change

Case 3:23-cv-01608-ADC-HRV   Document 236-1   Filed 06/17/25   Page 37 of 41
Case 3:23-cv-01608-ADC-HRV   Document 186-4   Filed 04/24/25   Page 15 of 19
Case 3:22-cv-01550-SCC-HRV   Document 235   Filed 01/30/24   Page 21 of 85

claims: The "general public had knowledge of or had access to information about the disputes, regarding the existence of climate change and effects, decades prior to the expiration" of the limitations period. *Delaware*, 2024 WL 88888, at *19. That alone requires dismissal.

**Plaintiffs' claims also fail on the merits, just as similar claims have failed elsewhere.** *See City of New York*, 993 F.3d at 86 (affirming Rule 12(b)(6) dismissal of substantially similar complaint). Plaintiffs cannot plausibly impose liability for the 2017 hurricanes on Defendants' lawful sale of vital fuels for decades, much less for Defendants' First Amendment protected speech—or *purported* speech, since Plaintiffs improperly try to tag the disparate Defendants named here with statements made by entities for which Defendants are not responsible.

**Plaintiffs' civil Racketeer Influenced and Corrupt Organizations Act ("RICO") and antitrust claims are meritless.** Like their other claims, Plaintiffs premise their RICO claims on alleged speech that is constitutionally protected—such as core political speech aimed at preventing U.S. adoption of the Kyoto Protocol. Am. Compl. ¶¶ 391, 396. The importance of climate change as a public policy issue means that Defendants' speech is entitled to substantial constitutional protection. The First Amendment protects not only the heartland of political speech, but even "the *prospect* of chilling fully protected expression." *Counterman v. Colorado*, 143 S. Ct. 2106, 2115 (2023) (emphasis added). *See also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2320 (2023) (reaffirming constitutional protections for speech despite alleged profit motive). Because the only speech Plaintiffs identify as supposedly having caused their harm (*i.e.*, 2017 hurricane injuries) is political lobbying and publicity campaigns allegedly aimed at influencing the views of lawmakers and the public, Plaintiffs' claims violate the First Amendment and the *Noerr-Pennington* doctrine.

**In addition, the civil RICO and antitrust allegations fail plausibly to allege multiple required elements.** For example, Plaintiffs must plead facts showing a *direct* causal relation

Case 3:23-cv-01608-ADC-HRV    Document 236-1    Filed 06/17/25    Page 38 of 41
Case 3:23-cv-01608-ADC-HRV    Document 186-4    Filed 04/24/25    Page 16 of 19
Case 3:22-cv-01550-SCC-HRV    Document 235    Filed 01/30/24    Page 22 of 85

between the alleged acts of racketeering and the claimed injuries. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Failing to do so, Plaintiffs instead allege an attenuated, speculative chain of indirect and intervening causes consisting of *at least six* alleged steps, including that: (1) Defendants promoted climate change denial; (2) that promotion resulted in a marginal increase in the sales of Defendants' products and a corresponding increase in the use of those products by Plaintiffs, their residents, and billions of other actors worldwide; (3) that incremental purchase and use resulted in increased petroleum production and emissions of greenhouse gases; (4) those incremental greenhouse gas emissions mixed with other greenhouse gases emitted throughout the world to exacerbate climate change to some unspecified degree; (5) global climate change contributed to the hurricanes in Puerto Rico in 2017; and (6) those hurricanes damaged Plaintiffs. The Supreme Court repeatedly has rejected far less attenuated causal chains on motions to dismiss. *See id.* at 10; *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–59 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270–74 (1992). The Amended Complaint also admits—fatally—that the purported "enterprise" (the Global Climate Coalition ("GCC")) *disbanded in 2002.* Am. Racketeering Case Stmt. ¶¶ 2(b), 8(b). While Plaintiffs allege that the GCC continues operating "informally" through other organizations like API, Plaintiffs' allegations are conclusory, superficial, and fail to carry the burden that RICO places on them to plead an enterprise.

**Plaintiffs' antitrust claim fails for additional reasons as well.** Plaintiffs have not pleaded an anticompetitive agreement, as required under Section 1 of the Sherman Act. In addition to improperly seeking to burden constitutionally protected speech, Plaintiffs plead no facts supporting their conclusory assertion that Defendants agreed to "maintain their energy monopoly, fix prices, and increase obstacles for competitive entry into the [energy] market." Am. Compl. ¶ 767. That alone defeats Plaintiffs' antitrust claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548

Case 3:23-cv-01608-ADC-HRV    Document 236-1    Filed 06/17/25    Page 39 of 41
Case 3:23-cv-01608-ADC-HRV    Document 186-4    Filed 04/24/25    Page 17 of 19
Case 3:22-cv-01550-SCC-HRV    Document 235    Filed 01/30/24    Page 23 of 85

(2007) ("absent some factual context suggesting agreement, as distinct from identical independent action," a complaint alleging a Section 1 violation "should be dismissed"). Nor have Plaintiffs pleaded any adverse effect on competition; indeed, Plaintiffs claim that Defendants' alleged conduct "*increased production*" and "*lower[ed] prices*" for consumers. Am. Compl. ¶¶ 7(d), 767 (emphases added). That also requires dismissal because an alleged antitrust conspiracy must involve a "'competition-*reducing* aspect or effect of the defendant's behavior,' that is, . . . 'acts that *reduce output* or *raise prices* to consumers.'" *Cont'l Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 516 (4th Cir. 2002) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990)). Finally, the antitrust laws cannot be used to recover for alleged climate-related harms. *See, e.g., In re Multidistrict Vehicle Air Pollution*, 538 F.2d 231, 236 (9th Cir. 1976) (holding antitrust laws cannot be used to remedy environmental injuries); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 414 n.9 (3d Cir. 1997) (same).

**Plaintiffs' putative Puerto Rico law claims suffer from additional defects. In particular, under the United States Constitution, transboundary pollution may be governed only by federal law,** so Plaintiffs' purported Puerto Rico law claims must fail. Our federal constitutional structure prohibits Plaintiffs from invoking Puerto Rico tort law to address global greenhouse gas emissions and climate change. As the Second Circuit made clear in *City of New York*, however artfully pleaded, these issues are inherently interstate and international in nature. Plaintiffs' Complaint is replete with the same types of allegations regarding transboundary pollution. Under our federal constitutional system, only federal law—not state or commonwealth law—can govern such interstate and international issues associated with climate change. And even if our federal constitutional structure did not preclude Plaintiffs' Puerto Rico law claims, the Clean Air Act ("CAA") would preempt them. Indeed, in a similar lawsuit over alleged climate deception brought by the

- 6 -

Case 3:23-cv-01608-ADC-HRV    Document 236-1    Filed 06/17/25    Page 40 of 41
Case 3:23-cv-01608-ADC-HRV    Document 186-4    Filed 04/24/25    Page 18 of 19
Case 3:22-cv-01550-SCC-HRV    Document 235    Filed 01/30/24    Page 24 of 85

State of Delaware, the court concluded that "the CAA preempts state law to the extent a state attempts to regulate air pollution originating in other states," which is precisely what Plaintiffs' sprawling lawsuit seeks to do here. *Delaware*, 2024 WL 98888, at *10. Finally, Plaintiffs fail to plead the elements of any Puerto Rico law claim, which they lack the capacity to bring on behalf of their residents in any event.

Accordingly, the Court should dismiss the Amended Complaint with prejudice.

## BACKGROUND

Plaintiffs are Puerto Rico municipalities. They bring this action against Defendants to recover for losses resulting from the September 2017 hurricanes that struck Puerto Rico.[3] According to the Amended Complaint, Defendants' products played a "primary role . . . in causing the losses, deaths and destruction of property resulting from the catastrophic storms of September 2017 and their aftermath." Am. Compl. ¶ 1. Defendants allegedly had an "early awareness" of the danger of fossil fuels, but "misrepresented the dangers" and "embarked on a corporate *worldwide* strategy to hide that information" in order "to maintain their economic monopoly on *the world's* energy supply." *Id.* ¶¶ 2, 3 (emphasis added). Plaintiffs implausibly contend that they "relied upon the Defendants' misrepresentations," *id.* ¶ 3, and only "just recently" learned of the dangers of fossil fuels, *id.* ¶ 20, about which they supposedly "did not know and could not have known through the exercise of reasonable diligence," *id.* ¶ 23.

Plaintiffs' allegation that Defendants engaged in a "worldwide" strategy of deception is premised on alleged efforts by Defendants to petition governments for favorable regulatory treatment. For example, the Amended Complaint alleges that "Defendants publicly fought against climate

---

[3] Defendant API is a trade association and Rio Tinto plc is a global mining company engaged in the exploration, extraction, and processing of mineral resources. Neither produces, markets, or sells fossil fuels. This brief sometimes refers to defendants as "energy companies." Neither API nor Rio Tinto concedes it is an energy company, or is engaged in producing, marketing or selling fossil fuel products. API and Rio Tinto expressly reserve all rights.

Case 3:23-cv-01608-ADC-HRV   Document 236-1   Filed 06/17/25   Page 41 of 41
Case 3:23-cv-01608-ADC-HRV   Document 186-4   Filed 04/24/25   Page 19 of 19
Case 3:22-cv-01550-SCC-HRV   Document 235   Filed 01/30/24   Page 25 of 85

science" and "championed anti-regulation . . . propaganda" "to protect their profits from the impact of regulation." *Id.* ¶¶ 72, 73; *see also id.* ¶ 415 (Defendants "mounted a campaign against regulation of their business practices."); ¶ 589 ("Defendants embarked on a decades-long marketing campaign designed to maximize continued dependence on their products and undermine national and international efforts to rein in greenhouse gas emissions").

In short, while Plaintiffs purport to disclaim liability based on public advocacy and lobbying, *id.* ¶ 10, the Amended Complaint is premised precisely upon such speech—even without considering, as this Court must, those allegations that Plaintiffs have attempted to evade by omitting them from the Amended Complaint. For example, the original Complaint affirmatively alleged that Defendants supposedly "funded advertising campaigns and distributed material to misinform the public about climate change, with the specific purpose of preventing U.S. adoption of the Kyoto Protocol," Compl. ¶ 365, and that "[t]he Global Climate Coalition (GCC) was formed in 1989 as a public relations and international lobbyist group of businesses that opposed action to reduce greenhouse gas emissions," *id.* ¶ 364. As explained below, to the extent Plaintiffs have now omitted any such allegations, Plaintiffs cannot avoid the debilitating legal effect of such allegations merely by silently dropping them from an amended pleading. *See infra,* at 14, n.8.

Plaintiffs' claims also are not limited to the marketing, sale, or combustion of fossil-fuel products *in Puerto Rico,* much less *by Defendants* in Puerto Rico. The Amended Complaint nowhere alleges a causal connection between the September 2017 hurricanes and *anyone's* Puerto Rico-specific consumption of fossil fuel products. Nor does it allege any causal connection between any injuries and what could be at most a marginal increase in the fossil fuel products sold in Puerto Rico because of any allegedly misleading statements directed to Puerto Rico. The Amended Complaint contains no allegations at all regarding the volume of fossil fuels used or sold in Puerto Rico.

- 8 -